**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

__________ District of Delaware
(State)

Case number (*if known*): ________ Chapter 11

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

**04/25**

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

| | | | |
|---|---|---|---|
| **1.** | **Debtor's name** | Searles Valley Minerals Inc. | |
| **2.** | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | None | |
| **3.** | **Debtor's federal Employer Identification Number (EIN)** | 13–3579263 | |
| **4.** | **Debtor's address** | **Principal place of business**<br><br>9401 Indian Creek Parkway, Suite 1000<br>Number Street<br><br>Overland Park KS 66210<br>City State ZIP Code<br><br>Johnson<br>County | **Mailing address, if different from principal place of business**<br><br>Number Street<br><br>P.O. Box<br><br>City State ZIP Code<br><br>**Location of principal assets, if different from principal place of business**<br><br>13200 Main Street<br>Number Street<br><br>Trona CA 93562<br>City State ZIP Code |
| **5.** | **Debtor's website (URL)** | https://www.svminerals.com | |

Debtor Searles Valley Minerals Inc.
Name
Case number (*if known*)

**6. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other. Specify:

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)
☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

2 1 2 3

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*
☐ Chapter 7
☐ Chapter 9
☒ Chapter 11. *Check **all** that apply*:

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes District ______ When ______ MM / DD / YYYY Case number ______

District ______ When ______ MM / DD / YYYY Case number ______

Debtor Searles Valley Minerals Inc.
Name

Case number (*if known*)

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☒ Yes Debtor See Annex 1 Relationship Affiliate

District Delaware When 06/15/2026 MM / DD / YYYY

Case Number, if known

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard?

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other

**Where is the property?**

Number Street

City State Zip Code

**Is the property insured?**

☐ No

☐ Yes Insurance agency

Contact name

Phone

## Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☒ 200-999 | | |

* "Estimated number of creditors" determined on a consolidated basis with affiliate debtors.

Debtor Searles Valley Minerals Inc. Case number (*if known*)
Name

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☒ $100,000,001-$500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☒ $100,000,001-$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.
I have been authorized to file this petition on behalf of the debtor.
I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 06/15/2026
MM / DD / YYYY

✘ */s/ Dennis Cruise*
Signature of authorized representative of debtor

Dennis Cruise
Printed name

Title President

**18. Signature of attorney**

✘ */s/ Laura Davis Jones*
Signature of attorney for debtor

Date: 06/15/2026
MM / DD / YYYY

| | | |
|---|---|---|
| Laura Davis Jones<br>Printed name | Joseph O. Larkin<br>Printed name | James J. Mazza, Jr.<br>Printed name |
| Pachulski Stang Ziehl & Jones LLP<br>Firm name | Skadden, Arps, Slate, Meagher & Flom LLP<br>Firm name | Skadden, Arps, Slate, Meagher & Flom LLP<br>Firm name |
| 919 North Market Street, 17th Floor<br>Number Street | One Rodney Square, 920 N. King Street<br>Number Street | 320 South Canal Street<br>Number Street |
| Wilmington, Delaware 19801<br>City/State/ZIP | Wilmington, Delaware 19801<br>City/State/ZIP | Chicago, Illinois 60606<br>City/State/Zip |
| (302) 652-4100<br>Contact phone | (302) 651-3000<br>Contact phone | (312) 407-0700<br>Contact phone |
| ljones@pszjlaw.com<br>Email address | Joseph.Larkin@skadden.com<br>Email address | James.Mazza@skadden.com |
| 2436 Delaware<br>Bar number State | 4883 Delaware<br>Bar number State | *Pro hac vice admission* pending |

# ANNEX 1

## SCHEDULE OF DEBTORS

On the date hereof, each of the affiliated entities listed below (including the debtor in this chapter 11 case) filed in this Court a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended. Substantially contemporaneously with the filing of these petitions, these entities filed a motion requesting that their respective chapter 11 cases be jointly administered for procedural purposes only under the case number assigned to the chapter 11 case of Searles Valley Minerals Inc.

| | DEBTOR'S NAME | DEBTOR'S EIN |
|---|---|---|
| 1. | Searles Valley Minerals Inc. | 13–3579263 |
| 2. | Trona Railway Company LLC | 95-6003177 |
| 3. | Searles Domestic Water Company LLC | N/A |

**RESOLUTIONS OF THE GOVERNING BODIES OF SEARLES VALLEY MINERALS INC., TRONA RAILWAY COMPANY LLC, AND SEARLES DOMESTIC WATER COMPANY LLC**

**June 14, 2026**

**WHEREAS,** Searles Valley Minerals Inc., a Delaware corporation ("SVM") is the sole member of Trona Railway Company LLC ("TRC"), a Delaware limited liability company, its direct wholly owned subsidiary;

**WHEREAS**, SVM is the sole member of Searles Domestic Water Company LLC, a Delaware limited liability company ("SDWC"), its direct wholly owned subsidiary;

**WHEREAS**, the board of directors or the sole member, as applicable (in each case, the "Governing Body" and collectively, the "Governing Bodies"), of each of SVM, TRC, and SDWC (collectively the "Companies" and each such entity, a "Company") has reviewed, analyzed, and had the opportunity to ask questions about the materials presented by management and the legal and financial advisors of such Company regarding the financial condition, capital structure, liquidity position, business model and projections, short term and long term prospects of such Company, the restructuring and other strategic alternatives available to it, and the impact of the foregoing on each Company's business;

**WHEREAS**, the Governing Body of each Company has been presented with proposed voluntary petitions for relief (each, a "Chapter 11 Petition" and collectively, the "Chapter 11 Petitions") to be filed by the Companies in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking relief, including the authority to operate as a debtor in possession, under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS**, the Governing Body of each Company has been presented with and has had the opportunity to consult with the management and the legal and financial advisors of such Company regarding the material terms of the "first day" pleadings, schedules, motions, lists, applications, orders, affidavits, and other documents (collectively, the "Chapter 11 Filings") to be filed by such Company before the Bankruptcy Court in connection with the commencement of such Company's bankruptcy case (each, a "Chapter 11 Case"); and

**WHEREAS**, based on their review of and having fully considered each of the available alternatives and advice provided by such advisors and professionals, each Governing Body has determined that it is advisable and in the best interests of each Company, and their respective creditors, stakeholders, and other parties in interest, for such Company to take the actions specified in the following resolutions.

## I. Chapter 11 Filing

**NOW, THEREFORE, BE IT RESOLVED**, that the Governing Body of each Company, having considered the financial and operational aspects of the Company's business and the best course of action to maximize value, has determined, after consultation with management and the legal and financial advisors of the applicable Company, that it is desirable and in the best interests of the Companies, and their respective creditors, stakeholders, and other parties in interest, that the Companies file the Chapter 11 Petitions and the Chapter 11 Filings in the Bankruptcy Court, and the filing of such Chapter 11 Petitions and Chapter 11 Filings is authorized hereby; and be it further

**RESOLVED**, that any officer of each Company, as applicable (each an "Authorized Person"), acting individually or collectively, in each case be, and hereby is, authorized, empowered and directed, on behalf of and in the name of each Company, to execute and verify the Chapter 11 Petition and the Chapter 11 Filings in the name of such Company and to cause the same to be filed in the Bankruptcy Court in such form and at such time as the Authorized Person(s) executing said Chapter 11 Petition and Chapter 11 Filings on behalf of such Company shall determine.

## II. Retention of Professionals

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to continue to retain and employ the law firm of Skadden, Arps, Slate, Meagher & Flom LLP and its affiliates ("Skadden"), as general bankruptcy counsel, to represent and assist such Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance such Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings in the Chapter 11 Cases and all other related matters in connection therewith, in such capacities and on such terms as the Authorized Persons of such Company, and each of them, may or shall approve and/or have previously approved; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to continue to retain and employ the law firm of Pachulski Stang Ziehl & Jones LLP ("Pachulski"), as bankruptcy co-counsel, to represent and assist such Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance such Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings in the Chapter 11 Cases and all other related matters in connection therewith, in such capacities and on such terms as the Authorized Persons of such Company, and each of them, may or shall approve and/or have previously approved; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to continue to retain (i) Ankura Consulting Group, LLC ("Ankura") to act as financial advisor to such Company, (ii) Lazard Frères & Co. LLC ("Lazard") to provide investment banking services to such Company, and (iii) Stretto, Inc. ("Stretto") to provide consulting services to such Company regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, and any other services agreed to by the parties; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to (a) continue the employment and retention of professionals in the ordinary course as long as such Authorized Persons deem appropriate and, in connection with its Chapter 11 Case (b) retain and employ other attorneys, accountants, and other professionals to assist in such Chapter 11 Case on terms as are deemed necessary, appropriate or advisable; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to execute any appropriate engagement letters, agreements and such other documents necessary to retain Skadden Arps, Pachulski, Ankura, Lazard, Stretto, and any other or additional financial advisors, investment bankers, accountants, auditors, advisors, legal counsel, and other professionals not specifically identified herein (the "Professionals"), and to cause such Company to pay appropriate retainers to such Professionals prior to the filing of its Chapter 11 Case or after to the extent appropriate and permitted in its Chapter 11 Case, and to cause to be filed applications or motions seeking authority to retain and pay for the services of such Professionals; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to pay, or cause to be paid, all fees and expenses incurred by such Company in connection with services rendered by the Professionals and to make, or cause to be made, all payments as they, or any of them individually, shall determine to be necessary, appropriate or advisable, such payment to be conclusive evidence of their determination; and be it further

## III. General

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to amend, supplement or otherwise modify from time to time the terms of any documents, certificates, instruments, agreements, financing statements, notices, undertakings or other writings referred to in the foregoing resolutions; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to take or cause to be taken any and all such further action and to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on its behalf as provided herein) all such further documents, agreements, instruments, financing statements, notices, undertakings, certificates, resolutions and other writings as they or any of them deem necessary, desirable or appropriate to effectuate the purpose and intent of any and all of the foregoing resolutions, the necessity, desirability, and appropriateness of which shall be conclusively evidenced by the action in support thereof, or the execution and delivery thereof, by such Authorized Persons (or such persons directed by such Authorized Persons); and be it further

**RESOLVED**, that all acts lawfully done or actions lawfully taken by any Authorized Person to seek relief on behalf of such Company under Chapter 11 of the Bankruptcy Code, or in

connection with the Chapter 11 Cases, or any matter related thereto, be, and hereby are, adopted, ratified, confirmed and approved in all respects as the acts and deeds of such Company in all respects by the Governing Body of such Company; and be it further

**RESOLVED**, that all acts lawfully done or actions lawfully taken by any Authorized Person, or by any employees or agents of such Company, on or before the date hereof in connection with the transactions contemplated by the foregoing resolutions be, and hereby are, authorized, adopted, ratified, confirmed and approved in all respects by the Governing Body of such Company; and be it further

**RESOLVED**, that the omission from these resolutions of any agreement, document or other arrangement contemplated by any of the agreements, instruments, filings or other documents described in the foregoing resolutions or any action to be taken in accordance with any requirement of any of the agreements, instruments, filings or other documents described in the foregoing resolutions shall in no manner derogate from the authority of the Authorized Persons to take all actions necessary, appropriate or advisable to consummate, effectuate, carry out or further the transaction contemplated by, and the intent and purposes of, the foregoing resolutions, the necessity, appropriateness, and advisability, of which shall be conclusively evidenced by the execution and delivery thereof, or action in support thereof, by such Authorized Person; and be it further

**RESOLVED**, that the Governing Body of such Company has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of such Company, or hereby waive any right to have received such notice; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on their behalf as provided herein) all necessary documents, including, without limitation, all petitions, affidavits, statements, schedules, motions, lists, applications, pleadings, other papers, guarantees, reaffirmations, additional security documents, control agreements, waivers of or amendments to existing documents, and to negotiate the forms, terms and provisions of, and to execute and deliver any amendments, modifications, waivers or consent to any of the foregoing as may be approved by any Authorized Person, which amendments, modifications, waivers or consents may provide for consent payments, fees or other amounts payable or other modifications of or relief under such agreements or documents, the purpose of such amendments, modifications, waivers or consents being to facilitate consummation of the transactions contemplated by the foregoing resolutions or for any other purpose, and, in connection with the foregoing, to employ and retain all assistance by legal counsel, investment bankers, accountants, restructuring professionals or other professionals, and to take any and all action which such Authorized Person or Authorized Persons deem necessary, appropriate or advisable in connection with the Chapter 11 Caseswith a view to the successful prosecution of the Chapter 11 Cases contemplated by the foregoing resolutions and the successful consummation of the transactions contemplated by the foregoing resolutions including, without limitation, any action necessary, appropriate, or advisable to maintain the ordinary course operation of such

Company's business; and be it further

**RESOLVED**, that the Authorized Persons be, and each hereby is, authorized, empowered and directed, on behalf of and in the name of such Company, to execute, deliver and perform any and all special powers of attorney as such Authorized Person may deem necessary, appropriate or advisable to facilitate consummation of the transactions contemplated by the foregoing resolutions, pursuant to which such Authorized Person will make certain appointments of attorneys to facilitate consummation of the transactions contemplated by the foregoing resolutions as such Company's true and lawful attorneys and authorize each such attorney to execute and deliver any and all documents of whatsoever nature and description that may be necessary, appropriate or advisable to facilitate consummation of the transactions contemplated by the foregoing resolutions.

***

**RESOLUTIONS OF THE GOVERNING BODIES OF**
**SEARLES VALLEY MINERALS INC.,**
**TRONA RAILWAY COMPANY LLC,**
**AND**
**SEARLES DOMESTIC WATER COMPANY LLC**

**June 14, 2026**

**WHEREAS,** Searles Valley Minerals Inc., a Delaware corporation ("SVM") is the sole member of Trona Railway Company LLC ("TRC"), a Delaware limited liability company, its direct wholly owned subsidiary;

**WHEREAS**, SVM is the sole member of Searles Domestic Water Company LLC, a Delaware limited liability company ("SDWC"), its direct wholly owned subsidiary;

**WHEREAS**, the sole shareholder of SVM is Karnavati Holdings, Inc. (the "Sole Shareholder");

**WHEREAS**, the Sole Shareholder is a wholly-owned subsidiary of Nirma Limited (the "Parent");

**WHEREAS**, certain members of the board of directors of SVM (the "Board") serve on the board of directors of the Parent (the "SVM/Parent Directors");

**WHEREAS**, the Board or the sole member, as applicable (in each case, the "Governing Body" and collectively, the "Governing Bodies") of each of SVM, TRC, and SDWC (collectively the "Companies" and each such entity, a "Company") has been presented with proposed voluntary petitions and certain related pleadings and other documents to be filed by the Companies in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in order to commence cases (collectively, the "Chapter 11 Cases") seeking relief, including the authority to operate as a debtor in possession, under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS**, in connection with the Chapter 11 Cases, it is proposed that SVM enter into that certain Soda Ash Supply and Liquidity Agreement (including all exhibits, schedules, and attachments thereto, the "Supply Agreement"), by and among SVM and TATA Chemicals North America Inc., a Delaware corporation (the "Supplier"), substantially in the form presented to the Governing Bodies, pursuant to which, among other things, upon the terms and conditions set forth in the Supply Agreement, Supplier will advance an aggregate of $20 million to SVM and fulfill all of SVM's soda ash requirements to its customers under existing customer contracts in exchange for payments from SVM on account of the soda ash it supplies at a predetermined price (the "Liquidity Advance");

**WHEREAS**, in connection with the Supply Agreement, the Supplier requires (i) that the Parent provide a certain corporate guarantee in favor of Supplier guaranteeing certain of SVM's obligations under the Supply Agreement (the "Parent Guarantee"), and (ii) that each Company

grant certain liens in favor of the Parent to secure such Company's obligations to repay amounts paid under the Parent Guarantee following payment in full of the Liquidity Advance pursuant to that certain Reimbursement and Indemnity Agreement (including all exhibits, schedules, and attachments thereto, the "Reimbursement Agreement"), by and among the Companies and the Parent, substantially in the form presented to the Governing Bodies, subject to exceptions and limitations to be set forth in any orders of the Bankruptcy Court concerning any the Supply Agreement, Reimbursement Agreement, and Parent Guarantee, and related certificates, instruments, agreements or other documents, in each case, executed and/or delivered in connection with, related to and/or contemplated by the Supply Agreement (collectively, and together with the Supply Agreement and the Reimbursement Agreement, the "Supply Agreement Documents");

**WHEREAS**, the SVM/Parent Directors have recused themselves from all actions involving the Supply Agreement Documents;

**WHEREAS**, Messrs. John S. Dubel, Matthew J. Dowd, and Avinash Puri (collectively, the "Disinterested Directors"), on behalf of SVM for itself and each of TRC and SDWC, in SVM's capacity as sole member thereof, have reviewed, analyzed, and had the opportunity to ask questions about the terms and provisions of the Supply Agreement Documents and other materials presented by management and the legal and financial advisors of each Company regarding the financial condition, capital structure, liquidity position, business model and projections, short term and long term prospects of such Company, the restructuring and other strategic alternatives available to it, and the impact of the foregoing on such Company's business; and

**WHEREAS**, based on their review of and having fully considered each of the available alternatives and advice provided by such advisors and professionals, the Disinterested Directors have determined that it is advisable and in the best interests of each Company, and their respective creditors, stakeholders, and other parties in interest, for such Company to enter into the Supply Agreement Documents applicable to each Company and to consummate the transactions contemplated thereby and take the actions specified in the following resolutions.

## I. Supply Agreement

**NOW, THEREFORE, BE IT RESOLVED**, that the form, terms and provisions of the Supply Agreement Documents, each Company's performance of its obligations thereunder, and the consummation of the transactions contemplated thereby, on the terms and subject to the conditions set forth in the Supply Agreement Documents, as applicable, substantially in the forms presented to the Disinterested Directors and on such other terms as the Disinterested Directors shall deem necessary, appropriate, or advisable, are hereby, in all respects, authorized, ratified, approved and adopted by the Disinterested Directors; and be it further

**RESOLVED**, that each Company is authorized to enter into the Supply Agreement Documents and such Company be, and hereby is, authorized to incur obligations thereunder and to undertake any and all related transactions contemplated under the Supply Agreement Documents; and be it further

**RESOLVED**, that any officer of each Company, as applicable (each an "Authorized

Person”), acting individually or collectively, in each case be, and hereby is, authorized, empowered and directed, with full power of delegation, on behalf of and in the name of such Company, to cause such Company to negotiate, execute and deliver the Supply Agreement Documents, in such form and with such amendments, modifications or changes (substantial or otherwise) thereto as any such Authorized Person may deem necessary, desirable or appropriate, in order to consummate the transactions contemplated by the Supply Agreement Documents, the necessity, desirability, and appropriateness of which shall be conclusively evidenced by the execution and delivery thereof; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively, in each case be, and hereby is, authorized, empowered and directed, with full power of delegation, on behalf of and in the name of each Company to take all such further actions which shall, in such Authorized Person’s sole judgment, be necessary, proper or advisable to perform such Company’s obligations under or in connection with the Supply Agreement Documents, or a supply agreement with any higher or better supplier, and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively, in each case be, and hereby is, authorized, empowered and directed, with full power of delegation, on behalf of and in the name of each Company to take all such further actions which shall, in such Authorized Person’s sole judgment, be necessary, proper or advisable to perform such Company’s obligations under or in connection with the Supply Agreement Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions, which determination shall be conclusively evidenced by such Authorized Person’s execution thereof; and be it further

## II. General

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to take or cause to be taken any and all such further action and to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on its behalf as provided herein) all such further documents, agreements, instruments, financing statements, notices, undertakings, certificates, resolutions and other writings as they or any of them deem necessary, desirable or appropriate to effectuate the purpose and intent of any and all of the foregoing resolutions, the necessity, desirability, and appropriateness of which shall be conclusively evidenced by the action in support thereof, or the execution and delivery thereof, by such Authorized Persons (or such persons directed by such Authorized Persons); and be it further

**RESOLVED**, that all acts lawfully done or actions lawfully taken by any Authorized Person, or by any employees or agents of each Company, on or before the date hereof in connection with the transactions contemplated by the foregoing resolutions be, and hereby are, authorized, adopted, ratified, confirmed and approved in all respects by the Board; and be it further

**RESOLVED**, that the omission from these resolutions of any agreement, document or other arrangement contemplated by any of the agreements, instruments, filings or other documents described in the foregoing resolutions or any action to be taken in accordance with any requirement

of any of the agreements, instruments, filings or other documents described in the foregoing resolutions shall in no manner derogate from the authority of the Authorized Persons to take all actions necessary, appropriate or advisable to consummate, effectuate, carry out or further the transaction contemplated by, and the intent and purposes of, the foregoing resolutions, the necessity, appropriateness, and advisability, of which shall be conclusively evidenced by the execution and delivery thereof, or action in support thereof, by such Authorized Person; and be it further

**RESOLVED**, that the Governing Body of each Company (including the Disinterested Directors) has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of such Company, or hereby waive any right to have received such notice; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on their behalf as provided herein) all necessary documents, including, without limitation, all motions, affidavits, lists, applications, pleadings, other papers, guarantees, reaffirmations, additional security documents, control agreements, waivers of or amendments to existing documents, and to negotiate the forms, terms and provisions of, and to execute and deliver any amendments, modifications, waivers or consent to any of the foregoing as may be approved by any Authorized Person, which amendments, modifications, waivers or consents may provide for consent payments, fees or other amounts payable or other modifications of or relief under such agreements or documents, the purpose of such amendments, modifications, waivers or consents being to facilitate consummation of the transactions contemplated by the foregoing resolutions or for any other purpose, and to take any and all action which such Authorized Person or Authorized Persons deem necessary, appropriate or advisable in connection with the Chapter 11 Cases, the Parent Guarantee, and the Supply Agreement Documents with a view to the successful prosecution of the Chapter 11 Cases contemplated by the foregoing resolutions and the successful consummation of the transactions contemplated by the foregoing resolutions including, without limitation, any action necessary, appropriate, or advisable to maintain the ordinary course operation of such Company's business; and be it further

**RESOLVED**, that the Authorized Persons be, and each hereby is, authorized, empowered and directed, on behalf of and in the name of each Company, to execute, deliver and perform any and all special powers of attorney as such Authorized Person may deem necessary, appropriate or advisable to facilitate consummation of the transactions contemplated by the foregoing resolutions, pursuant to which such Authorized Person will make certain appointments of attorneys to facilitate consummation of the transactions contemplated by the foregoing resolutions as such Company's true and lawful attorneys and authorize each such attorney to execute and deliver any and all documents of whatsoever nature and description that may be necessary, appropriate or advisable to facilitate consummation of the transactions contemplated by the foregoing resolutions.

**RESOLUTIONS OF THE INDEPENDENT COMMITTEE OF SEARLES VALLEY MINERALS INC. AND THE SOLE MEMBER OF TRONA RAILWAY COMPANY LLC, AND SEARLES DOMESTIC WATER COMPANY LLC**

**June 14, 2026**

**WHEREAS,** Searles Valley Minerals Inc., a Delaware corporation ("SVM") is the sole member of Trona Railway Company LLC ("TRC"), a Delaware limited liability company, its direct wholly owned subsidiary;

**WHEREAS**, SVM is the sole member of Searles Domestic Water Company LLC, a Delaware limited liability company ("SDWC"), its direct wholly owned subsidiary;

**WHEREAS**, the sole shareholder of SVM is Karnavati Holdings, Inc. (the "Sole Shareholder");

**WHEREAS**, the Sole Shareholder is a wholly-owned subsidiary of Nirma Limited (the "Parent");

**WHEREAS**, certain members of the board of directors of SVM (the "Board") serve on the board of directors of the Parent (the "SVM/Parent Directors");

**WHEREAS**, the Board or the sole member, as applicable (in each case, the "Governing Body" and collectively, the "Governing Bodies") of each of SVM, TRC, and SDWC (collectively the "Companies" and each such entity, a "Company") has been presented with proposed voluntary petitions and certain related pleadings and other documents to be filed by the Companies in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in order to commence cases (collectively, the "Chapter 11 Cases") seeking relief, including the authority to operate as a debtor in possession, under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS**, in connection with the Chapter 11 Cases, it is proposed that the Companies (a) request that one or more potential financing sources provide the Companies with postpetition debtor-in-possession financing, including, but not limited to, a $20 million junior debtor-in-possession financing facility (collectively, the "DIP Financing"), subject to exceptions and limitations to be set forth in any orders of the Bankruptcy Court concerning any of the DIP Financing (the "DIP Financing Orders"), (b) obtain the benefits from the Company's use of cash collateral (as such term is defined in Section 363(a) of the Bankruptcy Code, the "Cash Collateral"), that secures the Company's prepetition secured lender, HSBC Bank USA, National Association ("HSBC") under certain credit facilities by and among the Companies and HSBC, including the receivables facility provided by HSBC pursuant to that certain Recourse Receivables Purchase Agreement, dated as of March 29, 2024, between SVM and HSBC (the "Receivables Facility"), and (c) seek HSBC's consent to continue using the Receivables Facility during the Chapter 11 Cases;

**WHEREAS**, in connection with the Chapter 11 Cases, it is proposed that the Companies enter into that certain definitive debtor-in-possession financing agreement (the "DIP Financing Agreement") by and among the Companies, as borrower, debtor, debtor-in-possession, and guarantors, respectively, and the Sole Shareholder, as lender the ("DIP Lender"), substantially in the form presented to the Governing Bodies, pursuant to which the DIP Lender has agreed to provide the Companies with DIP Financing, which provides for the borrowing and reborrowing of the, guaranteeing of obligations, granting of security and the pledging of collateral;

**WHEREAS**, in connection with the DIP Financing Agreement, the DIP Lender requires that each Company grant security interests in substantially all of its assets that now or hereafter come into the possession, custody or control of such Company, in order to secure the prompt and complete payment, observance, and performance of all obligations under the DIP Financing Agreement, subject to exceptions and limitations to be set forth in DIP Financing Orders and related certificates, instruments, agreements or other documents, in each case, executed and/or delivered in connection with, related to and/or contemplated by any DIP Term Sheets or DIP Financing Agreements (collectively, and together with the DIP Agreement, the "DIP Documents");

**WHEREAS**, in connection with each Company's request of HSBC to use Cash Collateral and continue to access the Receivables Facility, HSBC requires that each Company grant additional security interests in substantially all of its assets that now or hereafter come into the possession, custody or control of such Company, subject to exceptions and limitations to be set forth in DIP Financing Orders and other DIP Documents;

**WHEREAS**, the Board established the independent committee (the "Independent Committee") to assist the Board in fulfilling its oversight responsibilities as the Board may request or delegate from time to time, including with respect to the review, negotiation, authorization, approval, and implementation those matters that may involve a conflict of interest or interested transaction, including any transaction, agreement, arrangement, matter or other action in the Sole Shareholder or any affiliate of the Sole Shareholder has, or may have, an actual or potential conflict of interest;

**WHEREAS**, the Independent Committee, on behalf of SVM and each of TRC and SDWC, in SVM's capacity as sole member thereof, has reviewed, analyzed, and had the opportunity to ask questions about the terms and provisions of the DIP Documents and other materials presented by management and the legal and financial advisors of such Company regarding the financial condition, capital structure, liquidity position, business model and projections, short term and long term prospects of such Company, the restructuring and other strategic alternatives available to it, and the impact of the foregoing on each Company's business; and

**WHEREAS**, based on its review of and having fully considered each of the available alternatives and advice provided by such advisors and professionals, the Independent Committee has determined that it is advisable and in the best interests of each Company, and their respective creditors, stakeholders, and other parties in interest, for each Company to (i) enter into the DIP Documents applicable to each Company and to consummate the transactions contemplated thereby

(ii) consummate the transactions contemplated by each Company's use of Cash Collateral and continued use of the Receivables Facility during the Chapter 11 Cases, and (iii) take the actions specified in the following resolutions.

## I. Debtor-in-Possession Financing and Use of Cash Collateral

**NOW, THEREFORE, BE IT RESOLVED**, that the form, terms and provisions of the DIP Financing Agreement and other DIP Documents are hereby, in all respects, authorized, ratified, approved and adopted by the Independent Committee on behalf of each Company; and be it further

**RESOLVED**, that each Company be, and hereby is, authorized to incur and to undertake any and all related transactions contemplated under the DIP Financing Agreement and the DIP Documents; and be it further

**RESOLVED**, that each Company be, and hereby is, authorized to borrow and reborrow loans, guaranty obligations, grant security interests in collateral and pledge collateral pursuant to, and in accordance with, the DIP Financing Agreement and other DIP Documents; and be it further

**RESOLVED**, that any officer of each Company, as applicable (each an "Authorized Person"), acting individually or collectively, in each case be, and hereby is, authorized, empowered and directed, with full power of delegation, on behalf of and in the name of such Company, to cause such Company to negotiate, execute and deliver the DIP Financing Agreement and the other DIP Documents and any amendments, modifications, renewals, replacements, consolidations, substitutions, and extensions thereof, in such form and with such changes (substantial or otherwise) thereto as such Authorized Person may deem necessary, desirable or appropriate, in order to consummate the transactions contemplated by the DIP Financing Agreement and any of the DIP Documents, the necessity, desirability, and appropriateness of which shall be conclusively evidenced by the execution and delivery thereof; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively, in each case be, and hereby is, authorized, empowered and directed, with full power of delegation, on behalf of and in the name of each Company to (a) seek interim and final approval of the use of Cash Collateral and the Receivables Facility from the Bankruptcy Court pursuant substantially on the terms presented to the Independent Committee and (b) execute and deliver any additional or further agreements, instruments, or documents for the use of Cash Collateral and the Receivables Facility in connection with the Chapter 11 Filings, which agreement(s) may require such Company to grant adequate protection and additional security interests to HSBC, with such changes therein and additions thereto as such Authorized Person may deem necessary, desirable or appropriate, in order to consummate such transactions, the necessity, desirability, and appropriateness of which shall be conclusively evidenced by the execution and delivery thereof; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively, in each case be, and hereby is, authorized, empowered and directed, with full power of delegation, on behalf of and in the name of each Company, to take all such further actions which shall, in such Authorized Person's sole judgment, be necessary, proper or advisable to perform such Company's obligations under or in connection with the DIP Financing Agreement, the Cash Collateral, the Receivables

Facility, and any of the DIP Loan Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions, which determination shall be conclusively evidenced by such Authorized Person's execution thereof.

## II. <u>General</u>

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to take or cause to be taken any and all such further action and to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on its behalf as provided herein) all such further documents, agreements, instruments, financing statements, notices, undertakings, certificates, resolutions and other writings as they or any of them deem necessary, desirable or appropriate to effectuate the purpose and intent of any and all of the foregoing resolutions, the necessity, desirability, and appropriateness of which shall be conclusively evidenced by the action in support thereof, or the execution and delivery thereof, by such Authorized Persons (or such persons directed by such Authorized Persons); and be it further

**RESOLVED**, that all acts lawfully done or actions lawfully taken by any Authorized Person, or by any employees or agents of each Company, on or before the date hereof in connection with the transactions contemplated by the foregoing resolutions be, and hereby are, authorized, adopted, ratified, confirmed and approved in all respects by the Independent Committee; and be it further

**RESOLVED**, that the omission from these resolutions of any agreement, document or other arrangement contemplated by any of the agreements, instruments, filings or other documents described in the foregoing resolutions or any action to be taken in accordance with any requirement of any of the agreements, instruments, filings or other documents described in the foregoing resolutions shall in no manner derogate from the authority of the Authorized Persons to take all actions necessary, appropriate or advisable to consummate, effectuate, carry out or further the transaction contemplated by, and the intent and purposes of, the foregoing resolutions, the necessity, appropriateness, and advisability, of which shall be conclusively evidenced by the execution and delivery thereof, or action in support thereof, by such Authorized Person; and be it further

**RESOLVED**, that the Independent Committee has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of each Company, or hereby waives any right to have received such notice; and be it further

**RESOLVED**, that the Authorized Persons, acting individually or collectively be, and hereby are, authorized, empowered and directed, on behalf of and in the name of each Company, to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on their behalf as provided herein) all necessary documents, including, without limitation, all motions, affidavits, lists, applications, pleadings, other papers, guarantees, reaffirmations, additional security documents, control agreements, waivers of or amendments to existing documents, and to negotiate the forms, terms and provisions of, and to execute and deliver any amendments, modifications, waivers or consent to any of the foregoing as may be approved by any Authorized Person, which amendments, modifications, waivers or consents may provide for consent payments, fees or other amounts payable or other modifications of or relief under such agreements or documents, the purpose of such amendments, modifications, waivers or consents being to facilitate consummation of the transactions contemplated by the foregoing resolutions or for any other purpose, and to take any and all action which such Authorized Person or Authorized Persons deem necessary, appropriate or advisable in connection with the Chapter 11 Cases, the DIP Financing, the DIP Financing Agreement, the DIP Documents, the Cash Collateral, and the Receivables Facility with a view to the successful prosecution of the Chapter 11 Cases contemplated by the foregoing resolutions and the successful consummation of the transactions contemplated by the foregoing resolutions including, without limitation, any action necessary, appropriate, or advisable to maintain the ordinary course operation of such Company's business; and be it further

**RESOLVED**, that the Authorized Persons be, and each hereby is, authorized, empowered and directed, on behalf of and in the name of each Company, to execute, deliver and perform any and all special powers of attorney as such Authorized Person may deem necessary, appropriate or advisable to facilitate consummation of the transactions contemplated by the foregoing resolutions, pursuant to which such Authorized Person will make certain appointments of attorneys to facilitate consummation of the transactions contemplated by the foregoing resolutions as such Company's true and lawful attorneys and authorize each such attorney to execute and deliver any and all documents of whatsoever nature and description that may be necessary, appropriate or advisable to facilitate consummation of the transactions contemplated by the foregoing resolutions.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*, | ) | Case No. 26-[●] (●) |
| Debtors. | ) | (Joint Administration Requested) |

**CONSOLIDATED CORPORATE OWNERSHIP STATEMENT**
**PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 1007 AND 7007.1**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, Searles Valley Minerals Inc. and certain of its affiliates, as the debtors and debtors in possession in the above-captioned cases, respectfully represent:

1. Nirma Limited owns 100% of equity interests in Karnavati Holdings, Inc.

2. Karnavati Holdings, Inc. owns 100% of the equity interests in Searles Valley Minerals Inc.

3. Seales Valley Minerals Inc. owns 100% of the equity interests in Trona Railway Company LLC.

4. Searles Valley Minerals Inc. owns 100% of the equity interests in Searles Domestic Water Company LLC.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*, | ) | Case No. 26-[●] (●) |
| Debtors. | ) | (Joint Administration Requested) |

**LIST OF EQUITY SECURITY HOLDERS**

| Debtor | Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|---|
| Searles Valley Minerals Inc. | Karnavati Holdings, Inc. | 9401 Indian Creek Parkway, Suite 1000, Overland Park, KS 66210 | 100% |
| Trona Railway Company LLC | Searles Valley Minerals Inc. | 9401 Indian Creek Parkway, Suite 1000, Overland Park, KS 66210 | 100% |
| Searles Domestic Water Company LLC | Searles Valley Minerals Inc. | 9401 Indian Creek Parkway, Suite 1000, Overland Park, KS 66210 | 100% |

**Fill in this information to identify the case:**

Debtor name: Searles Valley Minerals Inc.

United States Bankruptcy Court for the: District of Delaware
(State)

*Case number (If known):*

☐ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders[1]

12/15

A consolidated list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total Claim, if partially secured | Deduction for value of collateral or setoff | Unsecured Claim |
| 1. | State of California Cap-And-Trade Program (CARB)<br>PO Box 2038<br>Sacramento, CA 95812 | Karen Lutter<br>P: 800-242-4450<br>E: Karen.lutter@arb.ca.gov | Environmental Obligations | | | | $ 76,318,424.00 |
| 2. | Core Sales LLC<br>275 Technology Drive<br>Canonsburg, PA 15317 | Rowdy Smith<br>P: 724-416-8300<br>E: RowdySmith@coreresources.com | Trade Payables / Breach of Contract | D | | | $ 9,200,000.00 |
| 3. | Metropolitan Stevedore Company<br>806 Worsham Ave<br>Long Beach, CA 90808 | Melissa Williams<br>P: 310-816-6500<br>E: melissa.williams@nautilusintl.com | Trade Payables | | | | $ 4,020,670.87 |
| 4. | San Bernardino County Land Use Services Dept<br>385 N Arrowhead Ave, 1st Floor<br>San Bernardino, CA 92415 | Tiffany Hart<br>P: 909-948-6488<br>E: tiffany.hart@arc.sbcounty.gov | Property Taxes | | | | $ 3,636,073.12 |
| 5. | Constellation NewEnergy<br>PO Box 5473<br>Carol Stream, IL 60197-5473 | Hambir Chavan<br>P: 844-200-3427<br>E: hambir.chavin@constellation.com | Trade Payables | | | | $ 2,639,006.28 |
| 6. | Process Equipment Inc<br>PO Box 5612<br>San Mateo, CA 94402-5612 | Bill Hunter<br>P: 205-663-5330<br>E: bhunter@processbarron.com | Trade Payables | | | | $ 2,541,948.00 |
| 7. | Sisecam Wyoming LLC<br>400 Perimeter Center Terrace NE Suite 350<br>Atlanta, GA 30346 | General Counsel<br>P: 770-375-2300<br>E: legal.usa@sisecam.com | Swap Agreement | D | | | $ 1,624,582.65 |
| 8. | D2 (Squared) Industrial Services LLC<br>PO Box 35146<br>Seattle, WA 98124-5146 | Steve Angelo<br>P: 310-339-8767<br>E: sangelo@d2industrial.com | Trade Payables | | | | $ 1,444,838.16 |
| 9. | The Cit Group/Capital Finance<br>1510 Plainfield Rd Suite 3<br>Darien, IL 60561 | Michael Elwell<br>P: 312-906-5700<br>E: michael.elwell@firstcitizens.com | Trade Payables | | | | $ 1,329,183.55 |

[1] On a consolidated basis. The information herein shall not constitute an admission of liability by, nor is it binding on, any debtor with respect to all or any portion of the claims listed herein. Nothing herein shall affect any debtors' right to challenge the amount or characterization of any claim.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total Claim, if partially secured | Deduction for value of collateral or setoff | Unsecured Claim |
| 10. | Best Best And Krieger LLP<br>PO Box 1028<br>Riverside, CA 92502-1028 | Eric Garner<br>P: 213-787-2561<br>E: Eric.Garner@bbklaw.com | Trade Payables | | | | $ 1,037,304.65 |
| 11. | Pacific Gas & Electric<br>Box 997300<br>Sacramento, CA 95899-7300 | Gabriel Ortuno<br>P: 559-376-3641<br>E: gabriel.ortuno@pge.com | Trade Payables | | | | $ 1,014,206.30 |
| 12. | Applied Industrial Tech.<br>PO Box 100538<br>Pasadena, CA 91189-0538 | Matt Showalter<br>P: 209-404-1161<br>E: mshowalter@applied.com | Trade Payables | | | | $ 978,763.15 |
| 13. | Port of San Diego<br>PO Box 841615<br>Los Angeles, CA 90084-1615 | Greg Borossay<br>P: 619-686-6258<br>E: gborossay@portofsandiego.org | Trade Payables | | | | $ 884,522.40 |
| 14. | Infinity Asset Holdings 2020-1, LLC<br>20 Guest 9th Floor<br>St Brighton, MA 02135-2040 | Andra Matthew<br>P: 678-904-6316<br>E: Andra.Matthew@kkr.com | Trade Payables | | | | $ 808,700.00 |
| 15. | Bakersfield Machine Company<br>PO Box 122<br>Bakersfield, CA 93302 | Rob Reed<br>P: 661-393-8441<br>E: rob@bmc-ind.com | Trade Payables | | | | $ 748,427.71 |
| 16. | Amergin Rail 2023-1, LLC<br>1100 Holland Dr.<br>Boca Raton, FL 33487 | Robert Luna<br>P: 561-612-5813<br>E: rluna@amerginam.com | Trade Payables | | | | $ 646,654.05 |
| 17. | CMP Sales Corp<br>PO Box 91357<br>Henderson, NV 89009 | Heidi Vanderslice<br>P: 909-373-0526<br>E: heidiv@mertec.net | Trade Payables | | | | $ 505,137.58 |
| 18. | Union Pacific Railroad<br>PO Box 843465<br>Dallas, TX 75284 | Maurisha Frazier<br>P: 888-703-1326<br>E: UPRR_ACCT_1@up.com | Trade Payables | | | | $ 472,373.86 |
| 19. | SSA Pacific, Inc<br>15417 Collections Center Dr.<br>Chicago, IL 60693 | Renee Manning<br>P: 206-654-3586<br>E: Renee.Manning@ssamarine.com | Trade Payables | | | | $ 456,908.91 |
| 20. | Caremark LLC, a div of CVS Pharmacy<br>One CVS Dr.<br>Woonsocket, RI 02895 | Rebecca Figueroa<br>P: 401-765-1500<br>E: Rebecca.Figueroa2@CVSHealth.com | Trade Payables | | | | $ 452,315.44 |
| 21. | Walter's Wholesale Electric Co.<br>PO Box 741406<br>Los Angeles, CA 90074-1406 | Jan Pickering<br>P: 562-436-2452<br>E: Jan.Pickering@walterswholsale.com | Trade Payables | | | | $ 442,280.46 |
| 22. | Chemtron Supply Corporation<br>3500 Harry S. Truman Blvd.<br>St. Charles, MO 63301 | Peggy Shurtz<br>P: 812-459-8513<br>E: peggys@CRBwater.com | Trade Payables | | | | $ 395,119.11 |
| 23. | GATX Rail, a div of GATX Financial<br>3454 Solutions Center<br>Chicago, IL 60677-3004 | Lita Teague<br>P: 312-621-6235<br>E: Lita.Teague@gatx.com | Trade Payables | | | | $ 368,775.00 |
| 24. | HPC Industrial Services, LLC<br>PO Box 734867<br>Dallas, TX 75373-4867 | Hana Dixon<br>P: 646-245-1741<br>E: Hana.Dixon@hpc-industrial.com | Trade Payables | | | | $ 321,237.70 |
| 25. | Progress Rail Leasing<br>25083 Network Place<br>Chicago, IL 60673-1250 | R Conley<br>P: 256-505-6085<br>E: rconley@progressrail.com | Trade Payables | | | | $ 298,680.00 |
| 26. | TTX Company<br>93167 Network Place<br>Chicago, IL 60673-1229 | Jonathan Perez<br>P: 312-984-3776<br>E: jonathon.perez@ttx.com | Trade Payables | | | | $ 292,520.44 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total Claim, if partially secured | Deduction for value of collateral or setoff | Unsecured Claim |
| 27. | Continental Labor Resources<br>PO Box 9039<br>Bakersfield, CA 93389 | Ilde Elisa Perez<br>P: 661-635-0339<br>E: jperez@clsri.com | Trade Payables | | | | $ 266,870.08 |
| 28. | Cortech Engineering<br>PO Box 840511<br>Dallas, TX 75284-0511 | Tony Nunez<br>P: 713-996-4700<br>E: tony.nunez@dxpe.com | Trade Payables | | | | $ 235,653.25 |
| 29. | Blue Cross Blue Shield-Admin/Claims<br>I-20 at Alpine Rd.<br>Columbia, SC 29219 | Courtney Termorshuizen<br>P: 816-360-1047<br>E: Courtney.Termorshuizen@bluekc.com | Trade Payables | U | | | Undetermined |
| 30. | US Dept Of The Interior<br>Office Of Natural Resources Revenue<br>300 South Richmond Rd.<br>Ridgecrest, CA 93555 | Phil Desenze<br>P: 916-978-4400<br>E: pdesenze@blm.gov | BLM Royalties | U | | | Undetermined |

| Fill in this information to identify the case: |
|---|
| Debtor name: Searles Valley Minerals Inc. |
| United States Bankruptcy Court for the: District of Delaware (State) |
| *Case number (If known):* |

# Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors 12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING – Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ *Amended Schedule* ____________

☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒ *Other document that requires a declaration* Consolidated Corporate Ownership Statement and List of Equity Security Holders

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 06/15/2026
MM/DD/YYYY

**x** */s/ Dennis Cruise*
Signature of individual signing on behalf of debtor

Dennis Cruise
Printed Name

President
Position or relationship to debtor