## EXHIBIT D

## Reimbursement Agreement

4937-5675-9989.1 78006.00001

## REIMBURSEMENT AND INDEMNITY AGREEMENT

This REIMBURSEMENT AND INDEMNITY AGREEMENT (this "Agreement") is made as of June [___], 2026, by and among Nirma Limited, an Indian company incorporated under the Companies Act, 1956 and having its registered office at Nirma House, Ashram Road, Ahmedabad, 380009, Gujarat, India ("Nirma") and Searles Valley Minerals Inc. ("SVM"), Trona Railway Company LLC ("Trona"), and Searles Domestic Water Company LLC ("SDWC" and, together with SVM and Trona, the "Debtors" or the "Indemnitor"). Nirma and Indemnitor are collectively referred to herein as the "Parties" and each individually as a "Party".

### RECITALS

A.      Tata Chemicals North America Inc. ("Tata Chemicals") and SVM intend to enter into that certain *Supply and Liquidity Agreement*, attached hereto as **Exhibit A** (the "Supply Agreement"), pursuant to which SVM and Tata Chemicals have agreed to an arrangement for the supply of soda ash under SVM's Customer Contracts (as defined in the Guarantee, defined below) and pursuant to which Tata Chemicals will provide certain liquidity advances to SVM, all as more particular described in the Supply Agreement.

B.      On June [___], 2026, each of the Debtors commenced a bankruptcy case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Bankruptcy Cases").

C.      Tata Chemicals is not willing to enter into the Supply Agreement unless Nirma executes and delivers to Tata Chemicals that certain *Deed of Guarantee*, of even date herewith (as the same may be amended, modified, supplemented, reaffirmed or restated from time to time, the "Guarantee"), pursuant to the terms of which, *inter alia*, Nirma guarantees certain obligations of SVM as more particularly described in the Guarantee.

D.      Indemnitor has determined that it will derive substantial benefit from the Supply Agreement that will be facilitated by execution of the Guarantee by Nirma.

E.      As a condition to Nirma agreeing to execute and deliver the Guarantee, Nirma requires that Indemnitor execute and deliver this Agreement to Nirma and that Indemnitor secure entry of the Interim Approval Order and the Final Approval Order (each as defined below).

### AGREEMENT

In consideration of the execution of the Guarantee by Nirma and of the mutual covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree that the foregoing Recitals are true and correct and incorporated herein, and further agree as follows:

2.      Definitions:

Capitalized terms not defined herein shall have the meaning given to them in the Guarantee.

(a)  "364(c) Liens" means (i) valid, perfected and enforceable first priority liens and security interests granted to Nirma by the Debtors and their estates under Section 364(c)(2) of the Bankruptcy Code on all assets of the Debtors that are not subject as of the Petition Date to properly perfected and unavoidable liens, and (ii) valid, perfected and enforceable junior liens and security interests granted to Nirma by the Debtors and their estates pursuant to Section 364(c)(3) of the Bankruptcy Code on all other property of the Debtors and their respective bankruptcy estates, in each case ((i) and (ii)) to be granted to Nirma by the Debtors pursuant to the Interim Approval Order and Final Approval Order and to be *pari passu* with liens securing the debtor-in-possession financing to be provided to the Debtors by the DIP Lender, except only as may be agreed otherwise by Nirma in writing;

(b)  "DIP Credit Agreement" means that certain *Debtor-in-Possession Credit Agreement* (as amended, restated, supplemented or otherwise modified from time to time), by and among SVM as the "DIP Borrower" (as defined therein), each "DIP Guarantor" (as defined therein) party thereto, and Karnavati Holdings, Inc., a Delaware corporation, as "DIP Lender" (as defined therein);

(c)  "Final Approval Order" means a final order entered by the Bankruptcy Court approving the relief granted in the Interim Approval Order on a final basis, approving the assumption of the Supply Contract under section 365 of the Bankruptcy Code, approving this Agreement, and otherwise being in form and content acceptable to Nirma in its sole discretion with respect to the Security Protections and the other rights and protections afforded Nirma under this Agreement and the Interim Order, and otherwise being in form and content reasonably acceptable to Nirma;

(d)  "Security Protections" means with respect to the Indemnitor's obligations under this Agreement, the Superpriority Claim and 364(c) Liens, and all attendant terms, conditions, rights and protections afforded Nirma that are reflected in **Exhibit B** attached hereto;

(e)  "Interim Approval Order" means an interim order entered by the Bankruptcy Court substantially in the form attached hereto as **Exhibit B** and otherwise in form and content acceptable to Nirma in its sole discretion with respect to the Security Protections and all attendant terms, conditions, rights, and protections afforded Nirma under **Exhibit B** and under this Agreement, and otherwise being in form and content reasonably acceptable to Nirma;

(f)  "Loss" means any and all (i) sums paid by Nirma pursuant to the Guarantee, (ii) all costs and expenses incurred in investigating, paying or litigating any claim for payment under the Guarantee, including but not limited to legal fees and expenses, (iii) all costs and expenses incurred in connection with enforcing the obligations of the Indemnitor under this Agreement including, but not limited to interest, legal fees and expenses, and/or (iv) all other amounts payable to Nirma according to the terms and conditions of this Agreement;

(g)  "Superpriority Claim" means an allowed superpriority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code granted to Nirma against each of the Debtors and their estates in each of the Bankruptcy Cases on account of Indemnitor's obligations under this Agreement.

3.      Effectiveness of Agreement.  This Agreement and the rights and obligations of the Parties thereunder shall become effective immediately upon the delivery of the Guarantee (as may be amended and restated from time to time) to Tata Chemicals by Nirma.  The Guarantee shall be delivered and effective upon the entry of the Interim Approval Order and its effectiveness shall continue upon the entry of the Final Approval Order in accordance with its terms.

4.      Reimbursement and Indemnification.

(a)      If, at any time or from time to time, Nirma incurs any Loss, then Indemnitor shall reimburse Nirma for one hundred percent (100%) of such Losses (any and all such amounts payable by Indemnitor pursuant to the Guarantee "Reimbursable Amounts"), in each instance on or prior to the date that is fifteen (15) days after Nirma's written request therefor is delivered to Indemnitor (the "Payment Deadline"). If Indemnitor does not reimburse Nirma for all of such Reimbursable Amounts on or prior to the Payment Deadline, then interest shall accrue on the unpaid portion of such Reimbursable Amounts from and after the Payment Deadline at a rate equal to the lesser of equal to the interest rate in effect from time to time with respect to the DIP Obligations (as defined in the DIP Credit Agreement), as set forth, and in effect from time to time, in Section 2.5(a) of the DIP Credit Agreement and the maximum rate permitted by law.

5.      Obligations Unconditional.

(a)      Subject to the terms and conditions set forth elsewhere herein, including the notice requirements set forth in paragraph 3 herein, the obligations of Indemnitor under this Agreement shall be paid and complied with strictly in accordance with the terms hereof, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting the Guarantee or affecting any of the rights of Nirma with respect thereto. To the fullest extent permitted by applicable law, the liability of Indemnitor hereunder shall not be impaired, abated, deferred, diminished, released, terminated or discharged, in whole or in part, or otherwise affected, by any event, condition, occurrence, circumstance, proceeding, action or failure to act, with or without notice to, or the knowledge or consent of, any Party, as applicable, including, without limitation:

(i)      any amendment, modification, extension, or termination of the Guarantee or the Supply Agreement;

(ii)      any extensions of time for performance, whether in whole or in part, of any obligation given prior to or after default under the Guarantee or the Supply Agreement;

(iii)      any other guarantee, indemnity or other agreement now or hereafter executed by any other Party or any other person and any payment thereunder;

(iv)      any waiver of or assertion or enforcement or failure or refusal to assert or enforce, in whole or in part, any payment of any obligation, claim, cause of action, right or remedy that Tata Chemicals may, at any time, have under the Guarantee or the Supply Agreement, or with respect to any guarantee or any collateral that may be held by Tata Chemicals at any time for or with respect to the Guarantee or the Supply Agreement;

4

(v)     the failure to give any other Party any notice whatsoever;

(vi)    any assignment, conveyance, merger or other transfer, voluntary or involuntary (whether by operation of law or otherwise) of all or any part of the interests or rights of Nirma or Tata Chemicals under the Guarantee or the Supply Agreement;

(vii)   any recovery as a result of the exercise of Tata Chemicals' rights or remedies under the Guarantee or the Supply Agreement.

6.      Grant of Security Interest. Each of the Debtors hereby grants to Nirma valid, perfected, and enforceable liens and security interests in all DIP Collateral (as defined in any *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to  the Prepetition Secured Lender, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**Interim DIP Order**")), having the priorities specified in the chart attached as Exhibit 3 to the Interim DIP Order for the prompt performance of the Indemnitor's obligations under this Agreement.

7.      Bankruptcy Matters. To secure Indemnitor's obligations to Nirma under this Agreement, each of the Debtors grants, in favor of Nirma, all Security Protections as defined in this Agreement.

8.      Waiver. Indemnitor hereby waives (a) presentment, demand, protest, notice of protest, notice of dishonor and notice of non-payment, non-performance or non-observance, (b) the benefits, if so entitled to any benefits, of any or all anti-deficiency statutes or single-action legislation, (c) the right to require any party to proceed against any collateral or other security now or hereafter held by such party or to pursue any other remedy available to such party, (d) the benefit of or right to assert any statute of limitations affecting liability hereunder or the enforcement thereof to the extent permitted by law, (e) any rights and remedies afforded by applicable law, (f) any defense that may arise by reason of (i) the incapacity, lack of authority, death or disability of, or revocation hereof by, any person or persons or (ii) the absence, impairment or loss of any right of reimbursement or subrogation or other right or remedy of such Party against any other person, or against any security resulting from the exercise or election of any remedy or remedies, and (g) all rights and remedies accorded by applicable law to indemnitors, sureties or guarantors.

9.      No Waiver. The failure of any party to insist upon strict performance of a covenant hereunder or of any obligation hereunder or to exercise any right or remedy hereunder, regardless of how long such failure shall continue, shall not be a waiver of such party's right to demand strict compliance therewith in the future unless such waiver is in writing and signed by the party giving the same.

10.     Representations and Warranties. Each Party hereby represents, warrants and covenants that as of the date hereof, the execution and delivery of this Agreement by such Party has been duly authorized and this Agreement constitutes a valid and binding obligation of such Party, enforceable in accordance with the Agreement's terms, except as such enforcement may be limited by bankruptcy, insolvency, moratorium or other laws affecting the enforcement of

creditors' rights, or by the application of rules of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

11.     Remedies Cumulative; Obligations.

(a)     All rights and remedies afforded to a Party by reason of this Agreement are separate and cumulative remedies, and shall be in addition to all other rights and remedies existing at law or in equity or otherwise. No one of such remedies, whether or not exercised by a Party, shall be deemed to exclude the exercise of any other remedy or remedies available, and the exercise or non-exercise thereof shall in no way limit or prejudice any other legal or equitable remedies which a Party may have.

(b)     All obligations of any Party hereunder are several and not joint with any other Party, and no Party shall have any right to contribution from any other Party except as set forth in this Agreement.

(c)     If any Party consists of more than one person or party, the obligations and liabilities of each such person or party hereunder shall be joint and several.

12.     Applicable Law. This Agreement, and all claims, disputes and proceedings in connection herewith, shall be construed and enforced according to the laws of the State of Delaware, without regard to principles of conflicts of laws.

13.     Successors and Assigns; Binding Effect. This Agreement shall be binding upon and shall inure to the benefit of each Party and their respective heirs, executors, personal representatives, successors and permitted assigns and may not be assigned or delegated by Indemnitor. If this Agreement is executed by more than one Person on behalf of any Party, then all of the obligations of such Party arising hereunder shall be jointly and severally binding on each of such undersigned Persons, and their respective heirs, personal representatives, successors and assigns, and the term "Party", in such case, shall mean all of such Persons and each of them individually. Without limitation of any other term, provision or waiver contained herein, each Party hereby acknowledges and agrees that it has been furnished true, complete and correct copies of the Supply Agreement and the Guarantee and has reviewed the terms and provisions thereof (including, without limitation, the obligations of Nirma thereunder).

14.     Notice. Any notices or demands required or permitted under this Agreement shall be given in writing by personal delivery, overnight express service, or mailed by first class, certified mail, return receipt requested, postage prepaid, and if by overnight express service or first class United States mail addressed as follows:

If to Indemnitor:
Skadden, Arps, Slate, Meagher & Flom LLP
320 S. Canal Street
Chicago, IL 60606
Attn: James J. Mazza, Jr., Bryan V. Uelk
Email: james.mazza@skadden.com; bryan.uelk@skadden.com

- and-

Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Palo Alto, CA 94301
Attn: Jennifer Madden
Email: jennifer.madden@skadden.com

If to Nirma:
Nirma Limited
Nirma House, Ashram Road
Ahmedabad – 38009, Gujarat, Indian
Attn: Ajay Khushu
Email: ajaykhushu@nirma.co.in

with copies to:
Troutman Pepper Locke LLP
1313 N. Market Street, Suite 1000
P.O. Box 1709
Wilmington, DE 19801
Attn: David M. Fournier
Email: david.fourneir@troutman.com

or any other address of a Party as such Party gives prior written notice to the other Parties. Such notice or demand, if by personal delivery, shall be deemed to have been given on the date delivered, if by overnight express service on the next business day following delivery to such service, and if by first class mail on the third business day following the date deposited in the United States mail. Copies of all notices or demands shall be sent for informational purposes only via electronic mail as an attachment in portable document format (.pdf).

15.    Counterparts. This Agreement may be executed in one or more counterparts and in an electronic portable document format (.pdf) and such executed counterparts, together, shall be deemed to be a fully executed Agreement.

16.    **WAIVER OF JURY TRIAL. EACH PARTY TO THIS AGREEMENT HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, WHETHER IN CONTRACT, TORT OR OTHERWISE, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO; THIS WAIVER BEING A MATERIAL INDUCEMENT FOR THE PARTIES TO ENTER INTO THIS AGREEMENT.**

17.    Jurisdiction. Each Party hereby irrevocably submits to the non-exclusive jurisdiction of the Bankruptcy Court or, if the Bankruptcy Court is found not to have jurisdiction,

7

then to the non-exclusive jurisdiction of any state or federal court with competent jurisdiction sitting in the State of Delaware, County of New Castle in any action or proceeding arising out of or relating to this Agreement or any of the transactions contemplated hereby and hereby irrevocably agrees that all claims, whether in contract, tort, or otherwise, in respect of such action or proceeding may be heard and determined in such Delaware state court or, to the extent permitted by law, in such federal court. The Parties hereby irrevocably waive, to the fullest extent they may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding.  For the avoidance of doubt, the terms and conditions of the Guarantee, including the applicable law and jurisdiction provisions thereof, are independent of this Agreement.

18.    <u>Amendments</u>. This Agreement may not be amended, modified, supplemented, waived, extended, discharged or terminated orally or by any act or failure to act on the part of any party hereto, but only by an agreement in writing signed by all of the parties hereto.

19.    <u>Severability</u>. If any provision, term, covenant or condition of this Agreement is held to be invalid, illegal or unenforceable in any respect, such provision, term, covenant or condition shall be fully severable and this Agreement shall be construed and enforced as if such invalid, illegal or unenforceable provision, term, covenant or condition had never been a part of this Agreement, and this Agreement shall remain in full force and effect without such provision, term, covenant or condition.

20.    <u>Entirety</u>. This Agreement, and the rights and protections afforded to Nirma in the Interim Approval Order and Final Approval Order, embody the final and complete agreement of the parties hereto with respect to the matters set forth herein and supersedes all prior agreements and representations, written, electronic or verbal, relating to the subject matter hereof. This Agreement is intended by the parties hereto as a final and complete expression of the terms hereof, and no course of dealing or performance, no trade practices, and no evidence of prior, contemporaneous or subsequent oral agreements or other extrinsic evidence of any nature shall be used to contradict, vary, supplement or modify this Agreement, the Interim Approval Order, or the Final Approval Order.

21.    <u>Limitation on Benefits of this Agreement</u>. It is the explicit intention of the parties hereto that no person or entity other than the parties hereto is or shall be a third-party beneficiary hereof or entitled to bring any action to enforce any provision of this Agreement against the parties hereto, and that the covenants and agreements set forth in this Agreement shall be solely for the benefit of, and shall be enforceable only by, the parties hereto or their respective successors, legal representatives and assigns as permitted hereunder.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**NIRMA LIMITED**

By:_____

**INDEMNITOR:**

**SEARLES VALLEY MINERALS INC.,**
**TRONA RAILWAY COMPANY LLC,**
**and**
**SEARLES DOMESTIC WATER**
**COMPANY LLC**

By:_____

REIMBURSEMENT AND INDEMNITY AGREEMENT SIGNATURE PAGE