**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | |

**DECLARATION OF ADRIAN FRANKUM**
**IN SUPPORT OF MOTION OF DEBTORS**
**FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE DEBTORS TO OBTAIN JUNIOR**
**POSTPETITION FINANCING; (II) AUTHORIZING DEBTORS TO USE**
**CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO**
**PREPETITION SECURED LENDER; (IV) MODIFYING THE AUTOMATIC STAY;**
**(V) SCHEDULING FINAL HEARING AND (VI) GRANTING RELATED RELIEF**

I, Adrian Frankum, hereby declare under penalty of perjury:

1.      I am a Senior Managing Director at Ankura Consulting Group, LLC ("**Ankura**"), an interim management and financial services advisory firm, with numerous offices throughout the world Ankura is the proposed restructuring advisor for the Debtors in the above-captioned Chapter 11 Cases.

2.      I submit this declaration (this "**Declaration**") in support of the *Motion of Debtors For Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Junior Postpetition Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Adequate Protection to Prepetition Secured Lender; (IV) Modifying the Automatic Stay; (V) Scheduling*

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A).  The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

*Final Hearing and (VI) Granting Related Relief* (the "**Motion**").[2]  I am familiar with the Parent Junior DIP Facility, the consensual use of Cash Collateral, the Receivables Facility, and the material terms thereof.

3.      Except as otherwise indicated, all statements set forth in this Declaration are based upon the following: (a) my personal knowledge, belief, or opinion; (b) information learned from my review of the Debtors' books and records and materials filed in these Chapter 11 Cases; (c) information supplied to me or verified by the Debtors' employees or advisors and/or employees of Ankura working directly under my supervision and direction; and (d) my professional experience, knowledge, skill, education, and/or training concerning financial restructurings, sale and capital raise transactions.  If called as a witness, I could and would testify competently to the statements set forth in this Declaration on that basis.  I am not being specifically compensated for this testimony other than through payments received by Ankura as a professional proposed to be retained by the Debtors.  I am over the age of eighteen and am authorized to submit this Declaration on behalf of the Debtors.

## Background and Qualifications

4.      Since 2014, Ankura has been a global provider of turnaround advisory services to companies in crisis or those in need of performance improvement in specific financial and operational areas.  Ankura's debtor advisory services include a wide range of activities targeted at stabilizing and improving companies' financial positions.  Ankura's expertise relevant to the Chapter 11 Cases includes: (a) turnaround and restructuring consulting; (b) interim management, including serving in executive and management roles; (c) managing communications with lenders,

---

[2]   Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the Motion, filed contemporaneously herewith.

board members, employees, investors, and creditor constituencies, (d) cash management and liquidity enhancement, (e) financial modeling and forecasting, (f) operational improvement, (g) strategic business plan development, (h) customer and vendor management; and (i) bankruptcy services, including contingency planning, preparing schedules and statements, preference analysis, claims resolution, and executory contract analysis.

5.      In addition, Ankura and its professionals have assisted and advised numerous financially troubled companies from a variety of industries in complex financial restructurings and liquidations, both out of court and in chapter 11 cases.  Ankura professionals have been retained in numerous large, complex chapter cases, including, among others: *In re Hardinge Inc.*, No. 24-11605 (JKS) (Bankr. D. Del. Aug. 23, 2024); *In re LaVie Care Centers, LLC*, No. 24-55507 (PMB) (Bankr. N.D. Ga. Jun. 28, 2024); *In re Anagram Holdings, LLC*, No. 23-90901 (MI) (Bankr. S.D. Tex. Dec. 26, 2023); *Pipeline Health System, LLC.*, No. 22-90291 (MI) (Bankr. S.D. Tex. Nov. 30, 2022); *In re Black News Channel, LLC*, No. 22-40087 (KKS) (Bankr. N.D. Fla. May 5, 2022); *In re GBG USA Inc.*, No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sep. 22, 2021); *In re BJ Serv's., LLC*, No. 20-33627 (MI) (Bankr. S.D. Tex. Sep. 11, 2020); *In re Brooks Brothers Group, Inc.*, No. 20-11785 (CSS) (Bankr. D. Del. Aug. 7, 2020); *In re Payless Holdings LLC*, No. 19-40883 (KAS) (Bankr. E.D. Mo. Mar. 19, 2019); *In re 4 West Holdings, Inc.*, No. 18-30777 (HDH) (Bankr. N.D. Tex. Apr. 18, 2018); *In re Westinghouse Electric Co.*, No. 17-10751 (MEW) (Bankr. S.D.N.Y. Nov. 9, 2017); *In re Foundation Healthcare, Inc.*, No. 17-42571 (ELM) (Bankr. N.D. Tex. Jul. 20, 2017); *In re ModelReorg Acquisition, LLC*, Case No. 17-11794 (CSS) (Bankr. D. Del. Oct. 4, 2017).

6.      I am a Senior Managing Director of Ankura, with whom I have worked since 2017. Prior to joining Ankura, I worked for FTI Consulting, Inc. from 2004 until 2017.  I have more than

26 years of experience as a financial professional and have held a variety of roles related to restructurings, liquidations, negotiated sales, and interim management positions in and across various jurisdictions.  During my time as a restructuring professional, I have advised and assisted distressed companies across various complex financial, operational, and strategic situations, including, as set forth below, serving in a variety of interim management positions.  My areas of expertise include operations management, financial statement analysis, financial projection development, liquidity and cash management, M&A support, stakeholder negotiations, balance sheet recapitalization and restructuring, postpetition financing and sourcing, and bankruptcy preparation and administration.  My interim management experience includes serving as: the interim CEO of a distressed private equity backed direct-to-consumer business; the Chief Restructuring Officer at Hardinge, Inc.; the Chief Restructuring Officer at Anagram Holdings, LLC, the Restructuring Officer at Brooks Brothers Group, Inc.; the Restructuring Officer at Payless ShoeSource; the Senior Vice President of Finance of Vertis Communications; the chief restructuring officer for a $600 million government contractor; and a member of the interim management team of the RadioShack Corporation.  I have also served as a financial advisor in connection with restructuring activities and/or bankruptcy proceedings involving Sports Authority, the Puerto Rico Electric Power Authority, Revstone Industries, Jackson Hewitt Tax Service, Inc., Visteon Corporation, and Delphi Corporation, among others.  I hold an MBA from NYU Stern School of Business and a BBA from the University of Georgia.  I am also a certified public accountant (inactive).

### Ankura's Retention by the Debtors

7.      Ankura has been engaged as restructuring advisor for the Debtors, and members of my team and I have been working closely with the Debtors, since April 2026.  Since being engaged,

Ankura has rendered financial advisory services to the Debtors which have included, among other things, advising on liquidity management and cash flow forecasting, developing a debtor in possession financing budget, updating the Debtors' business plan, and providing assistance in connection with various "first day" pleadings. Ankura has worked closely with the Debtors' management and other professionals retained by the Debtors with respect to the Debtors' restructuring efforts and has become acquainted with the Debtors' capital structure, liquidity needs, and business operations.

**<u>The Debtors' Need for the Access to Postpetition Liquidity Arrangements</u>**

8.      Based on my familiarity with the Debtors' financial condition, I understand that the Debtors require immediate access to additional liquidity to ensure that they are able to continue to operate during the Chapter 11 Cases while they undertake a sale process. In consultation with the Debtors' management team, Ankura has produced a detailed 13-week cash flow forecast that underlies the Budget for the Parent Junior DIP Facility. The Debtors' 13-week cash flow forecast projects that the Debtors will disburse approximately $90 million of cash to fund the operations of the business and administrative costs of the Chapter 11 cases between the Petition Date and the 13-week period ended September 11, 2026. The disbursements reflected in the Budget are reasonable and consistent with what I believe is necessary to prevent irreparable harm to the Debtors' estates while maintaining and maximizing enterprise value. The 13-week cash-flow forecast and Budget reflect a comprehensive and granular review of the Debtors' liquidity situation and are predicated on assumptions and methodologies that I consider reasonable and reliable, based on my two decades of experience as a financial advisor and my familiarity with the Debtors' industry.

9.      The cash flow projections assume that that the Debtors will continue to have access to Cash Collateral of the Prepetition Secured Lender and that the Prepetition Secured Lender will continue to provide funding under the Receivables Facility. I understand that the Prepetition Secured Lender has consented to use of Cash Collateral and continued access to the Receivables Facility in exchange for superpriority administrative claims, replacement liens, and new security interests in unencumbered collateral.

10.     On the basis of these cash-flow projections, I believe the Debtors will require approximately $40 million of incremental liquidity during these Chapter 11 Cases from the Petition Date until the estimated date of the closing of the sale transaction (approximately 90 days later). The Debtors have secured a $20 million advance by a Supplier.[3]  Accordingly, the Debtors require incremental postpetition financing in the amount of $20 million, including an immediate and critical need of approximately $7.0 million during the period from the Petition Date through July 3, 2026.

11.     In summary, the Debtors' financial support to fund these Chapter 11 Cases is comprised of four critical components: (a) the Supplier Liquidity Advance; (b) use of Cash Collateral; (c) continued access to the Receivables Facility on a postpetition basis; and (d) the Parent Junior DIP Facility.   The Receivables Facility is an uncommitted secured line of credit pursuant to which the Debtors are able to monetize the value of future receivables on their soda ash and borate sales.  Continued access to the Receivables Facility is critical to ensuring the Debtors' liquidity remains stable.  Indeed, without access to the Receivables Facility, the Debtors would require approximately $28 million in incremental financing during the Chapter 11 Cases.

---

[3]     The Supplier Liquidity Advance is the subject of my *Declaration of Adrian Frankum In Support of Motion of Debtors for Entry of Interim and Final Orders Authorizing the Debtors to Assume Soda Ash Supply and Liquidity Agreement and Obtain Financing Thereunder* filed substantially contemporaneously herewith.

12.     Access to the Cash Collateral and continued access to the Receivables Facility, and the incremental liquidity under the Junior Parent DIP Facility (in addition to the Supplier Liquidity Advance) (collectively, the "**Postpetition Liquidity Arrangements**"), will provide the Debtors with immediate access to incremental essential capital necessary to effectively and efficiently administer these Chapter 11 Cases, fund ongoing operations, and effectuate a postpetition marketing process for the sale of their assets.  The disbursements reflected in the Budget are critical and include, among other items, payroll, materials and freight, machinery maintenance, taxes, utilities, insurance, and other operating disbursements, all of which are crucial to maintaining the Debtors' operations in their production of borates, sulfates and salt, the sale of soda ash, and supply of water to customers in the Searles Lake, California area.  The Debtors' inability to make these payments as they come due, including payments to key vendors and employees, could result in the loss of the Debtors' workforce, negatively impact customers, and damage relationships with key vendors, materially adversely impacting the ability of the Debtors to market their assets.

13.     Absent the liquidity provided by the Postpetition Liquidity Arrangements, the 13-week cash flow reflects that the Company will exhaust its remaining cash resources as early as this week.  In other words, without access to the Postpetition Liquidity Arrangements, the Debtors would be unable to fund operations or the cost of administering these Chapter 11 Cases, and would instead be forced to immediately cease operations and liquidate. Such an outcome would be value destructive for the Debtors, their estate, creditors, and all parties in interest.

## The Postpetition Liquidity Arrangements Were Negotiated in Good Faith and at Arm's Length

14.     Ankura assisted the Debtors, together with their other advisors, with the evaluation of the terms and provisions of the Parent Junior DIP Facility, the consensual use of Cash Collateral and the continued access to the Receivables Facility.  All negotiations were, in my view, conducted

in good faith and on an arm's-length basis. The Company's management team and legal and financial advisors, including Ankura, were actively involved throughout the process and the negotiations culminated in the agreed upon terms set forth in the DIP Loan Documents and the Interim Order. Based on my discussions with the Debtors' counsel, I further understand that the Independent Committee of the board of Searles Valley Minerals Inc. conducted an independent review of the proposed Parent Junior DIP Facility and the terms of the use of Cash Collateral and access to the Receivables Facility, and concluded, in its business judgment, that the Parent Junior DIP Facility, use of Cash Collateral, and access to the Receivables Facility on the terms set forth in the DIP Loan Documents and Interim Order are in the best interests of the Debtors' estates and represent the most favorable financing arrangement available to the Debtors under the circumstances.

## Conclusion

15.    In light of the foregoing and based on my experience as a restructuring professional, involvement in similar transactions, and evaluation of the DIP Loan Documents and Interim Order, I believe that the Parent Junior DIP Facility, and the terms of the use of Cash Collateral and continued access to the Receivables Facility are reasonable and appropriate under the circumstances and offer the best available option for the Debtors under the facts and circumstances of these Chapter 11 Cases and should be approved.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

I, Adrian Frankum, pursuant to section 1746 of title 28 of the United States code hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 15, 2026

/s/ Adrian Frankum
Adrian Frankum
Senior Managing Director
Ankura Consulting Group, LLC

4919-2555-3333.1 78006.00001