**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | |

**DECLARATION OF CHRISTIAN TEMPKE**
**IN SUPPORT OF MOTION OF DEBTORS FOR**
**ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING**
**THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING; (B) CONTINUE**
**ACCESS FINANCING UNDER ITS RECEIVABLES FACILITY; AND (C) UTILIZE**
**CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO THE**
**PREPETITION SECURED LENDER; (III) MODIFYING THE AUTOMATIC STAY;**
**(IV) SCHEDULING FINAL HEARING AND (V) GRANTING RELATED RELIEF**

I, Christian Tempke, hereby declare under penalty of perjury:

1. I am a Managing Director at Lazard Frères & Co. LLC, which has its principal office at 30 Rockefeller Plaza, New York, New York 10012. Lazard Frères & Co. LLC, along with Lazard & Co., Limited (collectively herein, "**Lazard**") is the proposed investment banker for the Debtors in the above-captioned Chapter 11 Cases.

2. I submit this declaration (this "**Declaration**") in support of the *Motion of Debtors For Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing; (B) Continue Access Financing Under Its Receivables Facility; and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Lender; (III) Modifying*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A).  The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

*the Automatic Stay; (IV) Scheduling Final Hearing and (V) Granting Related Relief* (the "**Motion**").[2] I am familiar with the Junior DIP Facility, the consensual use of Cash Collateral, and the material terms thereof.

3.      Except as otherwise indicated, all statements set forth in this Declaration are based upon the following: (a) my personal knowledge, belief, or opinion; (b) information learned from my review of the Debtors' books and records and materials filed in these Chapter 11 Cases; (c) information supplied to me or verified by the Debtors' employees or advisors and/or employees of Lazard working directly under my supervision and direction; and (d) my professional experience, knowledge, skill, education, and/or training concerning financial restructurings, sale and capital raise transactions.  If called as a witness, I could and would testify competently to the statements set forth in this Declaration on that basis.  I am not being specifically compensated for this testimony other than through payments received by Lazard as a professional proposed to be retained by the Debtors.[3]  I am over the age of eighteen years and am authorized to submit this Declaration on behalf of the Debtors.

### Background and Qualifications

4.      I am a Managing Director in the Restructuring & Liability Management Group at Lazard.  Lazard Frères & Co. LLC is the primary U.S. operating subsidiary of a preeminent international financial advisory and asset management firm founded in 1848.  Lazard is a global investment bank providing financial advisory services, including with respect to mergers and acquisitions, capital raises, and restructurings.  Together with its predecessors and affiliates,

---

[2]   Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the Motion, filed contemporaneously herewith.

[3]   Pursuant to Lazard's engagement letter with the Debtors, subject to Court approval thereof, Lazard obtained certain fees in connection with the transactions described herein.

Lazard has been advising clients around the world for more than 175 years. Lazard Frères & Co. LLC is registered as a broker-dealer with the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority. Since 1990, Lazard professionals have been involved in over 500 restructurings, representing over $1 trillion in debtor assets.

5.    Lazard and its senior professionals have extensive experience in the reorganization, restructuring, capital raise and sale of distressed companies, in both out-of-court and in-court contexts. In addition, Lazard's investment banking professionals have extensive experience advising debtors in chapter 11 cases and have served as investment bankers to numerous debtors, chapter 11 trustees, creditors' committees, and prospective buyers in chapter 11 proceedings. Lazard's business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including, among others: *In re Global Clean Energy Holdings, Inc.*, No. 25-90013 (ARP) (Bankr. S.D. Tex. May 22, 2025); *In re Wellpath Holdings, Inc.*, No. 24-90533 (ARP) (Bankr. S.D. Tex. Dec. 13, 2024); *In re Steward Health Care System, LLC*, No. 24-90213 (CML) (Bankr. S.D. Tex. June 12, 2024); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Jan. 22, 2024); *In re Inversiones Latin Am. Power Ltda.*, No. 23-11891 (JPM) (Bankr. S.D.N.Y. Jan. 3, 2024); *In re Air Methods Corp.*, No. 23-90886 (MI) (Bankr. S.D. Tex. Dec. 6, 2023); *In re SVB Fin. Grp.*, No. 23-10367 (MG) (Bankr. S.D.N.Y. Aug. 16, 2023); *In re Nat'l Cinemedia, LLC*, No. 23-90291 (DRJ) (Bankr. S.D. Tex. June 6, 2023); *In re SiO2 Med. Prods., Inc.*, No. 23- 10366 (JTD) (Bankr. D. Del. May 25, 2023); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 9, 2023); *In re Endo Int'l plc*, No. 22-22549 (JLG) (Bankr. S.D.N.Y. Jan. 13, 2023); *In re Ursa Operating Company LLC*, No. 20-12067 (BLS) (Bankr. D. Del. Sep. 02, 2020); *In re Forever 21, Inc.*, No. 19-12122 (MFW) (Bankr. D. Del. Sep. 29, 2019), *In re RCS Capital Corporation*, No. 16-10223 (MFW) (Bankr. D. Del.

Jan. 31, 2016), *In re RS Legacy Corporation*, No. 15-10197 (BLS) (Bankr. D. Del. Feb. 05, 2015); *In re Quiznos Canada Holding LLC*, No. 14-10556 (LSS) (Bankr. D. Del. Mar. 14, 2014).

6.      I have been employed at Lazard Frères & Co. LLC since 2007 and specialize in advising public and private companies and creditor groups in complex financial restructurings, recapitalizations, capital raises, and sale transactions.  Specifically, I have represented companies and creditor groups in connection with raising capital in the bankruptcy context, including assisting chapter 11 debtors in obtaining and negotiating the terms of debtor-in-possession financing, exit financing loans, and equity rights offerings.  During the course of my career, I have been involved in a variety of restructuring and recapitalization engagements, including Global Clean Energy, Wellpath Holdings, Enviva, Rockall Energy, JCPenney, Gavilan Resources, Forever 21, Toys "R" Us, Gymboree, Jones Energy, Westinghouse, LINN Energy, Stone Energy, RCS Capital, Millennium Health, RadioShack, Chassix, Momentive, Quiznos, OGX, Eastman Kodak Company, and several others.  Additionally, I have submitted declarations and provided testimony related to those matters in a number of Chapter 11 Cases.  I have a B.A. in economics from Northwestern University.  I hold Series 24 and Series 79 Investment Banking Representative licenses.

### Lazard's Retention by the Debtors

7.      On February 20, 2024, Debtor Searles Valley Minerals Inc. ("**SVM**") and SVM's immediate parent, non-Debtor Karnavati Holdings, Inc. ("**KHI**"), engaged Lazard & Co, Limited as their investment banker to assist in the evaluation and marketing of the Debtors' assets for a potential sale transaction.  On May 12, 2026, SVM entered into a further letter agreement with Lazard, which superseded the prior engagement and engaged Lazard as SVM's investment banker in the evaluation of strategic and capital structure alternatives.  Based on Lazard's work with SVM throughout 2024 and leading up to the Petition Date, I and other members of the Lazard team are

familiar with the Debtors' capital structure, liquidity needs, and business operations.  I have been personally involved in the Debtors' efforts to obtain and negotiate postpetition financing.

**The Prepetition DIP Marketing Process**

8.      In response to their ongoing liquidity challenges, the Debtors, with the assistance of Lazard and their other advisors, evaluated potential in-court and out-of-court solutions to address their liquidity constraints and right-size their capital structure.

9.      In August 2025, the Debtors, with the assistance of Lazard, commenced a comprehensive strategic marketing process to gauge market interest in the Debtors' business (the "**SVM Sale Process**").  In connection with that process, Lazard contacted over 140 parties, with 50 parties executing NDAs and obtaining confidential information about the Debtors' business. As the SVM Sale Process further developed, it became clear in April 2026 that an out-of-court transaction was not viable due in part to the Debtors' legacy liabilities and the lack of appetite from potential buyers to acquire the Debtors' business outside of a court-supervised process.  At that time, Lazard pivoted to the preparation of an in-court process and shifted discussions with several buyers to potentially acquire the assets as part of an in-court sale process.

10.      As the Debtors required additional liquidity to fund projected operating losses and the cost of an in-court process, Lazard initiated an outreach to potential postpetition financing providers.  To date, Lazard has contacted over 35 parties regarding potential postpetition financing for the Debtors, and over 20 parties have executed NDAs and obtained access to confidential information. Lazard did not receive any third-party DIP proposals prior to the petition date, but was able to negotiate and secure the Parent Junior DIP Facility as further discussed herein.

11.      In addition to efforts undertaken by the Debtors and their advisors to find traditional postpetition financing (e.g., as contemplated by the Parent Junior DIP Facility), Nirma, the Supplier, and the Debtors and their advisors engaged in active discussions regarding the provision

of postpetition financing through an advanced soda ash supply arrangement which produced the proposal that ultimately culminated in the Supply Agreement, Corporate Guarantee, and Reimbursement Agreement. Concurrently, Lazard conducted separate discussions with another strategic party concerning a similar structure which also resulted in a proposal. Following negotiation of proposals, the proposed arrangement involving the Supplier and Nirma presented a viable form of postpetition financing, whereas the alternative proposal did not because, among other things, it required a guarantee from Nirma of a nature that Nirma was unwilling to provide. The Debtors' independent director, John S. Dubel – whose approval is required pursuant to the resolutions appointing him as an independent director, dated June 1, 2026 — reviewed the terms of the Supply Agreement and Reimbursement Agreement and determined that the liquidity provided by the Supply Agreement would provide the Debtors with the liquidity they needed beyond what is provided by the DIP Facility to fund the Chapter 11 Cases.

12. Based on my involvement in this process, I understand that this path represents comprehensive efforts to secure postpetition financing for the Debtors. Lazard intends to continue to market to potential financing sources through the final hearing on the Motion.

### The Parent Junior DIP Facility

13. While Lazard was conducting this broader financing marketing process, SVM, in consultation with its advisors, engaged in negotiations with its sponsor, Nirma Limited ("**Nirma**"), about the terms of a potential financing. As a result of those conversations, KHI (the "**DIP Lender**") has agreed to provide for a junior, non-priming facility on favorable economic terms (the "**Parent Junior DIP Facility**") that will be used, among other things, to fund the Debtors' ongoing operations and general corporate needs, its sale process, and to pay the administrative costs related to these Chapter 11 Cases.

14.     Other than the DIP Lender, to date, no third party has been willing to provide the Debtors with financing, particularly on a junior or unsecured basis, absent obtaining a parent guarantee. Ultimately, the Debtors and Nirma agreed to a reasonable set of economic terms that provide the Debtors with necessary access to liquidity.

15.     In my experience, the economic terms of the Parent Junior DIP Facility are favorable to the Debtors relative to comparable postpetition financing arrangements. The Parent Junior DIP Facility is a $20 million committed term loan facility that carries a 1% commitment fee and a 11% interest payable in kind—without priming the Prepetition Secured Lender who, in turn, has consented to the Debtors' use of Cash Collateral and continued access to the Receivables Facility (as described more fully below).

16.     I believe, based on my knowledge of the DIP financing market and my familiarity with the Debtors' capital structure, liquidity situation, and other circumstances, that the economic terms of the proposed Parent Junior DIP Facility are favorable under the circumstances.

### Use of Cash Collateral and Access to the Receivables Facility

17.     In consultation with their advisors, the Debtors also commenced discussions with HSBC Bank USA, National Association (the "**Prepetition Secured Lender**") regarding the consensual use of Cash Collateral and continued access to the Receivables Facility.

18.     Under the Receivables Facility, the Debtors are able to monetize receivables attributable to their soda ash and borate sales. The Receivables Facility provides meaningful working capital and liquidity to the Debtors, and the Debtors are planning to continue to utilize the Receivables Facility during the Chapter 11 Cases. In exchange for continued access to the Receivables Facility, the Prepetition Secured Lender demanded, and the Debtors agreed, to provide superpriority administrative claims and to grant additional security on all DIP Collateral.

19.     The Prepetition Lender also agreed to consensual use of its cash collateral in exchange for adequate protection, including superpriority administrative claims, replacement liens on all DIP Collateral (subject to the priorities in the Interim DIP Order), and payment of fees and expenses.

20.     I believe that the terms for continued access to the Receivables Facility and use of Cash Collateral are reasonable under the circumstances and consistent with the adequate-protection terms customarily negotiated among lenders and borrowers in similar circumstances. Without the adequate protection contemplated, the Prepetition Secured Lender likely would not have consented to the use of Cash Collateral.

21.      I understand that Nirma has provided a guarantee on both the Demand Line Facility and the Receivables Facility, and those guarantees were critical to the Prepetition Secured Lender's willingness to provide continued access to the Receivables Facility and Cash Collateral.

**Best Available Financing Under The Circumstances**

22.     Based on my experience with postpetition financing transactions, my familiarity with the Debtors and their business, and my involvement in the marketing and evaluation of the financing alternatives available to the Debtors, I believe that the Parent Junior DIP Facility, use of Cash Collateral, and continued access to the Receivables Facility (in addition to the Supplier Liquidity Advance) represent the best postpetition financing option available to the Debtors, and the terms and conditions thereof are fair and reasonable under the facts and circumstances of these Chapter 11 Cases.

23.     As of the date hereof, no party contacted through Lazard's marketing process has expressed a willingness to provide postpetition financing to the Debtors, let alone on terms more favorable than those set forth in the Parent Junior DIP Facility.

24.     Based on my discussions with the Debtors and their other advisors, I believe that the Parent Junior DIP Facility, use of Cash Collateral, access to the Receivables Facility will provide the Debtors with crucial liquidity at the outset of these Chapter 11 Cases and fund ongoing operations, meet critical obligations, and preserve going-concern value as the Debtors pursue a value-maximizing sale process of their assets.

25.     I believe that the terms of the Parent Junior DIP Facility, use of Cash Collateral, and access to the Receivables Facility are the result of arm's-length negotiations between the Debtors, on the one hand, and the DIP Lender and the Prepetition Secured Lender, on the other hand, and the terms, in the aggregate, represent the best terms currently available to the Debtors.

## Conclusion

26.     In light of the foregoing and based on my experience as a restructuring professional and my involvement in the marketing and evaluation of the Parent Junior DIP Facility, use of Cash Collateral, and access to the Receivables Facility, I believe that the postpetition financing arrangement is reasonable and appropriate under the circumstances and offers the best available financing option for the Debtors under the facts and circumstances of these Chapter 11 Cases. I believe that the DIP Liens being junior only to the Prepetition Liens, Carve-Out, and Adequate Protection Liens, is in the best interest of the Debtors' estates and is essential to fund the Debtors' operations and the administration of the Chapter 11 Cases.

I, Christian Tempke, pursuant to section 1746 of title 28 of the United States code hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated: June 15, 2026

/s/ Christian Tempke
Christian Tempke
Managing Director
Lazard Frères & Co. LLC