**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | |

**OMNIBUS MOTION OF DEBTORS FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE DEBTORS TO (A) REJECT CERTAIN UNEXPIRED
RAILCAR LEASES *NUNC PRO TUNC* TO THE PETITION DATE AND
(B) ABANDON CERTAIN PROPERTY AND (II) GRANTING RELATED RELIEF**

Searles Valley Minerals Inc. ("**SVM**") and certain of its subsidiaries, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**"), hereby move (this "**Motion**") the United States Bankruptcy Court for the District of Delaware (this "**Court**") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), granting the relief described below.  In support of this Motion, the Debtors rely upon and incorporate by reference the contemporaneously filed *Declaration of Adrian Frankum in Support of Chapter 11 Petitions and First Day Papers* (the "**First Day Declaration**"),[2] and further represent as follows:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A).  The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

4902-4868-4213.1 78006.00001

## RELIEF REQUESTED

1.      The Debtors respectfully request entry of the Proposed Order (i) authorizing, but not directing, the Debtors to (a) reject certain unexpired railcar leases, including any amendments, modifications, guaranties, or other agreements related thereto (collectively, the "**Railcar Leases**," and the lessors thereunder, the "**Lessors**"), a list of which is attached as **Schedule 1** to the Proposed Order, effective as of the Petition Date (as defined below) and (b) abandon certain property; and (ii) granting related relief.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157(a)– (b)(1) and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The legal predicates for the relief requested herein are sections 105, 365, and 554 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**").

4.      Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final order with respect to this Motion if it is determined that this Court would lack Article III power to enter such final order absent the consent of the parties.

## BACKGROUND

**I.      The Chapter 11 Cases**

5.      On the date hereof (the "**Petition Date**"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Debtors have requested that the Chapter 11 Cases be jointly administered under Local Bankruptcy Rule 1015-1.

6.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7.      To date, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed a creditors' committee in the Chapter 11 Cases, nor has any trustee or examiner been appointed therein.

8.      SVM (together with its Debtor and non-Debtor subsidiaries, the "**Company**") operates a vertically integrated mining and processing complex at Searles Lake in Trona, California, where it produces critical industrial minerals, including borates, sodium sulfate, and salt, sourced from one of the largest known deposits of water-soluble borates in North America.  The Company is among the largest and lowest cost producers of borates, serving a diversified global customer base across industrial, agricultural, and specialty chemical end markets.  The Company historically mined and processed Sodium Carbonate (soda ash) until February 2026, and continues to source and supply soda ash to its customers in North America.   In addition, the Debtors source and provide potable water for approximately 760 residential and commercial customers in certain areas on the west shoreline of Searles Lake, California, including the town of Trona, California.  The Company's business operations, corporate and capital structures, and restructuring efforts are described in greater detail in the First Day Declaration.

**II.      The Debtors' Railcar Leases**

9.       Prior to the filing of these Chapter 11 Cases, Debtors SVM and Trona Railway Company LLC ("**TRC**") entered into various railcar leases and certain related guarantees to facilitate the transport of the products processed at the Debtors' Searles Lake facilities.  Generally, the Railcar Leases are structured as "master leases" under which certain general terms are established, including various maintenance obligations of the Debtors with respect to the railcars leased thereunder.  The Lessors and SVM or TRC then typically enter into separate leases in the form of schedules or riders, which incorporate the terms of the master leases, specify a certain number of railcars leased for a specific term, and provide for additional obligations of the parties with respect to such railcars (*e.g.*, additional maintenance or marking and remarking obligations on the part of SVM or TRC as the respective lessee).  For the majority of the Railcar Leases on **Schedule 1**, the Debtors are seeking to reject both the underlying master lease and any separate schedule or rider lease.[3]

10.       Railcars under the Railcar Leases are permitted to carry coal, borate products, soda ash, or a combination of borate products and soda ash.  The railcars run on the short-line railroad operated by TRC, which then connects to longer rail lines used by the Debtors to deliver the finished mineral products to their end-user customers.  Historically, the Debtors utilized the railcars to transport the soda ash produced at the Argus and Trona facilities, in addition to the borate products produced at the Westend facility.

---

[3]    With the assistance of their advisors, the Debtors have thoroughly reviewed their records to retrieve copies of each lease reflected on **Schedule 1**.  However, given the length of the Debtors' operations, many of the Railcar Leases date back over 30 years and have been assigned and transferred to multiple lessors.  Accordingly, as of the filing of this Motion, certain Railcar Leases and other documents have not been located.  With respect to such Railcar Leases, the Debtors have identified who they believe to be the current Lessor and described the applicable Railcar Lease on **Schedule 1**.

11.     However, the Debtors' soda ash operations were mothballed in the first quarter of 2026, and the majority of railcars specifically permitted to transport soda ash are no longer utilized in the Debtors' operations.  In addition, the Debtors operate a dual-burning utility plant that can fire both coal and cleaner natural gas.  In recent years, the Debtors have aggressively pursued green energy and sustainability initiatives to reduce their carbon footprint and, thus, phased out coal-firing at their power plant.  Accordingly, the railcars specifically permitted to transport coal are also no longer utilized in the Debtors operations.  Finally, although the Debtors continue to produce borate products, the Debtors have determined, after careful review with the assistance of their advisors, that certain of the railcars leased to transport borates are not being utilized efficiently in their operations.

12.     Accordingly, the Railcar Leases identified on **Schedule 1** provide no benefit to the Debtors' estates and these Chapter 11 Cases and the Debtors have determined, in their business judgment, that rejection of such Railcar Leases is necessary and desirable to benefit their estates and all of their stakeholders.[4]  By rejecting the Railcar Leases as of the Petition Date, the Debtors will save approximately $425,000 in monthly lease payments alone, in addition to costly ongoing obligations (*e.g.*, maintenance), for railcars that provide no tangible benefit to the Debtors' estates.  The resulting savings from the rejection of the Railcar Leases will increase the Debtors' future cash flows and assist the Debtors in the administration of these Chapter 11 Cases (including conducting their proposed sale process), thereby increasing the Debtors' ability to successfully reorganize.

---

[4]     Certain Railcar Leases the Debtors are seeking to reject have expired by their terms and the Debtors are continuing to incur month-to-month obligations for the railcars thereunder.  In addition, prior to the Petition Date, certain of the Lessors issued termination notices to the Debtors.  Out of an abundance of caution, the Debtors are seeking to reject, effective as of the Petition Date, all Railcar Leases listed on **Schedule 1**.

13.     The Debtors have analyzed each of the Railcar Leases to determine the appropriate date of rejection and the Debtors have concluded that, in order to minimize unnecessary potential costs to their estates, the Railcar Leases should be rejected as of the Petition Date.

14.     In addition, during the ordinary course of their business and utilization of the railcars, the Debtors may have customized the railcars with, among other items, commodity-specific loading and unloading hardware, monitoring devices, safety liners, and additional equipment to enhance their utility.   Prior to filing this Motion, the Debtors have undertaken efforts to remove as many of such items and their other property from the railcars as practical under the circumstances.   Despite such efforts, the Debtors have determined that, in the exercise of their business judgment, the complete removal of these items (the "**Remaining Property**") from the railcars or the required storage costs of such Remaining Property upon rejection of the Railcar Leases will be impractical and cost prohibitive.   The Debtors estimate that the Remaining Property is of *de minimis* net value.   Therefore, the Debtors believe that they will not realize any economic benefit by retaining the Remaining Property.   Accordingly, the Debtors believe that the rejection of the Railcar Leases and abandonment of any Remaining Property is in the best interest of their estates, their creditors, and other parties in interest.

### BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

I.     **Rejection of the Railcar Leases Constitutes a Sound Exercise of the Debtors' Business Judgment.**

15.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).   The purpose behind section 365(a) is "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Republic Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016); *see*

*also NLRB v. Bildisco & Bildisco (In re Bildisco)*, 465 U.S. 513, 528 (1984) ("The authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization."); *In re Exide Techs.*, 607 F.3d 957, 967 (3d Cir. 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization."). Pursuant to Bankruptcy Rule 6006(f), a trustee or debtor in possession may file a motion for the authority to reject multiple leases. Fed. R. Bankr. P. 6006(f).

16. The standard applied by courts to determine whether the assumption or rejection of an unexpired lease should be authorized is the "business judgment" test, which requires a debtor to have determined that the requested assumption or rejection would be beneficial to its estate. *See In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assuming or rejecting of lease "will be a matter of business judgment by the bankruptcy court"); *In re MF Global Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012) ("Courts generally will not second-guess a debtor's business judgment concerning whether the assumption or rejection of an executory contract or unexpired lease would benefit the debtor's estate."). In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject leases. *See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989) (affirming the rejection of a service agreement as a sound exercise of the debtor's business judgment when the bankruptcy court found that such rejection would benefit the debtors' estate); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim, or caprice.").

17.    After closely analyzing their railcar lease portfolio, the Debtors have determined, in the exercise of their sound business judgment, that the Railcar Leases are financially burdensome and there is no net benefit that is likely to be realized from the Debtors' continued maintenance of the Railcar Leases.  The Debtors no longer utilize the leased railcars in their operations and, thus, the railcars are not expected to generate any revenue to cover the amount of their respective lease payments that, absent rejection, the Debtors may be obligated to pay on a continuing basis.  As such, the Railcar Leases are an unnecessary drain on the Debtors' resources.  Accordingly, the Debtors have concluded, in a sound exercise of their business judgment, that rejection of the Railcar Leases, *nunc pro tunc* to the Petition Date, is in the best interest of the Debtors' estates, their creditors, and other parties in interest because it will result in meaningful immediate and long-term savings.

## II.    The Court Should Deem the Railcar Leases Rejected Effective as of the Petition Date.

18.    Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively.  *See, e.g.*, *In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection"); *see also In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 "does not prohibit the bankruptcy court from allowing the rejection of leases to apply retroactively").  A bankruptcy court may, in its discretion, authorize rejection retroactively to a date prior to entry of an order authorizing such rejection where the balance of equities favors such relief.  *See In re Thinking Machs. Corp.*, 67 F.3d 1021, 1029 (1st Cir. 1995) (observing that "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively"); *In re Chi–Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) ("[T]he bankruptcy

court has discretion to approve a rejection of a nonresidential lease pursuant to § 365(a) retroactive to the motion filing date, when principles of equity so dictate."); *Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 734 n.4 (Bankr. D. Del. 2009) (providing that a bankruptcy court may enter a lease rejection order with an effective date earlier than the date the order is entered).

19.    Here, the equities of the case warrant retroactive rejection of the Railcar Leases *nunc pro tunc* to the Petition Date.  As noted above, the Debtors are incurring substantial losses related to the Railcar Leases, adversely impacting the Debtors' estates.    These exigent circumstances necessitate an immediate rejection of the Railcar Leases so that the Debtors can avoid unnecessary and burdensome expenses with respect to the railcars.

20.    Without a retroactive date of rejection, the Lessors may attempt to assert administrative expense claims, unnecessarily depleting the limited liquidity available to administer these Chapter 11 Cases, including the proposed sale process.  As stated above, the Debtors no longer have use for the Railcar Leases.  Accordingly, these railcars no longer provide value to the Debtors' estates.  Furthermore, the Debtors are providing notice to the applicable Lessors under the Railcar Leases through this Motion that (i) the Debtors are surrendering the railcars and abandoning the Remaining Property and (ii) the Lessors should immediately begin efforts to relet the railcars to mitigate their damages.  For these reasons, the Debtors respectfully submit that it is fair and equitable for the Court to order that the Railcar Leases be rejected as of the applicable Petition Date, particularly where, as here, retroactive rejection of the Railcar Leases promotes the purposes of section 365 by relieving the estates of additional and unnecessary expenses and other detrimental costs.

21.     Courts in this district have approved relief similar to the relief requested herein.[5] *See, e.g., In re Avenger Flight Group, LLC.,* No. 26-10183 (MFW) (Bankr. D. Del. Mar. 6, 2026) (authorizing the debtors to reject unexpired leases *nunc pro tunc* to the petition date); *In re FLOAT Alaska LLC,* No. 26-10075 (CTG) (Bankr. D. Del. Mar. 3, 2026) (same); *At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 18, 2025) (same); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Aug. 28, 2024) (same); *In re Sientra, Inc.*, No. 24-10245 (JTD) (Bankr. D. Del. Mar. 11, 2024) (same).

### III.     Abandonment of the Remaining Property is Authorized by Section 554(a) of the Bankruptcy Code.

22.     Bankruptcy Code section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Courts give great deference to a debtor's decision to abandon property under Bankruptcy Code section 554.  S*ee In re Vel Rey Props., Inc.*, 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters.").  Unless the property is harmful to the public, once a debtor has shown that the property is burdensome or of inconsequential value and benefit, the court should approve the abandonment.  *Id.* at 868.

23.     The Debtors believe that the Remaining Property in the railcars should be abandoned.  The Debtors evaluated the Remaining Property located in the railcars and determined that (a) the Remaining Property is of inconsequential value or (b) the cost of removing and storing the Remaining Property for future use, marketing, or sale exceeded its value to the Debtors' estates.

---

[5]     Because of the voluminous nature of the orders cited herein, they are not attached to this Motion.  Copies of these orders, however, are available upon request.

Accordingly, the Debtors submit that it is in the best interests of their estates, their creditors, and other parties in interest to abandon the Remaining Property.

24.     Courts in this district have approved relief similar to the relief requested herein.[6] *See, e.g., In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 18, 2025) (authorizing the debtors to abandon personal property that may be located at the debtors' leased premises subject to a rejected lease); *In re Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Mar. 3, 2025) (same); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Aug. 28, 2024) (same); *In re Sientra, Inc.*, No. 24-10245 (JTD) (Bankr. D. Del. Mar. 11, 2024) (same); *In re MVK Farmco LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Jan. 25, 2024) (same).

## IV.     The Automatic Stay Will Not Be Applicable to the Railcars as of the Effective Date, or the Stay Should Be Lifted to Enable the Lessors to Retrieve Their Railcars.

25.     The Debtors request that immediately following the entry of the Proposed Order (the day such order is entered, the "**Effective Date**"), the Lessors be entitled (and required) to retrieve the railcars that are the subject of their respective Railcar Leases rejected pursuant to this Proposed Order (collectively, the "**Railcars**").  Because the Debtors seek to abandon any interest they have in and to the Railcars, such Railcars shall not be subject to the automatic stay as of the Effective Date.  *See* 11 U.S.C. § 362(c)(1) (providing that the stay continues with respect to acts against property of the estate "until such property is no longer property of the estate.").  To the extent that the automatic stay might still apply to the Railcars as of the Effective Date, the Debtors submit that stay relief in favor of the Lessors is appropriate, because, as discussed above, the Debtors lack equity in the Railcars and they are not necessary to an effective reorganization.  *See* 11 U.S.C. § 362(d)(2).

---

[6]     Because of the voluminous nature of the orders cited herein, they are not attached to this Motion.  Copies of these orders, however, are available upon request.

**V.      Claims Bar Date.**

26.      The Lessors may seek to assert a rejection damage claim under Bankruptcy Code section 502, or other claims in connection with the Railcar Leases, and must do so in accordance with any claims bar date set by the Court.  The failure to file a timely claim by such bar date shall forever prohibit the Lessors from receiving any distribution on account of such claims from the Debtors' estates or otherwise.  The Debtors will provide notice of such bar date to the Lessors.

**UNSTAYED RELIEF IS NECESSARY**

27.      The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

**RESERVATION OF RIGHTS**

28.      Nothing in this Motion should be construed as (a) authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same; (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (c) a promise to pay any claim or other obligation; (d) granting third-party beneficiary status or bestowing any additional rights on any third party; or (e) being otherwise enforceable by any third party.

**NOTICE**

29.    Notice of this Motion will be given to: (a) the U.S. Trustee, (b) counsel to the Debtors' Prepetition Secured Lender, (c) counsel to the DIP Lender, (d) the Lessors, (e) the parties included on the Debtors' consolidated list of their 30 largest unsecured creditors, (f) the California Public Utilities Commission, (g) the office of the attorney general for each of the states in which the Debtors operate, (h) the United States Attorney's Office for the District of Delaware, (i) the Internal Revenue Service, (j) the United States Securities and Exchange Commission, (k) the United States Department of Justice, (l) any party that has requested notice pursuant to Bankruptcy Rule 2002, and (m) all parties entitled to notice pursuant to Local Bankruptcy Rules 2002-1(b) and 9013-1(m).  The Debtors submit that no other or further notice is required.

**NO PRIOR REQUEST**

30.    No previous request for the relief sought therein has been made to this Court or any other court.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

**CONCLUSION**

The Debtors respectfully request that this Court enter the Proposed Order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
June 15, 2026

*/s/ Laura Davis Jones*

| | |
|---|---|
| **PACHULSKI STANG ZIEHL & JONES LLP**<br>Laura Davis Jones (DE Bar No. 2436)<br>James E. O'Neill (DE Bar No. 4042)<br>Edward A. Corma (DE Bar No. 6718)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19899-8705<br>(Courier 19801)<br>Telephone: 302-652-4100<br>ljones@pszjlaw.com<br>joneill@pszjlaw.com<br>ecorma@pszjlaw.com<br><br>*Proposed Co-Counsel to Debtors and Debtors in Possession* | **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**<br>Joseph O. Larkin (I.D. No. 4883)<br>One Rodney Square<br>920 N. King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 651-3000<br>Joseph.Larkin@skadden.com<br><br>- and -<br><br>James J. Mazza, Jr. (*pro hac vice* pending)<br>Jennifer Madden (*pro hac vice* pending)<br>Mike Jones (*pro hac vice* pending)<br>320 S. Canal Street<br>Chicago, Illinois 60606<br>Telephone: (312) 407-0700<br>James.Mazza@skadden.com<br>Jennifer.Madden@skadden.com<br>Mike.Jones@skadden.com<br><br>- and -<br><br>Destiny N. Almogue (*pro hac vice* pending)<br>2000 Avenue of the Stars, Suite 200N<br>Los Angeles, California 90067<br>Telephone: (213) 687-5000<br>Destiny.Almogue@skadden.com<br><br>*Proposed Co-Counsel to Debtors and Debtors in Possession* |

4902-4868-4213.1 78006.00001