**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related Docket No. 12** |
| | ) | |

**INTERIM ORDER AUTHORIZING
THE DEBTORS TO ASSUME SODA ASH SUPPLY AND
LIQUIDITY AGREEMENT AND OBTAIN FINANCING THEREUNDER**

Upon the motion (the "**Motion**")[2] of the above captioned debtors and debtors in possession

(the "**Debtors**") pursuant to sections 105, 363, 364 and 365 of title 11 of the United States Code,

11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1(b),

4001-2, 9006-1, and 9013 of the Local Rules of the United States Bankruptcy Court for the District

of Delaware (the "**Local Bankruptcy Rules**"), seeking entry of this interim order (this

"**Interim Order**") granting the relief sought in the Motion, including among other things:

> a. authorizing SVM to obtain postpetition financing from Supplier in an aggregate
> principal amount of $20 million (the "**Maximum Liquidity Advance Amount**"),
> pursuant to which up to (i) $7 million shall be available upon entry of the Interim
> Order (the "**Initial Liquidity Advance**"), subject to Nirma delivering the
> Corporate Guarantee, and (ii) an aggregate amount equal to the difference between

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification
number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway
Company LLC (3177); and Searles Domestic Water Company LLC (N/A).  The location of Searles Valley
Mineral Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000,
Overland Park, Kansas 66210.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion, the
Supply Agreement, or the proposed *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition
Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Lender,
(III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the
"**Interim DIP Order**"), as applicable.

the Maximum Liquidity Advance Amount and the Initial Liquidity Advance received by SVM shall be available upon entry of the Final Order (the "**Final Liquidity Advance**," and, together with the Initial Liquidity Advance, the "**Liquidity Advances**"), in each case, on the terms and conditions set forth in the Orders and the Supply Agreement;

b.  granting the Supplier allowed superpriority administrative expense claims against SVM pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all postpetition obligations of SVM under the Supply Agreement, junior to all superpriority administrative expense claims held by HSBC Bank (USA), N.A. or its affiliates (collectively, **"HSBC"**), Karnavati Holdings, Inc. as debtor-in-possession lender in the Chapter 11 Cases (the **"DIP Lender"**) and Nirma;

c.  authorizing SVM to execute, deliver, and perform under the Supply Agreement and to take all actions necessary or appropriate to obtain the Liquidity Advances contemplated thereby;

d.  approving the secured Reimbursement Agreement, authorizing the Debtors' entry into the Reimbursement Agreement, and authorizing the Debtors to execute, deliver, and perform under the Reimbursement Agreement;

e.  granting Nirma valid, enforceable, non-avoidable, and automatically perfected liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code on all DIP Collateral to secure the Debtors' obligations to Nirma under the Reimbursement Agreement;

f.  granting Nirma an allowed superpriority administrative expense claim against the Debtors and their estates pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all obligations of the Debtors under the Reimbursement Agreement;

g.  authorizing SVM to pay all amounts due and payable under the Supply Agreement, and the Debtors to pay any amounts due and payable under the Reimbursement Agreement, as such amount become earned, due, and payable in accordance with the terms thereof and the Orders;

h.  authorizing SVM to assume the Supply Agreement upon entry of the Final Order;

i.  modifying the automatic stay under section 362 of the Bankruptcy Code (the "**Automatic Stay**") to the extent necessary to permit the Debtors, the Supplier and Nirma to implement and effectuate the terms and provisions of the Supply Agreement, Reimbursement Agreement, and Orders, including to permit delivery of any notices of termination in accordance with the Supply Agreement and any notices under the Reimbursement Agreement;

2

j.   authorizing the Supplier and Nirma, subject to the terms of the Supply Agreement, Reimbursement Agreement, and the Orders, to take any and all commercially reasonable actions to implement and effectuate the relief granted herein;

k.   granting the protections of section 364(e) of the Bankruptcy Code to Supplier and Nirma and the protection to each granted and/or approved herein with respect to obligations of the Debtors and their estates related to the Initial Liquidity Advance;

l.   waiving any applicable stay (including under Bankruptcy Rule 6004), and providing for the immediate effectiveness of the Interim Order and, upon entry, the Final Order; and

m.   scheduling a final hearing (the "**Final Hearing**") to consider final approval of the Liquidity Advances pursuant to the Final Order.

The Court having considered the interim relief requested in the Motion, the First Day Declaration, the Frankum Declaration, the Tempke Declaration, the Supply Agreement, the Reimbursement Agreement, and the evidence submitted and arguments made at the interim hearing held on the Motion (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, waived, settled, resolved, or denied and overruled by the Court as set forth herein; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, otherwise is fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that SVM's entry into the Supply Agreement and the Debtors' entry into the Reimbursement Agreement is a sound and prudent exercise of their business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      Petition Date. On June 15, 2026, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**"). On June 16, 2026, the Court entered an order approving the joint administration of the Chapter 11 Cases.

B.      Debtors in Possession. The Debtors continue to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C.      Committee Formation. As of the date hereof, the United States Trustee for the District of Delaware has not appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

D.      Jurisdiction and Venue. This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      Notice. The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). Notice of the Interim Hearing and the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the Interim Hearing was required.

4

F.      <u>Disposition</u>. The relief requested in the Motion is GRANTED to the extent set forth herein in accordance with the terms of this Interim Order. Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby denied and overruled. This Interim Order is effective immediately and any applicable stay (including, but not limited to, under Bankruptcy Rule 6004) is waived to permit such effectiveness

G.      <u>Findings Regarding the Supply Agreement, Reimbursement Agreement, and the Liquidity Advances</u>.

(i)      Good and sufficient cause has been shown for the entry of this Interim Order, authorization of SVM to obtain the Initial Liquidity Advance pursuant to the Supply Agreement, approval of the Reimbursement Agreement and authorization for the Debtors to enter into it, and granting of the other relief provided herein.

(ii)      The Debtors have an immediate and critical need to obtain the Initial Liquidity Advance in order to, among other things (a) administer and preserve the value of their estates, (b) permit the orderly continuation of the operation of their business, (c) maintain business relationships with vendors, suppliers and customers, (d) make payroll, (e) satisfy other working capital and operational needs and (f) fund expenses of the Chapter 11 Cases. In the absence of the Initial Liquidity Advance, the Debtors' business and estates would suffer immediate and irreparable harm. The access of the Debtors to the Liquidity Advances is necessary and vital to the preservation and maintenance of the value of the Debtors and to a successful reorganization of the Debtors.

(iii)      The Debtors are unable to obtain financing on more favorable terms than under the Supply Agreement and the Reimbursement Agreement.

(iv)    The Debtors' ability to secure the Liquidity Advances is contingent upon Nirma's delivery of the Corporate Guarantee, the Debtors have been unable to secure Nirma's commitment to deliver the Corporate Guarantee absent the Reimbursement Agreement and the protections afforded to Nirma under this Interim Order, and accordingly the Reimbursement Agreement and the protections afforded to Nirma under this Interim Order are critical and integral components of the financing approved by this Interim Order.

(v)    Based on the Motion, the First Day Declaration, the Frankum Declaration, the Tempke Declaration, and the record presented to the Court at the Interim Hearing, the Supply Agreement, the terms of the Liquidity Advances contemplated thereby, and the Reimbursement Agreement have been negotiated in good faith and at arm's length, and all of the Debtors' postpetition obligations and indebtedness arising under, in respect of, or in connection with, the Supply Agreement, the Liquidity Advances, and the Reimbursement Agreement have been extended in good faith by the Supplier and Nirma, as applicable, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the Supplier and Nirma (and each of their successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is reversed or otherwise modified, on appeal or otherwise.

(vi)    The Debtors stipulate, acknowledge, and agree that the Supplier is a critical vendor of the Debtors and a partner to the Debtors in providing operational stability and ongoing performance to the Debtors' customers.

H.    <u>Immediate Entry</u>. Good and sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(c)(2) and, to the extent applicable, 6004(h). The

Debtors' ability to obtain postpetition financing as provided herein is necessary to avoid immediate and irreparable harm and is in the best interests of the Debtors' estates and consistent with the Debtors' fiduciary duties.

Based upon the foregoing findings and conclusions, the Motion, and the record before this Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      Motion Granted. The relief sought in the Motion is granted as provided herein, and the Debtors are authorized to obtain the Initial Liquidity Advance subject to the terms and conditions set forth in the Supply Agreement, the Reimbursement Agreement, and this Interim Order. All objections to this Interim Order, to the extent not withdrawn, waived, settled, or resolved, are hereby denied and overruled. This Interim Order shall become effective immediately upon its entry.

2.      Authorization to Obtain Postpetition Financing.

a.      To prevent immediate and irreparable harm to the Debtors' and their estates, SVM is hereby expressly authorized and empowered to immediately borrow and obtain the Initial Liquidity Advance in accordance with the Supply Agreement.

b.      SVM and the Supplier are hereby authorized to perform all of their obligations under the Supply Agreement, as applicable, and to take all such other and further acts as may be necessary, appropriate, or desirable in connection therewith.

c.      The Initial Liquidity Advance shall be provided solely on the terms set forth in the Supply Agreement and this Interim Order, without modification except as expressly set forth herein or as permitted under paragraph 3(b) herein.

3.  Postpetition Financing Obligations.

a.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all obligations owed by SVM to the Supplier under the Supply Agreement shall constitute allowed superpriority administrative expense claims of the Supplier against SVM and its estate (without the need to file any proof of claim) (the "**Supplier Superpriority Claims**"). The Supplier Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is reversed or otherwise modified, on appeal or otherwise. Subject to the Carve Out, the Supplier Superpriority Claims shall have priority over all other administrative expense claims in the Chapter 11 Cases except that the Supplier Superpriority Claims shall be junior to all superpriority administrative expense claims of HSBC Bank (USA), N.A. or its affiliates (collectively, "**HSBC**"), and all superpriority administrative expense claims of the DIP Lender, and the Nirma Superpriority Claims (as defined below).

b.  The Reimbursement Agreement is hereby approved. The Debtors are hereby authorized to enter into the Reimbursement Agreement, perform all of their obligations under the Reimbursement Agreement, and to take all such other and further acts as may be necessary, appropriate, or desirable in connection therewith.

c.  The Debtors are authorized to grant to Nirma, and Nirma is hereby granted, valid, enforceable, non-avoidable, and automatically perfected liens (the "**Nirma Liens**") pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code on all DIP Collateral having the priorities specified in the Lien and Claim Priorities Chart attached as Exhibit 3 to the Interim DIP Order to secure the Debtors' obligations to Nirma under the Reimbursement Agreement. Nirma is hereby granted the Nirma Liens without the necessity of the execution by the Debtors or the filing

or recordation of mortgages, security agreements, lockbox or control agreements, financing statements, or any other instruments or otherwise by Nirma.

d.      Pursuant to section 364(c)(1) of the Bankruptcy Code, Nirma is hereby granted allowed superpriority administrative expense claims against the Debtors and their estates (without the need to file any proof of claim) for all obligations of the Debtors under the Reimbursement Agreement (the "**Nirma Superpriority Claims**"). The Nirma Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is reversed or otherwise modified, on appeal or otherwise.  The Nirma Superpriority Claims shall be subject to the Carve Out and any superpriority administrative expense claims of HSBC, and shall have priority over the Supplier Superpriority Claims  The Nirma Liens and the Nirma Superpriority Claims shall be *pari passu* with the liens and superpriority administrative expense claims granted to the DIP Lender or to any other party providing the Debtors with debtor-in-possession financing in lieu of the DIP Lender, except to the extent that Nirma hereafter agrees otherwise in writing.

e.      Paragraphs 4, 6(c), 13, and 24 of the Interim DIP Order shall apply with equal force with respect to Nirma, the Reimbursement Agreement, and the Nirma Liens as they apply to the DIP Lender, the DIP Loan Documents, and the DIP Liens, respectively, in the Interim DIP Order such that Nirma is hereby granted the Nirma Liens without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, lockbox or control agreements, financing statements, or any other instruments or otherwise by Nirma.

f.      The Debtors' performance under the Supply Agreement and the Debtors' performance under the Reimbursement Agreement is hereby authorized, it being understood that no further approval of this Court shall be required for any authorizations, amendments, waivers,

consents, or other modifications to and under the Supply Agreement or Reimbursement Agreement that are permitted under the Supply Agreement or the Reimbursement Agreement, as applicable, that do not shorten the maturity of the extensions of credit thereunder, provide for the payment of interest or fees payable thereunder.

g.      The Supply Agreement provides for legal, valid, binding, and non-avoidable obligations of the Debtors, enforceable against the Debtors and their estates and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**"), in each case in accordance with the terms thereof and of this Interim Order.

h.      The Reimbursement Agreement provides for legal, valid, binding, and non-avoidable obligations of the Debtors, enforceable against the Debtors and their estates and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any Successor Cases, in each case in accordance with the terms thereof and of this Interim Order.

4.      Ordinary Course Payments. The Debtors are authorized to pay all of the Supplier's prepetition and postpetition invoices for the supply of soda ash in the ordinary course of business, including pursuant to any prepetition terms between the Supplier and SVM applicable to the prepetition invoices, and otherwise pursuant to the Supply Agreement.

5.      Automatic Stay Modification. The Automatic Stay in the Chapter 11 Cases otherwise applicable to the Supplier and Nirma is hereby modified so that: (i) subject to the terms of this Interim Order and the Supply Agreement, upon the occurrence of a Company Termination Event, the Supplier may, in addition to any other rights or remedies afforded to it under the Supply

Agreement, (a) by written notice to SVM and Nirma, elect to terminate the Supply Agreement and/or declare the outstanding amount of the Liquidity Advances immediately due and payable, (b) exercise its remedies under the Supply Agreement without the necessity of obtaining any additional relief from the Court, upon five (5) days' written notice to SVM and Nirma; *provided*, that SVM will have the right to contest that a Company Termination Event has actually occurred within such five (5) day period, and (c) exercise any and all rights and remedies available to it under the Supply Agreement, at law or in equity, including bringing suit to collect all amounts due under the Supply Agreement; and (ii) subject to the terms of this Interim Order and the Reimbursement Agreement, Nirma may exercise all of its rights and remedies, and issue any notices, under the Reimbursement Agreement and this Interim Order.

6.      Payments Free and Clear. Any payments made to the Supplier or Nirma pursuant to this Interim Order and in accordance with the Supply Agreement and Reimbursement Agreement shall be valid and binding and shall not be subject to avoidance.

7.      Preservation of Rights Granted Under this Interim Order. Except as expressly provided in this Interim Order, the Supply Agreement, including in the event that SVM elects to terminate the Supply Agreement upon the occurrence of a Supplier Termination Event in accordance with the terms of the Supply Agreement, the rights and remedies of each of the Supplier and Nirma granted by the provisions of this Interim Order and the Supply Agreement or Reimbursement Agreement, as applicable, shall survive and shall not be modified, impaired, or discharged by: (a) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, or terminating the joint administration of these Chapter 11 Cases or by any other act or omission or (b) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section

11

1141(d)(4) of the Bankruptcy Code. The terms and provisions of this Interim Order, the Supply Agreement, and the Reimbursement Agreement shall continue in the Chapter 11 Cases (including if the Chapter 11 Cases cease to be jointly administered) and in any Successor Cases, and (i) the rights and remedies of the Supplier against SVM granted by the provisions of this Interim Order shall continue in full force and effect until all obligations under the Supply Agreement are indefeasibly paid in full in cash to the Supplier, as set forth herein and in the Supply Agreement and (ii) and the rights and remedies of Nirma against the Debtors granted by the provisions of the Reimbursement Agreement and this Interim Order shall continue until all obligations under the Supply Agreement are indefeasibly paid in full in cash and the Debtors indefeasibly satisfy all obligations to Nirma under the Reimbursement Agreement.

8.      Termination Fee. The Termination Fee as set forth in the Supply Agreement is hereby approved.

9.      Indemnification. The Debtors, the Supplier, and Nirma have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions they have taken in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the Supply Agreement, the Liquidity Advances, and the Reimbursement Agreements. Accordingly, the Debtors, the Supplier, and Nirma shall be, and hereby are, entitled to the respective indemnities provided for each in the Supply Agreement and the Reimbursement Agreement.

10.     Interim Order Controls. In the event of a conflict between the terms and provisions of the Supply Agreement or Reimbursement Agreement and the terms and provisions of this Interim Order, then the terms and provisions of this Interim Order shall govern; *provided*, that to the extent any provision of this Interim Order purports to describe, summarize, or recite any term

12

or provision of the Supply Agreement or Reimbursement Agreement, the actual terms and provisions of the Supply Agreement or Reimbursement Agreement, as applicable, shall control.

11.     Binding Effect; Successors and Assigns. The Supply Agreement, the Reimbursement Agreement, the provisions of this Interim Order, and all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the Supplier, Nirma, the Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of the Supplier, Nirma, and the Debtors and their respective successors and assigns.

12.     Limitation of Liability. In determining to make any loan or other extension of credit under the Supply Agreement or Reimbursement Agreement or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the Supply Agreement, or the Reimbursement Agreement, the Supplier and Nirma, as applicable, shall not (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; or (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Supplier or Nirma of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

13. <u>Debtors' Release of the Supplier</u>. Subject to entry of a Final Order, the Debtors, on behalf of themselves and their estates (including any successor in interest to its estate), hereby stipulate and agree that they absolutely and unconditionally release and forever and irrevocably discharge and acquit each of the Supplier and its respective affiliates and each of its respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, advisors, professionals, and other representatives, and the respective successors and assigns thereof, in each case solely in their capacity as such (collectively, the "**Released Parties**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Supplier's prepetition indebtedness, and/or the transactions contemplated hereunder or thereunder including, without limitation, and any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, and any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the claims of the Supplier

14

(collectively, the "**Released Claims**"), except for any claim or liability in any way related to fraud, gross negligence, or willful misconduct.

14.     Proofs of Claim.  The provisions of this Interim Order shall be deemed to constitute a timely filed proof of claim and a timely filed request for administrative expenses for the Supplier and Nirma with regard to any claims arising under the Supply Agreement or the Reimbursement Agreement, and neither the Supplier nor Nirma shall be required to file proofs of claim or requests for administrative expenses in these Chapter 11 Cases or the Successor Cases for such amounts.

15.     Limitation on the Use of Liquidity Advances.  The Liquidity Advances shall not be used to pay any fees and expenses incurred by any professional retained by the Debtors, any statutory committee appointed in the Chapter 11 Cases, or any other estate professional in connection with the preparation, assertion, prosecution, or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief, including but not limited to the commencement or prosecution of any action, proceeding, claim, cause of action, or defense, against the Supplier or any of its respective officers, directors, employees, agents, attorneys, affiliates, successors, or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the Supplier under chapter 5 of the Bankruptcy Code.

16.     Effectiveness. This Interim Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall

be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

17.     <u>No Modification or Stay of this Interim Order</u>. Based on the record presented to this Court by the Debtors, notwithstanding (a) any stay, modification, amendment, supplement, vacatur, revocation or reversal of this Interim Order, the Supply Agreement, Reimbursement Agreement, or any term hereunder or thereunder, (b) the dismissal or conversion of one or more of the Chapter 11 Cases, or (c) any rejection of the Supply Agreement pursuant to section 365 of the Bankruptcy Code, the Supplier and Nirma shall retain and be entitled to all of the rights, remedies, privileges, and benefits in favor of the Supplier and Nirma pursuant to section 364(e) of the Bankruptcy Code, this Interim Order, and the Supply Agreement or Reimbursement Agreement, as applicable, as of the date any event referred to in clauses (a), (b) or (c) of this paragraph shall have occurred.  Notwithstanding the provisions of any Final Order, all rights and protections provided to Supplier and Nirma under this Interim Order, the Supply Agreement and the Reimbursement Agreement related to the Initial Liquidity Advance or Nirma's guarantee thereof shall remain in full force and effect and shall not be impaired.

18.     <u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

19.     <u>Bankruptcy Rules</u>. The requirements of Bankruptcy Rules 4001 and 6004, to the extent applicable, are satisfied by the contents of the Motion.

20.     <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

16

21.     Necessary Action. The Debtors, the Supplier, and Nirma are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Interim Order.

22.     Retention of Jurisdiction. The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

23.     Final Hearing. The Final Hearing on the Motion shall be held on July 7, 2026 at 10:00 a.m., prevailing Eastern Time. On or before 4:00 p.m., prevailing Eastern Time, on June 30, 2026, any objections or responses to entry of the Final Order shall be filed with this Court and served on:  (a) Searles Valley Minerals Inc., 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210 (Attn: Dennis Cruise, President (cruise@svminerals.com)); (b) proposed co-counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 320 S. Canal Street, Chicago, Illinois 60606 (Attn: James J. Mazza, Jr., Esq. (james.mazza@skadden.com) and Mike Jones (mike.jones@skadden.com)) and 525 University Avenue, Palo Alto, California 94301 (Attn: Jennifer Madden, Esq. (jennifer.madden@skadden.com)) and 2000 Avenue of the Stars, Suite 200N, Los Angeles, California 90067 (Attn: Destiny N. Almogue, Esq. (destiny.almogue@skadden.com)); (c) proposed co-counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899 (Courier 19801) (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com), James E. O'Neill, Esq. (joneill@pszjlaw.com), and Edward A. Corma, Esq. (ecorma@pszjlaw.com)); (d) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane M. Leamy, Esq. (jane.m.leamy@usdoj.gov) and Joseph J. McMahon, Jr., Esq. (joseph.mcmahon@usdoj.gov)); (e) counsel to the Prepetition Secured Lender (Attn: William Hao,

Esq. (william.hao@alston.com)); (f) counsel to the DIP Lender (Attn: David Fournier, Esq. (david.fournier@troutman.com)); (g) counsel to the Supplier, Holland & Hart LLP (Attn: Matthew J. Ochs (mjochs@hollandhart.com)) and Morris, Nichols, Arsht & Tunnel LLP (Attn: Curtis S. Miller (miller@morrisnichols.com)); (h) counsel to Nirma, Troutman Pepper Locke LLP, 1313 N. Market Street, Suite 1000, P.O. Box 1709, Wilmington, DE 19801, (Attn: David M. Fournier, Esq. (david.fournier@troutman.com) and Kenneth A. Listwak, Esq. (ken.listwak@troutman.com)); and (i) counsel to any statutory committee appointed in the Chapter 11 Cases. In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: June 16th, 2026**
**Wilmington, Delaware**

18