**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE EMPLOYMENT AND RETENTION OF LAZARD FRÈRES & CO. LLC AND
LAZARD & CO., LIMITED AS INVESTMENT BANKER TO THE DEBTORS AND
DEBTORS IN POSSESSION, EFFECTIVE AS OF THE
PETITION DATE, (II) APPROVING THE TERMS OF THE ENGAGEMENT
LETTER, (III) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS
PURSUANT TO LOCAL RULE 2016-2(H), AND (IV) GRANTING RELATED RELIEF**

Searles Valley Minerals Inc. ("**SVM**") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**"), hereby move (this "**Application**") the Bankruptcy Court for the District of Delaware (this "**Court**") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), granting the relief described below. In support thereof, the Debtors refer to the contemporaneously filed *Declaration of Christian Tempke in Support of the Debtors' Application for Entry of an Order (i) Authorizing the Employment and Retention of Lazard Frères & Co. LLC and Lazard & Co., Limited as Investment Banker to the Debtors and Debtors in Possession, Effective as of the Petition Date, (II) Approving the Terms of the Engagement Letter, (III) Waiving Certain Time-Keeping Requirements*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A).  The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

*Pursuant to Local Rule 2016-2(H), and (IV) Granting Related Relief* (the "**Tempke Declaration**"), attached hereto as **Exhibit B**, and further represent as follows.

## RELIEF REQUESTED

1.      By this Application, the Debtors respectfully request entry of an Order authorizing and approving: (a) the employment and retention of Lazard Frères & Co. LLC and Lazard & Co., Limited (collectively, "**Lazard**" or the "**Firm**"), as investment banker to the Debtors, effective as of June 15, 2026 (the "**Petition Date**"), in accordance with the terms and conditions set forth in that certain engagement letter dated as of May 12, 2026 (the "**Engagement Letter**") and indemnification letter also dated as of May 12, 2026 (the "**Indemnification Letter**"), copies of which are attached hereto as **Exhibit C**; (b) waiving certain time-keeping requirements pursuant to rule 2016-2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"); and (c) granting related relief.[2]

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157(a)–(b)(1) and 1334(b) and the Amended *Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  Venue of these cases and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The legal predicates for the relief requested herein are sections 327(a) and 328 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2014(a) and 2016 of the Federal

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Engagement Letter.

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules.

4. Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final order with respect to this Application if it is determined that this Court would lack Article III power to enter such final order absent the consent of the parties.

## BACKGROUND

5. On the Petition Date, each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered.

6. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. To date, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed a creditors' committee in the Chapter 11 Cases, nor has any trustee or examiner been appointed therein.

8. SVM (together with its Debtor and non-Debtor affiliates, the "**Company**") operates a vertically integrated mining and processing complex at Searles Lake in Trona, California, where it produces critical industrial minerals, including borates, sodium sulfate, and salt, sourced from one of the largest known deposits of water-soluble borates in North America. The Company is among the largest and lowest cost producers of borates, serving a diversified global customer base across industrial, agricultural, and specialty chemical end markets. The Company historically mined and processed Sodium Carbonate (soda ash) until February 2026, and continues to source and supply soda ash to its customers in North America. In addition, the Debtors source and provide potable water for approximately 760 residential and commercial customers in certain areas on the west shoreline of Searles Lake, California, including the town of Trona, California. The

Company's business operations, corporate and capital structures, and restructuring efforts are described in greater detail in the *Declaration of Adrian Frankum in Support of Chapter 11 Petitions and First Day Papers* [Docket No. 17] (the "**First Day Declaration**").

**LAZARD'S QUALIFICATIONS**

9.      In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that it is necessary to engage an investment banker with knowledge of the Debtors' industry and business and with experience marketing and selling troubled business in the context of a chapter 11, navigating the chapter 11 process to advise the Debtors with respect to their restructuring and the Chapter 11 Cases. As described more fully in the First Day Declaration, SVM and its immediate parent, non-Debtor Karnavati Holdings, Inc. initially retained Lazard in February 2024 as their investment banker to assist in the evaluation and marketing of the Debtors' assets for a potential sale transaction, which potential transaction was marketed beginning in August 2025 by Lazard. In April 2026, it became clear that an out-of-court transaction was not viable, in part due to the Debtors' legacy liabilities and the unwillingness of potential buys to acquire the Debtors' business outside of a court-supervised process. Accordingly, in May 2026, Lazard was retained by the Debtors to assist them in pursuing the transactions contemplated by these Chapter 11 Cases, with the goal of reaching a value-maximizing transaction to preserve the Company as a going-concern for the benefit of the Debtors' estates, creditors, and other stakeholders.[3] As investment banker, Lazard has provided, and will continue to provide, critical services that complement the services provided by the Debtors' other professionals.

---

[3]     The May 2026 Engagement Letter terminated and superseded in its entirety the February 2024 engagement letter among Lazard, SVM, and its immediate parent, non-debtor Karnavati Holdings, Inc. (the "Prior Letter").

10. Lazard is a preeminent international financial advisory and asset management firm with its principal office located at 30 Rockefeller Plaza, New York, New York 10112. Together with its predecessors and affiliates, Lazard has been advising clients around the world for more than 175 years. Lazard is registered as a broker-dealer with the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority, and, since 1990, has advised debtors, creditors, equity constituencies, and government agencies in over 500 restructurings, representing over $1 trillion in debtor assets. Lazard has dedicated professionals with extensive experience working with financially troubled companies in complex out-of-court restructurings and chapter 11 proceedings in numerous industries, including healthcare, retail, metals & mining, power & energy, financial services, oil & gas, telecom, media, and automotive, among others.

11. Lazard employs dedicated professionals to provide restructuring services to its clients. Lazard and its professionals have considerable expertise and experience in providing investment banking and financial advisory services to financially distressed companies and to creditors, equity holders, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. In addition, Lazard's investment banking professionals have extensive experience in advising debtors in chapter 11 cases and have served as investment bankers to numerous debtors, chapter 11 trustees, creditors' committees and buyers in chapter 11 proceedings. Since 1990, Lazard's professionals have been involved in over 500 restructurings, representing over $1 trillion in debtors' assets.

12. Notably, Lazard has been retained as an investment banker and financial advisor in numerous large and complex chapter 11 cases in this and other jurisdictions, including, among others, the following recent matters: *In re First Brands Group, LLC,* No. 25-90399 (CML) (Bankr.

S.D. Tex. 2025); *In re Steward Health Care Sys. LLC*, No. 24-90213 (CML) (Bankr. S.D. Tex. 2024); *In re Wellpath Holdings, Inc.*, No. 24-90533 (ARP) (Bankr. S.D. Tex. 2024); *In re Air Methods Corp.,* No. 23-90886 (MI) (Bankr. S.D. Tex. 2023); *In re SiO2 Med. Prods., Inc., No. 23-10366* (JTD) (Bankr. D. Del. 2023); *In re Bed Bath & Beyond Inc.,* No. 23-13359 (VFP) (Bankr. D. NJ 2023); *In re Nat'l Cinemedia, LLC,* No. 23-90291 (DRJ) (Bankr. S.D. Tex. 2023); *In re Belk, Inc.,* No. 21-30630 (MI) (Bankr. S.D. Tex. 2021); *In re Basic Energy Servs., Inc.*, No. 21-90002 (DRJ) (Bankr. S.D. Tex. 2021); *In re FTS Int'l, Inc.,* No. 20-34622 (DRJ) (Bankr. S.D. Tex. 2020); *In re 24 Hour Fitness Worldwide, Inc.,* No. 20-11558 (KBO) (Bankr. D. Del 2020); *In re Intelsat S.A.,* No. 20-32299 (KLP) (Bankr. E.D. Va. 2020); *In re Chinos Holdings, Inc.,* No. 20-32181 (KLP) (Bankr. E.D. Va. 2020), *In re J.C. Penney Co.,* No. 20-20182 (DRJ) (Bankr. S.D. Tex. 2020); *In re Neiman Marcus Grp. Ltd.,* No. 20-32519 (DRJ) (Bankr. S.D. Tex. 2020); In re Gavilan Res., LLC, No. 20-32656 (DRJ) (Bankr. S.D. Tex. 2020); *In re Forever21,* No. 19-12122 (KG) (Bankr. D. Del. 2019); *In re Weatherford Int'l PLC*, No. 19-33694 (DRJ) (Bankr. S.D. Tex. 2019); *In re Sears Holdings Corp.,* No. 18-23538 (RDD) (Bankr. S.D.N.Y. 2018); *In re Claire's Stores, Inc.,* No. 18-10584 (MFW) (Bankr. D. Del. 2018); *In re Stone Energy Corp.,* No. 16-36390 (MI) (Bankr. S.D. Tex. 2017); *In re RCS Cap. Corp.,* No. 16-10223 (MFW) (Bankr. D. Del. 2016); *In re LINN Energy, LLC,* No. 16-60040 (Bankr. S.D. Tex. 2016); and *In re Chassix Holdings, Inc.,* No. 15-10578 (MEW) (Bankr. S.D.N.Y. 2015).

13.     As noted above, Lazard was initially engaged by the Company in February 2024. On May 12, 2026, the Prior Letter was terminated and superseded in its entirety by the Engagement Letter by which Lazard was engaged to provide certain services to the Debtors.  Since that time, Lazard's professionals have worked closely with the Debtors, their management, and their other advisors, and have become well acquainted with, among other things, the Debtors' operations,

business needs, and capital structure.  Lazard will concentrate its efforts on the Debtors'

restructuring by negotiating with potential buyers of the Debtors' assets, with which Lazard has

extensive historical knowledge.  Thus, Lazard is particularly well suited to provide the investment

banking services to the Debtors that are contemplated by the Engagement Letter and described

herein.

14.     As a result of the prepetition work performed on behalf of the Debtors, Lazard has

acquired significant knowledge of the Debtors' financial affairs, debt structure, business

operations, capital structure, key stakeholders, financing documents, and other related material

information.  Likewise, in providing prepetition services to the Debtors, Lazard's professionals

have worked closely with the Debtors' management and other advisors.  If this Application is

approved, several of Lazard's professionals, all with substantial expertise in the areas discussed

above, will continue to work closely with the Debtors' management and other professionals

throughout the restructuring process.  Accordingly, as a result of Lazard's representation of the

Debtors prior to the commencement of these Chapter 11 Cases and Lazard's vast experience and

expertise, Lazard is well qualified to provide these services and represent the Debtors during their

Chapter 11 Cases.

15.     Indeed, if the Debtors were required to retain an investment banker other than

Lazard in connection with these Chapter 11 Cases, the Debtors, their estates, and other parties in

interest would be unduly prejudiced by the time and expense necessary to familiarize another

investment banker with the intricacies of the Debtors and their business operations.

**SERVICES TO BE PROVIDED**

16.     Subject to further order of the Court, and consistent with the Engagement Letter,

the Debtors propose to retain Lazard to continue to render the following consulting and advisory

services (the "**Services**") to the Debtors as necessary, appropriate, feasible, and as may be requested by the Debtors:[4]

    (a)    reviewing and analyzing the Debtors' business, operations and financial projections;

    (b)    assisting in the determination of a capital structure for the Debtors;

    (c)    advising the Debtors on implementation of any proposed Restructuring, Sale Transaction and/or Financing;

    (d)    assisting in the determination of a range of values for the Debtors on a going concern basis;

    (e)    advising the Debtors on developing transaction structures, tactics and strategies for achieving their capital structure objectives;

    (f)    rendering financial advice to the Debtors and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring, Sale Transaction and/or Financing;

    (g)    advising the Debtors on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring, Sale Transaction and/or Financing;

    (h)    advising and assisting the Debtors in evaluating any potential Financing transaction by the Debtors, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Debtors, contacting potential sources of capital as the Debtors may designate and assisting the Debtors in implementing such Financing;

    (i)    assisting the Debtors in preparing documentation within Lazard's area of expertise that is required in connection with any Restructuring, Sale Transaction and/or Financing;

    (j)    assisting the Debtors in identifying and evaluating candidates for any potential Sale Transaction, advising the Debtors in connection with negotiations and aiding in the consummation of any Sale Transaction;

    (k)    evaluating the financial terms of any proposed Restructuring, Sale Transaction, and/or Financing;

---

[4]    To the extent there is any inconsistency between this summary of the services set forth in the Engagement Letter and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

(l)     attending meetings of the Board of Directors of the Debtors with respect to matters on which Lazard has been engaged to advise under the Engagement Letter;

(m)    providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise under the Engagement Letter in any proceeding before the Bankruptcy Court; and

(n)     providing the Company with other financial restructuring advice related to the foregoing.

17.     To the extent the Debtors request Lazard to perform additional services not contemplated by the Engagement Letter, such services and the fees for such services will be mutually agreed upon by Lazard and the Debtors, in writing, in advance.  In the event such amendment to the Engagement Letter occurs, the revisions will be subject to the Court's review upon proper application by the Debtors.

<strong>PROFESSIONAL COMPENSATION</strong>

18.     Subject to Court approval, and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable general orders of this Court, the Debtors will compensate Lazard in accordance with the terms and provisions of the Engagement Letter, which provides a compensation and expense reimbursement structure (the "**Fee Structure**") in relevant part as follows:[5]

a)  **Monthly Fee**.  A monthly fee of $150,000 (the "**Monthly Fee**"), which began accruing on May 1, 2026 and be payable on execution of the Engagement Letter and on the first day of each month thereafter until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 9 of the Engagement Letter.  Fifty percent (50%) of Monthly Fees paid in respect of any months following the sixth month of this engagement shall be credited (without duplication) against any Restructuring Fee, or Sale Transaction Fee payable (the "**Monthly Fee Credit**"); provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

---

[5]    In the event of any inconsistency between the description of the Fee Structure as set forth herein and the Engagement Letter, the Engagement Letter will control.

b) **Restructuring Fee**.  A  fee equal to $5,000,000, payable upon the consummation of a Restructuring (the "**Restructuring Fee**").

c) **Sale Transaction Fee**.

    i.    If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction directly or indirectly incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company (a "**Control Sale**"), Lazard shall be paid a fee (the "**Sale Transaction Fee**") equal to:

        (A) $3,000,000 payable upon completion of the Sale Transaction, plus;

        (B) an additional fee payable upon completion of the Sale Transaction, equal to:

            (1) 3.5% of the incremental Enterprise Value of the Company in  excess of $200,000,000 and up to $300,000,000 (inclusive); plus

            (2) 5.0% of the incremental Enterprise Value of the Company in  excess of $300,000,000.

            For the purposes thereof, the term "Enterprise  Value" means the enterprise value of the Company (being the value of the Company assuming no debt, debt like items or contingent liabilities and no cash) as determined by reference to the signed definitive sale (or similar) agreement(s)) entered into between the buyer and the seller (including any amounts to be paid into escrow or deferred or contingent amounts).  If the Enterprise Value is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid  to us upon completion of the Sale Transaction.

    ii.    If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates any Sale Transaction not covered by clause (i) above, the Company shall pay Lazard a fee (the "**Other Sale Transaction Fee**") equal to 1.5% of the Aggregate Consideration received for each Other Sale Transaction.

    iii.    Any Sale Transaction Fee or Other Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

d) **Financing Fee**. A fee, payable upon consummation of a Financing (the "**Financing Fee**"), equal the applicable percentages of gross proceeds as follows based on the type of Financing: (i) 1.75% of any senior secured debt financing, plus (ii) 3.0% of

any junior secured, last-out, unsecured, or subordinated debt financing, plus (iii) 4.0% of any equity, equity-linked or equity-stapled or similarly bundled equity financing (including, but not limited to, preferred or common equity, convertible debt, debt bundled or stapled with equity or equity-linked financing, options, warrants, or other rights to acquire interests). To the extent that the type of Financing issued (including any "stapled" or similarly bundled securities) would qualify as more than one of the types of Financings listed above, the highest applicable fee percentage shall apply); provided, however, that for any proposed "debtor-in-possession" Financing, the Financing Fee shall be earned and shall be payable upon the earlier of execution of a commitment letter or a definitive agreement with respect to the Financing; and, provided, further, that to the extent that Lazard is paid a fee in connection with a proposed "debtor-in-possession" Financing and the Bankruptcy Court does not provide any required approval with respect thereto, Lazard shall return such fee to the Company. No Financing Fee shall be payable in connection with any out-of-court financing that is provided by the Company's existing shareholders; provided that Lazard did not run a financing process in connection therewith. Fifty percent (50%) percent of any Financing Fee shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable.

e) In the event that both a Restructuring and a Control Sale are consummated, only the greater of such fees, adjusted by the Monthly Fee Credit (as applicable), shall be payable to Lazard. For the avoidance of any doubt, more than one fee may be payable pursuant to each of clauses (c)(ii) and (d) above.

f) In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all reasonable and documented expenses and reasonable document production charges incurred by Lazard (including travel and lodging, communications charges, courier services and other expenditures) and the reasonable and documented fees and expenses of counsel, if any, retained by Lazard.

19.    Because it is not the general practice of investment banking firms, including Lazard, to keep detailed time records, and because Lazard's compensation will be calculated and paid based on certain transaction fees (in addition to Monthly Fees), Lazard requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2, the fee guidelines established by the Office of the U.S. Trustee for the District of Delaware (the "**United States Trustee Fee Guidelines**"), and any otherwise applicable orders or procedures of the Court.  Notwithstanding that Lazard does not charge for its services on an hourly basis, Lazard will nonetheless maintain records (in summary format) of its services rendered for the Debtors in

one-half hour increments, including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records to the Court in its interim and final fee applications.  The Debtors also request that, notwithstanding the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of this Court, the Debtors be authorized to pay the Monthly Fee to Lazard each month in accordance with the terms of, and at the times specified in, the Engagement Letter, without further order of the Court and without Lazard filing or serving any prior fee application or statement.

20.    The Fee Structure is consistent with and typical of compensation arrangements entered into by Lazard and other comparable firms in connection with the rendering of similar services under similar circumstances.  Lazard's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Lazard's engagement, were all important factors in determining the Fee Structure.  The Debtors believe that the ultimate benefit of Lazard's services cannot be measured by reference to the number of hours to be expended by Lazard's professionals in the performance of such services. Indeed, the Debtors and Lazard have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Lazard and its professionals in connection with these Chapter 11 Cases and in light of the fact that: (a) such commitment may foreclose other opportunities for Lazard and (b) the actual time and commitment required of Lazard and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Lazard.

21. In light of the foregoing and given the numerous issues that Lazard may be required to address in the performance of its services hereunder, Lazard's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Lazard's services for engagements of this nature both in- and out-of-court and in the chapter 11 context, the Debtors believe that the Fee Structure is in line with market compensation for similar services and is fair and reasonable under the standards set forth in Bankruptcy Code section 328(a).

## INDEMNIFICATION

22. As part of the overall compensation payable to Lazard under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, contribution and reimbursement obligations as described in the Indemnification Letter. Generally, these indemnification provisions provide that the Debtors will, among other things, indemnify, hold harmless, and provide contribution and reimbursement to Lazard and its current and future affiliates, and the respective directors, officers, members, employees, agents or controlling persons of each of the foregoing under certain circumstances, except to the extent that such indemnified party engaged in bad faith or gross negligence.[6]

23. The Debtors believe that these indemnification and related provisions, as modified by the Order, are customary and reasonable for financial advisory and investment banking engagements, both in- and out-of-court, and reflect customary and reasonable qualifications and limitations on indemnification provisions. The terms of the Indemnification Letter, as modified in the Order, are similar to indemnification terms that have been previously approved by this Court and other bankruptcy courts in other large chapter 11 cases. *See, e.g.*, *In re Glob. Clean Energy.*,

---

[6] To the extent there is any inconsistency between this Application's summary of the Indemnification Letter provisions and the actual terms of the Indemnification Letter, the terms of the Indemnification Letter will control.

No. 25-90113 (ARP) (Bankr. S.D. Tex. May 22, 2025) (Docket No. 160); *In re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tex. Dec. 13, 2024) (Docket No. 445); *In re Steward Health Care Sys.*, No. 23-90886 (CML) (Bankr. S.D. Tex. June 11, 2024) (Docket No. 785); *In re Air Methods Corp.*, No. 23-90886 (MI) (Bankr. S.D. Tex. 2023) (Docket No. 314); *In re Nat'l Cinemedia, LLC*, No. 23-90291 (DRJ) (Bankr. S.D. Tex. June 6, 2023) (Docket No. 299); *In re Basic Energy Servs.*, Inc., No. 21-90002 (DRJ) (Bankr. S.D. Tex. Oct. 21, 2021) (Docket No. 523); *In re Belk., Inc.*, No. 21-30630 (MI) (Bankr. S.D. Tex. Mar. 31, 2021) (Docket No. 797); *In re Gavilan Res., LLC*, No. 20-32656 (DRJ) (Bankr. S.D. Tex. July 15, 2020) (Docket No. 229); *In re Alta Mesa Res., Inc.*, No. 19-35133 (MI) (Bankr. S.D. Tex. Mar. 2, 2020) (Docket No. 1306); *In re Sheridan Holding Co. II, LLC*, No. 19-35198 (MI) (Bankr. S.D. Tex. Nov. 6, 2019) (Docket No. 210); *In re Vanguard Nat. Res., Inc.*, No. 19-31786 (DRJ) (Bankr. S.D. Tex. May. 21, 2019) (Docket No. 360); and *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. Jul. 13, 2017) (Docket No. 196).

24.     Accordingly, as part of the Application, the Debtors request that the Court approve the Indemnification Letter and the obligations contained therein.

## FEES

25.     The Debtors understand that Lazard will apply to the Court for allowance of compensation and reimbursement of expenses for the Services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Bankruptcy Rules, orders of this Court, and guidelines established by the U.S. Trustee.

## NO DUPLICATION OF SERVICES

26.     Lazard's services are intended to complement, and not duplicate, the services to be rendered by any other professional retained by the Debtors in these Chapter 11 Cases.  Lazard has informed the Debtors that it understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will use its reasonable efforts to work

cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## LAZARD'S DISINTERESTEDNESS

27.     Section 327(a) of the Bankruptcy Code provides that, "[t]o be eligible for employment under § 327(a), a professional person must show that it (i) is disinterested; and (ii) does not hold or represent an interest adverse to the bankruptcy estate." *In re McDermott Int'l, Inc.*, 614 B.R. 244, 249 (Bankr. S.D. Tex. 2020) (citing *In re American Int'l Refinery, Inc.*, 676 F.3d 455, 461 (5th Cir. 2012)).

28.     To the best of the Debtors' knowledge, information, and belief, and except and to the extent disclosed herein and in the Tempke Declaration, Lazard is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and holds no interest materially adverse to the Debtors or their estates in connection with the matters for which Lazard is to be retained by the Debtors.

29.     As set forth in further detail in the Tempke Declaration, Lazard has certain connections with creditors and other parties in interest in these Chapter 11 Cases. All of these matters, however, are unrelated to these Chapter 11 Cases.  Lazard does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Chapter 11 Cases.

30.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Lazard's retention are discovered or arise, Lazard will use reasonable efforts to file a supplemental declaration pursuant to Bankruptcy Rule 2014.

31.     Additionally, during the 90-day period prior to the Petition Date, Lazard was paid in the ordinary course certain fees and expense reimbursements.  Specifically: (i) on May 15, 2026, Lazard was paid $122,913.00 on account of certain expense reimbursements pursuant to the Prior

Letter; (ii) on May 22, 2026, Lazard was paid $150,000.00 on account of its May 2026 Monthly Fee; and (iii) on June 1, 2026, Lazard was paid $150,000.00 on account of its June 2026 Monthly Fee, $1,200,000 on account of the Debtors' proposed debtor in possession Financing[7] and $10,590.93 on account of certain expense reimbursements.[8]

## BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

32.     The Debtors seek approval of Lazard's retention and compensation structure pursuant to Bankruptcy Code sections 327(a) and 328(a).  Bankruptcy Code section 327(a) provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtor] in carrying out the [Debtor's] duties under this title."  11 U.S.C. § 327(a).  Bankruptcy Code section 328(a) provides, in pertinent part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327… on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Thus, Bankruptcy Code section 328(a) permits the compensation of professionals on more flexible terms that reflect the nature of their services and market conditions.

33.     The Debtors believe that the Fee Structure appropriately reflects the nature and scope of services to be provided by Lazard in these Chapter 11 Cases, Lazard's substantial experience providing financial advisory services in chapter 11 cases, and the fee structures typically utilized by financial advisors of similar stature to Lazard for comparable engagements.

---

[7]    Prior to the commencement of these Chapter 11 Cases, Lazard returned $600,000.00 to the Debtors to reflect changes to the amount of the proposed debtor in possession Financing.

[8]    To the extent any other amounts were due and payable under the Engagement Letter as of the Petition Date, Lazard agrees to waive any such prepetition amounts upon entry of the Order.

In light of the foregoing and for reasons previously stated, the Debtors submit that Lazard's employment is necessary and in the best interests of the Debtors, their estates, and all stakeholders. Additionally, as described herein and in the Tempke Declaration, Lazard is disinterested. Accordingly, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules to support entry of an order authorizing the Debtors to retain and employ Lazard in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

**WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

34.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Application is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

**NOTICE**

35.     Notice of this Application will be given to: (a) the U.S. Trustee, (b) counsel to the Prepetition Secured Lender, (c) counsel to the DIP Lender, (d) the parties included on the Debtors' consolidated list of their 30 largest unsecured creditors, (e) the office of the attorney general for each of the states in which the Debtors operate; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service, (h) the United States Securities and Exchange Commission, (i) the United States Department of Justice; (j) the California Public Utilities Commission; (k) any party that has requested notice pursuant to Bankruptcy Rule 2002,

and (l) all parties entitled to notice pursuant to Local Bankruptcy Rules 2002-1(b) and 9013-1(m).

The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

36.     No previous request for the relief sought herein has been made to this Court or any other court.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

## CONCLUSION

The Debtors respectfully request that this Court enter the Proposed Order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: Overland Park, Kansas

June 24, 2026

**SEARLES VALLEY MINERALS INC.**
on behalf of itself and each of its affiliated
Debtors and Debtors in Possession


By:   */s/ Dennis Cruise*
Name: Dennis Cruise
Title:   President
Searles Valley Minerals Inc.