**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**APPLICATION OF THE DEBTORS FOR ENTRY OF**
**AN ORDER (I) AUTHORIZING THE RETENTION AND**
**EMPLOYMENT OF SKADDEN, ARPS, SLATE, MEAGHER**
**& FLOM LLP AS COUNSEL TO THE DEBTORS EFFECTIVE**
**AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

Searles Valley Minerals Inc. ("**SVM**") and certain of its subsidiaries, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this application (this "**Application**"):

**RELIEF REQUESTED**

1.      Through this Application, pursuant to sections 327(a) and 329 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"), the Debtors respectfully request entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**") (i) authorizing the employment of Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**" or

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A).  The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

the "**Firm**") as counsel for the Debtors, effective as of the Petition Date, to perform the legal services that will be necessary during the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as more fully described herein, pursuant to and in accordance with the terms and conditions set forth in the engagement letter between the Debtors and Skadden, effective as of May 1, 2026 (the "**Engagement Agreement**"), and (ii) granting related relief.  In support of this Application, the Debtors submit the *Declaration of James J. Mazza, Jr. in Support of the Debtors' Application for an Order (I) Authorizing the Employment and Retention of Skadden, Arps, Slate, Meagher & Flom LLP as Counsel to the Debtors Effective as of the Petition Date and (II) Granting Related Relief* (the "**Mazza Declaration**"), attached hereto as **Exhibit B**, and the *Declaration of Dennis Cruise in Support of the Debtors' Application for an Order (I) Authorizing the Employment and Retention of Skadden, Arps, Slate, Meagher & Flom LLP as Counsel to the Debtors Effective as of the Petition Date and (II) Granting Related Relief* (the "**Cruise Declaration**") attached hereto as **Exhibit C**.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157(a)–(b)(1) and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The legal predicates for the relief requested herein are sections 327(a) and 329 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1.

4.      Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors confirm their consent to the entry of a final judgment or order by this Court in connection with the Application if it is

later determined that this Court would lack Article III power to enter such final order absent the consent of the parties.

## BACKGROUND

5.     On the date hereof (the "**Petition Date**"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered.

6.     The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7.     To date, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed a creditors' committee in the Chapter 11 Cases, nor has any trustee or examiner been appointed therein.

8.     SVM (together with its Debtor and non-Debtor subsidiaries, the "**Company**") operates a vertically integrated mining and processing complex at Searles Lake in Trona, California, where it produces critical industrial minerals, including borates, sodium sulfate, and salt, sourced from one of the largest known deposits of water-soluble borates in North America.  The Company is among the largest and lowest cost producers of borates, serving a diversified global customer base across industrial, agricultural, and specialty chemical end markets.  The Company historically mined and processed Sodium Carbonate (soda ash) until February 2026, and continues to source and supply soda ash to its customers in North America.  In addition, the Debtors source and provide potable water for approximately 760 residential and commercial customers in certain areas on the west shoreline of Searles Lake, California, including the town of Trona, California.   The Company's business operations,

corporate and capital structures, and restructuring efforts are described in greater detail in the *Declaration of Adrian Frankum in Support of Chapter 11 Petitions and First Day Papers*.

## SKADDEN'S QUALIFICATIONS

9.      The Debtors retained Skadden, effective as of May 1, 2026, to advise them in connection with one or more strategic transactions, including a potential restructuring through a chapter 11 filing and a sale under section 363 of the Bankruptcy Code.   A copy of the Engagement Agreement is attached to the Mazza Declaration as **Exhibit 1**.

10.      During the months leading up to the Chapter 11 Cases, Skadden worked closely with the Debtors and their other advisors to explore various strategic alternatives to address the Debtors' financial circumstances and prepare the Debtors for a smooth operational transition into chapter 11.   In addition, prior to the commencement of the Chapter 11 Cases, Skadden represented the Debtors in connection with the three components of financing supporting these Chapter 11 Cases—namely, the supply and liquidity arrangement with TATA Chemicals North America Inc.; new capital in the form of a junior DIP facility from Karnavati Holdings, Inc., the Debtors' parent; and the use of cash collateral with the consent of the Debtors' prepetition secured lender, HSBC Bank USA, N.A., alongside an adequate protection package.   Skadden also worked with the Debtors to develop bidding procedures and an asset purchase agreement to be imminently filed, which will be a key transaction document for these Chapter 11 Cases.

11.      As a result of this working history, Skadden has considerable institutional knowledge about the Debtors' capital structure, governance, financing documents, and other material agreements.  Additionally, Skadden is intimately familiar with the Debtors' business affairs and the potential legal issues that may arise in the context of these Chapter 11 Cases. Given Skadden's work and particular knowledge of the Debtors' business, the Skadden team is

particularly well-suited to assist the Debtors with their objective to maximize value during the timeline of these Chapter 11 Cases.

12. The Debtors selected Skadden as their restructuring counsel because of Skadden's experience in the fields of debtors' and creditors' rights, mergers and acquisitions, and business reorganizations under chapter 11 of the Bankruptcy Code and knowledge of the Debtor's business. The Debtors believe that Skadden has assembled a highly qualified team of professionals and paraprofessionals to provide services to the Debtors during the Chapter 11 Cases.

13. Additional information regarding Skadden's qualifications is set forth more fully in the Mazza Declaration.

## SCOPE OF SERVICES TO BE PROVIDED

14. The Debtors seek to retain Skadden, pursuant to the Engagement Agreement, to render various services, including, but not limited to, the following:

(i) advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their business and properties;

(ii) attend meetings and negotiate with representatives of creditors and other parties in interest and advise and consult on the conduct of the Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

(iii) take all necessary actions to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of actions commenced against the Debtors' estates, negotiations concerning litigation in which the Debtors may be involved, and objections to claims filed against the Debtors' estates;

(iv) prepare on behalf of the Debtors motions, applications, answers, orders, reports, and papers necessary to the administration of the estates;

(v) advise the Debtors and negotiate on the Debtors' behalf regarding the sale of all or substantially all assets pursuant to Bankruptcy Code Section 363 and all related agreements or documents;

(vi)  negotiate and prepare on the Debtors' behalf chapter 11 plan(s) and all related agreements and/or documents, and take any necessary action on behalf of the Debtors in connection with the Chapter 11 Cases;

(vii)  explore various strategic alternatives to address the Debtors' financial circumstances;

(vii)  appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtors' estates before such courts and the U.S. Trustee; and

(viii)  perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with the Chapter 11 Cases.

15.    It is necessary and essential that the Debtors, as debtors in possession, employ attorneys to render the foregoing professional services to enable the Debtors to carry out their duties as debtors and debtors in possession.  Skadden has indicated a willingness to act on behalf of, and render such services to, the Debtors.  Moreover, corporate legal issues in bankruptcy require a specialized skillset, and Skadden professionals have extensive experience with respect to these issues.

16.    The Debtors have filed or are planning to file retention applications for other professionals in the Chapter 11 Cases.  In particular, the Debtors are seeking Court approval for the retention of: (i) Pachulski Stang Ziehl & Jones LLP ("**Pachulski**"), as co-counsel, specifically handling conflicts and efficiency matters; (ii) Ankura Consulting Group, LLC, as financial advisor; (iii) Lazard Frères & Co. LLC and Lazard & Co., Limited, as investment banker; and (iv) Stretto, Inc. as claims, noticing, and administrative agent.  Skadden has informed the Debtors that it will take appropriate steps and use reasonable efforts to coordinate with the Debtors' other professionals to avoid unnecessary duplication of efforts.

### SKADDEN'S COMPENSATION

17.    Skadden will accept as compensation for its work during the Chapter 11 Cases such sums as may be allowed by this Court based on (i) the basis of the professional time spent;

(ii) the rates charged for such services; (iii) the necessity of such services to the administration of the estates; (iv) the reasonableness of the time within which the services were performed; and (v) the complexity, importance, and nature of the problems, issues, or tasks addressed in these Chapter 11 Cases.  Additionally, Skadden will seek compensation for all time and expenses associated with its retention as a section 327(a) professional, including the preparation of this Application, the Mazza Declaration, and related documents, as well as any monthly fee statements or interim and final fee applications.

18.     Skadden's fees for professional services are based on its guideline hourly rates, which are periodically adjusted.  Since January 1, 2026, the hourly rates under the Firm's standard rate structure have ranged from $795 to $1,825 for associates; $1,930 to $2,125 for counsel; and $2,175 to $2,850 for partners (collectively, the "**Skadden Rates**").  Skadden has advised the Debtors pursuant to its Engagement Letter that the hourly rates set forth above are subject to periodic increases in the normal course of the Firm's business, often due to the increased experience of a particular professional and year over year increases.  Skadden will provide notice of any future rate increase to the Debtors, the U.S. Trustee, and any official committee appointed in these Chapter 11 Cases.

19.     Consistent with the Firm's policy with respect to its other clients, Skadden will continue to charge the Debtors for all other services provided and for other charges and disbursements incurred in the rendition of services.  These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, and witness fees and other fees related to trials and hearings.  Charges and disbursements are invoiced pursuant to Skadden's *Policy*

*Statement Concerning Charges and Disbursements*, which is annexed to the Engagement Agreement.

20.     As set forth in the Mazza Declaration, the Firm received several payments in the form of an advanced payment retainer (the "**Advanced Payment Retainer**").  During the ninety (90) days prior to the Petition Date, the firm received an initial Advanced Payment Retainer in the amount of $750,000, which was subsequently increased, for prepetition services and expenses.  During this 90-day period, the Firm received several payments totaling $3,842,193.80, including the initial $750,000, to be held in the form of an Advanced Payment Retainer.  Prior to the Petition Date, the Firm's fees and expenses were invoiced and applied against the Advanced Payment Retainer as they were incurred.  As of the Petition Date, Skadden held an Advanced Payment Retainer balance of $1,023,504.56 and is currently reconciling that amount against prepetition services performed.

21.     As of the Petition Date, the Debtors did not owe Skadden any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred but not yet applied to the Advanced Payment Retainer, the amount of Skadden's Advanced Payment Retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

22.     Skadden intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in the Chapter 11 Cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders entered in the Chapter 11 Cases governing professional compensation and reimbursement for services rendered and charges and

disbursements incurred.  Skadden will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtors in the Chapter 11 Cases at the then current rate charged for such services as described herein.  Pursuant to this Application, Skadden seeks to apply any funds presently held as a retainer to pay any fees, charges, and disbursements relating to services rendered to the Debtors prior to the Petition Date that remain unpaid as of such date.

23.    Other than as set forth above, no commitments have been made or received by Skadden with respect to compensation to be paid in the Chapter 11 Cases.

24.    Except for sharing arrangements among Skadden, its affiliated law practice entities, and their respective members, Skadden has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

## DISINTERESTEDNESS

25.    The Debtors understand that except as otherwise set forth herein and in the accompanying Mazza Declaration:

(i)    Neither Skadden nor any attorney at the Firm holds or represents an interest adverse to the estates.

(ii)   Neither Skadden nor any attorney at the Firm is or was a creditor, an equity security holder, or an insider of the Debtors.

(iii)  Neither Skadden nor any attorney at the Firm is or was, within two (2) years before the Petition Date, a director, officer, or employee of the Debtors.

(iv)   Neither Skadden nor any attorney at the Firm has an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or for any other reason.

26.    In view of the foregoing, the Debtors believe that Skadden: (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by

section 1107(b) of the Bankruptcy Code, and (ii) does not hold nor represent any interest that is adverse to the Debtors or their estates as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code.

27.     As set forth in the Mazza Declaration, prior to the commencement of these Chapter 11 Cases, Skadden formerly represented Nirma Limited ("**Nirma**"), the Debtors' ultimate parent, in connection with the out-of-court sale process of its interest in and strategic options related to its indirectly wholly-owned subsidiary SVM and certain litigation matters in which the Firm jointly represented Nirma and SVM.  When the out-of-court process did not produce an actionable transaction and a potential chapter 11 filing to effect a 363 sale became a strategic option, the Debtors determined that, given Skadden's familiarity with the Debtors, their finances, and the business, Skadden would be best-positioned to represent the Debtors in connection with their chapter 11 filing and Bankruptcy Code section 363 sale process.  In connection therewith, Skadden contemporaneously withdrew from its prior representations of Nirma (with the express consent of Nirma and acknowledgement by the Debtors) and was retained by the Debtors.  Nirma has also retained its own counsel at Troutman Pepper Locke LLP to represent it in connection with these Chapter 11 Cases.

28.     Skadden also has previously represented Nirma in connection with other potential acquisitions of third-party targets unrelated to the Debtors, the last of which concluded several years ago.  Skadden does not have any current representations of Nirma in any matters.

29.     The Debtors have also retained Pachulski to represent them as co-counsel, specifically handling conflicts and efficiency matters in these Chapter 11 Cases, including to assist SVM's independent director with investigating prepetition related-party transactions and to assist the Debtors in connection with various chapter 11 administrative matters.

30.    Additionally, Skadden in the past has represented, currently represents, and in the future likely will represent certain other parties in interest or their affiliates in matters that are either unrelated to the Chapter 11 Cases, or otherwise not adverse to the Debtors or their estates.

31.    Skadden has informed the Debtors that throughout the Chapter 11 Cases, Skadden will continue to conduct periodic conflicts analyses to determine whether it is performing or has performed services for any significant parties in interest in the Chapter 11 Cases and that Skadden will promptly file a supplemental declaration to disclose any material developments regarding the Debtors or any other pertinent relationships or connections that come to Skadden's attention.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

32.    Skadden will apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of this Court.  Skadden also intends to make a reasonable effort to comply with U.S. Trustee requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "**U.S. Trustee Guidelines**"), both in connection with this Application and the interim and final fee applications to be filed by Skadden in the Chapter 11 Cases.

33.    The following information is provided by Skadden pursuant to paragraph D.1 of the U.S. Trustee Guidelines:

**Question:**    Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Answer:     No.

**Question:**  Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Answer:     No.

**Question**:  If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Answer:     Skadden represented the client in the 12 months prepetition.  During that representation, Skadden did not raise its billing rates, and the material financial terms for the prepetition engagement did not change.

**Question**:  Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

Answer:     The Debtors have developed a 13-week cash flow budget, which includes a line item for "Professional Fees," including Skadden's good-faith estimated fees.  Using this budget as a guide, Skadden and the Debtors are developing a Skadden-specific prospective budget and staffing plan in coordination with conflicts and efficiency counsel, Pachulski.  Recognizing that unforeseeable fees and expenses may arise in complex chapter 11 cases, Skadden and the Debtors may need to amend the Skadden budget as necessary to reflect changed circumstances or unanticipated developments.  Skadden and the Debtors will comply with the U.S. Trustee's requests for information and additional disclosures and with any orders of this Court.

34.     The Debtors request approval of the employment of Skadden effective as of the Petition Date.  Such relief is warranted by the circumstances presented by the Chapter 11 Cases.

### BASIS FOR RELIEF

35.     The Debtors seek retention of Skadden as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

36.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the need for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, the proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, and any person employed in the United States trustee's office.

Fed. R. Bankr. P. 2014.

37.     The Debtors submit that for all the reasons stated above and in the Mazza Declaration, the retention and employment of Skadden as counsel to the Debtors is warranted. Further, as stated in the Mazza Declaration, Skadden is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Mazza Declaration.

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

38.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Application is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

39.     Notice of this Application will be given to: (a) the U.S. Trustee; (b) counsel to the Prepetition Secured Lender; (c) counsel to the DIP Lender; (d) the parties included on the Debtors' consolidated list of their 30 largest unsecured creditors; (e) the office of the attorney general for each of the states in which the Debtors operate; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the United States Department of Justice; (j) the California Public Utilities Commission; (k) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (l) all parties entitled to notice pursuant to Local Bankruptcy Rules 2002-1(b) and 9013-1(m).  The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

40.     No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

The Debtors respectfully request that this Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: June 24, 2026
          Overland Park, Kansas

Searles Valley Minerals Inc.
(on behalf of itself and the other Debtors)

By:     */s/ Dennis Cruise*
Name: Dennis Cruise
Title:  President