## EXHIBIT B

**Mazza Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**DECLARATION OF JAMES J. MAZZA, JR.**
**IN SUPPORT OF THE DEBTORS' APPLICATION FOR AN ORDER**
**(I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF SKADDEN,**
**ARPS, SLATE, MEAGHER & FLOM LLP AS COUNSEL TO THE DEBTORS**
**EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

I, James J. Mazza, Jr., pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am a member of the firm of Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**" or the "**Firm**"), which maintains offices for the practice of law at, among other locations, 320 S Canal St, Chicago, IL 60606. I am admitted in, practicing in, and a member in good standing of the bar of the State of Illinois. I submit this declaration and statement (this "**Declaration**"): (i) in support of the *Debtors' Application for an Order (I) Authorizing Employment and Retention of Skadden, Arps, Slate, Meagher & Flom LLP as Counsel to the Debtors Effective as of the Petition Date and (II) Granting Related Relief* (the "**Application**"),[2] filed contemporaneously herewith by the debtors and debtors in possession (collectively, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

1

"**Debtors**" and together with their non-debtor subsidiaries, the "**Company**") in the above-captioned cases (the "**Chapter 11 Cases**"), (ii) in compliance with sections 329 and 504 of title 11 of the United States Code (the "**Bankruptcy Code**"), and (iii) to provide the disclosure required under (a) Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and (b) Rules 2014-1 and 20161 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**").

2.      Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

### SKADDEN'S QUALIFICATIONS

3.      The Debtors retained Skadden, effective as of May 1, 2026, to advise them in connection with one or more strategic transactions, including a potential restructuring through a chapter 11 filing and a sale under section 363 of the Bankruptcy Code.   A copy of the Engagement Agreement is attached hereto as **Exhibit 1**.

4.      During the months leading up to the Chapter 11 Cases, Skadden worked closely with the Debtors and their other advisors to explore various strategic alternatives to address the Debtors' financial circumstances and prepare the Debtors for a smooth operational transition into chapter 11.   In addition, prior to the commencement of the Chapter 11 Cases, Skadden represented the Debtors in connection with the three components of financing supporting these Chapter 11 Cases—namely, the supply and liquidity arrangement with TATA Chemicals North America Inc.; new capital in the form of a junior DIP facility from Karnavati Holdings, Inc., the Debtors' parent; and the use of cash collateral with the consent of the Debtors' prepetition secured lender, HSBC Bank USA, N.A., alongside an adequate protection package.   Skadden

also worked with the Debtors to develop bidding procedures and an asset purchase agreement to be imminently filed, which will be a key transaction document for these Chapter 11 Cases.

5.    As a result of this working history, Skadden has considerable institutional knowledge about the Debtors' capital structure, governance, financing documents, and other material agreements.  Additionally, Skadden is intimately familiar with the Debtors' business affairs and the potential legal issues that may arise in the context of these Chapter 11 Cases. Given Skadden's work and particular knowledge of the Debtors' business, the Skadden team is particularly well-suited to assist the Debtors with their objective to maximize value during the timeline of these Chapter 11 Cases.

6.    Skadden understands that the Debtors selected the Firm as their counsel because of the Firm's experience and knowledge in the fields of debtors' and creditors' rights, mergers and acquisitions, and business reorganizations under chapter 11 of the Bankruptcy Code and knowledge of the Debtor's business.  Skadden believes it has assembled a highly qualified team of professionals and paraprofessionals to provide services to the Debtors during their Chapter 11 Cases.  Professionals in the Firm's corporate restructuring, mergers and acquisitions, finance, litigation, tax, and other practices—many of whom also have extensive experience and are highly regarded in corporate restructuring—will participate in the representation of the Debtors in their Chapter 11 Cases, including: Dohyun Kim (corporate); Danielle Li (finance); and myself (corporate restructuring).

7.    I believe Skadden has the knowledge and experience necessary to deal effectively with the issues that may arise during the timeline of these Chapter 11 Cases (including the section 363 sale of substantially all of the Debtors' assets) and that Skadden is well positioned to provide the Debtors with the type of legal services they will require as debtors in possession.

3

Accordingly, subject to this Court's approval of the Application, Skadden is willing to perform the services requested by the Debtors, as set forth herein, in the Application, and the Engagement Agreement.

## SCOPE OF SERVICES TO BE PROVIDED

8.      The Debtors seek to retain Skadden, pursuant to the Engagement Agreement, to render various services, including, but not limited to, the following:

(i)      advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

(ii)     attend meetings and negotiate with representatives of creditors and other parties in interest and advise and consult on the conduct of the Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

(iii)    take all necessary actions to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of actions commenced against the Debtors' estates, negotiations concerning litigation in which the Debtors may be involved, and objections to claims filed against the Debtors' estates;

(iv)     prepare on behalf of the Debtors motions, applications, answers, orders, reports, and papers necessary to the administration of the estates;

(v)      advise the Debtors and negotiate on the Debtors' behalf regarding the sale of all or substantially all assets pursuant to Bankruptcy Code Section 363 and all related agreements or documents;

(vi)     negotiate and prepare on the Debtors' behalf chapter 11 plan(s) and all related agreements and/or documents, and take any necessary action on behalf of the Debtors in connection with the Chapter 11 Cases;

(vii)    explore various strategic alternatives to address the Debtors' financial circumstances;

(viii)   appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtors' estates before such courts and the U.S. Trustee; and

(ix)    perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with the Chapter 11 Cases.

9.    It is necessary and essential that the Debtors, as debtors in possession, employ attorneys to render the foregoing professional services to enable the Debtors to carry out their duties as debtors in possession.  Skadden is willing to act on behalf of, and render such services to, the Debtors.  Moreover, Skadden's professionals have extensive experience and a developed specialized skillset to confront corporate legal issues in bankruptcy.

10.    Skadden understands that the Debtors either have filed or are planning to file retention applications for other professionals in the Chapter 11 Cases.  In particular, the Debtors are seeking Court approval for the retention of: (i) Pachulski Stang Ziehl & Jones LLP ("**Pachulski**"), as co-counsel, specifically handling conflicts and efficiency matters; (ii) Ankura Consulting Group, LLC, as financial advisor; (iii) Lazard Frères & Co. LLC and Lazard & Co., Limited ("**Lazard**"), as investment banker; and (iv) Stretto, Inc. as claims, noticing, and administrative agent.  Skadden will take appropriate steps and use reasonable efforts to coordinate with the Debtors' other professionals to avoid duplication of efforts.

## SKADDEN'S COMPENSATION

11.    Skadden will accept as compensation for its work during the Chapter 11 Cases such sums as may be allowed by this Court based on: (i) the basis of the professional time spent; (ii) the rates charged for such services; (iii) the necessity of such services to the administration of the estates; (iv) the reasonableness of the time within which the services were performed; and (v) the complexity, importance, and nature of the problems, issues, or tasks addressed in these Chapter 11 Cases.  Additionally, Skadden will seek compensation for all time and expenses associated with its retention as a section 327(a) professional, including the preparation of this

5

Declaration, the Application, and related documents, as well as any monthly fee statements or interim and final fee applications.

12.    Skadden's fees for professional services are based on its guideline hourly rates, which are periodically adjusted.  Since January 1, 2026, the hourly rates under the Firm's standard rate structure have ranged from $795 to $1,825 for associates; $1,930 to $2,125 for counsel; and $2,175 to $2,850 for partners (collectively, the "**Skadden Rates**").

13.    The Skadden Rates reflect that restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.  The Firm also believes that the Skadden Rates are comparable to those used in similar circumstances by other similarly skilled professionals.  Skadden has advised the Debtors pursuant to its Engagement Letter that the Skadden Rates are subject to periodic increases in the normal course of the Firm's business.  Skadden will provide notice of any rate increases to the Debtors, the U.S. Trustee, and any official committee appointed in these Chapter 11 Cases.

14.    Consistent with the Firm's policy with respect to its other clients, Skadden will continue to charge the Debtors for all other services provided and for other charges and disbursements incurred in the rendition of services.  These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, and witness fees and other fees related to trials and hearings.  Charges and disbursements are invoiced pursuant to Skadden's *Policy Statement Concerning Charges and Disbursements*, which is annexed to the Engagement Agreement.

15.    As described in more detail in the Engagement Agreement, the Firm has received payments in the form of an advanced payment retainer (the "**Advanced Payment Retainer**") to

account for professional services rendered and to be rendered and charges and disbursements incurred. Upon receipt of the amounts in the Advanced Payment Retainer, the payments are deposited into a Firm operating account, and the Advanced Payment Retainer becomes the property of the Firm.

16. During the ninety (90) days prior to the Petition Date, the Firm received an initial Advanced Payment Retainer in the amount of $750,000, which was subsequently increased, for prepetition services and expenses. During this 90-day period, the Firm received several payments totaling $3,842,193.80, including the initial $750,000, to be held in the form of an Advanced Payment Retainer. Prior to the Petition Date, the Firm's fees and expenses were invoiced and applied against the Advanced Payment Retainer as they were incurred. As of the Petition Date, Skadden held an Advanced Payment Retainer balance of $1,023,504.56 and is currently reconciling that amount against prepetition services performed.

17. As of the Petition Date, the Debtors did not owe Skadden any amounts for legal services rendered before the Petition Date. Although certain expenses and fees may have been incurred but not yet applied to the Advanced Payment Retainer, the amount of Skadden's Advanced Payment Retainer always exceeded any amounts listed or to be listed on statements described services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

18. Skadden intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in the Chapter 11 Cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders entered in the Chapter 11 Cases governing professional compensation and reimbursement for services rendered and charges and

disbursements incurred.  Skadden will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtors in the Chapter 11 Cases at the then current rate charged for such services as described herein.  Pursuant to the Application, Skadden seeks to apply any funds presently held as a retainer to pay any fees, charges, and disbursements relating to services rendered to the Debtors prior to the Petition Date that remain unpaid as of such date.

19.     Other than as set forth above, no commitments have been made or received by Skadden with respect to compensation to be paid in the Chapter 11 Cases.

20.     Except for sharing arrangements among Skadden, its affiliated law practice entities, and their respective members, Skadden has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Bankruptcy Code section 504(b)(1).

**DISINTERESTEDNESS**

21.     To the best of my knowledge, and except as otherwise set forth herein, the members, counsel, and associates of Skadden (i) do not have any connection with any of the Debtors, their affiliates, their creditors, or any other party in interest, the respective attorneys and accountants of the Debtors and certain key creditor groups, the U.S. Trustee or any person employed in the office of the same, or any judge in the Bankruptcy Court or District Court for the District of Delaware or any person employed in the offices of the same, (ii) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and (iii) do not hold or represent any interest adverse to the estates.

22.     Skadden in the past has represented, currently represents, and in the future likely will represent certain parties in interest or their affiliates in matters that are either unrelated to the Chapter 11 Cases, or otherwise not adverse to the Debtors or their estates.  To that end, Skadden

conducted a disclosure review with respect to the Debtors and significant parties in interest in the Debtors' cases.

## I.     Firm Procedures.

23.     In preparing this Declaration, I relied on information brought to my attention under the procedures the Firm uses to evaluate employment and retention by potential debtors under the Bankruptcy Code.  Specifically, the Firm has taken the actions described herein to identify parties relevant to the Chapter 11 Cases and the Firm's connections to such parties.

24.     In particular, Skadden, with the assistance of the Debtors and the Debtors' professionals, compiled a list of the Debtors, non-Debtor affiliates, and other parties in interest (such parties, as set forth as **Exhibit 2** attached hereto, the "**Potential Interested Parties**" and the list thereof, the "**Potential Interested Parties List**") to review.

25.     The Potential Interested Parties List includes the following categories: (i) the Debtors and their non-Debtor affiliates; (ii) the Debtors' current and former officers and directors; (iii) the Debtors' Prepetition Secured Lender (as defined below); (iv) the Debtors' lienholders; (v) litigation parties and their counsel; (vi) significant contract counterparties and their counsel; (vii) the Debtors' other professionals; (viii) the Debtors' consolidated thirty (30) largest non-insider unsecured creditors (which are included within other categories as applicable); (ix) the Debtors' competitors; (x) the Debtors' independent contractors; (xi) the Debtors' significant customers, vendors, landlords, insurers, and utility providers; (xii) the Debtors' banking institutions; (xiii) certain governmental, regulatory, and taxing authorities with oversight or authority over the Debtors' business; (xiv) the U.S. Trustee's office; and (xv) the judges and staff of the United States Bankruptcy Court for the District of Delaware.

26.     After compiling the Potential Interested Parties List, attorneys under my supervision submitted and received reports indicating potential matches between the Potential

Interested Parties List and the client database.[3]  The attorneys then conducted a careful review to uncover any connections that warrant disclosure with respect to the Debtors and significant parties in interest in the Chapter 11 Cases, as listed in **Exhibit 2**.

27.    The Firm also sent an inquiry to partners and counsel of the Firm asking whether the partner or counsel has engaged in any past or present representation in connection with or involving the Debtors or is otherwise connected to the Debtors as a creditor, equity security holder, bond or noteholder, stockholder, employee, officer, or director thereof.

## II.    Relationships.

28.    Based upon this examination, Skadden lists in bold italics on **Exhibit 2** where it currently represents a Potential Interested Party, its affiliates, or its material beneficial owners in matters that are either unrelated to the Chapter 11 Cases or otherwise not adverse to the Debtors or their estates.  If no such current relationship exists, Skadden has indicated in italics where it previously represented such entities, affiliates, or material beneficial owners in matters that are either unrelated to the Chapter 11 Cases or otherwise not adverse to the Debtors or their estates.[4] Except for Skadden's past representation (described *infra*, paragraph 29) of Nirma Limited ("**Nirma**"), the Debtors' ultimate parent, in connection with a potential out-of-court sale of the Company and certain litigation against the Company, and subject to further inquiry and subsequent disclosure, all these current and former representations are and were unrelated to the Chapter 11 Cases, the Debtors, and their estates.  I do not believe that Skadden's past or current

---

[3]    In preparing its connections disclosure analysis, Skadden searched its connections disclosure database going back seven (7) years.  Potential Interested Parties or their affiliates, are disclosed as former clients if they were clients and their engagement of Skadden ended within the past seven (7) years.

[4]    The identification and classification therein of various entities or individuals as falling within certain categories is not intended and should not be deemed to be an admission of the legal rights or status of any particular individual or entity.

representation of any Potential Interested Parties, including Nirma, precludes Skadden from being a disinterested party under the Bankruptcy Code.

**(A)    Prepetition Equity Holders.**

29.    Prior to the commencement of these Chapter 11 Cases, Skadden formerly represented Nirma in connection with the out-of-court sale process of its interest in and strategic options related to its indirectly wholly-owned subsidiary Searles Valley Minerals Inc. ("**SVM**") and certain litigation matters in which the Firm jointly represented Nirma and SVM.  When the out-of-court process did not produce an actionable transaction and a potential chapter 11 filing to effect a 363 sale became a strategic option, the Debtors determined that, given Skadden's familiarity with the Debtors, their finances, and the business, Skadden would be best-positioned to represent the Debtors in connection with their chapter 11 filing and Bankruptcy Code section 363 sale process.  In connection therewith, Skadden contemporaneously withdrew from its prior representation of Nirma (with the express consent of Nirma and acknowledgement by the Debtors) and was retained by the Debtors.  Nirma has also retained its own counsel at Troutman Pepper Locke LLP to represent it in connection with these Chapter 11 Cases.

30.    Skadden also has previously represented Nirma in connection with other potential acquisitions of third-party targets unrelated to the Debtors, the last of which concluded several years ago.  Skadden does not have any current representations of Nirma in any matters.  I do not believe that Skadden's past representations of Nirma precludes Skadden from being a disinterested party under the Bankruptcy Code.

31.    The Debtors have also retained Pachulski to represent them as co-counsel, specifically handling conflicts and efficiency matters in these Chapter 11 Cases, including to assist SVM's independent director with investigating prepetition related-party transactions and to assist the Debtors in connection with various chapter 11 administrative matters.

11

**(B)** **The U.S. Trustee, the United States District Court Judges, and the United States Bankruptcy Judges for this District.**

32. I am not related, and, to the best of my knowledge, no attorney at the Firm is related, to any United States Bankruptcy Judge in the District of Delaware or to the U.S. Trustee for such district or any attorney in the office thereof. Chief Judge Karen B. Owens of the United States Bankruptcy Court for the District of Delaware is a former Skadden corporate restructuring associate. Jane Leamy, a trial attorney in the Wilmington office of the U.S. Trustee, is a former Skadden corporate restructuring associate.

**(C)** **Firm Investment Plans**.

33. Skadden maintains a 401(k) plan (the "**Savings Plan**"), a defined contribution pension plan (the "**Retirement Plan**") and a defined benefit pension plan (the "**Cash Balance Plan**," together with the Retirement Plan, the "**Defined Investment Plans**" and, the Defined Investment Plans, together with the Savings Plan, the "**Plans**"). A limited number of attorneys and employees of Skadden serve as trustees of the Plans, and perform other administrative functions, at no cost to the Plans.

34. As described in further detail below, none of Skadden, the Plans, nor the trustees direct any particular investment opportunity, nor do they know into which specific investment the Plan Funds (as defined below) intend to invest in the future.

**(i)** **Savings Plan**

35. With respect to the Savings Plan, its trustees select investment vehicles (which include mutual funds, collective trusts, and separately managed accounts)[5] based upon the advice

---

[5] A collective trust is a trust maintained by a bank, trust company, or similar institution, which is regulated, supervised, and subject to periodic examination by a state or federal agency, for the collective investment and reinvestment of assets contributed thereto from employee benefit plains maintained by more than one employer or controlled group of corporations. See 29 C.F.R. § 2520.103-3(b). More colloquially, it is similar to a mutual

*(cont'd)*

12

and recommendation of an independent investment advisor, and individual participants direct into which of those investment vehicles their contributions and the contributions made by Skadden on their behalf will be invested.[6]  A participant in the Savings Plan may also invest in a self-directed brokerage account, which can only invest in mutual funds.

36.   Accordingly, for the Savings Plan, none of the Firm, the Plan, nor the trustees determine how to allocate contributions (which are decided by Plan participants).  Further, none of the Firm, the Plan, nor the trustees determine in what individual securities a mutual fund or collective trust will invest (which are decided by the manager of the fund or trust pursuant to its fiduciary duty).

### (ii)   Defined Investment Plans

37.   The Defined Investment Plans invest together by pooling their assets.  They invest substantially all assets in Skadden's retirement and pension plan master trust which, under the counsel of an independent investment advisor, in turn, makes investments in a variety of vehicles including mutual funds, collective trusts, limited partnerships, hedge funds, and separately managed accounts (together, the "**Plan Funds**").  Investment decisions by the managers of the Plan Funds are not made by Skadden, the Plans, or their trustees.

38.   The investments in the separately managed accounts are selected by independent investment managers who are unaffiliated with both Skadden and the Defined Investment Plans' trustees.  The holdings of the separately managed accounts primarily consist of common stocks

---

*(cont'd from previous page)*

fund, but is not registered with the SEC, and is only available to retirement plans.  It can sometimes have lower fees than a mutual fund.

[6]   From January 2, 2019, the record-keeper for the Savings Plan is Empower Retirement, part of Great-West Life & Annuity Insurance Company and its affiliates.  These are subsidiaries of Great-West Lifeco Inc., a publicly listed company traded on the Toronto Stock Exchange (ticker GWO).

13

and are a part of investment strategies that their managers execute for multiple parties across multiple accounts.  Neither Skadden nor the Defined Investment Plans' trustees (i) are involved in the selection of individual stock investments, (ii) have any influence or ability to direct the independent investment managers, or (iii) have real-time access to information about individual stock investments.

39.     Given Skadden's lack of control in investments, it is possible that Plan Funds may have invested, may be invested, or may invest in the future in debt or equity securities of parties in interest in the Chapter 11 Cases.

**(D)     Attorney Investments.**

40.     From time to time, attorneys, professional staff, and other Firm personnel, or the significant other or immediate family member sharing a household of the foregoing (collectively, "**Covered Persons**"), personally invest in mutual funds, exchange-traded funds, retirement funds, private equity funds, venture capital funds, hedge funds, fund of funds, and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire an interest in debt or equity securities of many companies, one of which may be one of the Debtors' creditors or other parties in interest in the Chapter 11 Cases, often without Skadden's knowledge.  Each such Covered Person generally owns substantially less than one percent of any individual Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. The Investment Funds are generally operated as a blind pool, meaning that when people make an investment in an Investment Fund, they do not know what securities the Investment Fund will purchase or sell and have no control over such purchases or sales.

41.     From time to time, Skadden makes investment partnerships ("**IPs**") available to attorneys   and   employees.     The   IPs   operate   under   an   SEC   exemptive   application

14

(the "**Exemptive Application**") as an employees' securities company under Rule 6b-1 under the Investment Company Act of 1940.  The IPs focus on private equity and private credit investment opportunities proposed by independent investment advisory firms.  In accordance with the Exemptive Application, investment decisions are approved by the partners and employees of Skadden responsible for managing and administering IPs, comprised of not less than three partners of Skadden (the "**Investment Committee**").  Certain other Skadden attorneys and employees who are not members of the Investment Committee perform merely ministerial duties for the IPs and do not approve or reject any particular investments made (or not made) by the IPs.  Skadden itself may also from time to time access private investment opportunities via passive investment vehicles.

42.     From time to time, one or more Skadden partners voluntarily choose to form an entity (a "**Passive-Intermediary Entity**") to invest in one or more Investment Funds or, in certain instances, directly in private companies.  Such Passive-Intermediary Entity is comprised only of persons who were Skadden partners or retired partners at the time of the Passive-Intermediary Entity's formation (although some may later become former Skadden partners).  Participation in such a Passive-Intermediary Entity is wholly voluntary and only a portion of Skadden partners choose to participate.  Skadden itself does not invest in the Passive-Intermediary Entity.

43.     The Passive-Intermediary Entity does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  Each Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment Funds will purchase or sell, and has no control over such purchases or

15

sales. The Passive-Intermediary Entities commonly receive periodic statements and communications from the underlying Investment Funds. The Skadden partners participating in the Passive Intermediary may or may not know the identity of the Investment Fund's underlying investments or the identity of the securities purchased, sold, or held by the Investment Fund.

44.     From time to time, Covered Persons personally directly acquire a debt or equity security of a company, which may be (or become) one of the Debtors' creditors or other parties in interest in the Chapter 11 Cases. Skadden has a long-standing policy prohibiting Covered Persons from trading securities issued by any company or other entity about which the Firm possesses material non-public information.

45.     As discussed above, the Firm's disclosure procedures involve sending a general inquiry to all Skadden attorneys to determine whether any Covered Persons or any Passive-Intermediate Entities hold or held any claim against or interest adverse to the Debtors, among other things. Thus far, no response to this general inquiry has disclosed the holding of any claim against or interest adverse to the Debtors.

**(E)     Prior Representation of Current Skadden Attorneys.**

46.     Certain Skadden attorneys and other professionals have in the past, prior to their employment by Skadden, represented, or were employed by, certain Potential Interested Parties on matters unrelated to the Debtors and their Chapter 11 Cases or are otherwise not adverse to the Debtors or their estates. Furthermore, certain Skadden attorneys may be related to, or have relationships with, or other interests in, parties in interest, or members, employees, or directors of such Potential Interested Party.

47.     Furthermore, Lazard, proposed investment banker to the Debtors, is currently in the process of soliciting bidders pursuant to the postpetition bidding process and potential auction contemplated by the *Motion of Debtors for Entry of an Order (I) Approving Bidding*

16

*Procedures for the Sale of Certain or All of the Debtors' Assets; (II) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections; (III) Approving Assumption and Assignment Procedures; (IV) Scheduling a Hearing to Consider any Proposed Sale; and (V) Granting Related Relief* [Docket No. 18] (the "**Bidding Procedures Motion**").  It is possible that certain qualified bidders, once formal bids are submitted, may be current or former clients of the Firm.  Once any bidding deadline approved by this Court has passed and such bidders (if any) are definitively known and qualified in accordance with the approved bidding procedures, Skadden will to the extent necessary promptly supplement its disclosures accordingly.

48.     Many of the Firm's representations of the clients listed on **Exhibit 2** consist of representations in episodic transactional matters, including, for example, M&A transactions, tax matters, structured finance matters, investment management matters, corporate finance matters, as well as litigation matters.  Except as otherwise disclosed in this Declaration, such representations are unrelated to the Debtors or the Chapter 11 Cases or are otherwise not adverse to the Debtors or their estates.  The Firm's representation of these entities will not affect the Firm's representation of the Debtors in the Chapter 11 Cases.

**III.     Skadden is a Disinterested Person.**

49.     Based on the above, to the best of my knowledge, Skadden is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, in that, except as disclosed in this Declaration:

(i)     Neither Skadden nor any attorney at the Firm holds or represents an interest adverse to the estates.

(ii)    Neither Skadden nor any attorney at the Firm is or was a creditor, an equity security holder, or an insider of the Debtors.

17

(iii)    Neither Skadden nor any attorney at the Firm is or was, within two (2) years before the Petition Date, a director, officer, or employee of the Debtors.

(iv)    Neither Skadden nor any attorney at the Firm has an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or for any other reason.

50.    Skadden has instituted and is currently engaged in extensive further inquiry regarding the Debtors' constituencies through further inquiries of its partners, counsel, and associates with respect to the matters contained herein, including the circulation of a special disinterestedness questionnaire to each of the approximately 1,700 partners, counsel, and associates in the Firm's numerous domestic and international offices.  Skadden will promptly file a supplemental declaration should the results of this inquiry or any further inquiries reveal material facts not disclosed herein.  Skadden will continue to comply with its ongoing duty under the Bankruptcy Code to notify this Court if any actual conflict arises, and, if necessary, arrange for an "ethical wall" with respect to any Skadden attorney who worked on any matters with an actual conflict or, if necessary, arrange for representation by any conflicts counsel for the Debtors.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

51.    The following information is provided pursuant to paragraph D.1 of the U.S. Trustee Guidelines:

**Question:**    Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Answer:    No.

**Question:**    Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Answer:    No.

18

**Question**:   If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Answer:   Skadden represented the client in the 12 months prepetition.  During that representation, Skadden did not raise its billing rates, and the material financial terms for the prepetition engagement did not change.

**Question**:   Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

Answer:   The Debtors have developed a 13-week cash flow budget, which includes a line item for "Professional Fees," including Skadden's good-faith estimated fees.  Using this budget as a guide, Skadden and the Debtors are developing a Skadden-specific prospective budget and staffing plan in coordination with conflicts and efficiency counsel, Pachulski.  Recognizing that unforeseeable fees and expenses may arise in complex chapter 11 cases, Skadden and the Debtors may need to amend the Skadden budget as necessary to reflect changed circumstances or unanticipated developments.  Skadden and the Debtors will comply with the U.S. Trustee's requests for information and additional disclosures and with any orders of this Court.


[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 24, 2026
        New York, New York

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ James J. Mazza, Jr.*
James J. Mazza, Jr.
320 S Canal St
Chicago, IL 60606
Telephone: (312) 407-0521
Fax: (312) 827-9322
james.mazza@skadden.com

20

## EXHIBIT 1

**Engagement Agreement**

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
———

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
+1 212 735-2827
EMAIL ADDRESS
Dohyun.Kim@skadden.com

DIRECT DIAL
+1 312 407-0521
EMAIL ADDRESS
James.Mazza@skadden.com

FIRM/AFFILIATE
OFFICES
----------
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
----------
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

<u>CONFIDENTIAL</u>

As of May 1, 2026

Mr. Dennis Cruise
President, Searles Valley Minerals Inc.
9401 Indian Creek Pkwy, Suite 1000
Overland Park, KS 66210

Dear Mr. Cruise:

We are pleased that Searles Valley Minerals Inc. ("SVM") and its direct and indirect subsidiaries (collectively, the "Company") have decided to engage Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden Arps" or the "Firm") in connection with the engagement described below (the "Engagement").

## Scope of Engagement

As described to us, the Engagement involves representing the Company in connection with one or more strategic transactions including a potential restructuring through the filing of a petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and consummation of a sale under section 363 of the Bankruptcy Code, or other financing or transaction, including negotiating with the Company's existing and potential future secured lenders or acquirors.  The Engagement may involve advice as to corporate transactions and corporate governance, negotiations, and other out-of-court agreements with creditors, equity holders, prospective investors, review of documents, preparation of agreements, review and preparation of pleadings, court appearances, possible related litigation and arbitration, and such other actions as both of us deem necessary and desirable.  While the Company is actively pursuing out-of-court initiatives and otherwise seeking to maximize the enterprise value for its stakeholders, we agree that the Engagement also may include advice to, and representation of, SVM and its affiliates as debtors and debtors-in-possession, should any of them seek relief and

Mr. Dennis Cruise
President, Searles Valley Minerals Inc.
As of May 1, 2026
Page 2

become subject to proceedings, each pursuant to the Bankruptcy Code, subject to the approval of our retention by the bankruptcy court.  The services to be provided by the Firm in connection with the Engagement will encompass those legal services normally and reasonably associated with this type of engagement which the Firm has been requested and is able and has agreed to provide and which are consistent with its ethical obligations.  Our Engagement is to represent the Company and not its individual directors, officers, employees, shareholders or members.  However, we anticipate that in the course of the Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

In the event that chapter 11 bankruptcy cases are commenced and our retention is authorized, our representation will include serving as principal bankruptcy counsel to SVM and its subsidiaries as debtors-in-possession.  Such representation also will encompass all out-of-court planning and negotiations attendant to these tasks.

We do not provide opinion letters in connection with restructuring and bankruptcy reorganization cases to clients or to others who may wish to rely upon such letters.  We do not alter this policy except under very unusual circumstances and then only upon further written agreement.

The Company agrees to make, or cause to be made, appropriate employees available to us to assist in factual inquiries and factual determinations, court hearings and appearances, transactions and dealings in relation to the subject matter with regard to which we have been retained.

## Case Management and Coordination of Outside Counsel

In the event that the Company commences chapter 11 cases, it is possible that the Company will need more than one law firm for representation of its interests on substantive matters.  Other than the general representation of the Company by Skadden Arps as restructuring counsel and in any chapter 11 cases, if filed, the Company will of course continue to have discretion to assign specific tasks to co-counsel, adjunct counsel, or special counsel (collectively, "Other Counsel"), as the case may be.  If, as outlined below, we are unable to obtain court approval for all matters in potential chapter 11 cases that you wish us (and we agree) to undertake, our representation would include as many of those matters as are approved by the bankruptcy court.  We are committed to working with the Company and in full cooperation with Other Counsel (if retained) to manage the Engagement on a cost-efficient and productive basis.

## Engagement Personnel

We will be responsible for and actively involved in the Engagement.  Additional lawyers, including those in other practice areas such as such as finance, will be added to the Engagement on an as-needed basis.  Any significant additions to staffing will be discussed with you in advance.

Mr. Dennis Cruise
President, Searles Valley Minerals Inc.
As of May 1, 2026
Page 3

**Fees and Expenses**

Our fees will be based on the time involved in the Engagement and our internal time charges. A schedule of our current hourly time charges is attached as Schedule 1. The range of our current hourly time charges is $795 to $1,825 for associates, $1,930 to $2,125 for counsel and $2,175 to $2,850 for partners. As part of the Firm's ordinary business practices, hourly time charges are periodically reviewed and revised.

As to billing, except as provided below under "Fee Structure and Retainers," we will submit statements for services rendered for payment on a monthly basis and would anticipate payment promptly after receipt. In addition, our billing statements will include charges and disbursements incurred by us in the course of performing legal services. These items will be billed in accordance with our standard practice as described in the attached summary (see Annex A-I), which may be periodically updated.

**Fee Structure and Retainers**

It is customary in matters of this nature for us to receive a reasonable retainer deemed to be an on-account payment and to be paid promptly for services rendered and charges and disbursements incurred on behalf of the Company, including payment for the services rendered and charges and disbursements incurred prior to the date hereof. Given the size and complexity of the Company's affairs, we have requested a payment in the amount of $750,000.00, representing a retainer deemed to be an on-account payment for a portion of professional services rendered and to be rendered and charges and disbursements incurred by us to the Company's account in connection with our representation of the Company including with respect to any consensual non-judicial restructuring as well as any initial preparation that you authorize for cases under chapter 11 of the Bankruptcy Code that may be filed by or against any of the Company (the "Advance Payment Retainer"). The Company agrees to supplement the Advance Payment Retainer from time to time during the course of the Engagement in such amounts as we mutually shall agree are reasonably necessary to maintain the Advance Payment Retainer at a level that will be sufficient to fund Engagement fees, charges and disbursements to be incurred for time periods to be covered by the Advance Payment Retainer. Any portion of the Advance Payment Retainer that is not earned or required for expenses as set forth herein will be refunded to the Company at the close of the Engagement.

Should the Company subsequently decide to seek chapter 11 relief, we may require an additional retainer to cover fees, charges and disbursements to be incurred during the chapter 11 case. We will determine and discuss the amount of any supplemental retainer with you prior to the initiation of any chapter 11 case.

As is the Firm's custom for engagements of this nature, the Advance Payment Retainer (as may be supplemented from time to time) will be treated as an advance payment retainer and will be deposited into and held in a Firm operating account, not in an attorney

Mr. Dennis Cruise
President, Searles Valley Minerals Inc.
As of May 1, 2026
Page 4

escrow or trust account.  By depositing the Advance Payment Retainer in a Firm operating account, the Firm is not creating a so-called "security retainer."

Upon payment and deposit into a Firm operating account, the Advance Payment Retainer becomes the property of the Firm and consequently is readily available to pay the Firm's invoices for legal fees.  The Firm believes deposit of the Advance Payment Retainer into a Firm operating account thus can provide additional protections and advantages for the Company, given the nature of this Engagement and the possibility that without providing the Firm with such Advance Payment Retainer, the Company may be unable to readily access funds to pay the Firm's legal fees.

Ordinarily, a client has the option of either (i) allowing a law firm to deposit an advance payment retainer in the Firm's operating account as the Firm's property, or (ii) instructing the law firm to deposit a retainer in an attorney escrow account.  In this case, however, the Company understands that, because the Advance Payment Retainer ensures the funds necessary to pay for legal counsel will be available, the Firm may decline to undertake this Engagement unless the Company agrees that such Advance Payment Retainer will be deposited in the Firm's operating account as the Firm's property.  Accordingly, the Company waives its option to request that the Firm treat the Advance Payment Retainer as a security retainer that would be property of the Company to be deposited into the Firm's trust account, and the Company gives its informed consent for the Firm to treat the Advance Payment Retainer (as may be supplemented from time to time) as an advance payment retainer and for the Firm to deposit the Advance Payment Retainer in a Firm operating account, not in an attorney escrow or trust account.

We will send the Company periodic invoices (not less frequently than monthly, and possibly more frequently) for services rendered and charges and disbursements incurred on the basis discussed above.  Our fees and expenses shall be deemed automatically applied against the Advance Payment Retainer (as such retainer may be supplemented from time to time) as such fees and expenses are incurred.  Without limiting, and to implement the foregoing, upon transmittal of the invoice, unless the Company elects to promptly pay the presented statement by wire transfer, the Firm shall draw upon the Advance Payment Retainer (as may be supplemented from time to time) in the amount of the invoice.  The Company agrees upon submission of each such invoice, if so requested by the Firm, to wire the invoice amount to us as replenishment of the Advance Payment Retainer (together with any supplemental amount which the Company and the Firm mutually agree is reasonably necessary), such that the Firm shall hold an Advance Payment Retainer equal to no less than $750,000.00 at all times, without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice.  We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Advance Payment Retainer (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

Mr. Dennis Cruise
President, Searles Valley Minerals Inc.
As of May 1, 2026
Page 5

In the event that the Company subsequently determines to seek bankruptcy court protection, and subject to the terms of any professional compensation order entered in the applicable Company chapter 11 cases, the issuance of our periodic invoice shall constitute a request for an interim payment against the reasonable fees to be determined at the conclusion of the representation. Although the Company may pay us from time to time for services rendered in our capacity as counsel for various matters, some fees, charges and disbursements incurred before the filing of bankruptcy petitions (voluntary or involuntary) may remain unpaid as of the date of the bankruptcy filings. Any portion of the Advance Payment Retainer (as may be supplemented from time to time) not otherwise applied will be held by us for the payment of any such unpaid fees, charges and disbursements (whether or not billed). Notwithstanding the foregoing, it is agreed that Skadden Arps will at all times have a retainer in excess of the fees and expenses it has incurred on behalf of the Company (whether or not statements for such fees and expenses have been sent by us to the Company).

If orders for relief relating to the Company are entered, the unused portion, if any, of the Advance Payment Retainer (as may be supplemented from time to time) will be applied to any unpaid prepetition invoices and unbilled fees, charges and disbursements, although any requisite court permission will be obtained in advance. Postpetition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court, it being agreed and understood that the unused portion, if any, of the Advance Payment Retainer (as may be supplemented from time to time) shall be held by us and applied against the final fee application filed and approved by the bankruptcy court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nonetheless remain liable for payment of court approved postpetition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503 (b)(1). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan of reorganization cannot be confirmed unless these priority expenses are paid in full (unless such claimants agree to different treatment) in cash on the effective date of any reorganization plan.

All references to fees, charges and disbursements are exclusive of any applicable VAT, GST, sales, withholding or similar tax imposed by relevant tax authorities, and such VAT, GST, sales, withholding or similar tax will be charged by us in addition to our fees, charges and disbursements, as applicable, or paid directly by the Company where applicable.

If a dispute develops about our fees, you may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than one thousand and less than fifty thousand dollars.

**Waivers and Related Matters**

The Firm represents a broad base of clients on a variety of legal matters. Accordingly, absent an effective conflicts waiver, conflicts of interest may arise that could

Mr. Dennis Cruise
President, Searles Valley Minerals Inc.
As of May 1, 2026
Page 6

adversely affect your ability and the ability of other clients of the Firm to choose the Firm as its counsel and preclude the Firm from representing you or other clients of the Firm in pending or future matters.  Given that possibility, we wish to be fair not only to you, but to our other clients as well.  Accordingly, this letter will confirm our mutual agreement that the Firm may represent other present or future parties on matters other than those for which it had been or then is engaged by the Company, whether or not on a basis adverse to the Company or any of its present or future affiliates, including in litigation, legal or other proceedings or matters, which are referred to as "Permitted Adverse Representation."

If an actual conflict of interest arises with respect to any of the parties in interest in a bankruptcy case filed by the Company, or the Firm determines that we are unable to represent the Company in matters adverse to those parties, the Company will be required to use separate counsel in those matters, and we will not participate in those matters.  Further, we may be unable to, or may elect not to, represent the Company in commencing litigation against a then-current client that asserts a claim against the Company as a creditor in a bankruptcy case filed by the Company.

In furtherance of this mutual agreement, the Company agrees that it will not for itself or any other party assert the Firm's representation of the Company or any of its present or future affiliates, either in the Engagement or in any other matter in which the Company retains the Firm, as a basis for disqualifying the Firm from representing another party in any Permitted Adverse Representation or Permitted Other Transaction Representation, and agree that any Permitted Adverse Representation or Permitted Other Transaction Representation does not constitute a breach of any duty owed by the Firm.  Examples of Permitted Adverse Representation would include, without limitation, representing a client over which the Company might be seeking to acquire influence or control, or from which the Company may wish to buy assets, representing a client regarding its interest at the time in acquiring influence or control over an entity in which the Company then has a similar interest and representing a debtor or creditor client in a judicial proceeding under the Bankruptcy Code or similar legislation in a matter initiated by such client that is adverse to the Company.  The waiver provided for in this and the preceding paragraph includes the Firm's ongoing representation of HSBC in connection with various matters unrelated to the Engagement.  The Company agrees that this and the preceding paragraph do not expand the scope of the Engagement to encompass affiliates of the Company unless expressly agreed to by the Firm.

Given the nature of the Engagement and the process to be implemented for soliciting potential buyers, it is likely that one or more may be current clients of the Firm.  This occurs often when the Firm or its peer firms represent selling companies in sales processes such as contemplated by the Engagement.  However, our role in the Engagement is to represent the Company and we will do so diligently, consistent with our professional responsibilities to the Company.  Should a contested dispute arise out of the Engagement between the Company and another Firm client, we may determine that we are not in a position to represent the Company in

Mr. Dennis Cruise
President, Searles Valley Minerals Inc.
As of May 1, 2026
Page 7

such dispute, and in such a case we would not represent either party in such dispute.  The Company acknowledges and consents to the foregoing.

With respect to parties affiliated with the Company generally, including parties owned by the Company and parties that hold direct or indirect interests in the Company, it is our understanding that the Firm is not being asked to provide, and will not be providing, legal advice to, or establishing an attorney-client relationship with, any such affiliated party or person in his, her, or its individual capacity and will not be expected to do so unless the Firm has been asked and has specifically agreed to do so.  Further, it is our understanding that if the Firm acts as counsel for any other entity as to which the Company then owns completely, directly or indirectly, all of the common stock or similar voting interest (other than directors' qualifying shares, if any), the mutual agreement reflected in this letter, including the waivers, would apply to that entity as well.  Upon our request, the Company will take any action the Firm concludes is needed to confirm the application of this letter to that entity or entities.

In the event the Company is acquired or is otherwise subject to a change in control (including by a person or group becoming a controlling affiliate of the Company) after the date hereof, the Firm will not be deemed (i) to represent, or provide or have provided legal advice to, the acquiring entity or such controlling affiliate (or, subject to clause (ii) below, to any affiliate of any such acquiring entity or controlling affiliate) or to establish an attorney-client relationship with such entities or affiliates and (ii) except as otherwise required by applicable law or at the election of the Firm, to continue to represent the Company or any of its controlled affiliates unless and until both the Company and the Firm reaffirm this letter.  Notwithstanding any termination of the attorney-client relationship, the other provisions of this letter will continue in effect.

Our representation of the Company is premised on the Firm's adherence to its professional obligation not to disclose any confidential information or to use it for another party's benefit without the Company's consent.  Consistent with the foregoing, the Firm utilizes a variety of systems and tools located both on-premise and in the cloud to store client confidential information.  The Firm's confidentiality obligations are subject to certain exceptions, including the laws, rules and regulations of certain jurisdictions relating to money laundering and terrorist financing.  Under relevant circumstances, the Firm may be under a duty to disclose information to relevant governmental authorities.  The Firm may be prohibited from informing you that such a disclosure has been made or the reasons for such disclosure, and we may have to cease work for you for a period of time and not be able to inform you of the reason.  Provided that the Firm acts in the manner set forth in the first sentence of this paragraph and subject to the exceptions noted above, the Company would not for itself or any other party assert that the Firm's possession of such confidential information, even though it may relate to a matter for which the Firm is representing another client or may be known to someone at the Firm working on the matter, (a) is a basis for disqualifying the Firm from representing another of its clients in any matter in which the Company or any other party has an interest; or (b) constitutes a

Mr. Dennis Cruise
President, Searles Valley Minerals Inc.
As of May 1, 2026
Page 8

breach of any duty owed by the Firm.  In addition, the Firm's failure to share with the Company any confidential information received from another client will not be asserted by the Company as constituting a breach of any duty owed to the Company by the Firm, including any duty regarding information disclosure.

If the Firm receives from any person or entity a subpoena or request for information that is within our custody or control or the custody or control of our agents or representatives, we will, to the extent permitted by applicable law, advise the Company before responding so that the Company has the opportunity to intervene or interpose any objections. Should the Company object to the provision of such information, the Firm may thereafter provide such information only to the extent authorized by the Company or required by a court or other governmental body of competent jurisdiction.  The Company agrees to pay the Firm for any services rendered and charges and disbursements incurred in responding to any such request at the Firm's customary billing rates and pursuant to the Firm's charges and disbursements policies.

The Company agrees that the Firm may disclose the fact of this Engagement and related general information to the extent that such disclosure does not convey any confidential or non-public information and it is not adverse to the Company's interests.

## Client Identification Procedures and Regulatory Compliance

Many jurisdictions have adopted or are in the process of changing or creating anti-money laundering, counter-terrorist financing, embargo, trade sanctions or similar policies or laws.  As part of the Firm's responsibility for compliance with such laws, rules, regulations or policies, the Firm is obliged to take detailed steps to verify the identity of our clients and sources of payment.  Accordingly, prior to commencement of work on the Engagement we will have already requested, or will be requesting shortly, that you provide us with required identification documents, which will be processed only for the purposes of preventing money laundering, terrorist financing, or proliferation financing, unless use of the personal data is permitted by applicable laws, rules, regulations, or best practices.  It is also necessary for us to reserve the right to request additional information believed necessary, advisable or appropriate to verify identity and/or to ensure the Firm's compliance with applicable laws, rules, regulations, best practices and anti-money laundering matters from time to time.  A delay or failure to provide information required for verification purposes may prevent us from commencing or require us to suspend work on the Engagement.

## Prevention of Criminal Facilitation of Tax Evasion and Fraud

Many jurisdictions criminalize the evasion of tax and its facilitation, as well as the commission of fraud.  As a condition of the Engagement, you represent to us that you will not request or otherwise have the Firm or any third party involved in the Engagement take any action, or desist from taking any action, in order to facilitate tax evasion or commit fraud.

Mr. Dennis Cruise
President, Searles Valley Minerals Inc.
As of May 1, 2026
Page 9

**Data Protection**

The Firm uses the information you provide for the provision of legal services to you and for related purposes, including updating client records, analysis to help the Firm manage its practice, statutory returns, legal and regulatory compliance and, subject to the Firm's ethical obligations, other legitimate business purposes. The Firm uses software, platforms and other applications, including those that are hosted in the cloud by third-party service providers, to store client information. The Firm's work for you may also involve providing information to third parties such as expert witnesses and other professional advisers in order to represent your interests most effectively. The Firm's use of the information you provide is subject to your instructions, to the Firm's duty of confidentiality, and to applicable data protection and data privacy laws and regulations. If and to the extent that any such law or regulation, such as the E.U. General Data Protection Regulation ("GDPR"), applies to the Engagement, the Firm will abide by those applicable laws and regulations in processing personal data in the course of the Firm's work with you, including putting in place security measures to protect personal data. Where the work the Firm does for you involves the processing of personal data, you acknowledge that, unless the Firm agrees otherwise in particular circumstances, the Firm processes that personal data as an independent controller, not as a processor on your behalf nor as a joint controller with you, as those terms are defined in the GDPR or other applicable laws, and that you may have a right of access to the personal data the Firm holds about you where the GDPR or other applicable laws apply. Subject to the Firm's duties of confidentiality and the provisions of this paragraph, the Firm may transfer and process personal data that you disclose to the Firm or information that the Firm generates on the basis of personal data that you disclose to the Firm, including the transfer of such personal data or information to jurisdictions where we have offices, both within and outside the United States, as set forth in the Privacy Statement available on www.skadden.com. The Firm may from time to time send you information which the Firm thinks might be of interest to you. If you do not wish to receive that information, please notify the Firm in writing.

**Client Files and Retention**

In the course of our representation of you with respect to a matter, we shall maintain a physical file relating to the matter. In the file we may place materials received from you with respect to the matter and other materials, including correspondence, memos, filings, drafts, closing sets, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to your representation (the "Client File"). The Client File shall be and will remain your property. We may also place in the file documents containing our attorney work product, mental impressions or notes, and drafts of documents ("Work Product"). You agree that Work Product shall be and remain our property. In addition, electronic records (except those to be proffered to you at the conclusion of a matter as described below) such as email and documents prepared on our word processing system shall not be considered part of your Client File unless it has been printed in hard copy and placed in your

Mr. Dennis Cruise
President, Searles Valley Minerals Inc.
As of May 1, 2026
Page 10

physical file, and does not constitute Work Product.  You agree that we may adopt and implement reasonable retention policies for such electronic records and that we may store or delete such records in our discretion.

At the conclusion of a matter (which shall be defined as the time that our work on any matter subject to this letter has been completed), you shall have the right to take possession of the original of your Client File (but not including the Work Product).  We will be entitled to make physical or electronic copies if we choose.  You also agree, upon our proffer, at the conclusion of a matter (whether or not you take possession of the Client File), to take possession of any and all original contracts, stock certificates, deeds and other such important documents or instruments that may be in the Client File, without regard to format, and we shall have no further responsibility with regard to such documents or instruments.

If you do not take possession of the Client File at the conclusion of a matter, we will store such file in accordance with our standard retention procedures for a period of at least seven (7) years.  Such retention (or maintenance of accounting or other records related to our representation) shall not constitute or be deemed to indicate the presence of a continuing attorney-client relationship.  During the time that we store the Client File, you shall have the right to take possession of it at any time that you choose.  Subject to the foregoing, we may dispose of the Client File without further notice or obligation to you.

\*        \*        \*

The provisions of this letter will continue in effect, including if the Firm's representation of the Company was ended at your election (which, of course, the Company would be free to do at any time) or by the Firm (which would be subject to ethical requirements). In addition, the provisions of this Engagement Letter will apply to future engagements of the Firm by the Company unless we mutually agree otherwise.

This agreement and any claim, controversy or dispute arising under or relating to this agreement, the relationship of the parties, and/or the interpretation and enforcement of the rights and duties of the parties shall be governed by, and construed in accordance with, the laws of the State of New York.  For purposes of this letter, references to Skadden Arps or the Firm include our affiliated law practice entities.

This letter supersedes all prior agreements between you and the Firm with respect to the subject matter of this letter.  If this letter is satisfactory, please sign a copy and return it to me.  You may wish to review it with your counsel.

Mr. Dennis Cruise
President, Searles Valley Minerals Inc.
As of May 1, 2026
Page 11


       Again, we very much appreciate the opportunity to work with you and look forward to doing so.


Sincerely,

Signed by:

*Dohyun Kim*

84389775C28D400...

Dohyun Kim


-and-

DocuSigned by:

*James Mazza*

0A7E8C94DD394FA...

James J. Mazza, Jr.

Mr. Dennis Cruise
President, Searles Valley Minerals Inc.
As of May 1, 2026
Page 12

SEARLES VALLEY MINERALS INC.

By: _____
     Name: Dennis Cruise
     Title:  President

SEARLES DOMESTIC WATER COMPANY LLC

By: _____
     Name: Dennis Cruise
     Title: Manager and President

SEARLES VALLEY MINERALS EUROPE S.A.S.

By: _____
     Name: Dennis Cruise
     Title: President and Legal Representative

TRONA RAILWAY COMPANY LLC

By: _____
     Name: Dennis Cruise
     Title: Manager and President

Dated:  As of May 1, 2026

*Attachments*

**Schedule 1**

**CONFIDENTIAL**

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
& AFFILIATES**

**STANDARD HOURLY TIME CHARGE SCHEDULE**[*]

**January 1, 2026**

|  | **Rate** |
|---|---|
| **PARTNERS and OF COUNSEL:** | $2,175 - $2,850 |
| **COUNSEL/SPECIAL COUNSEL:** | $1,950 - $2,125 |
| **REGIONAL COUNSEL:** | $1,930 |
| **ASSOCIATES:** | |
| Level | |
| 8 | $1,825 |
| 7 | 1,780 |
| 6 | 1,700 |
| 5 | 1,635 |
| 4 | 1,525 |
| 3 | 1,395 |
| 2 | 1,175 |
| 1 | 795[**] |
| **PARALEGALS:** | $395 - $695 |

---

[*]   Generally applicable for most attorneys and paralegals; does not include amounts for charges and disbursements. Other hourly time charges may apply in specific types of matters or circumstances, as discussed with client. As part of the Firm's ordinary business practices, hourly time charges are periodically reviewed and revised.

[**]   First year associates will move to $975/hr. after being admitted to the Bar.

<div align="right"><u>**ANNEX A-I**</u></div>

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES**
*Policy Statement Concerning Charges and Disbursements\**
*Effective January 1, 2025*

*Skadden, Arps bills clients for reasonable charges and disbursements incurred in connection with an engagement. Clients are billed for disbursements based on the actual cost billed by the vendor or, in a few cases noted below, at rates derived from internal cost analyses or approximating comparable outside vendor charges.*

––––––––––––––––––––––––

**I.   *Research Services.*   ***Charges for LexisNexis and Westlaw are billed at rates calculated from an aggregate discounted amount charged to and paid by the Firm to LexisNexis and Westlaw; accordingly, clients are billed at levels below that which would be charged for individual usage on a particular engagement. Thomson Research services are charged based on client usage allocated from actual vendor charges. Charges for other outside research services are billed at the actual amounts charged by vendors.***

*The State of Delaware Database provides computer access to a corporations database in Dover, Delaware. The charge for this service is $100 per transaction, which is the average amount charged by outside services.*

**II.   *Travel-Related Expenses.*   ***Out-of-town travel expenses are billed at actual cost and include air or rail travel, lodging, car rental, taxi or car service, tips and other reasonable miscellaneous costs associated with travel. Corporate and/or negotiated discounted rates are passed on to the client. Specific Firm policies for expenditures relating to out-of-town travel include:***

- *Air Travel. Coach class is the standard on most U.S. domestic flights. However, for flights with scheduled flight times longer than 5 hours and international flights, business class is generally used.*

- *Lodging. We strive to book overnight accommodations at hotels with which the Firm or the Client has preferred corporate rates.*

- *Local travel charges include commercial transportation and, when a private car is used, mileage, tolls and parking. Specific policies*

*govern how and when a client is charged for these expenses; these include:*

- o  *Fares for commercial transportation (e.g., car service, taxi or rail) are charged at the actual vendor invoice amount. The charge for private car usage is the IRS rate allowance per mile (or the equivalent outside the United States) plus the actual cost of tolls and parking.*

- o  *Note that there is no transportation charge to clients for attorneys or support staff for working after hours, weekends or holidays.*

**III.   <u>*Word Processing, Secretarial and other Special Task-Related Services*</u>**.   *Routine secretarial tasks (correspondence, filing, travel and/or meeting arrangements, etc.) are not charged to clients. Word processing services associated with preparing legal documents are charged at $75 (£50/€60) per hour.*

*Specialized tasks (such as EDGAR filings or legal assistant services) are recorded in the appropriate billing category (for example, legal assistant services are recorded as fees in "Legal Assistant Support" on bills).*

**IV.   <u>*Reproduction and Electronic Document Management*</u>**.   *Photocopying services (including copying, collating, tabbing and velo binding) performed in-house are charged at $0.10 (£0.05/€0.08) per page, which represents the average internal cost per page. Color photocopies are charged at $0.20 (£0.10/€0.14) per page. Photocopying projects performed by outside vendors are billed at the actual invoice amount. Special arrangements can be made for unusually large projects.*

*Electronic Data Management services (e.g., scanning, OCR processing, data and image loading/exporting, CD/DVD creation, printing from scanned files, and conversions) performed by outside vendors are billed at the actual invoice amount and those performed in-house are billed at rates comparable to those charged by outside vendors.*

***V.    Electronic Communications.***    *Clients are not charged for telephone calls or facsimile transmissions.  This includes local and long distance calls, cellular calls, external calls such as credit card calls, hotel telephone charges and vendor hosted conference calls.*

***VI.    Postage and Courier Services.***    *Outside messenger and express carrier services are charged at the actual vendor invoice amount, which frequently involves discounts negotiated by the Firm.  Postage is charged at actual mail rates.  On certain occasions, internal staff may be required to act as messengers, in which case the staff's applicable hourly rate is charged.*

***VII.    UCC Filings and Searches.***    *Charges for filings and searches, in most instances, are billed at the flat fee charged by the vendor.  Unusual filings and searches will be charged based on vendor invoice.*

***VIII.    Meals.***    *Business meals are charged at actual cost.  Luncheon and dinner meetings at the Firm are charged based on the costs developed by our food service vendor.  Breakfast, beverage and snack services at the Firm's offices are not charged, except in unusual circumstances.*

*Please note that clients are not charged for meals incurred while working beyond normal business hours (overtime), or on weekends or holidays.*

***IX.    Direct Payment by Clients of Other Disbursements.*** *Other major disbursements incurred in connection with an engagement will be paid directly by the client. (Those which are incurred and paid by the Firm will be charged to the client at the actual vendor's invoice amount and typically paid to the vendor once payment is received from the client). Examples of such major disbursements that clients will pay directly include:*

- *Professional Fees (including disbursements for local counsel, accountants, witnesses, barristers and other professionals);*

- *Filing/Court Fees (including disbursements for agency fees for filing documents, standard witness fees, juror fees);*

- *Transcription Fees (including disbursements for outside transcribing agencies and courtroom stenographer transcripts); and*

- *Other Disbursements (including any other required out-of-pocket expenses incurred for the successful completion of a matter).*

*\* \* \* \* \**

*∗   Fees incurred for attorney and Firm personnel in connection with the Engagement are not covered by this policy.  As part of the Firm's ordinary business practices, charges and disbursements are periodically reviewed and revised.*

2

**EXHIBIT 2**

**Potential Interested Parties List**

**Exhibit 2 - Potential Parties in Interest\***

*BOLD ITALICS*: Represents Potential Interested Parties that are current clients or affiliates of current clients.

*ITALICS*: Represents Potential Interested Parties that are former clients (within the the past seven years) or affiliates of former clients.

PLAIN TEXT MARKED "CLEAR": Represents Potential Interested Parties that are not current or former clients (within the past seven years) or affiliates thereof.

\*Certain parties in interest may fall within more than one category, but have been listed under a single primary category to avoid duplicative entries.

| Category | Party in Interest | Relationship |
|---|---|---|
| Bankruptcy Judges and Staff for D. Del. | Al Lugano | Clear |
| Bankruptcy Judges and Staff for D. Del. | Amanda Hrycak | Clear |
| Bankruptcy Judges and Staff for D. Del. | Cacia Batts | Clear |
| Bankruptcy Judges and Staff for D. Del. | Claire Brady | Clear |
| Bankruptcy Judges and Staff for D. Del. | Danielle Gadson | Clear |
| Bankruptcy Judges and Staff for D. Del. | Demitra Yeager | Clear |
| Bankruptcy Judges and Staff for D. Del. | Jill Walker | Clear |
| Bankruptcy Judges and Staff for D. Del. | Judge Brendan L. Shannon | Clear |
| Bankruptcy Judges and Staff for D. Del. | Judge Craig T. Goldblatt | Clear |
| Bankruptcy Judges and Staff for D. Del. | Judge J. Kate Stickles | Clear |
| Bankruptcy Judges and Staff for D. Del. | Chief Judge Karen B. Owens | Clear |
| Bankruptcy Judges and Staff for D. Del. | Judge Laurie Selber Silverstein | Clear |
| Bankruptcy Judges and Staff for D. Del. | Judge Mary F. Walrath | Clear |
| Bankruptcy Judges and Staff for D. Del. | Judge Thomas M. Horan | Clear |
| Bankruptcy Judges and Staff for D. Del. | Laura Haney | Clear |
| Bankruptcy Judges and Staff for D. Del. | Laurie Capp | Clear |
| Bankruptcy Judges and Staff for D. Del. | Lora Johnson | Clear |
| Bankruptcy Judges and Staff for D. Del. | Marquietta Lopez | Clear |
| Bankruptcy Judges and Staff for D. Del. | Nickita Barksdale | Clear |
| Bankruptcy Judges and Staff for D. Del. | Rachel Bello | Clear |
| Bankruptcy Judges and Staff for D. Del. | Stephen L. Grant | Clear |
| Banks | ***Customers Bank*** | Current Affiliate |
| Banks | Desert Valleys FCU | Clear |
| Benefit Providers | Blue Cross Blue Shield of Kansas City | Clear |
| Benefit Providers | Collaboration Software Partners | Clear |
| Benefit Providers | ***CVS*** | Current Client |
| Benefit Providers | Delta Dental of Kansas | Clear |
| Benefit Providers | GBS Secure Travel (Through New York Life) | Clear |
| Benefit Providers | Metlaw | Clear |
| Benefit Providers | Norton LifeLock | Clear |

**Exhibit 2 - Potential Parties in Interest***

*BOLD ITALICS*: Represents Potential Interested Parties that are current clients or affiliates of current clients.

*ITALICS*: Represents Potential Interested Parties that are former clients (within the the past seven years) or affiliates of former clients.

PLAIN TEXT MARKED "CLEAR": Represents Potential Interested Parties that are not current or former clients (within the past seven years) or affiliates thereof.

*Certain parties in interest may fall within more than one category, but have been listed under a single primary category to avoid duplicative entries.

| Category | Party in Interest | Relationship |
|---|---|---|
| Benefit Providers | *Prudential* | Current Affiliate |
| Benefit Providers | Surency | Clear |
| Benefit Providers | Transitions Benefit Group | Clear |
| Benefit Providers | *Voya* | Current Affiliate |
| Benefit Providers | VSP | Clear |
| Current Directors and Officers | Dennis Cruise | Clear |
| Current Directors and Officers | Don Pemberton | Clear |
| Current Directors and Officers | Ajay B. Khushu | Clear |
| Current Directors and Officers | Avinash Puri | Clear |
| Current Directors and Officers | John S. Dubel | Clear |
| Current Directors and Officers | Kaushik N. Patel | Clear |
| Current Directors and Officers | Matthew J. Dowd | Clear |
| Current Directors and Officers | Niraj Raval | Clear |
| Debtors | *Searles Domestic Water Company LLC* | Current Client |
| Debtors | *Searles Valley Minerals Inc.* | Current Client |
| Debtors | *Trona Railway Company LLC* | Current Client |
| Employee Union | International Association of Sheet Metal, Air, Rail and Transportation Workers Transportation Division GO-887 | Clear |
| Former Directors and Officers | Cleary, Karl | Clear |
| Former Directors and Officers | Emanuel J. DiTeresi | Clear |
| Former Directors and Officers | Ford, Pamela | Clear |
| Government and Regulatory Authorities | WA Dept of Revenue | Clear |
| Government and Regulatory Authorities | *California Department of Conservation* | Former Affiliate |
| Government and Regulatory Authorities | California Department of Public Health | Clear |
| Government and Regulatory Authorities | California OSHA | Clear |
| Government and Regulatory Authorities | California Regional Water Quality Control Board | Clear |
| Government and Regulatory Authorities | Commissioner of Agriculture of the State of Florida | Clear |
| Government and Regulatory Authorities | County of Kern - Clerk of the Board Supervisors | Clear |
| Government and Regulatory Authorities | County of Kern, State of California | Clear |

**Exhibit 2 - Potential Parties in Interest***

*BOLD ITALICS*: Represents Potential Interested Parties that are current clients or affiliates of current clients.

*ITALICS*: Represents Potential Interested Parties that are former clients (within the the past seven years) or affiliates of former clients.

PLAIN TEXT MARKED "CLEAR": Represents Potential Interested Parties that are not current or former clients (within the past seven years) or affiliates thereof.

*Certain parties in interest may fall within more than one category, but have been listed under a single primary category to avoid duplicative entries.

| Category | Party in Interest | Relationship |
|---|---|---|
| Government and Regulatory Authorities | Her Majesty the Queen, Her heirs and successors - Minister of National Revenue of Canada | Clear |
| Government and Regulatory Authorities | Office of Natural Resources Revenue | Clear |
| Government and Regulatory Authorities | San Bernardino County Land Use Services Department | Clear |
| Government and Regulatory Authorities | *U.S. Environmental Protection Agency* | Current Client |
| Government and Regulatory Authorities | *United States Department of the Interior, Bureau of Land Management, Div of Energy & Minerals* | Current Affiliate |
| Independent Contractors | Continental Labor & Staffing Resources, Inc. | Clear |
| Independent Contractors | Ignite Recruitment LLC d/b/a Rinvio | Clear |
| Independent Contractors | *IMC Chemicals Inc.* | Current Client |
| Insurers and Insurance Brokers/Agents. | Alliant Insurance Services - KC | Clear |
| Insurers and Insurance Brokers/Agents. | *Aspen Specialty Ins. Co.* | Current Affiliate |
| Insurers and Insurance Brokers/Agents. | Colony Ins. Co. | Clear |
| Insurers and Insurance Brokers/Agents. | *Continental Casualty Co. (CNA)* | Current Affiliate |
| Insurers and Insurance Brokers/Agents. | Convex/Lloyds | Clear |
| Insurers and Insurance Brokers/Agents. | *Everest National Ins. Co.* | Current Client |
| Insurers and Insurance Brokers/Agents. | *Federal Ins. Co. (Chubb)* | Current Affiliate |
| Insurers and Insurance Brokers/Agents. | *Greenwich Ins. Co. (AXA XL)* | Current Affiliate |
| Insurers and Insurance Brokers/Agents. | IPFS Corporation | Clear |
| Insurers and Insurance Brokers/Agents. | *National Union Fire Ins. Co. of Pittsburgh (AIG)* | Current Affiliate |
| Insurers and Insurance Brokers/Agents. | Navigators Ins. Co. (Hartford) | Clear |
| Insurers and Insurance Brokers/Agents. | Skyward Specialty | Clear |
| Insurers and Insurance Brokers/Agents. | *Starr Indemnity & Liability Co.* | Current Client |
| Insurers and Insurance Brokers/Agents. | *Starr Surplus Lines Ins. Co.* | Current Affiliate |
| Insurers and Insurance Brokers/Agents. | *Swiss Re Corporate Solutions Elite Ins. Corp.* | Current Affiliate |
| Insurers and Insurance Brokers/Agents. | *The Ins. Co. of the State of Pennsylvania (AIG)* | Current Affiliate |
| Insurers and Insurance Brokers/Agents. | *XL Insurance America, Inc. (AXA XL)* | Current Client |
| Insurers and Insurance Brokers/Agents. | XL Specialty Ins. Co. | Clear |

**Exhibit 2 - Potential Parties in Interest***

*BOLD ITALICS*: Represents Potential Interested Parties that are current clients or affiliates of current clients.

*ITALICS*: Represents Potential Interested Parties that are former clients (within the the past seven years) or affiliates of former clients.

PLAIN TEXT MARKED "CLEAR": Represents Potential Interested Parties that are not current or former clients (within the past seven years) or affiliates thereof.

*Certain parties in interest may fall within more than one category, but have been listed under a single primary category to avoid duplicative entries.

| Category | Party in Interest | Relationship |
|---|---|---|
| Lienholders | Aaron Vanderpool | Clear |
| Lienholders | Bryan Klassen | Clear |
| Lienholders | De Lage Landen Financial Services, Inc. | Clear |
| Lienholders | Demitris Andrews | Clear |
| Lienholders | Gelco Corporation Dba Ge Fleet Services | Clear |
| Lienholders | Joseph Gaceta | Clear |
| Lienholders | Komatsu Financial Limited Partnership | Clear |
| Lienholders | *Patrick Turner* | Former Affiliate |
| Lienholders | PROCESS EQUIPMENT INC | Clear |
| Lienholders | ***Wells Fargo Bank, N.A.*** | Current Client |
| Lienholders | ***Wells Fargo Foothill, Inc., as Agent*** | Current Affiliate |
| Lienholders | Western Pacific Crane & Equipment, LLC | Clear |
| Major Customers | Certain-Teed Corp | Clear |
| Major Customers | ***E & J Gallo Winery*** | Current Client |
| Major Customers | Fabrica De Jabon La Corona | Clear |
| Major Customers | Fevisa | Clear |
| Major Customers | Guardian Industries | Clear |
| Major Customers | Industria Vidriera Del Potosi | Clear |
| Major Customers | Knauf Insulation | Clear |
| Major Customers | Possehl S.A. De C.V. | Clear |
| Major Customers | Procter & Gamble Manufacturing | Clear |
| Major Customers | Toise Chemicals Corp | Clear |
| Major Lease Counterparties | AITX LEASING, LLC | Clear |
| Major Lease Counterparties | Amergin Rail 2023-1, LLC | Clear |
| Major Lease Counterparties | COMPASS RAIL XI | Clear |
| Major Lease Counterparties | Corporate Woods Kansas Realty | Clear |
| Major Lease Counterparties | First-Citizens Bank & Trust Company | Clear |
| Major Lease Counterparties | GATX RAIL,A DIV OF GATX FINANCIAL | Clear |
| Major Lease Counterparties | Infinity Transportation 2020-1, LLC | Clear |
| Major Lease Counterparties | Infinity Transportation 2024, LLC | Clear |

**Exhibit 2 - Potential Parties in Interest\***

***BOLD ITALICS***: Represents Potential Interested Parties that are current clients or affiliates of current clients.

*ITALICS*: Represents Potential Interested Parties that are former clients (within the the past seven years) or affiliates of former clients.

PLAIN TEXT MARKED "CLEAR": Represents Potential Interested Parties that are not current or former clients (within the past seven years) or affiliates thereof.

\*Certain parties in interest may fall within more than one category, but have been listed under a single primary category to avoid duplicative entries.

| Category | Party in Interest | Relationship |
|---|---|---|
| Major Lease Counterparties | *PROGRESS RAIL LEASING* | Former Affiliate |
| Major Lease Counterparties | *PROGRESS RAIL LOCOMOTIVE INC* | Former Affiliate |
| Major Lease Counterparties | *PROGRESS RAIL SERVICES DE MEXICO* | Former Affiliate |
| Major Lease Counterparties | ***CIT Equipment Financing, LLC*** | Current Affiliate |
| Major Lease Counterparties | ***CIT Railcar Funding Company, LLC*** | Current Affiliate |
| Major Lease Counterparties | American Industrial Transport, Inc. | Clear |
| Major Negotiation and Contract Counterparty / Counsel | Alston & Bird | Clear |
| Major Negotiation and Contract Counterparty / Counsel | Getzler Henrich & Associates | Clear |
| Major Negotiation and Contract Counterparty / Counsel | Holland & Hart LLP | Clear |
| Major Negotiation and Contract Counterparty / Counsel | Skyward Specialty | Clear |
| Major Negotiation and Contract Counterparty / Counsel | Tata Chemicals Soda Ash Partners LLC | Clear |
| Major Negotiation and Contract Counterparty / Counsel | Troutman Pepper Locke | Clear |
| Major Vendors | 3J Industries, LLC | Clear |
| Major Vendors | A & L Tire | Clear |
| Major Vendors | Alliance Technical Group, LLC | Clear |
| Major Vendors | Alliant Insurance Services Inc. | Clear |
| Major Vendors | Applied Industrial Technologies | Clear |
| Major Vendors | Ardent Companies, Inc. | Clear |
| Major Vendors | Asbury Environmental Services | Clear |
| Major Vendors | Blair-Martin Co. | Clear |
| Major Vendors | ***BNSF Railway Company*** | Current Client |
| Major Vendors | ***BNSF-Auto Rate*** | Current Client |
| Major Vendors | Brahma Group Inc | Clear |
| Major Vendors | ***Brax Company, Inc.*** | Current Affiliate |
| Major Vendors | Brenntag Pacific | Clear |
| Major Vendors | Chemtron Supply Corporation | Clear |
| Major Vendors | CHEMTRON SUPPLY CORPORATION | Clear |
| Major Vendors | CMA CGM (America) LLC | Clear |
| Major Vendors | CMP Sales Corp | Clear |
| Major Vendors | Collaboration Software Partners, LLC | Clear |

<div style="border:1px solid black">

**Exhibit 2 - Potential Parties in Interest***

**BOLD ITALICS**: Represents Potential Interested Parties that are current clients or affiliates of current clients.

*ITALICS*: Represents Potential Interested Parties that are former clients (within the the past seven years) or affiliates of former clients.

PLAIN TEXT MARKED "CLEAR": Represents Potential Interested Parties that are not current or former clients (within the past seven years) or affiliates thereof.

*Certain parties in interest may fall within more than one category, but have been listed under a single primary category to avoid duplicative entries.

</div>

| Category | Party in Interest | Relationship |
|---|---|---|
| Major Vendors | Cosco Shipping Lines Inc. | Clear |
| Major Vendors | *CSX Transportation* | Current Affiliate |
| Major Vendors | Ethosenergy Field Services, LLC | Clear |
| Major Vendors | *Ge Steam Power Inc.* | Current Affiliate |
| Major Vendors | Indian Wells Valley | Clear |
| Major Vendors | Infor Global Solutions, Inc. | Clear |
| Major Vendors | KC Southern De Mexico | Clear |
| Major Vendors | Lufkin Gears LLC | Clear |
| Major Vendors | Mineral Transport Services | Clear |
| Major Vendors | MP Environmental Services, Inc. | Clear |
| Major Vendors | MPW Industrial Services Group, Inc. | Clear |
| Major Vendors | Nalco | Clear |
| Major Vendors | Samuel Antonio Molina | Clear |
| Major Vendors | Schneider Electric Systems USA, Inc. | Clear |
| Major Vendors | Southern Counties Lubricants | Clear |
| Major Vendors | Tristar Claims Management Services | Clear |
| Major Vendors | Valley Pacific Petroleum Services | Clear |
| Major Vendors | *Veolia Es Technical Solutions, LLC* | Current Affiliate |
| Major Vendors | *Veolia WTS USA, Inc.* | Current Affiliate |
| Major Vendors | Yorke Engineering, LLC | Clear |
| Non-Debtor Affiliates | *Karnavati Holdings, Inc.* | Current Affiliate |
| Non-Debtor Affiliates | *NAVIN OVERSEAS FZC* | Current Affiliate |
| Non-Debtor Affiliates | *Nirma Limited* | Current Affiliate |
| Non-Debtor Affiliates | *Searles Valley Minerals Europe S.A.S.* | Current Affiliate |
| Ordinary Course Professionals | *KPMG LLP* | Current Client |
| Ordinary Course Professionals | Best Best And Krieger LLP | Clear |
| Ordinary Course Professionals | Davis Wright Tremaine LLP | Clear |
| Ordinary Course Professionals | Practus, LLP | Clear |
| Parties to Litigation | CONSUMERS PIPE & SUPPLY CO. | Clear |
| Parties to Litigation | John Thomas Conway Trust | Clear |

**Exhibit 2 - Potential Parties in Interest***

*BOLD ITALICS*: Represents Potential Interested Parties that are current clients or affiliates of current clients.

*ITALICS*: Represents Potential Interested Parties that are former clients (within the the past seven years) or affiliates of former clients.

PLAIN TEXT MARKED "CLEAR": Represents Potential Interested Parties that are not current or former clients (within the past seven years) or affiliates thereof.

*Certain parties in interest may fall within more than one category, but have been listed under a single primary category to avoid duplicative entries.

| Category | Party in Interest | Relationship |
|---|---|---|
| Parties to Litigation | Joseph Raborg | Clear |
| Parties to Litigation | Keith Wilhite | Clear |
| Parties to Litigation | *MODE TRANSPORTATION, LLC* | Current Affiliate |
| Parties to Litigation | Mojave Pistachios, LLC | Clear |
| Parties to Litigation | Mountain Coal Company, LLC (dba CORE) | Clear |
| Parties to Litigation | Nugent Family Trust | Clear |
| Parties to Litigation | Sierra Shadows Ranch LP | Clear |
| Parties to Litigation | Thunder Basin Coal Company, LLC | Clear |
| Parties to Litigation - Counsel | Brownstein Hyatt Farber Schreck, LLP | Clear |
| Parties to Litigation - Counsel | Olivarez, Madruga, Lemieux & O'Neill LLP | Clear |
| Parties to Litigation - Counsel | Richards, Watson & Gershon | Clear |
| Restructuring Professionals | *Ankura Consulting Group, LLC* | Current Client |
| Restructuring Professionals | *Lazard Frères & Co. LLC* | Current Client |
| Restructuring Professionals | *Lazard & Co., Limited* | Current Affiliate |
| Restructuring Professionals | Pachulski Stang Ziehl & Jones LLP | Clear |
| Restructuring Professionals | Skadden, Arps, Slate, Meagher & Flom LLP | Clear |
| Restructuring Professionals | Stretto, Inc. | Clear |
| Secured Creditor | *HSBC Bank USA, National Association* | Current Client |
| Shippers | *GREENBRIER RAILCAR INC* | Current Affiliate |
| Shippers | IMC LOGISITICS, LLC | Clear |
| Shippers | Ocean Network Express | Clear |
| Shippers | RYAN TRANSPORTATION SERVICES | Clear |
| Shippers | SUMINISTROS INDUSTRIALES POTOSINOS | Clear |
| Shippers | T & T TRUCKING INC | Clear |
| Surety Bond Providers | *Fidelity and Deposit Company of Maryland* | Current Affiliate |
| Surety Bond Providers | LUMBERMENS MUTUAL CASUALTY COMPANY | Clear |
| Surety Bond Providers | *XL SPECIALTY INSURANCE COMPANY* | Current Affiliate |
| Surety Bond Providers | *ZURICH AMERICAN INSURANCE COMPANY* | Current Client |
| Surety Bond Providers | *Zurich Insurance Company Limited* | Current Client |
| Taxing Authorities | ALABAMA DEPARTMENT OF REVENUE | Clear |

**Exhibit 2 - Potential Parties in Interest***

*BOLD ITALICS*: Represents Potential Interested Parties that are current clients or affiliates of current clients.

*ITALICS*: Represents Potential Interested Parties that are former clients (within the the past seven years) or affiliates of former clients.

PLAIN TEXT MARKED "CLEAR": Represents Potential Interested Parties that are not current or former clients (within the past seven years) or affiliates thereof.

*Certain parties in interest may fall within more than one category, but have been listed under a single primary category to avoid duplicative entries.

| Category | Party in Interest | Relationship |
|---|---|---|
| Taxing Authorities | Arizona Department of Revenue | Clear |
| Taxing Authorities | CALIFORNIA AIR RESOURCES BOARD | Clear |
| Taxing Authorities | California Department of Motor Vehicles | Clear |
| Taxing Authorities | California Department of Revenue | Clear |
| Taxing Authorities | California Department of Toxic Substances Control (DTSC) | Clear |
| Taxing Authorities | California Department of Transportation | Clear |
| Taxing Authorities | Commonwealth of PA | Clear |
| Taxing Authorities | County of Inyo | Clear |
| Taxing Authorities | California Department of Tax and Fee Administration | Clear |
| Taxing Authorities | County of Inyo Dave Stottlemyre, Assessor | Clear |
| Taxing Authorities | County of Kern | Clear |
| Taxing Authorities | County of San Diego, DEH | Clear |
| Taxing Authorities | DEPARTMENT OF REVENUE  FL | Clear |
| Taxing Authorities | DEPARTMENT OF REVENUE (IL) | Clear |
| Taxing Authorities | County of San Bernardino | Clear |
| Taxing Authorities | DEPARTMENT OF REVENUE (IN) | Clear |
| Taxing Authorities | DEPARTMENT OF REVENUE (MO) | Clear |
| Taxing Authorities | DEPARTMENT OF REVENUE (MT) | Clear |
| Taxing Authorities | DEPARTMENT OF REVENUE (WY) | Clear |
| Taxing Authorities | DEPARTMENT OF REVENUE-OREGON | Clear |
| Taxing Authorities | Department of Taxation and Finance (NY) | Clear |
| Taxing Authorities | Department of the Treasury Internal Revenue Service | Clear |
| Taxing Authorities | EASTERN KERN AIR POLLUTION | Clear |
| Taxing Authorities | FLORIDA DEPARTMENT OF REVENUE | Clear |
| Taxing Authorities | GEORGIA DEPARTMENT OF REVENUE | Clear |
| Taxing Authorities | *Health Canada* | Current Affiliate |
| Taxing Authorities | Illinois Department of Revenue | Clear |
| Taxing Authorities | INDIANA DEPARTMENT OF REVENUE | Clear |
| Taxing Authorities | INYO COUNTY TAX COLLECTOR | Clear |
| Taxing Authorities | IOWA DEPARTMENT OF REVENUE | Clear |

**Exhibit 2 - Potential Parties in Interest***

*BOLD ITALICS*: Represents Potential Interested Parties that are current clients or affiliates of current clients.

*ITALICS*: Represents Potential Interested Parties that are former clients (within the the past seven years) or affiliates of former clients.

PLAIN TEXT MARKED "CLEAR": Represents Potential Interested Parties that are not current or former clients (within the past seven years) or affiliates thereof.

*Certain parties in interest may fall within more than one category, but have been listed under a single primary category to avoid duplicative entries.

| Category | Party in Interest | Relationship |
|---|---|---|
| Taxing Authorities | Jordan Z. Marks, San Diego County Assessor/Recorder/Clerk | Clear |
| Taxing Authorities | Josie Gonzales, Assessor-Recorder-County Clerk | Clear |
| Taxing Authorities | KANSAS DEPARTMENT OF COMMERCE | Clear |
| Taxing Authorities | Kentucky Department of Revenue | Clear |
| Taxing Authorities | Kern County Assessor | Clear |
| Taxing Authorities | Laura Avila Kern County Assessor | Clear |
| Taxing Authorities | MISSOURI DEPARTMENT OF REVENUE | Clear |
| Taxing Authorities | N.C. DEPARTMENT OF REVENUE | Clear |
| Taxing Authorities | NEW JERSEY DIVISION OF TAXATION | Clear |
| Taxing Authorities | NEW MEXICO TAXATION AND REVENUE DEPT | Clear |
| Taxing Authorities | State of North Carolina | Clear |
| Taxing Authorities | Oklahoma Tax Commission | Clear |
| Taxing Authorities | SAN BERNARDINO CO-DEPT OF HEALTH ENVIRONMENTAL HEALTH SERVICES | Clear |
| Taxing Authorities | San Bernardino County | Clear |
| Taxing Authorities | SAN BERNARDINO COUNTY FIRE DEPT | Clear |
| Taxing Authorities | Mojave Desert Air Quality Management District | Clear |
| Taxing Authorities | San Bernardino County Public Health | Clear |
| Taxing Authorities | SAN DIEGO AIR POLLUTION CONTROL DI | Clear |
| Taxing Authorities | San Diego County | Clear |
| Taxing Authorities | State of Alabama - Business Privilege | Clear |
| Taxing Authorities | State of Alabama - Corporate | Clear |
| Taxing Authorities | State of Arizona | Clear |
| Taxing Authorities | State of California | Clear |
| Taxing Authorities | State of California Board of Equilization | Clear |
| Taxing Authorities | State of Michigan Department of Treasury | Clear |
| Taxing Authorities | State of Missouri | Clear |
| Taxing Authorities | State of New York | Clear |
| Taxing Authorities | State of Oregon | Clear |
| Taxing Authorities | State Water Resources Control Board | Clear |
| Taxing Authorities | Texas Comptroller of Public Accounts | Clear |

**Exhibit 2 - Potential Parties in Interest***

*BOLD ITALICS*: Represents Potential Interested Parties that are current clients or affiliates of current clients.

*ITALICS*: Represents Potential Interested Parties that are former clients (within the the past seven years) or affiliates of former clients.

PLAIN TEXT MARKED "CLEAR": Represents Potential Interested Parties that are not current or former clients (within the past seven years) or affiliates thereof.

*Certain parties in interest may fall within more than one category, but have been listed under a single primary category to avoid duplicative entries.

| Category | Party in Interest | Relationship |
|---|---|---|
| Taxing Authorities | Texas Department of Revenue | Clear |
| Taxing Authorities | *US DOT HAZMAT REG* | Current Affiliate |
| Taxing Authorities | Washington State Department of Revenue | Clear |
| Taxing Authorities | DEPARTMENT OF TAXATION | Clear |
| Taxing Authorities | San Bernardino County - Tax Collector | Clear |
| Taxing Authorities | State of Georgia | Clear |
| Taxing Authorities | State of Illinois | Clear |
| Taxing Authorities | State of Indiana | Clear |
| Taxing Authorities | State of Kansas | Clear |
| Taxing Authorities | State of Kentucky | Clear |
| Taxing Authorities | State of Michigan | Clear |
| Taxing Authorities | State of New Jersey | Clear |
| Taxing Authorities | State of New Mexico | Clear |
| Taxing Authorities | *State of New York* | Current Affiliate |
| Taxing Authorities | State of Oklahoma | Clear |
| Taxing Authorities | State of Pennsylvania | Clear |
| Taxing Authorities | *State of Texas* | Current Affiliate |
| Top 30 Unsecured Creditors | *APPLIED INDUSTRIAL TECH.* | Current Affiliate |
| Top 30 Unsecured Creditors | BAKERSFIELD MACHINE COMPANY | Clear |
| Top 30 Unsecured Creditors | BLUE CROSS BLUE SHIELD-ADMIN/CLAIMS | Clear |
| Top 30 Unsecured Creditors | CAREMARK LLC A DIV OF CVS PHARMACY | Clear |
| Top 30 Unsecured Creditors | CONTINENTAL LABOR RESOURCES | Clear |
| Top 30 Unsecured Creditors | CORE SALES LLC | Clear |
| Top 30 Unsecured Creditors | CORTECH ENGINEERING | Clear |
| Top 30 Unsecured Creditors | D2 (SQUARED) INDUSTRIAL SERVICES LLC | Clear |
| Top 30 Unsecured Creditors | HPC INDUSTRIAL SERVICES, LLC | Clear |
| Top 30 Unsecured Creditors | INFINITY ASSET HOLDINGS 2020-1, LLC | Clear |
| Top 30 Unsecured Creditors | METROPOLITAN STEVEDORE COMPANY | Clear |
| Top 30 Unsecured Creditors | PORT OF SAN DIEGO | Clear |
| Top 30 Unsecured Creditors | Sisecam Wyoming LLC | Clear |

**Exhibit 2 - Potential Parties in Interest***

**BOLD ITALICS**: Represents Potential Interested Parties that are current clients or affiliates of current clients.

*ITALICS*: Represents Potential Interested Parties that are former clients (within the the past seven years) or affiliates of former clients.

PLAIN TEXT MARKED "CLEAR": Represents Potential Interested Parties that are not current or former clients (within the past seven years) or affiliates thereof.

*Certain parties in interest may fall within more than one category, but have been listed under a single primary category to avoid duplicative entries.

| Category | Party in Interest | Relationship |
|---|---|---|
| Top 30 Unsecured Creditors | SSA Pacific, Inc | Clear |
| Top 30 Unsecured Creditors | State of California Cap-and-Trade Program (CARB) | Clear |
| Top 30 Unsecured Creditors | TTX COMPANY | Clear |
| Top 30 Unsecured Creditors | *Union Pacific Railroad* | Current Client |
| Top 30 Unsecured Creditors | US DEPT OF THE INTERIOR OFFICE OF NATURAL RESOURCES REVENUE | Clear |
| Top 30 Unsecured Creditors | WALTER'S WHOLESALE ELECTRIC CO. | Clear |
| Top Competitors | Rio Tinto | Clear |
| Top Competitors | WeSoda | Clear |
| US Trustees and Staff for D. Del. | Andrew R. Vara | Clear |
| US Trustees and Staff for D. Del. | Benjamin Hackman | Clear |
| US Trustees and Staff for D. Del. | Christine Green | Clear |
| US Trustees and Staff for D. Del. | Denis Cooke | Clear |
| US Trustees and Staff for D. Del. | Diane Giordano | Clear |
| US Trustees and Staff for D. Del. | Dion Wynn | Clear |
| US Trustees and Staff for D. Del. | Edith A. Serrano | Clear |
| US Trustees and Staff for D. Del. | Elizabeth Thomas | Clear |
| US Trustees and Staff for D. Del. | Hannah M. McCollum | Clear |
| US Trustees and Staff for D. Del. | Hawa Konde | Clear |
| US Trustees and Staff for D. Del. | Holly Dice | Clear |
| US Trustees and Staff for D. Del. | James R. O'Malley | Clear |
| US Trustees and Staff for D. Del. | Jane Leamy | Clear |
| US Trustees and Staff for D. Del. | Jonathan Lipshie | Clear |
| US Trustees and Staff for D. Del. | Jonathan Nyaku | Clear |
| US Trustees and Staff for D. Del. | Joseph Cudia | Clear |
| US Trustees and Staff for D. Del. | Joseph McMahon | Clear |
| US Trustees and Staff for D. Del. | Lauren Attix | Clear |
| US Trustees and Staff for D. Del. | Linda Casey | Clear |
| US Trustees and Staff for D. Del. | Michael Girello | Clear |
| US Trustees and Staff for D. Del. | Nyanquoi Jones | Clear |
| US Trustees and Staff for D. Del. | Richard Schepacarter | Clear |

**Exhibit 2 - Potential Parties in Interest\***

**BOLD ITALICS**: Represents Potential Interested Parties that are current clients or affiliates of current clients.

*ITALICS*: Represents Potential Interested Parties that are former clients (within the the past seven years) or affiliates of former clients.

PLAIN TEXT MARKED "CLEAR": Represents Potential Interested Parties that are not current or former clients (within the past seven years) or affiliates thereof.

\*Certain parties in interest may fall within more than one category, but have been listed under a single primary category to avoid duplicative entries.

| Category | Party in Interest | Relationship |
|---|---|---|
| US Trustees and Staff for D. Del. | Shakima L. Dortch | Clear |
| Utility Providers | *AT&T* | Current Client |
| Utility Providers | City of San Diego Water | Clear |
| Utility Providers | *Constellation New Energy* | Former Affiliate |
| Utility Providers | CSA 82 Searles Valley | Clear |
| Utility Providers | Everfast Fiber Networks | Clear |
| Utility Providers | Frontier California | Clear |
| Utility Providers | *Google Fiber* | Current Affiliate |
| Utility Providers | *Pacific Gas & Electric* | Current Client |
| Utility Providers | Republic Services | Clear |
| Utility Providers | *San Diego Gas & Electric* | Current Affiliate |
| Utility Providers | Shell | Clear |
| Utility Providers | *Southern California Edison Co* | Current Affiliate |
| Utility Providers | Verizon Wireless | Clear |
| Utility Providers | *WASTE MANAGEMENT OF CALIFORNIA INC* | Current Affiliate |
| Utility Providers | Zoom Communications | Clear |