**EXHIBIT C**

**Cruise Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**DECLARATION OF DENNIS CRUISE IN SUPPORT OF THE**
**DEBTORS' APPLICATION FOR AN ORDER (I) AUTHORIZING**
**THE EMPLOYMENT AND RETENTION OF SKADDEN, ARPS,**
**SLATE, MEAGHER & FLOM LLP AS COUNSEL TO THE DEBTORS**
**EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

I, Dennis Cruise, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am President of each of Searles Valley Minerals Inc., Trona Railway Company LLC, and Searles Domestic Water Company LLC, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").  I have held my current position at the Company since December 2023.  Prior to serving in this role, I spent over 25 years at the Company in corporate finance and accounting roles.  I earned a bachelor's degree from Northwest Missouri State University and a master's degree in accountancy from the University of Missouri.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A).  The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

2.      I submit this declaration and statement (this "**Declaration**") in support of the *Debtors' Application for an Order (I) Authorizing Employment and Retention of Skadden, Arps, Slate, Meagher & Flom LLP as Counsel to the Debtors Effective as of the Petition Date and (II) Granting Related Relief* (the "**Application**"),[2] filed contemporaneously herewith by the Debtors.

3.      Except as otherwise noted, all facts in this Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents, and information supplied to me by other members of the Debtors' management and the Debtors' advisors.

## THE DEBTORS' SELECTION OF SKADDEN

4.      Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**" or the "**Firm**") is proposed to serve as counsel to the Debtors.  The Debtors recognize that a careful selection should be made when selecting and managing chapter 11 counsel to ensure that bankruptcy professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.  The Debtors believe that Skadden is well-qualified to represent the Debtors in these Chapter 11 Cases and, given Skadden's extensive familiarity with the Debtors, the Debtors determined Skadden should represent them as lead bankruptcy counsel in these Chapter 11 Cases.

5.      The Debtors retained Skadden, effective as of May 1, 2026, to advise them in connection with one or more strategic transactions, including a potential restructuring through a chapter 11 filing and a sale under section 363 of the Bankruptcy Code.  A copy of the Engagement Agreement is attached to the Mazza Declaration as **Exhibit 1**.

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

6.      Prior to the commencement of these Chapter 11 Cases, the Firm previously represented the Debtors' ultimate parent company, Nirma Limited ("**Nirma**") in connection with the out-of-court sale process of its interest in and strategic options related to its indirectly wholly-owned subsidiary Searles Valley Minerals Inc. ("**SVM**") and certain litigation matters in which the Firm jointly represented Nirma and SVM.  When the out-of-court process did not produce an actionable transaction and a potential chapter 11 filing to effect a 363 sale became a strategic option, the Debtors determined that, given Skadden's familiarity with the Debtors, their finances, and the business, Skadden would be best-positioned to represent the Debtors in connection with their chapter 11 filing and Bankruptcy Code section 363 sale process.  In connection therewith, Skadden contemporaneously withdrew from its prior representations of Nirma (with the express consent of Nirma and acknowledgement by the Debtors) and was retained by the Debtors.  I also understand that Nirma has retained its own counsel at Troutman Pepper Locke LLP to represent it in connection with these Chapter 11 Cases.

7.      The Debtors have also retained Pachulski Stang Ziehl & Jones LLP ("**Pachulski**") to represent them as co-counsel, specifically handling conflicts and efficiency matters in these Chapter 11 Cases, including to assist SVM's independent director with investigating prepetition related-party transactions and to assist the Debtors in connection with various chapter 11 administrative matters.

8.      During the months leading up to the Chapter 11 Cases, Skadden worked closely with the Debtors and their other advisors to explore various strategic alternatives to address the Debtors' financial circumstances and prepare the Debtors for a smooth operational transition into chapter 11.  In addition, prior to the commencement of the Chapter 11 Cases, Skadden represented the Debtors in connection with the three components of financing supporting these Chapter 11

3

Cases—namely, the supply and liquidity arrangement with TATA Chemicals North America Inc.; new capital in the form of a junior DIP facility from Karnavati Holdings, Inc., the Debtors' parent; and the use of cash collateral with the consent of the Debtors' prepetition secured lender, HSBC Bank USA, N.A., alongside an adequate protection package. Skadden also worked with the Debtors to develop bidding procedures and an asset purchase agreement to be imminently filed, which will be a key transaction document for these Chapter 11 Cases.

9. As a result of this working history, Skadden has considerable institutional knowledge about the Debtors' capital structure, governance, financing documents, and other material agreements. Additionally, Skadden is intimately familiar with the Debtors' business affairs and the potential legal issues that may arise in the context of these Chapter 11 Cases. Given Skadden's work and particular knowledge of the Debtors' business, the Skadden team is particularly well-suited to assist the Debtors with their objective to maximize value during the timeline of these Chapter 11 Cases.

10. In addition to Skadden's deep familiarity with the Debtors, Skadden has extensive experience in large and complex corporate reorganizations as debtor's counsel and mergers and acquisitions transactions. Moreover, Skadden has experience consummating large and complex distressed corporate and financing transactions in general, and Skadden also has specific experience with chapter 11 filings by large and complex companies like the Debtors. Furthermore, Skadden has assembled a highly qualified team of professionals and paraprofessionals to provide services to the Debtors during the Chapter 11 Cases. I believe that for these reasons, as well as Skadden's ability to act quickly in a crisis, Skadden is well-qualified to represent the Debtors in the Chapter 11 Cases in an efficient and timely manner. Thus, the Debtors decided to apply to retain Skadden as the Debtors' counsel during the Chapter 11 Cases.

4

**SKADDEN'S RATE STRUCTURE**

11.    In my capacity as President, my responsibilities extend to the supervision of outside counsel retained by the Debtors in the ordinary course of business.  Skadden has provided and will be providing professional services to the Debtors under its standard rate structure.  Skadden has informed the Debtors that its rates under its standard rate structure are consistent among bankruptcy representations undertaken under the standard rate structure, including related transactional and litigation services.  Skadden has further informed the Debtors that its rates and terms under its standard rate structure for non-bankruptcy engagements are the same as the rates and the terms for the Debtors' engagement of Skadden.

12.    Based on my review of the invoices regularly submitted by Skadden, I can confirm that the rates that Skadden charged the Debtors in the prepetition period are the same as the rates that Skadden will charge the Debtors in the postpetition period, based on the terms of the Engagement Agreement, subject to periodic rate increases, as described in the Application. Skadden has informed the Debtors that the Firm's standard hourly rates are subject to periodic adjustment in accordance with the Firm's practice.

**COST SUPERVISION**

13.    The Debtors and Skadden are developing a Skadden-specific prospective budget and staffing plan in coordination with conflicts and efficiency counsel, Pachulksi, and the Debtors recognize that, in the course of these Chapter 11 Cases, there may be unforeseeable fees and expenses that will need to be addressed by the Debtors and Skadden through amendments to the budget and staffing plan.  The Debtors and Skadden will comply with the U.S. Trustee's requests for information and additional disclosures and with any orders of the Court.  The Debtors recognize that it is their responsibility to closely monitor the billing practices of their counsel to ensure that the fees and expenses paid by the estates remain consistent with the Debtors' expectations and the

exigencies of the Chapter 11 Cases.  The Debtors will continue to review the invoices that Skadden regularly submits, and, together with Skadden, periodically amend the budget and staffing plan as these Chapter 11 Cases develop.

14.    As they did prepetition, the Debtors will endeavor to bring discipline, predictability, client involvement, and accountability to the fees and expenses reimbursement process.  While I understand that every chapter 11 case is unique, the budget being prepared in accordance with the U.S. Trustee's fee guidelines will, I believe, provide guidance on the periods of time involved, the level of attorneys and professionals who will work on various matters, and projections of average hourly rates for the attorneys and professionals for various matters.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 24, 2026
Overland Park, Kansas

Searles Valley Minerals Inc.
(on behalf of itself and the other Debtors)

By:    */s/ Dennis Cruise*
Name: Dennis Cruise
Title:   President

7