**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| |
|---|
| In re: |
| |
| SEARLES VALLEY MINERALS, INC., *et al.*,[1] |
| |
| Debtors. |

Chapter 11

Case No. 26-10966 (BLS)

(Jointly Administered)
**Obj Deadline: 6/30/26 @ 4:00 p.m**
**Hearing Date 7/7/26 @ 10:00 a.m.**

**OBJECTION OF AMERGIN RAIL 2023-1, LLC TO THE MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) REJECT CERTAIN UNEXPIRED RAILCAR LEASES *NUNC PRO TUNC* TO THE PETITION DATE AND (B) ABANDON CERTAIN PROPERTY AND (II) GRANTING RELATED RELIEF**

NOW COMES AMERGIN RAIL 2023-1, LLC ("AMERGIN RAIL") by and through its undersigned counsel and hereby objects to the Omnibus Motion of Debtors for Entry of an Order (I) Authorizing the Debtors to (A) Reject Certain Unexpired Railcar Leases *Nunc Pro Tunc* to the Petition Date and (B) Abandon Certain Property and (II) Granting Related Relief [Docket No. 19] (the "Motion to Reject"), and in support of its Objection, states as follows:

**INTRODUCTION**

1.      AMERGIN RAIL is the Lessor of 195 Railcars (the "Amergin Cars"), subject to a Lease with Debtor TRONA RAILWAY COMPANY LLC ("TRONA").

2.      Debtor SEARLES VALLEY MINERALS INC. ("SEARLES") is the Guarantor of TRONA's obligation under the Lease.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

3.      TRONA and SEARLES (collectively, the "Debtors") seek to reject the Lease retroactively to the date of the filings of their bankruptcy petitions (June 15, 2026) and prevent AMERGIN RAIL from seeking administrative expense claims. See Motion to Reject at ¶20.

4.      Debtors' request to reject the Lease with AMERGIN RAIL *nunc pro tunc* should be denied because the Debtors continue to use the railcars subject to the Lease after they filed their bankruptcy petitions. Indeed, contrary to the Debtors' allegations from their Motion to Reject that the railcars are not being used, AMERGIN RAIL obtained tracing information for the Amergin Cars which contradicts Debtors' representations, and shows continuous use of the Amergin Cars after June 15, 2026. AMERGIN RAIL determined that between June 15, 2026 and June 29, 2026, at least 42 out of 195 Amergin Cars were in use. See Declaration of Robert Hogan.

5.      Second, the Debtors' request[2] to allow only 14 days for AMERGIN RAIL to remove its 195 Amergin Railcars, before the Debtors are authorized to dispose of them is unreasonable and unrealistic given the large number and the specialized nature of the Amergin Cars. See Declaration of Robert Hogan, at ¶¶ 19-24. Furthermore, the Debtors' request to allows the requested disposal after 14 days to be done at AMERGIN RAIL's cost, seeks to shift contractual obligations from Lessee to Lessor despite the post-petition use of the railcars.

6.      Third, AMERGIN RAIL objects to the Debtors' request to abandon various customizations found on the Amergin Cars, including commodity specific loading and unloading hardware, monitoring devices, liners, and additional equipment, which the Debtors refer to as the Remaining Property. See Motion to Reject, at ¶¶14, 22-

---

[2] See Motion to Reject, at ¶25 and Proposed Order on the Motion to Reject, Docket No. 19-1, at ¶5.

24. The Debtors utilized the Amergin Cars to transport borate. See Schedule I, Docket No. 19-1. Borate is recognized as a toxic substance. As such, the Debtors should be required to empty and clean out the Amergin Cars prior to surrender. In *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Prot.*,474 U.S. 494, 88 L. Ed. 2d 859, 106 S. Ct. 755 (1986), the Supreme Court held that "the Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety." 474 U.S. at 506-07.

## BACKGROUND

### Lease & Guarantee History

7.      On or about December 15, 1993, non-party, The Hutchinson & Northern Railway Company ("H&N"), as lessee entered into Railroad Car Net Lease Agreement (the "Master Lease") with non-party General Electric Railcar Services Corporation, as lessor ("GE"). See **Exhibit A**. (The "Lease" refers to the Master Lease, the Rider No. 2, plus all assignments, amendments, notices, and any other document given in connection therewith.)

8.      On or about January 31, 2004, H&N, TRONA, non-party IMC Chemicals Inc., and non-party, The CIT Group/Equipment Financing, Inc. ("CIT") executed Assignment, Assumption of Obligations and Amendment to Lease, (the "Assignment and Assumption") pursuant to which H&N's interest in the Lease, as lessee was assigned to TRONA. As set forth in the Assignment and Assumption, GE had previously assigned the leasehold hold interest to CIT. See **Exhibit B**.

9.      On or about March 15, 2007, SEARLES VALLEY MINERALS OPERATIONS, INC. executed an Amended and Restated SVMO Guarantee, a copy of which is attached as **Exhibit C**.

10.     As set forth in the Amended and Restated SVMO Guarantee, SEARLES VALLEY MINERALS OPERATIONS INC. irrevocably and unconditionally guaranteed and agreed to be primarily liable for timely payment and performance of all obligations of TRONA to the then lessor, CIT, including but not limited to the obligations under the Lease. See **Exhibit C**, Section 1.

11.     The Amended and Restated SVMO Guarantee bound SEARLES VALLEY MINERALS OPERATIONS INC. and its successors and assigns and inured to the benefit of CIT and its successors and assigns. See Section 5(a) of **Exhibit C**.

12.     On October 13, 2015, Debtor SEARLES, as successor to SEARLES VALLEY MINERALS OPERATIONS INC. executed a Reaffirmation of Amended and Restated SVMO Guarantee (the "SEARLES Guarantee"), pursuant to which it reaffirmed its obligations the Amended and Restated SVMO Guarantee. A copy of the SEARLES Guarantee is attached as **Exhibit D**.

13.     Subsequently, after the Lease and the SEARLES Guarantee were assigned to AMERGIN RAIL. At this time, there are 195 Cars, which are currently leased to TRONA and which were assigned to AMERGIN RAIL.

**Bankruptcy Filings, Motion to Reject Lease,
and Post-Petition Use of Amergin Cars**

14.     On June 15, 2026 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

15.    On June 15, 2026, Debtors filed their Motion to Reject. See Docket No. 19-1.

16.    In the Motion to Reject, Debtors stated that the Amergin Cars were utilized for carrying borate. See Docket No. 19-1

17.    In the Motion to Reject, Debtors claim that they are not using the Cars that are subject to the leases they are seeking to reject, including the Lease with AMERGIN RAIL.  See Motion to Reject, at ¶17:

> After closely analyzing their railcar lease portfolio, the Debtors have determined, in the exercise of their sound business judgment, that the Railcar Leases are financially burdensome and there is no net benefit that is likely to be realized from the Debtors' continued maintenance of the Railcar Leases. The Debtors no longer utilize the leased railcars in their operations and, thus, the railcars are not expected to generate any revenue to cover the amount of their respective lease payments that, absent rejection, the Debtors may be obligated to pay on a continuing basis. As such, the Railcar Leases are an unnecessary drain on the Debtors' resources. Accordingly, the Debtors have concluded, in a sound exercise of their business judgment, that rejection of the Railcar Leases, nunc pro tunc to the Petition Date, is in the best interest of the Debtors' estates, their creditors, and other parties in interest because it will result in meaningful immediate and long-term savings.

See also, Motion to Reject, at ¶20:

> Without a retroactive date of rejection, the Lessors may attempt to assert administrative expense claims, unnecessarily depleting the limited liquidity available to administer these Chapter 11 Cases, including the proposed sale process. As stated above, the Debtors no longer have use for the Railcar Leases. Accordingly, these railcars no longer provide value to the Debtors' estates.

18.    Contrary to the Debtors' assertions, AMERGIN RAIL obtained tracing information for the Amergin Cars from Steelroads platform which contradicts Debtor's representations, and shows continuous use of the Amergin Cars after June 15, 2026.

Based on the analysis of the information obtained from Steelroads, AMERGIN RAIL determined that between June 15, 2026 and June 29, 2026, at least 42 out of 195 Amergin Cars were in use. See Declaration of Robert Hogan.

19.     The Cars Marks and Number for the (at least) 42 cars used post-petition are as follows: AJPX 7003, AJPX 7024, AJPX 7029, AJPX 7034, AJPX 7036, AJPX 7037, AJPX 7038, AJPX 7039, AJPX 7040, AJPX 7041, AJPX 7047, AJPX 7048, AJPX 7050, AJPX 7055, AJPX 7058, AJPX 7062, AJPX 7066, AJPX 7070, AJPX 7072, AJPX 7073, AJPX 7074, AJPX 7076, AJPX 7083, AJPX 7088, AJPX 7090, AJPX 7093, AJPX 7108, AJPX 7109, AJPX 7116, AJPX 7125, AJPX 7129, AJPX 7130, AJPX 7138, AJPX 7140, AJPX 7145, AJPX 7148, AJPX 7149, AJPX 7171, AJPX 7176, AJPX 7179, AJPX 7182, and AJPX 7193. See Declaration of Robert Hogan, ¶15.

20.     On any given day since the Petition Date, a number of Amergin Cars were continuously loaded with a commodity (most likely borate), or were in transit or unloaded on another railroad other than the railroad associated with the Trona Railway Company. See Declaration of Robert Hogan, ¶16.

21.     On June 15, 2026, there were 24 such Amergin Cars; on June 16 – 27 Amergin Cars; on June 17 – 25 Amergin Cars; on June 18 – 30 Amergin Cars; on June 19 – 24 Amergin Cars; on June 22 – 27 Amergin Cars; on June 23 – 29 Amergin Cars; on June 24 – 26 Amergin Cars; on June 25 – 32 Amergin Cars; on June 26 – 29 Amergin Cars; on June 27 – 26 Amergin Cars; on June 28, 2026 – 26 Amergin Cars; on June 29, 2026 – 29 Amergin Cars. See Declaration of Robert Hogan, ¶17, and **Exhibit 2** thereto.

**ARGUMENT**

**Pursuant to 11 U.S.C. § 503(b)(1)(A), AMERGIN RAIL is Entitled to an Administrative Expense Claim for Debtors' Post-petition Use of the Amergin Cars. Because the Debtors Continue to Utilize the Amergin Cars Post-petition, Their Request for Retroactive Rejection Must be Denied.**

22.     Debtors' post-petition use of the Amergin Cars renders their request to reject the lease retroactively to the Petition Date improper. *In re Times Square JV LLC*, 648 B.R. 277, 283n.3 (Bankr. S.D.N.Y. 2023) ("[T]he Court finds that the balance of equities does not favor retroactive rejection. The Debtors have continued to use and benefit from the License Agreement post-petition, in exchange for which they would generally be expected to pay."). *Guttman v. Xtra Lease, Inc.* (*In re Furley's Transport, Inc.*), 263 B.R. 733, 741 (Bankr. D. Md. 2001) ("If the debtor rejected the contract on the petition date and did not use the property to its benefit post-petition, then the lessor would only be entitled to an unsecured claim for damages. … If, instead, the debtor retained the property and obtained some benefit from it, then section 503(b)(1)(A) comes into play irrespective of whether damages for breach might otherwise lie.") (internal citations and quotations omitted).

23.     Section 365(d)(10) does not eliminate a lessor's right to apply for an administrative expense claim for the first fifty-nine days of a case under section 503(b). *In re Muma Services*, 279 B.R. 478, 490 (Bankr. D. Del. 2002) (collecting cases and stating that "[t]here is nothing in section 365(d)(10) which expressly precludes a lessor from asserting an administrative claim for the use of its equipment under section 503(b).").

24.     AMERGIN RAIL is entitled to an administrative expense claim for Debtors' post-petition use of the Amergin Cars. Section 503 of the Bankruptcy Code

provides administrative expense priority to "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). "An administrative expense claim is entitled to priority under Section 503(b)(1)(A) if: (1) there was a post-petition transaction between the claimant and the estate, and (2) those expenses yielded a benefit to the estate. *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) (internal citations and quotations omitted). *Continental Energy Assocs. L.P. v. Hazelton Fuel Mgmt. Co.* (*In re Continental Energy Assocs. L.P.*), 178 B.R. 405, 408 (Bankr. M.D. Pa. 1995) ("During the period prior to assumption or rejection of an executory contract or unexpired lease, the estate must pay the reasonable value of any contractual benefits the estate receives during that period, as an administrative expense."). "If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in possession is obligated to pay for the reasonable value of those services." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984).

25.     First, a pre-petition lease, like the Lease here, can be properly considered to be a transaction with a debtor in possession. *Kimzey v. Premium Casing Equipment*, LLC, No. 16-CV-01490, 2018 U.S. Dist. LEXIS 42744, at *12 (W.D. La. Mar. 14, 2018):

> Appellants argue that Premium cannot establish a prima facie case necessary to claim an administrative expense because a preexisting lease cannot be considered a transaction with a debtor-in-possession. This Court disagrees. Case law throughout the country indicates that administrative claims are routinely asserted based on equipment leases existing pre-petition.

26.     Second, the Debtors continued to continuously utilize the Amergin Cars in its business operations for the Debtors' benefit post-petition.  "The benefit does not… have to be substantial to qualify" as an administrative claim. *In re Energy Future*

8

*Holdings Corp.*, 990 F.3d at 742; *In re Shreyas Hospitality, LLC*, No. 09-70523, 2010 Bankr. LEXIS 2074, at *16 (Bankr. C.D. Ill. July 15, 2010) ("'Benefit' in the context of an administrative expense claim is akin to 'use' not 'profit.'"); *see also In re John's Meat Emporium, Inc.*, 176 B.R. 700, 707 (Bankr. E.D.N.Y. 1995) (stating that "[i]t is abundantly clear to this Court that the use of the vans directly benefitted the Debtor by allowing it to carry on its business of retailing meat products" and finding that vehicle lessor was entitled to administrative expense for the vehicles that debtor-in-possession used without payment").

27.     Finally, the amount of AMERGIN RAIL's administrative expense claim for post-petition rent is presumptively governed by the rates set forth in the Lease. "As for leased property, most courts take the position that the rent specified in the lease itself is the presumed reasonable value of the property to the debtor-in-possession." *In re Raymond Cossette Trucking, Inc.*, 231 B.R. 80, 85 (Bankr. D.N.D. 1999); *In re Pettingill Enterprises*, 486 B.R. 524, 533 (Bankr. D.N.M. 2013) ("There is presumption that the contractual rate is the reasonable value of the goods or services provided to the estate under Section 503(b) ... This presumption can be rebutted if the debtor introduces convincing evidence to the contrary"). AMERGIN RAIL submits June and July Invoices for rent charges owed by the Debtors, including the holdover rent. See **Exhibits E and F** hereto. The total amount of AMERGIN RAIL's administrative expense claim for post-petition rent is yet to be determined as it is based on Debtors' use, which is ongoing as this time.

**AMERGIN RAIL is Entitled to an Administrative Expense Claim for Debtors' Post-petition Damage to the Amergin Cars**.

28.     AMERGIN RAIL expressly reserves a right to seek an administrative expense claim for any damages to the Amergin Cars that occurred or will occur post-petition. AMERGIN RAIL objects to the Motion to Reject to the extent that it seeks to bar it from fling such claim. "[A] number of courts have held that [repair costs associated with a debtor's post-petition use of leased equipment] are entitled to administrative priority under Section 503(b)… [t]he Court agrees that repair costs stemming from [debtor-in-possesion]'s post-petition damage to the equipment, if any, should be treated as an administrative expense." *In re Pettingill Enterprises*, 486 B.R. at 535-36.

**Debtors' Request to Dispose of the Amergin Cars after 14 Days at AMERGIN RAIL's Cost is Unreasonable, Inequitable, and Contravenes their Lease Obligations**.

29.     Debtors' request to allow only 14 days for AMERGIN RAIL to remove its 195 Amergin Railcars, before the Debtors are authorized to dispose of them, at AMERGIN RAIL's cost is unreasonable, inequitable, and creates a logistical nightmare for AMERGIN RAIL

30.     First, the proposed 14 days is too short of a timeframe for AMERGIN RAIL to repossess all of its 195 Cars. Due to their nature, the Amergin Cars are Lined Covered Hoppers. They are specialized Cars, and there are very few repair facilities where they can be transported for repairs, almost none on the West Coast. See Declaration of Robert Hogan, at ¶¶ 19-24. Further, given the large number of the Amergin Cars at issue, the repair shops in the West do not have the capacity to take them at once. See Declaration of Robert Hogan, at ¶¶ 19-24. The repair shops which are equipped to handle larger fleets are located in the Midwest and Southeast regions.

10

Arrangements would need to be made to transport all 195 Cars to various repair shops. At the same time, even these shops will likely be too overwhelmed to take all 195 Amergin Cars at once.

31.    Additionally, the Lease and Guarantee obligations render the Debtors financially responsible for delivery of Amergin Cars to AMERGIN RAIL. *See* Article 14 of the Master Lease Agreement, **Exhibit A** and Searles Guarantee, **Exhibits C and D**.

32.    Debtors are effectively seeking to rewrite and reverse their financial obligations by asking the Court to allow disposal after 14 days at AMERGIN RAIL' cost. This request is both unreasonable and improper. A lessee cannot, through the rejection of a lease in bankruptcy, divest itself of liability or shift the burden and cost of disposing of left-behind equipment to the lessor. *In re Eckberg*, 446 B.R. 909, 915 (Bankr. C.D. Ill. 2011) ("Rejection of an unexpired lease or executory contract does not effect its termination; the parties' rights post-rejection continue to be governed by the terms of the contract and ordinary principles of state law"); *Alstra Capital Management LLC v. PGREF I 1633 Broadway Tower L.P.* (*In re Ciena Capital LLC*), Nos. 08-13783 (AJG), 09-01127 (AJG), 2009 Bankr. LEXIS 2728, at *14-16 (Bankr. S.D.N.Y. July 28, 2009):

> Here, the Debtor as lessor rejected the Sublease with Alstra. Rejection of a lease, however, is not the same as termination of a lease. … If a lease is rejected, it is treated as being breached immediately prior to the petition date, and the parties are left with whatever remedies are available outside of bankruptcy law. … "Rejection does not change the substantive rights of the parties to the contract or lease, but merely means that the bankruptcy estate itself will not become a party to it." Andrew, EXECUTORY CONTRACTS IN BANKRUPTCY: UNDERSTANDING "REJECTION," 59 U. Colo. L. R. 845, 848 (1988). While rejection "frees the estate from the obligation to perform; it does not make the contract disappear." … A debtor's liabilities under a contract or lease remain "intact to form the basis of a claim" against the bankruptcy estate. Id. at 888. HN7 The effect of rejection is that the estate does not become obligated on the contract or lease, it does not affect a debtor's obligations which continue and which form the basis of the non-debtor's claim. Id. at 889. Thus, rejection is the equivalent of

11

electing     not     to     assume     a     contract     or     lease.     Id.     at     849.

**Debtors Cannot Abandon Remaining Property without Addressing Hazardous Nature of their Activity. The Amergin Cars Must be Cleared Out Prior to Return**.

33.     AMERGIN RAIL objects to the Debtors' request to abandon various customizations found on the Amergin Cars. See Motion to Reject, at ¶¶14, 22-24. The Debtors utilized the Amergin Cars to transport borate. See Schedule I, Docket No. 19-1. Borate is recognized as a toxic and hazardous substance, which required that specialized care and poses risks when mishandled. *In Midlantic Nat'l Bank v. New Jersey Dept. of Envtl*. Prot.,474 U.S. 494, 88 L. Ed. 2d 859, 106 S. Ct. 755 (1986), the Supreme Court held that "the Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety." 474 U.S. at 506-07. Here, Debtors completely ignore the nature of their activities in making this request. As such, the Debtors should be required to empty and clean out the Amergin Cars prior to surrender.

## CONCLUSION

WHEREFORE, AMERGIN RAIL 2023-1, LLC respectfully requests that this Honorable Court deny the Omnibus Motion of Debtors for Entry of an Order (I) Authorizing the Debtors to (A) Reject Certain Unexpired Railcar Leases *Nunc Pro Tunc* to the Petition Date and (B) Abandon Certain Property and (II) Granting Related Relief, (1) to the extent that it seeks retroactive *nunc pro tunc* rejection for the leased railcars that the Debtors were using, (2) allows AMERGIN RAIL 2023-1, LLC to assert administrative expense claims in connection with the Debtors' post-petition use of the leased railcars and any damage incurred post-petition, (3)  denies the Debtors' request to

dispose of the leased railcars after 14 Days at AMERGIN RAIL 2023-1, LLC's costs,

(4) orders the Debtors to clean out the leased cars prior to their return at their cost, and

(5) for such other and further relief as this Court deems just and appropriate.

Date: 6/30/26                                   **ELLIOTT GREENLEAF, P.C.**

By:    /s/*Deirdre M. Richards*
         Deirdre M. Richards (#4191)
         1105 N. Market Street, 17th Floor
         Wilmington, DE 19801
         Telephone: (302) 384-9402
         dmr@elliottgreenleaf.com
         *Attorneys for Amergin Rail 2023-1, LLC*