## EXHIBIT 3

## Contract Assumption Notice

Debtors operate; (i) the United States Attorney's Office for the District of Delaware; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission, (l) the United States Department of Justice; (m) the U.S. Environmental Protection Agency, (n) counsel to the Committee; (o) the representatives for the union party to a collective bargaining agreement with the Debtors; (p) the Federal Trade Commission; (q) the California Public Utilities Commission; (r) the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice; (s) each governmental agency that has a reasonably known interest with respect to the Sale and transactions proposed thereunder; (t) any party that has requested notice pursuant to Bankruptcy Rule 2002, and (u) all parties entitled to notice pursuant to Local Bankruptcy Rules 2002-1(b) and 9013-1(m).

19.    Additionally, on the Mailing Date or as soon as reasonably practicable thereafter, the Debtors shall publish a notice, substantially in the form of the Sale Notice, on one occasion, in the national edition of *The New York Times* and *The Daily Independent*, a local publication based in Ridgecrest, California.  Such publication notice shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

## V.    Assumption Procedures

20.    The procedures set forth below regarding the assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to Bankruptcy Code section 365(b) and assigned to a Successful Bidder or Successful Bidders pursuant to Bankruptcy Code section 365(f) in connection with the Sale (the "**Assumption Procedures**") are hereby approved to the extent set forth herein.

21.    These Assumption Procedures shall govern the assumption and assignment of all of the Debtors' executory contracts and unexpired leases to be assumed and assigned in

4916-8969-6955.1 78006.00001                                    10

connection with the Sale (each, an "**Assigned Contract**," and, collectively, the "**Assigned Contracts**"), subject to the payment of any payments necessary to cure any defaults arising under any Assigned Contract (the "**Cure Payments**"):

(a)   **Contract Assumption Notice.**  No later than **July 10, 2026, at 11:59 p.m. (prevailing Eastern Time)** (the "**Assumption and Assignment Service Deadline**"), the Debtors shall serve a notice of contract assumption in substantially the form attached hereto as **Exhibit 3** (the "**Contract Assumption Notice**") via first-class mail on all counterparties to all potential Assigned Contracts and provide a copy of the same to any Stalking Horse Bidder.  The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to the potential assumption and assignment of the Assigned Contracts to a Successful Bidder or Successful Bidders upon entry of the Sale Order, and, to the extent applicable, (i) Debtors' good faith estimates of the Cure Payments (if any) required in connection with the executory contract or unexpired lease, as applicable, (ii) whether the potential Assigned Contract is anticipated to be assumed and assigned to any Stalking Horse Bidder in connection with a Stalking Horse Bid; (iii the Cure Objection Deadline and (iv) the Sale Objection Deadline; *provided*, *however*, that service of a Contract Assumption Notice does not constitute an admission that any contract is an executory contract or that the stated Cure Payment related to any contract or unexpired lease constitutes a claim against the Debtors or a right against any Stalking Horse Bidder (all rights with respect thereto being expressly reserved).  Further, the inclusion of a contract or unexpired lease, as applicable, on the Contract Assumption Notice is not a guarantee that such contract or unexpired lease, as applicable, will ultimately be assumed and assigned.

(b)   **Cure Payments and Adequate Assurance of Future Performance.**  The payment of the applicable Cure Payments by the Debtors or any Successful Bidder, as applicable, shall (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

(c)   **Supplemental Contract Assumption Notice.**  Although the Debtors intend to make a good faith effort to identify all Assigned Contracts that may be assumed and assigned in connection with a Sale Transaction, the Debtors may discover certain executory contracts inadvertently omitted from the Assigned Contracts list or Successful Bidders may identify other executory contracts that they desire to assume and assign in connection with a Sale Transaction.  Accordingly, the Debtors reserve the right, at any time after the Assumption and Assignment Service Deadline and at least two days before the closing of a Sale Transaction, or as otherwise agreed by the Debtors and the Successful Bidder or Successful Bidders,  to (i) supplement the list of Assigned Contracts with previously omitted executory contracts ("**Additional Assigned Contracts**"), (ii) remove Assigned

Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale Transaction, and/or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts.  In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the counterparties to such contracts and their counsel of record, if any; *provided*, *however*, the Debtors may not add an executory contract to the list of Assigned Contracts that has been previously rejected by the Debtors by order of the Court.  Each Supplemental Assumption Notice will include the same information with respect to listed Assigned Contracts as was included in the Contract Assumption Notice, or in the event of a removal, indicating that the Debtors no longer intend to assign the counterparty's contract or unexpired lease, as applicable, to the applicable Successful Bidder in connection with a Sale Transaction.

(d)    **Objections.**  Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, *must* (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by proposed counsel to the Debtors and counsel to the applicable Successful Bidder (if such counsel is known), as applicable, on or before **the 14th day after service (or as reflected by the postmarked date) of the relevant Contract Assumption Notice or Supplemental Assumption Notice** (the "**Cure Objection Deadline**"), or such deadline set forth in the applicable Supplemental Assumption Notice.

The deadline for objections to the proposed assumption and assignment of an Assigned Contract *solely* with respect to (i) the identity of the Successful Bidder or Successful Bidders or (ii) adequate assurance of future performance provided by the Successful Bidder or Successful Bidders shall be the Sale Objection Deadline.

22.    Any party failing to timely file an objection to the proposed Cure Payment, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on a Contract Assumption Notice or Supplemental Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale.  Such party shall be

4916-8969-6955.1 78006.00001                    12

forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder or Successful Bidders for purposes of Bankruptcy Code section 365(c)(1) and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder or Successful Bidders, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

23.     The Debtors shall have no liability or obligation with respect to defaults relating to the Assigned Contracts arising, accruing, or relating to a period on or after the effective date of assignment.

**VI.     Credit Bid**

24.     Notwithstanding anything to the contrary contained in this Order or the Bidding Procedures, following the entry and subject to the provisions of an order approving the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing; (B) Continue to Access Financing Under Its Receivables Facility; and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Lender; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing and (V) Granting Related Relief* [Docket No. 15] on a final basis (the "**DIP Order**") each of (i) the DIP Lender and (ii) the Prepetition Secured Lender shall be deemed a Qualified Bidder and shall have the right (but not the obligation) to credit bid at the Auction all or any portion of the aggregate amount of its applicable outstanding secured obligations pursuant and subject to section 363(k) of the Bankruptcy Code, and any such credit bid will be considered a Qualified Bid (a "**Credit**

**Bid**"); *provided* that, a Credit Bid, as to the Prepetition Secured Lender, shall remain subject to the Committee's challenge rights as expressly set forth in the DIP Order, including with respect to approving the validity, priority and extent of the Prepetition Secured Lender's liens.

25.    Any Successful Bid that contains a Credit Bid shall include a cash component sufficient to pay, and earmarked exclusively for the payment of, any Bid Protections and any unfunded portion of the carve out (the "**Carve Out**") approved under and defined in the DIP Order as of the closing of such transaction.

## VII.    Other Relief

26.    Any objections to the entry of this Order and the relief granted herein that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

27.    Any Sale Transaction Fee[3] or Other Sale Transaction Fee due to Lazard as a result of the closing of any Sale Transaction shall be segregated and escrowed (for the exclusive benefit of Lazard) from the proceeds of such Sale Transaction (including, without limitation, from the proceeds of any liquidation or other disposition of the Debtors' Assets), as part of an express carve out from the collateral of the Prepetition Secured Lender and DIP Lender, prior to any other use or distribution of such proceeds.  Any Successful Bid (including on account of any successful Credit Bid) must contain a cash component sufficient to pay the corresponding Sale Transaction Fee or Other Sale Transaction Fee due to Lazard in full, *provided* that if the Sale Transaction does not yield at closing sufficient cash to pay the unpaid portion of such Sale Transaction Fee or Other Sale Transaction Fee in full, or any portion thereof, then the Successful

---

[3]    Capitalized terms used in this paragraph but not otherwise defined herein shall have the meanings given to them in that certain letter agreement between Lazard and Searles Valley Minerals Inc. dated as of May 12, 2026.

Bidder (including on account of any successful Credit Bid) shall immediately set aside from its own funds and escrow (for the exclusive benefit of Lazard) at the closing of the Transaction giving rise to such fee any such amount necessary to pay Lazard such unpaid portion of the Sale Transaction Fee or Other Sale Transaction Fee in full.  For the avoidance of doubt, nothing in this Order shall prohibit or be construed to prohibit the use of any unencumbered assets of the Debtors or the proceeds thereof to pay any fees and expenses of Lazard or the assertion or allowance of an administrative priority claim under sections 503(b)(2) and 507(a)(2) of the Bankruptcy Code, if applicable, on account of any fees or expenses of Lazard, or any party's right to contest or challenge such use.  Notwithstanding anything to the contrary set forth herein, the requirements and obligations contained in this paragraph 27 to pay Lazard any such Sale Transaction Fee or Other Sale Transaction Fee on account of such Sale Transaction shall be subject in all respects to the entry of an order by the Court approving any such fees including the Sale Transaction Fee or Other Sale Transaction Fee.

28.     Notwithstanding anything contained in this Order or the Bidding Procedures, the Committee reserves all of its rights and remedies including the right to: (a) object to the Sale Order, Stalking Horse Agreement or such other agreements to be utilized for one or more sales as contemplated in the Motion and this Order; (b) object to any sale(s) and the assumption and assignment of any executory contract(s) or unexpired lease(s), or associated cure amount(s), on any basis including any good faith purchaser findings pursuant to 11 U.S.C. § 363(m); and (c) object to any Credit Bid.  All such rights are expressly preserved.

29.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

30.     To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

31.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

32.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

**NOTICE OF PROPOSED ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On June 15, 2026 (the "**Petition Date**"), Searles Valley Minerals Inc. and certain of its subsidiaries, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**"), each filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2. On June 15, 2026, the Debtors filed a motion [Docket No. 18] (the "**Motion**")[2] seeking, among other things, (a) entry of an order (the "**Bidding Procedures Order**") approving the bidding procedures (the "**Bidding Procedures**") for the sale or disposition of certain or all of the Debtors' assets (the "**Assets**") in one or more sale transactions pursuant to Bankruptcy Code section 363 (each, a "**Sale Transaction**" and collectively, the "**Sale**"); (b) establishing procedures for the Debtors to designate a stalking horse bidder (the "**Stalking Horse Bidder**") and to enter into a stalking horse agreement (a "**Stalking Horse Agreement**") containing bid protections; (c) establishing certain dates and deadlines for the Sale process, including scheduling (i) an auction of the Assets (the "**Auction**"), if any, in accordance with the Bidding Procedures, and (ii) the hearing with respect to the approval of the Sale (the "**Sale Hearing**"); (d) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases (the "**Assumption Procedures**"); and (iv) approving the form and manner of notice of the Sale.

3. On July 7, 2026, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. ___]. Pursuant to the Bidding Procedures Order, the Debtors hereby provide notice

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

4916-8969-6955.1 78006.00001
4916-8969-6955.1 78006.00001
4916-8969-6955.1 78006.00001
4916-8969-6955.1 78006.00001

that they are seeking to assume and assign to a Successful Bidder or Successful Bidders with respect to a given Sale Transaction the executory contracts or unexpired leases (each, an "**Assigned Contract**") listed on **Exhibit A** attached hereto.

4.      If the Debtors assume and assign to a Successful Bidder or Successful Bidders an Assigned Contract to which you are a party, on the closing date of the applicable Sale Transaction, or as soon thereafter as practicable, such Successful Bidder or Successful Bidders will pay you the amount the Debtors' records reflect is owing for prepetition arrearages as set forth on **Exhibit A** (the "**Cure Payment**").  The Debtors' records reflect that all postpetition amounts owing under your Assigned Contract have been paid and will continue to be paid until the assumption and assignment of the Assigned Contract, and that other than the Cure Payment, there are no other defaults under the Assigned Contract.

5.      The Debtors' inclusion of an executory contract or unexpired lease as an Assigned Contract on **Exhibit A** is not a guarantee that such executory contract or unexpired lease will ultimately be assumed and assigned to any Successful Bidder.  Should it be determined that an Assigned Contract will not be assumed and assigned, the Debtors shall notify such party to the Assigned Contract in writing of such decision.

6.      Under the terms of the Bidding Procedures Order, the Debtors may modify the list of Assumed Contracts on **Exhibit A** until consummation of the Sale, and the Debtors reserve the right, but only in accordance with the Successful Bidder Purchase Agreement or any Stalking Horse Agreement, as applicable, or as otherwise agreed by the Debtors and the Successful Bidder or Successful Bidders, at any time after the closing of a Sale Transaction and before the deadline for designation of additional Assigned Contracts or removal of potentially Assigned Contracts set forth in the Successful Bidder Purchase Agreement or any Stalking Horse Agreement, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts, (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale Transaction, or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts.  In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the counterparties to such contracts and their counsel of record, if any; provided, however, the Debtors may not add an executory contract to the list of Assigned Contracts that has been previously rejected by the Debtors by order of the Court.  Each Supplemental Assumption Notice will include the same information with respect to listed Assigned Contracts as was included in the Contract Assumption Notice, or in the event of a removal, the information required in a Removal Notice.

7.      Any objection to the Cure Payment or to assumption and assignment must be filed with the Bankruptcy Court on or before **the 14th day after service (or as reflected by the postmarked date) of the relevant Contract Assumption Notice or Supplemental Assumption Notice** (the "**Cure Objection Deadline**"), or such deadline set forth in the applicable Supplemental Assumption Notice, and served on: (a) co-counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 320 S. Canal Street, Chicago, Illinois 60606 (Attn: James J. Mazza, Jr., Esq. (james.mazza@skadden.com) and Jennifer Madden, Esq. (jennifer.madden@skadden.com)), 2000 Avenue of the Stars, Suite 200N, Los Angeles,

California 90067 (Attn: Destiny N. Almogue, Esq. (destiny.almogue@skadden.com)), One Manhattan West, 395 9th Ave., New York, New York 10001 (Attn: Dohyun Kim, Esq. (dohyun.kim@skadden.com)); (b) co-counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899 (Courier 19801) (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and Edward A. Corma, Esq. (ecorma@pszjlaw.com)); (c) counsel to the applicable Successful Bidder; (d) counsel to the DIP Lender; (e) counsel to the Prepetition Secured Lender; and (f) counsel to the Committee. The deadline for objections to the proposed assumption and assignment of an Assigned Contract solely with respect to (i) the identity of the Successful Bidder or Successful Bidders or (ii) adequate assurance of future performance provided by the Successful Bidder or Successful Bidders shall be **August 18, 2026 at 4:00 p.m.** (the "**Sale Objection Deadline**"). Any objections must (1) be in writing, (2) comply with the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules, and (3) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof.

8.      If an objection to the Cure Payment or assumption and assignment is timely filed and not resolved by the parties, a hearing with respect to the objection will take place in the United States Bankruptcy Court for the District of Delaware, 824 Market St. N., Wilmington, Delaware 19801 at the Sale Hearing to be held at **1:30 p.m. (prevailing Eastern Time) on August 26, 2026**, or at a later hearing, as determined by the Debtors, which later hearing may include any hearing to consider an order confirming a chapter 11 plan. A hearing regarding the Cure Payment, if any, may be continued at the discretion of the Debtors and the applicable Successful Bidder until after the closing of the relevant Sale Transaction.

9.      Any party failing to timely file an objection to the proposed Cure Payment, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on a Contract Assumption Notice or the Supplemental Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale. Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, adequate assurance of future performance, the relief requested herein, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder or Successful Bidders for purposes of Bankruptcy Code section 365(c)(1) and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder or Successful Bidders, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

10.     After the Auction, the Debtors will file, but not serve, a notice that identifies the Successful Bidder or Successful Bidders. The Debtors or any Successful Bidder reserve all of their rights, claims and causes of action with respect to the contracts and agreements listed on **Exhibit A** hereto. Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each of the Assigned Contracts listed on **Exhibit A** hereto (a) shall not be an admission as to whether any such Assigned Contract was executory or unexpired as of the

Petition Date or remains executory or unexpired postpetition within the meaning of Bankruptcy Code section 365; and (b) shall be subject to the Debtors' or any Successful Bidder's right to conduct further confirmatory diligence with respect to the Cure Payment of each Assigned Contract and to modify such Cure Payment accordingly.  In the event that the Debtors or any Successful Bidder determine that your Cure Payment should be modified, you will receive a notice, which will provide for additional time to object to such modification.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

Dated: Wilmington, Delaware
July [10], 2026

/s/ DRAFT
_____

**PACHULSKI STANG ZIEHL
& JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: 302-652-4100
ljones@pszjlaw.com
joneill@pszjlaw.com
ecorma@pszjlaw.com

*Proposed Co-Counsel to Debtors and
Debtors in Possession*

**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**
Joseph O. Larkin (I.D. No. 4883)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com

- and -

James J. Mazza, Jr. (admitted *pro hac vice* )
Jennifer Madden (admitted *pro hac vice* )
320 S. Canal Street
Chicago, Illinois 60606
Telephone: (312) 407-0700
James.Mazza@skadden.com
Jennifer.Madden@skadden.com

- and -

Destiny N. Almogue (admitted *pro hac vice* )
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Destiny.Almogue@skadden.com

*Proposed Co-Counsel to Debtors and
Debtors in Possession*