**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Related Docket No. 15 |

**DECLARATION OF PHILIP J. GUND**
**IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF INTERIM**
**AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN**
**POSTPETITION FINANCING; (B) CONTINUE ACCESS FINANCING UNDER ITS**
**RECEIVABLES FACILITY; AND (C) UTILIZE CASH COLLATERAL; (II)**
**GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED**
**LENDER; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL**
**HEARING AND (V) GRANTING RELATED RELIEF [DOCKET NO. 15] AND THE**
**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS**
**AUTHORIZING THE DEBTORS TO ASSUME SODA ASH SUPPLY AND LIQUIDITY**
**AGREEMENT AND OBTAIN FINANCING THEREUNDER [DOCKET NO. 12]**

I, Philip J. Gund, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury

that the following is true and correct to the best of my knowledge, information, and belief, declare

as follows:

1.      I am a Senior Managing Director at Ankura Consulting Group, LLC ("**Ankura**"),

working closely with Adrian Frankum and with similar knowledge and understanding of the facts

and circumstances of these Chapter 11 Cases.

2.      I submit this declaration (this "**Gund Declaration**") as the Debtors' witness at the

DIP Hearing rather than Adrian Frankum.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A).  The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

3.      I have reviewed and am familiar with the previously filed declarations of Adrian Frankum (the "**Frankum Declarations**")[2] dated June 14, 2026 [Docket No. 15-4] and [Docket No. 12-5] in support of the DIP Motion (as defined below) and the Supply Agreement Motion (as defined below).

4.      I adopt as my own testimony the substantive testimony set forth in the Frankum Declarations.

5.      As noted, I am a Senior Managing Director of Ankura, based in New York.  I have 43 years of professional experience, including 37 years working with troubled companies and their creditors, investors, and court-appointed officials, and I have earned a national reputation as a restructuring expert and crisis manager, forging consensual agreement among diverse parties across a broad range of industries.  I hold a BBA from Pace University and am a certified public accountant and certified insolvency and restructuring advisor.

6.      On June 14, 2026, the Debtors filed the *Motion of Debtors For Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing; (B) Continue Access Financing Under Its Receivables Facility; and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Lender; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing and (V) Granting Related Relief* [Docket No. 15] (the "**DIP Motion**") and the *Motion of Debtors For Entry of Interim and Final Orders Authorizing the Debtors to Assume Soda Ash Supply and Liquidity Agreement and Obtain Financing Thereunder* [Docket No. 12] (the "**Supply Agreement Motion**").[3]

---

[2]     The Frankum Declaration filed in support of the DIP Motion was attached as Exhibit 5 to the DIP Motion.

[3]     Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the DIP Motion or Supply Agreement Motion, as applicable.

**VBOR Delivery Requirement**

7.      Management and the Debtors' advisors worked on the negotiation of the terms of the Parent Junior DIP Facility related to the delivery of VBOR.  I understand that the covenant to deliver VBOR to Nirma and Navin was initially structured as a "fee."  The Debtors successfully negotiated that any delivery of VBOR product would pay off prior prepetition obligations to deliver VBOR product to Nirma and Navin based on prepayments for the product.  Ankura worked alongside management to determine the volume of VBOR that the estate could potentially deliver to Nirma without materially impacting liquidity.  The Debtors were able to negotiate decreased VBOR production volumes in Exhibit C and certain language that I understand provides that volumes provided and delivered will vary based on actual production volumes and logistical issues.  Since the Petition Date, the Debtors have not delivered VBOR to Nirma.

**Oversecured Status of Prepetition Secured Lender Under Receivables Facility**

8.      I understand that the Prepetition Secured Lender holds a first-priority interest on the Prepetition Receivables Facility Collateral as a result of its prepetition position, which includes the receivables it has financed and substantially all other assets of the Debtors (other than real estate and causes of action).  As the receivables that secure the prepetition obligations are collected postpetition, the DIP budget contemplates that the proceeds are applied to reduce outstanding amounts under the Receivables Facility, which in turn increases availability to factor receivables postpetition.  To the extent the Debtors continue to operate in the ordinary course as a going concern, I expect that the value of the receivables that secure the Receivables Facility will exceed the amount owed to the Prepetition Secured Lender.  Together with the other assets comprising the Prepetition Receivables Facility Collateral, I believe that the Prepetition Secured Lender is likely oversecured on the Debtors' obligations arising under the Receivables Facility.

**The TATA Supply Agreement and Liquidity Advances**

9.      I am familiar with the Debtors' prepetition arrangements with TATA and the payments made to TATA in the 90 days preceding the commencement of the Chapter 11 Cases. The Debtors could not honor the Debtors' soda ash contracts without TATA's supply of soda ash. After the Debtors' mothballing of their soda ash operations, TATA supplied soda ash to the Debtors so that it could continue to satisfy obligations under their customer contracts, which are a valuable asset of the estate.  It is my understanding that the Debtors and TATA did not have any written agreement with respect to TATA's supply of soda ash and therefore, TATA was not obligated to supply soda ash.  Following receipt of invoices from TATA, the Debtors would generally pay such invoices in the ordinary course.  If the Debtors did not make timely payments on the TATA invoices, TATA could have and did temporarily hold delivery of soda ash to the Debtors customers, which, if continued, would have negatively impacted the Debtors' liquidity and the value of the underlying soda ash contracts.

I, Philip J. Gund, pursuant to section 1746 of title 28 of the United States code hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated: July 19, 2026

/s/ Philip J. Gund
Philip J. Gund
Senior Managing Director
Ankura Consulting Group, LLC