**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SEARLES VALLEY MINERALS INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-10966 (BLS)<br><br>(Jointly Administered) |

**AFFIDAVIT OF PUBLICATION OF**
**NOTICE OF AUCTION AND SALE HEARING**
**IN THE NEW YORK TIMES**

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

The New York Times
Company

620 8th Avenue
New York, NY 10018
nytimes.com

# PROOF OF PUBLICATION

July 14, 2026

I, Tami Bacon, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

7/11/2026, NY/NATW, pg B3

Tami Bacon

Sworn to me this 15th day of July, 2026

Shannon Schmidt
Online Notary Public
State of New York
Nassau County
Commission #: 01SC0033223
Commission Expires: 01/28/2029

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: SEARLES VALLEY MINERALS INC., *et al.*,[1] Debtors. | Chapter 11<br>Case No. 26-10966 (BLS)<br>(Jointly Administered) |

**NOTICE OF AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On June 15, 2026 (the "**Petition Date**"), Searles Valley Minerals Inc. and certain of its subsidiaries, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**"), each filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2. On June 15, 2026, the Debtors filed a motion [Docket No. 18] (the "**Motion**")[2] seeking, among other things, (a) entry of an order (the "**Bidding Procedures Order**") approving the bidding procedures (the "**Bidding Procedures**") for the sale or disposition of certain or all of the Debtors' assets (the "**Assets**") in one or more sale transactions pursuant to Bankruptcy Code section 363 (each, a "**Sale Transaction**" and collectively, the "**Sale**"); (b) establishing procedures for the Debtors to designate a stalking horse bidder (the "**Stalking Horse Bidder**") and to enter into a stalking horse agreement (a "**Stalking Horse Agreement**") containing bid protections; (c) establishing certain dates and deadlines for the Sale process, including scheduling (i) an auction of the Assets (the "**Auction**"), if any, in accordance with the Bidding Procedures, and (ii) the hearing with respect to the approval of the Sale of the Assets free and clear of all liens, claims and encumbrances (the "**Sale Hearing**"); (d) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases (the "**Assumption Procedures**"); and (iv) approving the form and manner of notice of the Sale.

3. Any property sold pursuant to the Bidding Procedures shall be sold free and clear of all claims, liens, interests, and encumbrances of any kind or nature whatsoever (other than the Assumed Liabilities and the Permitted Encumbrances) to the fullest extent permitted by section 363(f) of the Bankruptcy Code.

4. On July 7, 2026, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. 140]. The Bidding Procedures provide the following:

(a) **Auction.** If two or more Qualified Bids with respect to all or a subgrouping of the Assets are received by the Bid Deadline, the Debtors will conduct an auction (the "**Auction**") (including any Sub-Auction(s)) to determine the highest or otherwise best Qualified Bid with respect to such Assets. The Auction will begin on **August 13, 2026 at 10:00 a.m. prevailing Eastern Time** at the offices of counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, 395 9th Ave., New York, New York 10001, or such other place (which may be virtual) and time as the Debtors shall notify all Qualified Bidders that have submitted Qualified Bids (including any Stalking Horse Bidder), the DIP Lender, the Prepetition Secured Lender, the Committee, and each of their counsel. Only the Debtors, the DIP Lender, the Prepetition Secured Lender, the Committee, and any Qualified Bidder that has submitted a Qualified Bid (including any Stalking Horse Bidder) by no later than **August 6, 2026 at 11:59 p.m. prevailing Eastern Time** (the "**Bid Deadline**"), in each case, along with their representatives and counsel, or such other parties as the Debtors shall determine shall attend the Auction and only such Qualified Bidders (including any Stalking Horse Bidder) will be entitled to make any further Bids at the Auction. Any Qualified Bidder that wishes to take part in this process and submit a bid for the Debtors' assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures. If two or more Qualified Bids are not received by the Bid Deadline, the Debtors may determine not to conduct the Auction. If only one Qualified Bid is received by the Final Bid Deadline, the Debtors may select the Modified Purchase Agreement or Stalking Horse Agreement, as applicable, of such Qualified Bidder to be the Successful Bid and such Qualified Bidder shall be the Successful Bidder.

(b) **Sale Hearing.** The Sale Hearing is presently scheduled to take place on **August 26, 2026, at 1:30 p.m., prevailing Eastern Time**, at the Bankruptcy Court. At the Sale Hearing, the Debtors will present the Successful Bid or Successful Bids to the Bankruptcy Court for approval. The Sale Hearing may be adjourned by the Debtors and Successful Bidder, from time to time, upon the filing of a notice of adjournment on Bankruptcy Court's docket of the date scheduled for the Sale Hearing.

(c) **Objection Deadline.** Objections, if any, to the Sale of the Assets to a Successful Bidder or Successful Bidders must be made by **August 18, 2026, at 4:00 p.m., prevailing Eastern Time** (the "**Sale Objection Deadline**"). All objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline, and be served on (i) proposed counsel to the Debtors, (ii) counsel to the Successful Bidder or Successful Bidders, (iii) counsel to the DIP Lender, (iv) counsel to the Prepetition Secured Lender, and (v) counsel to the Committee. ***Unless an objection is timely served and filed in accordance with this notice, it may not be considered by the Bankruptcy Court and the Bankruptcy Court may grant the relief requested without further hearing and notice.***

5. The key dates for the Transaction process are as follows:

| Date/Time | Event |
|---|---|
| **July 7, 2026** at 11:59 p.m. EDT | Mailing Date for Sale Notice |
| **July 10, 2026** at 11:59 p.m. EDT | Assumption and Assignment Service Deadline |
| **July 10, 2026** at 11:59 p.m. EDT | Non-Binding LOI Deadline |
| **August 6, 2026** at 11:59 p.m. EDT | Bid Deadline (due date for Bids and Good Faith Deposits) |
| **August 13, 2026** at 10:00 a.m. EDT | Auction |
| **August 17, 2026** at 11:59 p.m. EDT | Deadline to enter into and file Successful Bidder Purchase Agreement with Successful Bidder (the "**Transaction Approval Filing**") |
| **August 18, 2026** at 4:00 p.m. EDT | Sale Objection Deadline |
| **August 19, 2026** at 11:59 p.m. EDT | Deadline to respond to objections to the Sale of the Assets to Successful Bidder or Successful Bidders |
| **August 26, 2026** at 1:30 p.m. EDT | Sale Hearing |

6. This notice (the "**Sale Notice**") and the Sale Hearing are subject to the fuller terms and conditions of the Motion and the Bidding Procedures Order, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of certain or all of the Debtors' Assets or copies of any related document, including the Motion or the Bidding Procedures Order, may make a written request to counsel for the Debtors, (a) Skadden, Arps, Slate, Meagher & Flom LLP, 320 S. Canal Street, Chicago, Illinois 60606 (Attn: James J. Mazza, Jr., Esq. (james.mazza@skadden.com) and Jennifer Madden, Esq. (jennifer.madden@skadden.com)), 2000 Avenue of the Stars, Suite 200N, Los Angeles, California 90067 (Attn: Destiny N. Almogue, Esq. (destiny.almogue@skadden.com)), One Manhattan West, 395 9th Ave., New York, New York 10001 (Attn: Dohyun Kim, Esq. (dohyun.kim@skadden.com)), and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899 (Courier 19801) (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and Edward A. Corma, Esq. (ecorma@pszjlaw.com)). In addition, copies of the Motion, the Bidding Procedures Order and this Notice can be found (a) at https://cases.stretto.com/SVM; and (b) through PACER on the Court's website, https://ecf.deb.uscourts.gov (registration required), and are on file with the Clerk of the Bankruptcy Court, 824 Market St. N., Wilmington, Delaware 19801.

Dated: Wilmington, Delaware, July 7, 2026, */s/ Laura Davis Jones*, **PACHULSKI STANG ZIEHL & JONES LLP**, Laura Davis Jones (DE Bar No. 2436), James E. O'Neill (DE Bar No. 4042), Edward A. Corma (DE Bar No. 6718), 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705, (Courier 19801), Telephone: 302-652-4100, ljones@pszjlaw.com, joneill@pszjlaw.com, ecorma@pszjlaw.com, *Proposed Co-Counsel to Debtors and Debtors in Possession* -and- **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**, Joseph O. Larkin (I.D. No. 4883), One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Telephone: (302) 651-3000, Joseph.Larkin@skadden.com -and- James J. Mazza, Jr. (admitted *pro hac vice*), Jennifer Madden (admitted *pro hac vice*), 320 S. Canal Street, Chicago, Illinois 60606, Telephone: (312) 407-0700, James.Mazza@skadden.com, Jennifer.Madden@skadden.com -and- Destiny N. Almogue (admitted *pro hac vice*), 2000 Avenue of the Stars, Suite 200N, Los Angeles, California 90067, Telephone: (213) 687-5000, Destiny.Almogue@skadden.com, *Proposed Co-Counsel to Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

**SOCIAL MEDIA | ARTIFICIAL INTELLIGENCE | COMPANIES**

# Meta Ordered by E.U. to Alter 'Addictive Design' of Services

By ADAM SATARIANO

LONDON — Meta was told by European Union regulators on Friday to make major design changes to Instagram and Facebook to make the services less addictive, or risk facing hefty fines.

Regulators in Brussels said the "addictive design" of Meta's two social media services violated European Union law and that it needed to remove features like "infinite scroll" and the automatic playing of videos. The technology giant should also introduce new "screen time breaks" and adjust its recommendation algorithm to make it "less engagement oriented," authorities said.

The commission's findings are preliminary and Meta now has time to respond to the allegations before a final judgment is issued. A fine could run up to 6 percent of Meta's global revenue, though regulators rarely issue penalties of that size.

The ruling is an unusually direct effort to force specific product design changes. It is the latest sign of the aggressive approach taken by European regulators to confront social media companies over what is seen as intentionally subversive efforts to hook users, especially children. In February, E.U. authorities accused TikTok of using similar design tricks to keep users coming back again and again.

*Instagram and Facebook could face hefty fines.*

Ben Walters, a spokesman for Meta, said the company disagreed with the findings, which "don't accurately take into account the significant steps we've taken to protect teens." He said the company has introduced teen accounts that allow parents to block access to Instagram at night and cap daily screen time.

The European Commission, the executive branch of the 27-nation bloc, is weighing rules that could bar children from social media because of the apps' addictive features — following Australia's lead.

Europe's aggressive regulation of the tech industry has drawn criticism from President Trump, who sees it as an attack on American companies.

In Brussels, officials have said they are weighing where to draw the line between a well-designed app that users enjoy and a harmfully addictive one. The European Union, home to roughly 450 million people, is one of the world's largest markets for social media, but authorities there have become increasingly skeptical of the ways the companies operate.

European regulators concluded Friday that Meta had gone too far. The company was accused of violating a 2022 law, the Digital Services Act, by using design tactics to keep users hooked on Instagram and Facebook.

Authorities said features like personalized recommendations and an infinite scroll that deliver new content "fuel the user's urge to keep scrolling and shift the brain into autopilot mode."

Such features lead to "unhealthy habits and compulsive use," the authorities added.

Regulators said Meta did not adequately assess the risks of its products, including ignoring information about how much time users under the age of 18 spent on Instagram and Facebook at night. At the same time, features like Reels and Stories led to "excessive or compulsive" use of the services, authorities said.

Meta's existing time-management tools are easily bypassed by younger users and its parental controls are effective only if parents have technical savvy and can devote considerable time to monitoring, regulators said.

"Protecting the physical and mental health of Europeans must be a priority for social media platforms," Henna Virkkunen, the executive vice president at the European Commission overseeing digital policy, said in a statement. "The Digital Services Act provides a clear framework to hold platforms accountable for the addictive design and effects of their services. We are fully committed to enforcing our legislation in Europe."

Jeanna Smialek contributed reporting from Brussels.

# X's Rival From Meta Is Finding Its People

FROM FIRST BUSINESS PAGE

other areas, such as the metaverse and A.I. But he has had mixed results, with Meta winding down its flagship metaverse platform in March and battling Google, Anthropic and OpenAI in A.I. More recently, Mr. Zuckerberg has pushed Meta to create a smartphone app similar to Polymarket and Kalshi, the popular prediction markets.

Mr. Zuckerberg has tempered expectations for Threads, saying it could be "a fifth great app in the family of apps" behind Instagram, Facebook, WhatsApp and Messenger. On a recent call with investors, he mentioned A.I. 49 times. He mentioned Threads twice.



**Mark Zuckerberg has managed expectations, saying Threads could be "a fifth great app in the family of apps."**

Threads is "not a massive project," he said in July 2023. "Over time, you should expect that we're going to focus on A.I. and the metaverse."

Even so, Melissa Otto, the head of research at S&P Global Visible Alpha, said Threads had become an interesting story for Meta that showed momentum and growth. "It's probably a slow build compared to the magnitude and scale of their other applications, but the potential is there," she said.

Threads, which debuted in 2023, was initially powered by Instagram, which promoted the app to its three billion users. To sign up for a Threads account, users had to link their Instagram account, and they could not delete one without deleting the other.

At the time, Threads was overseen by Adam Mosseri, the head of Instagram. Last July, Mr. Zuckerberg appointed Mr. Hayes, a former vice president of generative A.I., to lead Threads as a stand-alone platform.

In October, Mr. Hayes introduced community features to Threads, such as giving some groups their own official channels on the app. In December, Threads began providing "community champions," who are the most frequent posters, special profile designs in the app, and has since helped them host watch parties and in-person events across the country.

Alli Kimmel, 38, who joined Threads in 2025 and is a community champion of a K-pop community with more than 190,000 members, described the vibe of Threads as "a millennial Myspace wild West." It is distinct from X and Bluesky, another social media app, and reminiscent of social media from past eras, she said.

"A lot of Threads users are in their 30s and 40s, and it's more centered on silly, fun, random posts than being a politicized space," Ms. Kimmel said. She spends hours each day on the app posting about Stray Kids, her favorite K-pop band, including sharing photos of its members and hosting discussions about new songs.

Threads has incited a similar sense of millennial nostalgia in Mr. Hayes, who compared the app to the early days of Facebook, which he began working for in 2011. As Instagram and Facebook focus more on A.I.-generated content, the appeal of Threads is the human conversations, he said.

Still, Threads is working to integrate A.I., too. In May, it began letting some users tag an A.I. account called Meta A.I. to ask it questions, similar to how X uses its Grok chatbot. Some content on Threads is also A.I.-generated, albeit less than on Instagram and Facebook, the company said.



IAN C. BATES FOR THE NEW YORK TIMES




IAN C. BATES FOR THE NEW YORK TIMES

**"We want to be the largest and best platform for public conversation," said Connor Hayes, the head of Threads, top. Threads memorabilia, above.**

**'It could be the next Facebook, or it could be a huge bust.'**

Melissa Otto, the head of research at S&P Global Visible Alpha.

In January, Threads started showing ads, in Meta's first move to make money from the platform. The app has not released revenue numbers or data beyond how many users it has.

"It could be the next Facebook, or it could be a huge bust," Ms. Otto of S&P Global Visible Alpha said. "Until they start to reveal the true engagement, we'll never really know."

If Threads reaches one billion users with a robust ads business, that could lead to revenue of at least $30 billion a year, she said. That would be significant for Meta, which pulled in revenue of $201 billion last year, almost all from advertising.

The percentage of users who come to Threads independently, and not through promotions on Instagram or Facebook, is increasing, Meta said, without revealing numbers. Threads has become especially popular in Asia, with the total time users spend on the app growing 80 percent in South Korea and 130 percent in Japan in the last year, the company said.

In contrast, other text-based social networks have struggled. In March, X reported that its advertising revenue had declined $100 million in the last quarter. Mastodon, another X rival, has 758,000 active users, down 70 percent from its peak in the months after Mr. Musk bought Twitter. Bluesky said it had 45 million users this year.

The more Threads proves its success, the more attention it will receive from Meta, even as the company focuses on ventures like A.I. and smart glasses, Mr. Hayes said.

"The investment is going to grow," he said. "It should grow, given what we're seeing."

# Meta Launches A.I. Model You'll Have to Pay to Use

By ELI TAN

SAN FRANCISCO — Meta on Thursday unveiled a new version of its flagship artificial intelligence model, Muse Spark, in an effort to close the gap with its rivals in the global race to develop the technology.

For the first time, the company will offer a paid version of the service, a departure from its longtime philosophy of giving its A.I. away for free. The paid product opens up a new revenue stream for Meta, which is planning to spend tens of billions of dollars on A.I. this year.

The new model is better at coding than Meta's previous version of the technology, which the company released in April. On tests that measure writing, reasoning, coding and other tasks, Muse Spark performed at or near the same levels as leading models from Anthropic, OpenAI, Google and xAI, according to data shared by the company.

Meta's product would also be cheaper than other leading models, the company said. Muse Spark costs customers about a fourth what Anthropic's leading model, Fable, does.

Muse Spark is the first A.I. model developed by Meta Superintelligence Labs, the company's A.I. division that Mark Zuckerberg, Meta's chief executive, revamped last year. Along with spending billions on new A.I. researchers to develop models like Muse Spark, Mr. Zuckerberg has pledged to spend $600 billion to build new data centers in the coming years.

The new A.I. division is led by Alexandr Wang, Meta's 29-year-old chief A.I. officer and the former chief executive of the start-up ScaleAI. Meta released its first image generator developed under Mr. Wang, called Muse Image, on Tuesday. Meta also plans to release a video generator called Muse Video and an even more powerful A.I. model internally called Watermelon in the coming months.

Meta is facing fierce competition in the A.I. race from rival tech firms. Elon Musk's A.I. company, xAI, on Wednesday released a new A.I. model, and OpenAI released its latest model on Thursday.

Mr. Zuckerberg promoted Meta's new model on X on Thursday, calling it "strongest at agentic performance, tool use, and computer use."

"More to come soon," he added.

# The Second in Command at OpenAI Steps Down

By CADE METZ

SAN FRANCISCO — Fidji Simo, who served as second in command to OpenAI's chief executive, Sam Altman, before taking a medical leave in April, said on Thursday that she would not return to the job.

"Today, I shared with the OpenAI team that I have decided to leave my full-time role at OpenAI and transition to being a part-time advisor," she said in a post to social media.

Ms. Simo joined OpenAI's board of directors in March 2024, while serving as chief executive of the grocery delivery company Instacart. A year later, she left Instacart to become OpenAI's first chief executive for applications, charged with overseeing the company's engineering, product and business teams.

Her title was later changed to chief executive of A.G.I. deployment, referring to artificial general intelligence, a theoretical technology that matches the powers of the human brain.



PHOTO BY STUART ISETT/FORTUNE/SHUTTERSTOCK

**Fidji Simo became OpenAI's first chief executive for applications in March 2025. She took a leave of absence in April to deal with a chronic illness.**

In April, Ms. Simo took a leave of absence to deal with what was described as a chronic illness.

"It became clear that the road to recovery would be much longer and more complex than I had anticipated — and that I needed to focus on it fully," she said in her post. Ms. Simo, 40, did not immediately respond to a request for comment.

Her departure adds to the number of OpenAI executives who have changed roles or left the company in recent months.

The company filed confidentially this year for an initial public offering, but has indicated that it may not be ready to go public for months.

Brad Lightcap left his longtime post as chief operating officer this year to move into a new role focused on "special projects." Kate Rouch said she was stepping down as chief marketing officer in April to focus on cancer recovery. Kevin Weil, who oversaw science research after a brief stint as chief product officer, left OpenAI the same month.

(The New York Times sued OpenAI and Microsoft in 2023, claiming copyright infringement of news content related to A.I. systems. The two companies have denied those claims.)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re: SEARLES VALLEY MINERALS INC., *et al.*,[1] Debtors. ) Chapter 11 ) Case No. 26-10966 (BLS) ) (Jointly Administered)

**NOTICE OF AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On June 15, 2026 (the "**Petition Date**"), Searles Valley Minerals Inc. and certain of its subsidiaries, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**"), each filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2. On June 15, 2026, the Debtors filed a motion [Docket No. 18] (the "**Motion**")[2] seeking, among other things, (a) entry of an order (the "**Bidding Procedures Order**") approving the bidding procedures (the "**Bidding Procedures**") for the sale or disposition of certain or all of the Debtors' assets (the "**Assets**") in one or more sale transactions pursuant to Bankruptcy Code section 363 (each, a "**Sale Transaction**" and collectively, the "**Sale**"); (b) establishing procedures for the Debtors to designate a stalking horse bidder (the "**Stalking Horse Bidder**") and to enter into a stalking horse agreement (a "**Stalking Horse Agreement**") containing bid protections; (c) establishing certain dates and deadlines for the Sale process, including scheduling (i) an auction of the Assets (the "**Auction**"), if any, in accordance with the Bidding Procedures, and (ii) the hearing with respect to the approval of the Sale of the Assets free and clear of all liens, claims and encumbrances (the "**Sale Hearing**"); (d) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases (the "**Assumption Procedures**"); and (iv) approving the form and manner of notice of the Sale.

3. Any property sold pursuant to the Bidding Procedures shall be sold free and clear of all claims, liens, interests, and encumbrances of any kind or nature whatsoever (other than the Assumed Liabilities and the Permitted Encumbrances) to the fullest extent permitted by section 363(f) of the Bankruptcy Code.

4. On July 7, 2026, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. 140]. The Bidding Procedures provide the following:

(a) **Auction**. If two or more Qualified Bids with respect to all or a subgrouping of the Assets are received by the Bid Deadline, the Debtors will conduct an auction (the "**Auction**") (including any Sub-Auction(s)) to determine the highest or otherwise best Qualified Bid with respect to such Assets. The Auction will begin on **August 13, 2026 at 10:00 a.m. prevailing Eastern Time** at the offices of counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, 395 9th Ave., New York, New York 10001, or such other place (which may be virtual) and time as the Debtors shall notify all Qualified Bidders that have submitted Qualified Bids (including any Stalking Horse Bidder), the DIP Lender, the Prepetition Secured Lender, the Committee, and each of their counsel. Only the Debtors, the DIP Lender, the Prepetition Secured Lender, the Committee, and any Qualified Bidder that has submitted a Qualified Bid (including any Stalking Horse Bidder) by no later than **August 6, 2026 at 11:59 p.m. prevailing Eastern Time** (the "**Bid Deadline**"), in each case, along with their representatives and counsel, or such other parties as the Debtors shall determine shall attend the Auction and only such Qualified Bidders (including any Stalking Horse Bidder) will be entitled to make any further Bids at the Auction. Any Qualified Bidder that wishes to take part in this process and submit a bid for the Debtors' assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures. If two or more Qualified Bids are not received by the Bid Deadline, the Debtors may determine not to conduct the Auction. If only one Qualified Bid is received by the Final Bid Deadline, the Debtors may select the Modified Purchase Agreement or Stalking Horse Agreement, as applicable, of such Qualified Bidder to be the Successful Bid and such Qualified Bidder shall be the Successful Bidder.

(b) **Sale Hearing**. The Sale Hearing is presently scheduled to take place on **August 26, 2026, at 1:30 p.m., prevailing Eastern Time**, at the Bankruptcy Court. At the Sale Hearing, the Debtors will present the Successful Bid or Successful Bids to the Bankruptcy Court for approval. The Sale Hearing may be adjourned by the Debtors and Successful Bidder, from time to time, upon the filing of a notice of adjournment on Bankruptcy Court's docket of the date scheduled for the Sale Hearing.

(c) **Objection Deadline**. Objections, if any, to the Sale of the Assets to a Successful Bidder or Successful Bidders must be made by **August 18, 2026, at 4:00 p.m., prevailing Eastern Time** (the "**Sale Objection Deadline**"). All objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline, and be served on (i) proposed counsel to the Debtors, (ii) counsel to the Successful Bidder or Successful Bidders, (iii) counsel to the DIP Lender, (iv) counsel to the Prepetition Secured Lender, and (v) counsel to the Committee. ***Unless an objection is timely served and filed in accordance with this notice, it may not be considered by the Bankruptcy Court and the Bankruptcy Court may grant the relief requested without further hearing and notice.***

5. The key dates for the Transaction process are as follows:

| Date/Time | Event |
|---|---|
| **July 7, 2026** at 11:59 p.m. EDT | Mailing Date for Sale Notice |
| **July 10, 2026** at 11:59 p.m. EDT | Assumption and Assignment Service Deadline |
| **July 10, 2026** at 11:59 p.m. EDT | Non-Binding LOI Deadline |
| **August 6, 2026** at 11:59 p.m. EDT | Bid Deadline (due date for Bids and Good Faith Deposits) |
| **August 13, 2026** at 10:00 a.m. EDT | Auction |
| **August 17, 2026** at 11:59 p.m. EDT | Deadline to enter into and file Successful Bidder Purchase Agreement with Successful Bidder (the "**Transaction Approval Filing**") |
| **August 18, 2026** at 4:00 p.m. EDT | Sale Objection Deadline |
| **August 19, 2026** at 11:59 p.m. EDT | Deadline to respond to objections to the Sale of the Assets to Successful Bidder or Successful Bidders |
| **August 26, 2026** at 1:30 p.m. EDT | Sale Hearing |

6. This notice (the "**Sale Notice**") and the Sale Hearing are subject to the fuller terms and conditions of the Motion and the Bidding Procedures Order, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of certain or all of the Debtors' Assets or copies of any related document, including the Motion or the Bidding Procedures Order, may make a written request to counsel for the Debtors, (a) Skadden, Arps, Slate, Meagher & Flom LLP, 320 S. Canal Street, Chicago, Illinois 60606 (Attn: James J. Mazza, Jr., Esq. (james.mazza@skadden.com) and Jennifer Madden, Esq. (jennifer.madden@skadden.com)), 2000 Avenue of the Stars, Suite 200N, Los Angeles, California 90067 (Attn: Destiny N. Almogue, Esq. (destiny.almogue@skadden.com)), One Manhattan West, 395 9th Ave., New York, New York 10001 (Attn: Dohyun Kim, Esq. (dohyun.kim@skadden.com)), and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899 (Courier 19801) (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and Edward A. Corma, Esq. (ecorma@pszjlaw.com)). In addition, copies of the Motion, the Bidding Procedures Order and this Notice can be found (a) at https://cases.stretto.com/SVM; and (b) through PACER on the Court's website, https://ecf.deb.uscourts.gov (registration required), and are on file with the Clerk of the Bankruptcy Court, 824 Market St. N., Wilmington, Delaware 19801.

Dated: Wilmington, Delaware, July 7, 2026, /s/ Laura Davis Jones , **PACHULSKI STANG ZIEHL & JONES LLP,** Laura Davis Jones (DE Bar No. 2436), James E. O'Neill (DE Bar No. 4042), Edward A. Corma (DE Bar No. 6718), 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705, (Courier 19801), Telephone: 302-652-4100, ljones@pszjlaw.com, joneill@pszjlaw.com, ecorma@pszjlaw.com, *Proposed Co-Counsel to Debtors and Debtors in Possession* -and- **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP,** Joseph O. Larkin (I.D. No. 4883), One Rodney Square , 920 N. King Street, Wilmington, Delaware 19801, Telephone: (302) 651-3000, Joseph.Larkin@skadden.com -and- James J. Mazza, Jr. (admitted *pro hac vice* ), Jennifer Madden (admitted *pro hac vice*), 320 S. Canal Street, Chicago, Illinois 60606, Telephone: (312) 407-0700, James.Mazza@skadden.com, Jennifer.Madden@skadden.com -and- Destiny N. Almogue (admitted *pro hac vice*), 2000 Avenue of the Stars, Suite 200N, Los Angeles, California 90067, Telephone: (213) 687-5000, Destiny.Almogue@skadden.com, *Proposed Co-Counsel to Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.