**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>SEARLES VALLEY MINERALS INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10966 (BLS)<br><br>Jointly Administered<br><br>**Re D.I.**: 18, 77, 149 & 259<br><br>**Reply Deadline:** Aug. 21, 2026 at 4:00 p.m. EDT<br><br>**Hearing Date:** Aug. 26, 2026 at 1:30 p.m. EDT |

# CALIFORNIA AIR RESOURCES BOARD'S MEMORANDUM IN SUPPORT OF MOTION SEEKING:

**(1) AN ORDER CLARIFYING THAT THE SALE OF SEARLES VALLEY MINERALS' ASSETS WILL NOT IMPAIR FUTURE ENVIRONMENTAL LAW OBLIGATIONS IN CALIFORNIA, OR, IN THE ALTERNATIVE,**

**(2) AN ORDER THAT THE SALE OF SEARLES VALLEY MINERALS' ASSETS CANNOT "CLEAR" ENVIRONMENTAL LAW OBLIGATIONS UNDER 11 U.S.C. 363(f), OR, IN THE ALTERNATIVE,**

**(3) AN ORDER PROVIDING ADEQUATE PROTECTION TO THE CALIFORNIA AIR RESOURCES BOARD DURING AND AFTER THE SALE OF SEARLES VALLEY MINERAL'S ASSETS.**

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Mineral, Inc. (9263), Trona Railway Company LLC (3177), and Searles Domestic Water Company LLC (N/A).

## TABLE OF CONTENTS

**Page**

Introduction .... 1

Background .... 3

A. The California Cap-and-Invest Regulation .... 3

1. History and Fundamentals of the California Cap-and-Invest Program .... 3

2. California Law Expressly Provides that Successor Owners of Covered Entities Are Liable for Unsurrendered Compliance Instruments .... 5

B. Searles Valley Minerals and Its Bankruptcy .... 7

1. History of Searles Valley Minerals .... 7

2. Bankruptcy of Searles Valley Minerals .... 7

Legal standards and procedure .... 8

Argument .... 9

I. The Future Owner of Searles Valley Minerals' Facilities Will Be Bound by California Environmental Law Obligations Regardless of Any Conditions on a Sale of Assets Because Those Obligations are Not an Interest in Property .... 9

II. Even if the Cap-and-Invest Obligations Were Interests, the Bankruptcy Court Lacks the Power to "Clear" Them Because They Do Not Fall Within Any Category in 11 U.S.C. § 363(f) .... 13

III. If this Court Does Purport to "Clear" the Cap-and-Invest Obligations, It Would Be Obligated to Provide Adequate Protection to CARB .... 15

Conclusion .... 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Fuel & Petrochemical Manufacturers v. O'Keeffe*
903 F.3d 903 (9th Cir. 2018) ....................12

*Bond v. United States*
572 U.S. 844 (2014)....................12, 15

*Harrington v. Purdue Pharma L. P.*
603 U.S. 204 (2024)....................12

*In re Bates*
270 B.R. 455 (Bankr. N.D. Ill. 2001) ....................10

*In re Chateaugay Corp.*
944 F.2d 997 (2d Cir.1991)....................10

*In re Gen. Motors Corp.*
407 B.R. 463 (Bankr. S.D.N.Y. 2009)....................8, 10, 12

*In re La Paloma Generating, Co.*
No. 16-12700 (CSS), 2017 WL 5197116 (Bankr. D. Del. Nov. 9, 2017) ............. *passim*

*In re Oldco M Corp.*
438 B.R. 775 (Bankr. S.D.N.Y. 2010)....................11

*In re Torwico Elecs., Inc.*
8 F.3d 146 (3d Cir. 1993)....................2, 8, 10, 14

*Matter of CMC Heartland Partners*
966 F.2d 1143 (7th Cir. 1992) ....................2, 8, 10, 11

*Our Children's Earth Found. v. Cal. Air Res. Bd.*
234 Cal.App.4th 870 (2015) ....................3

*Pennhurst State School and Hospital v. Halderman*
465 U.S. 89 (1984)....................9

*Rosenberg v. DVI Receivables XVII, LLC*
835 F.3d 414 (3d Cir. 2016)....................12, 15

*Stern v. Marshall*
564 U.S. 462 (2011)....................9

# TABLE OF AUTHORITIES
# (continued)

Page

*United States Forest Serv. v. Cowpasture River Pres. Ass'n*
590 U.S. 604 (2020) ........ 12

STATUTES

11 U.S.C.
§ 363 ........ *passim*
§ 363(e) ........ 15
§ 363(f) ........ *passim*
§ 3639(f) ........ 14

28 U.S.C.
§ 157(b) ........ 9
§ 1334 ........ 8

Cal. Gov. Code § 11346.2(b) ........ 6

Cal. Health & Saf. Code
§ 38530 ........ 3
§ 38550 ........ 3
§ 38560 ........ 3
§ 38560.5 ........ 3
§ 38562 ........ 3

# TABLE OF AUTHORITIES
## (continued)

**Page**

**REGULATIONS**

Cal. Code Regs., Title 17
§ 95100 *et seq.* ....................4
§ 95801 *et seq.* .................... *passim*
§ 95802(a) ....................4
§ 95812....................4
§ 95835....................6
§ 95835(b)....................6, 11, 14
§ 95840....................5
§ 95840(e) ....................5
§ 95841....................4
§ 95850....................4
§ 95855....................5
§ 95856....................4, 11
§ 95856(d) ....................5
§ 95856(f)....................5
§ 95856(f)(3) ....................5
§ 95857....................11
§ 95857(b)(2) ....................4, 14
§ 95857(c) ....................4, 14
§ 95891....................7
§ 95921....................7
§ 96012....................4, 14
§ 96013....................4, 14

**COURT RULES**

Federal Rule of Bankruptcy Procedure
9014....................9
9014(a) ....................9
9014(c) ....................9

**OTHER AUTHORITIES**

Interest in Property, Black's Law Dictionary (12th ed. 2024) ....................9, 10

## INTRODUCTION

Under California law, total greenhouse gas emissions subject to the state's Cap-and-Invest Program are capped. To ensure compliance with this cap, state law requires that polluters track their emissions and, at the end of a compliance period, surrender permits, called compliance instruments, that cover the emissions from their facilities. Three key features of this system are relevant to the sale of Debtor Searles Valley Minerals, Inc.'s facilities:

- First, emissions are self-reported and tracked, so the polluter knows the amount of emissions it has generated and whether it has sufficient compliance instruments to cover those emissions;
- Second, these compliance instruments are tradeable—that is, a polluter who reduces their emissions might have excess compliance instruments, and can sell their compliance instruments to a polluter who has not reduced their emissions, while the California Air Resources Board (CARB) maintains the overall cap and monitors the distribution of compliance instruments; and
- Third, on dates specified by CARB, the covered entity (*i.e.*, regulated polluter) has an obligation to surrender compliance instruments for the facility that are equivalent to the metric tons of carbon dioxide that the facility emitted. CARB's Cap-and-Invest Regulation does not provide for CARB to accept money or other compensation in lieu of compliance instruments. The obligation to surrender compliance credits falls on the owner of the facility on the due date for credits, even if some (or even most) of the emissions from the facility occurred before the owner acquired the facility.

This program, under the Cap-and-Invest Regulation, imposes a legal duty on the owner of the facility at the end of the compliance period. These rules promote predictability—any business that is interested in buying or selling a polluting facility knows that, at the end of the relevant compliance period, the owner will be obligated to surrender compliance instruments covering the pollution emitted during the entire compliance period. These rules also ensure that the State of

California is capable of maintaining the integrity of its Cap-and-Invest Program and achieving its goal of imposing effective limits on emissions.

Here, Debtor Searles Valley Minerals seeks to sell its facilities in the middle of a three-year compliance period; the due date for the owner of Searles Valley Minerals' facilities to surrender the largest installment of its credits will occur in November 2027. However, its Motion seeking to authorize such a sale does not address the future application of CARB's regulations concerning compliance instruments. The result of the proposed sale of assets would be to undermine the predictability and integrity of CARB's regulatory program, leaving the buyer with uncertainty and potential future litigation over the applicability of CARB's rules to emissions that occurred prior to the sale of the facilities.

The duty on the future owner of Searles Valley Minerals' facilities is not implicated by this bankruptcy *at all*, and this Court does not have the power to adjust the duties of a non-debtor to comply with environmental law in the future. *See Matter of CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992). Responsibility for pollution imposed under environmental laws is not a claim that can be discharged, even if the duty imposed will cost the future owner money to comply with law. *In re Torwico Elecs., Inc.*, 8 F.3d 146, 149 (3d Cir. 1993). This Court's analysis may end there. But if this Court disagrees and somehow views CARB's Cap-and-Invest Program as creating an *interest* in the facilities, then this Court must determine whether CARB's interest may be voided and the facilities may be sold "free and clear" of that interest. It cannot, because the interest does not qualify for any of the five conditions that enable such a sale. *See* 11 U.S.C. § 363(f). And even if one of the conditions under Section 363(f) applied, CARB would then be entitled to adequate protection.

To provide certainty, CARB seeks a ruling on this Motion before the Court rules on any motion approving the sale or asset transfer agreement with a Purchaser.[2]

[2] CARB intends to file a separate objection to the sale by the August 24th deadline addressing the issues weighing against confirmation of a sale and transfer of Debtors' assets free and clear under 11 U.S.C. section 363.

## BACKGROUND

### A. The California Cap-and-Invest Regulation

#### 1. History and Fundamentals of the California Cap-and-Invest Program

California Assembly Bill (AB) 32 (Stats. 2006, ch. 488), the California Global Warming Solutions Act of 2006, requires California to reduce greenhouse gas ("GHG") emissions to 1990 levels by 2020, and to maintain and continue emission reductions thereafter. In 2016, the Legislature added a requirement for CARB to reduce statewide GHG emissions to 40% below 1990 levels by 2030 (Senate Bill 32 (Stats. 2016, ch. 249)). In 2022, the Legislature established targets for 2045: GHG emissions reduced to 85% below 1990 levels and achieve net-zero GHG emissions, with net negative emissions thereafter (AB 1279 (Stats. 2022, ch. 337)). California met the 2020 target several years early.

California's programs to achieve these reductions are, for the most part, carried out by CARB. CARB's programs developed under AB 32 contribute to the emissions reductions needed to achieve this goal. AB 32 "is supported by legislative findings that global warming poses a 'serious threat' to the 'economic well-being, public health, natural resources, and the environment of California,' and that global warming will have 'detrimental effects on some of California's largest industries.'" *Our Children's Earth Found. v. Cal. Air Res. Bd.*, 234 Cal.App.4th 870, 873 (2015), review denied (June 10, 2015), (quoting Cal. Health & Saf. Code § 38501(a)&(b)).

In implementing AB 32, CARB must, among other things, adopt regulations to achieve the maximum technologically feasible and cost-effective GHG emission reductions. *See* Cal. Health & Saf. Code §§ 38530, 38550, 38560, and 38560.5. In doing so, the Legislature permitted CARB to adopt a market-wide system of declining emissions caps. Cal. Health & Saf. Code § 38562. CARB created California's Cap-and-Invest Program (originally called Cap-and-Trade) by promulgating the Cap-and-Invest Regulation, formally titled as the California Cap on Greenhouse Gas Emissions and Market-Based Compliance Mechanisms Regulation, and is

found at 17 California Code of Regulations ("C.C.R.") §§ 95801 *et seq.* ("Cap-and-Invest Regulation")[3]. The Cap-and-Invest Program is a key element of California's plan for achieving the GHG emission reduction requirement of AB 32. It sets a statewide limit (*i.e.*, the "cap") on the total GHG emissions allowed from regulated entities, defined as "Covered Entities" under California Code of Regulations, title 17, section 95802(a)[4], representing approximately 80% of California's emissions. Over time, this statewide limit decreases to reduce total GHG emissions. Cal. Code Regs., tit. 17, § 95841. Covered Entities must report their annual emissions to CARB and surrender compliance instruments equal to such emissions, as described further below. *E.g.*, Cal. Code Regs., tit. 17, §§ 95812, 95850, 95856. A Compliance Instrument "means allowance or offset, issued by ARB[5] or by an External Greenhous Gas Emissions Trading System to which California has linked its Cap-and-Trade Program pursuant to subarticle 12, or sector-based offset credit. Each compliance instrument can be used to fulfill a compliance obligation equivalent to up to one metric ton of $CO_2e$ [Carbon Dioxide-equivalent emission]." *Id.* § 95802(a). The integrity of the Cap-and-Invest Program depends on Covered Entities surrendering compliance instruments equal to their annual reported emissions.

When a covered entity fails to timely surrender compliance instruments, the initial and automatic penalty is that the party must surrender four times as many compliance instruments due. Cal. Code Regs., tit. 17, § 95857(b)(2). If a covered entity fails to comply with the initial penalty, CARB may impose additional fines or seek injunctive relief. Cal. Code Regs., tit. 17, §§ 95857(c), 96012-96013. But CARB's Cap-and-Invest Regulation does not provide for CARB to accept monetary penalties or other compensation in lieu of compliance instruments. Put another way, a party that fails to comply might rack up more penalties, but even after paying the penalties, the delinquent party still owes CARB the compliance instruments.

---

[3] The companion Regulation for the Mandatory Reporting of Greenhouse Gas Emissions, 17 C.C.R. §§ 95100 *et seq.* ("MRR") requires the Covered Entity (as defined below) at the time of a surrender deadline to submit compliance instruments equivalent to the compliance obligation due.

[4] All definitions in section 95802(a) are listed alphabetically.

[5] CARB is also referred to as ARB, including in the regulations.

Reporting and surrender of compliance instruments operates on a fixed schedule that repeats every three years. *See, e.g.*, Cal. Code Regs., tit. 17, § 95840. Each year, most covered entities report their emissions from the prior year no later than April 10, which are then verified by August 10. Parties then must surrender the correct amount of compliance instruments by November 1. Cal. Code Regs., tit. 17, § 95856(d), (f). The amount due varies by year. In the first two years of the three-year cycle, covered entities must surrender compliance instruments equivalent to 30% of their emissions in that year. Cal. Code Regs., tit. 17, § 95855. In the third year, covered entities must surrender compliance instruments covering the remaining 70% of emissions from the first and second years, plus compliance instruments covering 100% of the emissions for the third year. *See* Cal. Code Regs., tit. 17, § 95856(f)(3). The present cycle runs from 2024 through 2026. Cal. Code Regs., tit. 17, § 95840(e). In November 2025, Searles Valley Minerals complied with its obligation to surrender instruments covering 30% of its 2024 emissions. *See* CARB, Cap-and-Trade Program Data, https://ww2.arb.ca.gov/sites/default/files/2025-12/nc-2024compliance report.xlsx (Tab 2024 Compliance Summary, Row 39). Searles Valley Minerals reported its 2025 emissions in April 2026, and those emissions are in the verification process.

### 2. California Law Expressly Provides that Successor Owners of Covered Entities Are Liable for Unsurrendered Compliance Instruments

In 2016, La Paloma Generating Company, a Covered Entity operating a natural gas fired electric power plant in California, filed its chapter 11 bankruptcy in this District. Like Searles Valley Minerals, La Paloma proposed to sell its facilities in asset sales. La Paloma conferred with CARB concerning uncertainty about the application of 11 U.S.C. § 363 to facilities that give rise to obligations to surrender compliance instruments to CARB under the Cap-and-Invest Program. La Paloma and CARB sought judicial resolution of the future obligations to provide certainty as to the effect of the sale of assets. *In re La Paloma Generating, Co.*, No. 16-12700 (CSS), 2017 WL 5197116, at *3 (Bankr. D. Del. Nov. 9, 2017).

In *La Paloma*, CARB argued that the California Cap-and-Invest Regulations had provisions for transfer of compliance instruments upon the sale of a facility, and, if the seller no longer owns any polluting facility, the possibility to exit the program. *Id.* at *7. But LNV Corporation, which purchased the La Paloma power plant, pointed out that the relevant regulations—notably California Code of Regulations, Title 17, Sectio 95835—did not compel successor liability. *Id.* at *4. This Court agreed with LNV, indicating that while certain obligations could be imposed on future owners, the California "Regulation does not impose successor liability . . . ." *Id.* at *9 (citing *In re Gen. Motors Corp.*, 407 B.R. 463, 508 (Bankr. S.D.N.Y. 2009)).[6]

After *La Paloma*, CARB adopted amendments to the Cap-and-Invest Regulation to ensure the ongoing liability of future owners of facilities under the regulation. Specifically, the Cap-and-Invest Regulation now contains the following relevant language: "When the ownership of a facility changes, whether by merger, acquisition, or any other means, the successor entity after the change in ownership is expressly liable for the unsurrendered compliance obligation of the predecessor covered entity that is party to the change in ownership transaction." Cal. Code Regs. tit. 17, § 95835(b). This language directly addressed the situation faced in *La Paloma*, and intentionally changed the relevant law. *See* Declaration of Michael S. Dorsi, Exhibit 1 (Initial Statement of Reasons at pp. 9-10, discussing *La Paloma*).[7] The result is that, in November 2026, the owner of the facilities now owned by Searles Valley Minerals, will be obligated to surrender compliance instruments equivalent to 30% of the facilities' 2025 emissions. And in November 2027, the owner will be obligated to surrender compliance instruments equivalent to 70% of the

[6] The relevant California regulation, as it existed at the time, is copied in the text of the *La Paloma* decision. As explained in Background Part A.3, the present regulation differs materially.

[7] Initial Statements of Reasons, like this one, are required by the California Administrative Procedure Act to formally initiate a proposed regulatory action (e.g., a new rule or amendment to an existing rule). Cal. Gov. Code § 11346.2(b). They are somewhat analogous to Notices of Proposed Rulemakings in federal administrative law. Final Statements of Reasons are likewise part of the State's rulemaking process and are loosely analogous to preambles to final rules and responses to comments produced in federal rulemaking proceedings.

facilities' emissions in 2024 and 2025, and 100% of the facilities' emissions in 2026. This obligation applies to any owner, whether the owner was the sole owner for the whole period, purchased the facilities from that owner, or the final owner if the facilities changed hands multiple times. Under California law, CARB does not require the surrender of compliance instruments from the entity that owned the facility at the time of the emissions—it only requires surrender of emissions from the entity that owns the facility on the compliance date.

## B. Searles Valley Minerals and Its Bankruptcy

### 1. History of Searles Valley Minerals

Searles Valley Minerals operates mining facilities in Trona, California. The facilities include a coal fired power plant, a mineral extraction plant, a railroad using diesel-electric locomotives, and related facilities for the mining operation. As a result of these facilities and other environmental factors, Trona and the surrounding area have long suffered from air and water pollution. As a result of its material greenhouse gas emissions, Searles Valley Minerals is a covered entity in California's Cap-and-Invest Program.[8] As an incumbent generator, Searles Valley Minerals receives certain compliance instruments for free, and can purchase additional compliance instruments from other entities in the Program. *See* Cal. Code Regs., tit. 17, §§ 95891, 95921.

### 2. Bankruptcy of Searles Valley Minerals

Debtors Searles Valley Minerals (SVM), along with its two wholly owned subsidiaries (though not its parent companies, Nirma Limited through Karnavati Holdings, Inc.), filed chapter 11 bankruptcy petitions on June 15, 2026, (Doc.1.) The bankruptcies are jointly administered, and each debtor identified the State of California Cap-And-Trade Program (CARB) as the first

[8] The Trona Railway Company and Searles Domestic Water Company, also part of this bankruptcy, are not covered entities under CARB's Cap-and-Invest Program. Trona Railway Company is not a covered entity, despite emissions from its diesel-electric locomotives, because those emissions are accounted for through other regulatory compliance obligations imposed on diesel fuel distributors. Searles Domestic Water Company is not covered because it does not emit material amounts of greenhouse gasses.

and largest creditor, claiming that the nature of the claim is an "Unsecured Claim" for "Environmental Obligations" and valued at $76,318,424.00. (Doc. 1 at 22.)

On June 15, 2026, Debtors' filed a motion for entry of orders approving bidding procedures for the sale of certain or all of debtors' assets, among other requests (D. I. 18) and have since file related pleadings (D. I. 77, 149, and 259) most recently moving the bidding deadline to August 17, 2026, and the auction to August 20, 2026, leaving the Sales Hearing on calendar for August 26. The Debtors propose to sell their assets free and clear of all encumbrances except for "Permitted Encumbrances," though Debtors do not state whether they view their "Environmental Obligations" (or any other obligations under environmental laws) as encumbrances that would be *cleared* by a sale. It remains unclear whether the intent of the sale is to immunize the buyer from compliance with obligations under CARB's Cap-and-Invest Program.

**LEGAL STANDARDS AND PROCEDURE**

This Court may issue an order addressing the consequences of a sale in advance of the sale, and should do so in order to inform the buyers of what rights and obligations they are purchasing. *See In re Gen. Motors Corp.,* 407 B.R. 463, 486 (Bankr. S.D.N.Y. 2009) ("Determining the propriety of the 363 Transaction requires confirming that section 363 can be utilized for the sale . . . before confirmation of a reorganization plan . . ."); *see also In re La Paloma Generating, Co.*, No. 16-12700 (CSS), 2017 WL 5197116, at *1 (Bankr. D. Del. Nov. 9, 2017) (citing 28 U.S.C. §§ 157 and 1334). This Court may issue such an order warning a future owner of a facility that this Court's order will not invalidate future environmental law obligations because those obligations are not *interests in property* that may be cleared under 11 U.S.C. § 363(f), or if it is an interest, that it does not fall within any of the five categories of interests that this Court may clear.[9]

[9] CARB acknowledges two points that are uncertain under existing law. First, it is not clear if an order applying *CMC Heartland* and *Torwico* would be a final order or judgment on any claim that otherwise requires adjudication by a state or Article III court. CARB has not consented to this Court deciding any matter that requires adjudication by an Article III or state court. 28 U.S.C. § 157(b); *see also Stern v. Marshall*, 564 U.S. 462, 494 (2011). In addition, to

(continued…)

This is a contested matter within the meaning of Federal Rule of Bankruptcy Procedure 9014. *See* Fed. R. Bankr. P. 9014(a). At this time, CARB does not believe that an evidentiary hearing is required to resolve this Motion. CARB's Motion relies on attached evidence but does not expect any dispute of those material facts. Counsel conferred and expect to file a status update after all parties have an opportunity to review the papers, informing the Court whether an evidentiary hearing will be necessary. CARB reserves the right to conduct discovery under Federal Rule of Bankruptcy Procedure 9014(c), to the extent there are factual disputes.

## ARGUMENT

### I. The Future Owner of Searles Valley Minerals' Facilities Will Be Bound by California Environmental Law Obligations Regardless of Any Conditions on a Sale of Assets Because Those Obligations are Not an Interest in Property

Debtor Searles Valley Minerals proposes to sell its assets—including a power plant and mining facilities—free and clear of "interests" in the properties. But their moving papers do not say whether the environmental law obligation to surrender compliance instruments under CARB's Cap-and-Invest Program is an interest, creating uncertainty for a buyer. This Court should resolve that uncertainty by issuing a clear ruling that the duty to comply with the Cap-and-Invest regulations is not an interest and, as a result, not "cleared."

Section 363 permits, in certain circumstances, a debtor to sell property of the estate "free and clear of any interest in such property . . . ." 11 U.S.C. § 363(f). The term "interests in property" is not defined by statute. Black's Law Dictionary defines a "property interest,"[10] in the context of property law,[11] as "An interest, perhaps including rights of possession and control, held by an owner, beneficiary, or remainderman in land, real estate, business, or other tangible

---

the extent that this or any motion raises questions of whether California or any of its agencies—*i.e.*, CARB—is acting consistent with state law, the Eleventh Amendment deprives all federal courts of jurisdiction to decide those questions, and any such question must be submitted to a state court. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984).

[10] Black's includes an entry for Interest in Property, but that entry says "See Property Interest." Interest in Property, Black's Law Dictionary (12th ed. 2024).

[11] The alternative definition is in the context of constitutional law, and concerns rights to due process.

items." Interest, Black's Law Dictionary (12th ed. 2024). Courts have interpreted "interests in property" to include, roughly, claims that arise from or relate to the property to be sold. These include liens, easements, and the like. But an "interest in property" does not include future duties by owners of facilities to comply with environmental law. *See In re Gen. Motors Corp.*, 407 B.R. 463, 508 (Bankr. S.D.N.Y. 2009) (Any "purchaser would have to comply with its environmental responsibilities starting with the day it got the property.").[12]

It is settled law, in this circuit and at least two others, that the future obligations to prevent or remediate pollution of the environment are not discharged or otherwise altered by bankruptcy. *See In re Torwico Elecs., Inc.*, 8 F.3d 146, 149 (3d Cir. 1993); *Matter of CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992); *In re Chateaugay Corp.,* 944 F.2d 997, 1006–09 (2d Cir.1991)). This applies both to future compliance with pollution laws, such as regulations of discharge of polluted water, and obligations to remediate already polluted sites that continue to release pollutants into the surrounding environment. *Torwico*, 8 F.3d at 149. That certain pollutants were originally released by a debtor in bankruptcy is no matter; "[h]aving been a debtor in bankruptcy does not authorize a firm to operate a nuisance today . . . or otherwise excuse it from complying with laws of general application." *CMC Heartland*, 966 F.2d at 1146 (citing *Ohio v. Kovacs,* 469 U.S. 274, 285 (1985) and *Chateaugay,* 944 F.2d at 1006–09).[13] Bankruptcy courts cannot excuse polluters from the obligation to comply with environmental law in the future. *See In re Bates*, 270 B.R. 455, 462 (Bankr. N.D. Ill. 2001) (citing *CMC Heartland,* 966 F.2d at 1146-47) ("[I]f the obligation is not a claim, bankruptcy treatment is unavailable.")

In *CMC Heartland*, the Seventh Circuit addressed the application of these principles to the remediation requirements in the Comprehensive Environmental Response, Compensation, and

[12] The subsequent history of *In re General Motors* is extensive. Westlaw notes it with a red flag. But for purposes of this Motion, it should suffice that this Court considers *General Motors* to be good law on this specific point. *See La Paloma*, 2017 WL 5197116 at *9.

[13] CARB acknowledges that the issues resolved in *CMC Heartland*, *Chateaugay*, and *Torwico* did not require a motion to be resolved during bankruptcy proceedings. Nonetheless, CARB felt it was prudent to address this issue promptly, enabling all parties to be fully informed of legal consequences.

Liability Act (CERCLA). That court explained that the obligation to remediate was not reduceable to a payment, and a future purchaser of the relevant land would have the same obligation. This rule resulted in clear lines of accountability and predictable economic consequences: "CMC would have to compensate any buyer for the expected cost of the cleanup—by accepting a lower price, or by paying someone to take the Pit off its hands. Compensation to the buyer means that CMC bears the economic costs of cleanup, no matter what bankruptcy law says, if it sells the property." *CMC Heartland*, 966 F.2d at 1147. Put another way, a "buyer assume[s] post-sale-closing environmental liabilities." *In re Oldco M Corp.*, 438 B.R. 775, 785 (Bankr. S.D.N.Y. 2010).

Searles Valley Minerals finds itself in a similar situation to CMC, except its pollution is in the air rather than in a pit. As with CERCLA, Cap-and-Invest imposes duties on the owner of a particular property (under CERCLA the owner of the polluted land, under Cap-and-Invest, the owner of the polluting facility). And like CERCLA, a party who fails to comply may be penalized, but receiving a penalty does not excuse the underlying obligation. *See, e.g.*, Cal. Code Regs. tit. 17, §§ 95856, 95857.

Under California law, only a certain amount of greenhouse gas emissions are permissible, and all Covered Entity polluters are responsible for surrendering compliance obligations to cover their emissions. When a party surrenders compliance instruments, the emissions covered by those compliance instruments are forever removed from the permissible future pollution from sources in California, thereby resulting in a reduction in greenhouse gas emissions over time. And under the present version of California's regulations, the owner of the facility is responsible for surrendering compliance obligations for emissions *for the entire relevant period*. Cal. Code Regs. tit. 17, § 95835(b).[14] This is not a claim, secured or unsecured. And the obligation to

---

[14] In *La Paloma*, this Court concluded that, under the prior regulation, the "Debtor Emission Surrender Obligations [were] an interest under section 363(f)." *La Paloma*, 2017 WL 5197116, at *9. That conclusion was based on the prior version of the regulation *and* CARB's assertion that the then-effective regulation (A) imposed obligations on the debtor, and (B) those obligations flowed to successors (this Court disagreed with (B)). The relevant law is now

(continued…)

surrender compliance instruments to CARB does not create an *interest* in the property itself. It is not a lien or an easement. CARB does not gain control or possession of the property. The duty to surrender compliance instruments in the Cap-and-Invest Program is an environmental law of general applicability that requires action by the future owner of a facility at a future point in time.[15]

A contrary ruling would open the door to preemption of state environmental laws. Unlike *La Paloma*, where this Court applied state law, a ruling that this Court can excuse future compliance with CARB's Cap-and-Invest Regulations would, unavoidably, be a holding that federal bankruptcy law preempts state environmental law. This Court should not reach such a conclusion lightly. Statutes authorizing preemption must contain a "clear statement" to alter the "usual constitutional balance of federal and state powers." *Bond v. United States*, 572 U.S. 844, 858 (2014) (cleaned up). This requires "exceedingly clear language." *United States Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604, 622 (2020). This Court must inquire into "whether there is enough evidence in the text, structure, or purpose of [the relevant provision] or the Bankruptcy Code as a whole to rebut the presumption against preemption and say that it was Congress's 'clear and manifest intent' to preempt state law." *Rosenberg v. DVI Receivables XVII, LLC*, 835 F.3d 414, 419 (3d Cir. 2016).

Here, California acts within the "broad police powers of the states," which include regulation of greenhouse gas emissions and other air pollution. *Am. Fuel & Petrochemical Manufacturers v. O'Keeffe*, 903 F.3d 903, 913 (9th Cir. 2018). Displacing the Cap-and-Invest Regulation would displace that police power. There is no clear statement in 11 U.S.C. § 363 or

---

materially different. Under the present regulation, the owner of the facilities on the compliance date will be obligated to surrender compliance instruments. And any "purchaser would have to comply with its environmental responsibilities starting with the day it got the property." *In re Gen. Motors Corp.*, 407 B.R. at 508.

[15] To the extent that this Court would issue an order that extinguishes claims against non-debtor third parties without the consent of affected claimants, that is also beyond this Court's power. *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204 (2024).

anywhere else in federal bankruptcy law indicating Congress' intend to displace California's police power over emissions.

So that any buyer of Searles Valley Minerals understands what they are buying—and that they are not buying a free pass to not comply with future environmental law obligations—this Court should issue an order clarifying that any sale of the debtors' facilities will not alter the duties to comply with California environmental laws, including the obligation to surrender of compliance instruments in CARB's Cap-and-Invest Program.

## II. EVEN IF THE CAP-AND-INVEST OBLIGATIONS WERE INTERESTS, THE BANKRUPTCY COURT LACKS THE POWER TO "CLEAR" THEM BECAUSE THEY DO NOT FALL WITHIN ANY CATEGORY IN 11 U.S.C. § 363(F)

Searles Valley Minerals proposes to sell its facilities "free and clear of any interest in such property of an entity other than the estate." *See* 11 U.S.C. § 363(f). As noted above, the requirement that a future owner comply with California environmental law is not an interest in property that can be cleared. But even if it was such an interest, Section 363(f) limits such sales to properties where one of the five enumerated conditions apply. Those conditions are:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363 (f). A brief review of the five conditions shows that none apply:

First, no nonbankruptcy law permits the clearing of the duty to comply with California's Cap-and-Invest Regulation. This Court's previous ruling that a prior version of the Cap-and-Invest Regulation did not impose compliance obligations on successor owners of polluting facilities, *In re La Paloma Generating, Co.*, No. 16-12700 (CSS), 2017 WL 5197116 (Bankr. D. Del. Nov. 9, 2017), is no longer meaningful precedent on this point. CARB has long since completed the lawful process for amendment of regulations under California law, and changed

the applicable California regulations. Instead, since 2018, California nonbankruptcy law expressly provides that the successor owner of a polluting facility bears the burden of surrendering compliance instruments for all outstanding emissions during the compliance period. Cal. Code Regs. tit. 17, § 95835(b).

Second, consent cannot form a basis for such a sale because CARB does not consent. CARB's refusal to consent is unambiguous both from this Motion and from its forthcoming objection.

Third, as to sales where the sale price exceeds the aggregate value of liens, the requirement to comply with California environmental law is not a lien. *Cf. Torwico*, 8 F.3d at 149.

Fourth, there is no bona fide dispute. In fact, the amount of compliance instruments that must be surrendered is tied to Searles Valley Minerals' own reporting of its own emissions. Searles Valley Minerals has not contested its obligation to comply with the Cap-and-Invest Regulation, and any such assertion at this point would be a sham, not a bona fide dispute.

Fifth, the "entity"—CARB—cannot "be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 3639(f). This rule requires a law where the entity could, over its objection, be made to accept money. CARB not only cannot be compelled to accept money in lieu of compliance; CARB is *not allowed* to accept money in lieu of compliance. Cal. Code Regs., tit. 17, §§ 95857(b)(2), (c), 96012-96013.

This last point is essential to understanding CARB's position in this case. California has an overall statewide cap on greenhouse gas emissions. While it is true that Searles Valley Minerals could purchase compliance instruments from markets, and that acquisition can be completed for a sum of money, the acquisition of those instruments from sellers would mean not only that Searles Valley Minerals pays money, but also that no other polluter can use those instruments for its compliance. This maintains the overall cap on emissions. If CARB accepted money instead of compliance instruments, it would increase the overall amount of permissible emissions. To prevent CARB from, in effect, increasing the overall cap, California law does not allow accepting money in lieu of the surrender of compliance instruments.

As with Part I, a contrary ruling would preempt state law without a *clear statement* authorizing this Court to do so. But that is what this Court would need to reach that conclusion. *See Bond v. United States*, 572 U.S. 844, 858 (2014), *Rosenberg v. DVI Receivables XVII, LLC*, 835 F.3d 414, 419 (3d Cir. 2016). But there is no clear statement in 11 U.S.C. § 363(f) expressly authorizing preemption of state law.

Because none of the relevant conditions apply, this Court lacks the power to carry out the sale in a way that excuses a future owner from compliance with the California cap-and-invest obligations.

## III. If this Court Does Purport to "Clear" the Cap-and-Invest Obligations, It Would Be Obligated to Provide Adequate Protection to CARB

If this Court rejects the arguments in Parts I and II, above, concluding that compliance with California's Cap-and-Invest regulations are an interest and Searles Valley Minerals' facilities can be sold free and clear of those obligations, then this Court is obligated to provide CARB with adequate protection. This is not discretionary. "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). If the Court denies relief to CARB under both Parts I and II, then this is not discretionary, and the Court should open a proceeding to determine the amount and form adequate protection in advance of the sale of assets.

## CONCLUSION

Searles Valley Minerals proposed to sell its facilities. But in its proposal, it did not address the implications of that sale for the buyer's environmental law obligations. This Court should issue an order making those obligations clear so that any buyer knows that the purchase of the facilities carries with it the obligation to surrender compliance instruments for all unresolved emissions in the 2024-26 compliance period.

Dated: August 12, 2026

ROB BONTA
Attorney General of California
ANNADEL ALMENDRAS
Senior Assistant Attorney General
MICHAEL P. CAYABAN
Supervising Deputy Attorney General

*/s/ Michael S. Dorsi*
MICHAEL S. DORSI (CA BAR NO. 281865)
RYAN ZICK (CA BAR NO. 303649)
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3527
Email: Michael.Dorsi@doj.ca.gov
Email: Ryan.Zick@doj.ca.gov
*Attorneys for California Air Resources Board*

As the attorney responsible for electronically filing this document, I attest that attorney Michael S. Dorsi has authorized me to file this document on his behalf. Attorney Dorsi satisfies the requirements for electronic filing in this Court, but his request to be permitted to file by ECF has not yet been approved.

Dated: August 12, 2026

*/s/ Ryan Zick*
RYAN ZICK (CA BAR NO. 303649)