**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SEARLES VALLEY MINERALS INC., *et al.* [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10966<br><br>(Jointly Administered)<br><br>**Re: D.I. 18, 273, 274, and 278.** |

**KARNAVATI HOLDINGS, INC.'S: (I) OBJECTION TO THE MOTION BY CALIFORNIA AIR RESOURCES BOARD SEEKING: (1) AN ORDER CLARIFYING THAT THE SALE OF SEARLES VALLEY MINERALS' ASSETS WILL NOT IMPAIR FUTURE ENVIRONMENTAL LAW OBLIGATIONS IN CALIFORNIA, OR, IN THE ALTERNATIVE, (2) AN ORDER THAT THE SALE OF SEARLES VALLEY MINERALS' ASSETS CANNOT "CLEAR" ENVIRONMENTAL LAW OBLIGATIONS UNDER 11 U.S.C. 363(f), OR, IN THE ALTERNATIVE, (3) AN ORDER PROVIDING ADEQUATE PROTECTION TO THE CALIFORNIA AIR RESOURCES BOARD DURING AND AFTER THE SALE OF SEARLES VALLEY MINERAL'S ASSETS AND (II) RESPONSE TO THE CALIFORNIA AIR RESOURCE BOARD'S SALE OBJECTION**

Karnavati Holdings, Inc., in its capacity as DIP lender to the Debtors (the "DIP Lender"), files this: (i) objection to the *Motion by California Air Resources Board Seeking: (1) an Order Clarifying That the Sale of Searles Valley Minerals' Assets Will Not Impair Future Environmental Law Obligations in California, or, in the Alternative, (2) an Order That the Sale of Searles Valley Minerals' Assets Cannot "Clear" Environmental Law Obligations under 11 U.S.C. 363(f), or, in the Alternative, (3) an Order Providing Adequate Protection to the California Air Resources Board During and After the Sale of Searles Valley Mineral's Assets* [D.I. 273] (the "CARB Motion") filed by the California Air Resources Board ("CARB"), the memorandum of law filed

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

in support thereof [D.I. 273-1] (the "MOL")[2], and the proposed order sought thereby [D.I. 274]; and (ii) reply to CARB's objection [D.I. 278] (the "CARB Objection") to the Debtors' sale motion [D.I. 18] (the "Sale Motion"). In support of its objection to the CARB Motion, in opposition to the CARB Objection, and in support of the Sale Motion, the DIP Lender states as follows:

**OBJECTION AND REPLY**

1. The CARB Motion and CARB Objection evince a misunderstanding of the Third Circuit's interpretation and application of section 363(f). Despite clear precedent to the contrary, CARB would have this Court adopt a narrow *in rem* limitation to "interests in property" under section 363(f), notwithstanding the Third Circuit's explicit rejection of that limit. Beyond that, CARB asks this Court to ignore that the Debtors' obligations under the Cap-and-Trade Regulation involve the surrender of compliance instruments which ***by design*** are easily traded on an open market established by CARB and, thus, can be reduced to monetary payment. Such obligations are a paradigmatic example of what is contemplated by section 363(f)(5). Indeed, CARB maintains robust pricing data on compliance instruments on a quarterly basis dating back to 2014. Notwithstanding this, is, and the fact that the surrender of compliance instruments is an entirely retrospective exercise tied to past emissions levels (having nothing to do with future environmental remediation and cleanup), CARB would have this Court hold that the Debtors' obligations under the Cap-and-Invest Regulation cannot be reduced to a money judgment. Not so.

2. Further, the CARB Motion is procedurally improper. Perhaps in an attempt to avoid the impact of Bankruptcy Code section 363(m), CARB asks this Court to enter a standalone order addressing the disposition of one interest in property apart from any sale order approving the sale of that property. The issues raised in the CARB Motion are inextricably tied to

[2] Capitalized terms used, but not defined herein, shall have the meaning ascribed to them in the MOL.

the relief requested in the Sale Motion and should be addressed in any sale order. Ruling on such issues in a separate order would create uncertainty as to the applicability of section 363(m) to that order, which would ultimately undermine the sale process.

## I. The Debtors' Liability under California's Cap-and-Invest Regulation is an Interest in Property of which the Debtors' Assets May be Sold Free and Clear under Section 363(f) of the Bankruptcy Code.

3. CARB argues that the Debtors' liability under the Cap-and-Invest Regulation is not an "interest in property" for purposes of 363(f) because it is not a "lien[], easement[], and the like" and does not fit within the narrow definition set forth in Black's Law Dictionary. MOL at 9-10, CARB Objection at ¶¶ 21-22. The Third Circuit, among many other courts, has flatly rejected such a narrow view of "interests" in property.

4. In *TWA* the Third Circuit declined to adopt an *in rem* limitation on the scope of "interests in property" and instead found that interests fall "within the meaning of section 363(f) in the sense that they arise from the property being sold." *In re TWA*, 322 F.3d 283, 290 (3d Cir. 2003). There, prior to its bankruptcy, Trans World Airlines had entered into a settlement agreement with the Equal Employment Opportunity Commission and a class of Title VII plaintiffs to settle a sex discrimination lawsuit, which required TWA to provide eligible class members with vouchers to travel on TWA flights. *Id*., at 285. Separately, 29 charges of discrimination were filed against TWA with the EEOC, including violations of Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act. *Id*. Following TWA's chapter 11 bankruptcy filing, American Airlines purchased TWA's assets through a section 363 sale. By order of this court (affirmed by the district court), entered over the objection of the plaintiffs' class and the EEOC that sale was free and clear of TWA's liability under the travel voucher program and the employment discrimination claims, thereby extinguishing any successor liability for such claims.

*Id*. at 285-87. On appeal, the Third Circuit rejected appellants' argument that an interest in property must be an *in rem* interest, instead finding that both liability under the travel voucher program and any discrimination claims were within the broad ambit of section 363(f) because "[i]n each case it was the assets of the debtor which gave rise to the claims." *Id*. at 290. Indeed "[h]ad TWA not invested in airline assets, which required the employment of the EEOC claimants, those successor liability claims would not have arisen" and with respect to with respect to the travel voucher program "TWA's investment in commercial aviation is inextricably linked to its employment of the [class action plaintiffs] as flight attendants, and its ability to distribute travel vouchers as part of the settlement agreement." *Id*. Accordingly, while not *in rem* interests, these liabilities were interests in property within the meaning of section 363(f) and, thus, successor liability on such claims could be extinguished through a section 363 sale.

5. Many other courts have, like the Third Circuit, taken a broad view of the definition of "interests in property" for section 363(f) purposes and, in doing so, have found that environmental, statutory, or regulatory obligations qualified as "interests in property" under section 363(f)—including those which otherwise provided for successor liability. *See, e.g., In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 576 (4th Cir. 1996) (successor liability for premiums under the Coal Act to employer-sponsored benefit plans was an interest in property that could be extinguished under section 363(f)); *In re La Paloma Generating, Co.*, No. 16-12700 (CSS), 2017 Bankr. LEXIS 3876, at *22 (Bankr. D. Del. Nov. 9, 2017) (debtor's obligation under California's prior cap and trade regulation was an interest in property under section 363(f))[3]; *In re Ormet Corp.*,

[3] Nowhere in its ruling does the *La Paloma* Court say, as CARB asserts, that the debtor's obligations under the former California regulation were only considered an interest in property ***because*** the regulation did not impose successor liability. Rather, the Court held "[i]n the case *sub judice*, Debtor Emission Surrender Obligations are an interest under section 363(f) ***and*** the Regulation does not impose successor liability ***nor*** does section 363(f)." *Id*., at *22 (emphasis added). The revisions to California's Cap-and-Invest Regulation providing for successor liability, enacted after the *La Paloma* decision, appear intended ensure that obligations under that regulation do not fall within the scope of section 363(f)(1). In analyzing the prior California regulation, the *La Paloma* Court made much of the fact that the obligations

No. 13-10334 (MFW), 2014 Bankr. LEXIS 3071, at *11 (Bankr. D. Del. July 17, 2014) (successor liability for underfunding the debtors' pension plan pursuant to ERISA and the MPPAA found to be interests in property under section 363(f)); *In re USA United Fleet Inc.*, 496 B.R. 79, 87-89 (Bankr. E.D.N.Y. 2013) (finding that a narrow *in rem* view of "interests in property" is contrary to the approach taken by courts in the Second Circuit and finding that the New York State Department of Labor's right to impose the debtors' unemployment insurance experience rating to the purchaser of the debtor's assets was an interest in property because the application of the debtors' rating to the purchase was based on purchaser's acquisition of the debtors' assets); *In re PBBPC, Inc.*, 467 B.R. 1, 9 (Bankr. D. Mass. 2012) *aff'd*, 484 B.R. 860 (B.A.P. 1st Cir. 2013) (Massachusetts' right under its unemployment statute to tax a successor employer according to the experience rating of assignor employer held to be an interest in property under 363(f) because "it imposes a debtor's experience rating on the buyer precisely because, and only because, the buyer purchased assets of the bankruptcy estate. By operation of the state statute, the debtor's experience rating travels with the assets and encumbers their purchaser.").

6. Here, the Debtors' liability under the Cap-and-Invest Regulation is an interest in property under the Third Circuit's formulation because it "arise[s] from the property being sold." *In re TWA*, 322 F.3d, at 290. Indeed, CARB's MOL, the CARB Objection, and the Cap-and-Invest Regulation itself make this clear. As CARB notes, the compliance instruments that must be surrendered for a covered entity are "**for the facility** that are equivalent to the metric tons of carbon dioxide **that the facility emitted**." *See* MOL at 1, CARB Objection at ¶ 1.c (emphasis

---

were tied to ownership and operation of the emissions-producing assets in question. That such facts would render such obligations interests in property under section 363(f) is consistent with the Third Circuit's approach in *TWA*, where obligations are interests "within the meaning of section 363(f) in the sense that they arise from the property being sold." *In re TWA*, 322 F.3d, at 290.

added). CARB further solidifies the link between the liabilities under the Cap-and-Invest Regulation and the sale of the Debtors' assets by arguing that such obligation "applies to any **owner**, whether the owner was the sole owner for the whole period purchased the facilities from that owner, **or the final owner if the facilities changed hands** multiple times." MOL at 7; CARB Objection at ¶ 14 (emphasis added). Looking at the regulation itself, a "Covered Entity" that has an obligation to surrender compliance instruments is defined, in relevant part, as "an entity within California that **has one or more of the processes or operations** and has a compliance obligation as specified in subarticle 7 of this regulation." Cal. Code. Regs. Tit. 17 § 95802(a) (emphasis added). In other words, the Debtors' obligation to surrender compliance instruments under the Cap-and-Invest Regulation is tied to its ownership of certain facilities and would only pass to a would-be purchaser under California law **through the sale of such assets**—just as how the EEOC claims and travel voucher program liabilities arose strictly from TWA's investment in airline assets, which required the employment of the EEOC and class action claimants. *TWA*, 322 F.3d at 290. For this reason, the Debtors' obligations are interests in property that can be extinguished through section 363(f). Neither the allegation that a compelling state policy underlies the liability in question—the reduction of carbon emissions—nor the fact that the regulation was drafted to provide for successor liability, change this result. Nor do such factors "trump the express provisions of the Bankruptcy Code permitting the sale of the Debtor's assets free and clear of [successor liability claims that fall within the ambit of section 363(f)]." *In re Ormet Corp.*, 2014 Bankr. LEXIS 3071, at *7-11 (discussing that in the case at bar, there were important policy implications underpinning claims arising from ERISA and the MPPAA, that in *TWA* there were important policy implications underpinning the employment discrimination claims, and in *Leckie* there was an important policy consideration in protecting the medical benefits of coal workers—

in both cases including the imposition of successor liability—but that such implications did not override the operation of section 363(f)).

7. Finally, it is worth noting that while the Debtors' liability under the Cap-and-Invest Regulation is an interest in property, it does ***not*** grant CARB a secured claim entitled to adequate protection under section 363(e). Indeed, far from identifying any collateral or security interest that section 363(e) is designed to protect, CARB expressly states it does not have any lien on the Debtors' assets. MOL at 12; CARB Objection at ¶ 26. At best, the interest in property created by the Debtors' obligations under the Cap-and-Invest Regulation gives rise to an unsecured claim, which is not entitled to adequate protection. *See TWA*, 322 F.3d at 292 (finding that the travel voucher claims and discrimination claims were interests in property under section 363(f)(5) and also "by their nature, general unsecured claims").

## II. The Debtors' Liability under the Cap-and-Invest Regulation Fits Squarely within Section 363(f)(5) of the Bankruptcy Code.

8. The Debtors' obligation under the Cap-and-Invest Regulation to surrender compliance instruments—highly fungible, traded instruments with a robust market and ascertainable market prices—can be reduced to a monetary value. In *TWA*, while appellants argued they could not be compelled to accept monetary satisfaction on account of their travel vouchers and EEOC claims, the Third Circuit ruled that had TWA liquidated under Chapter 7, "[a] travel voucher represents a seat on an airplane, a travel benefit that can be reduced to a specific monetary value" and "the EEOC discrimination claims are reducible to, and can be satisfied by, monetary awards even if the relief sought is injunctive in nature", and thus both interests fit within the scope of section 363(f)(5). *In re TWA*, 322 F.3d at 291. The same is true here.

9. As CARB points out, the Debtors' obligations are tied to the surrender of compliance instruments—the Debtors are to surrender compliance instruments representing their

annual greenhouse gas emissions pursuant to a certain schedule. *See* MOL, at 4-5; CARB Objection at ¶¶ 10-11. CARB asserts that the Debtors' outstanding surrender obligations are for 30% of 2025 emissions due in November 2026 and 70% of 2024 and 2025 emissions and 100% of 2026 emissions due in November 2027. MOL at 6-7; CARB Objection at ¶ 14. CARB further asserts that the penalty for failing to surrender the compliance instruments is a 4-to-1 increase in the amount of compliance instruments due, administrative fines, or injunctive relief (which, per *TWA* can be satisfied by a monetary award, here, likely in the amount of the value of compliance instruments due). *See* MOL at 4; CARB Objection at ¶ 10.

10. By design, compliance instruments are fungible and traded, both in auctions organized by CARB or among program participants—and to better "enhance liquidity" California's Cap-and-Invest program linked with that of Quebec since 2014. *See* Cal. Code Regs. Tit. 17 § 95910 (providing for auctions for compliance instruments); California Air Resources Board, *FAQ Cap-and-Trade Program*, https://ww2.arb.ca.gov/resources/documents/faq-cap-and-trade-program (last visited Aug. 21, 2026) ("Covered entities may acquire allowances through auction, limited free allocation (for eligible entities), and by trading with other entities in the Program (i.e., the 'trade')"; noting the link with Quebec's similar cap-and-trade system). Each year, CARB sets a floor on the auction price, placing a minimum monetary value for a compliance instrument. *Id.* Given the free and open marketplace for compliance instruments and CARB's ability to set the floor market price, CARB is easily able to track the value of such instruments—indeed, among the robust data set on the CARB website, there is a chart tracking quarterly floor prices, auction prices for current allowances, and settlement prices for vintage allowances, for each quarter from 2014 through the second quarter of this year. *See* California Air Resources Board, *Cap-and-Trade Program Data Dashboard*, https://ww2.arb.ca.gov/our-work/programs/cap-and-

trade-program/program-data/cap-and-trade-program-data-dashboard#Figure2 (last visited Aug. 21, 2026).

11. Given this level of pricing data, it is inconceivable that the Debtors' obligations under the Cap-and-Invest Regulation could not be "reduced to a specific monetary value" and fall within the scope of 363(f)(5). *In re TWA*, 322 F.3d at 291. CARB attempts to evade this by claiming it is not permitted to accept cash consideration for violations of the Cap-and-Invest Regulation. MOL at 14; CARB Objection at ¶ 35. But in making this argument, CARB simply cites to the regulatory language, providing CARB with remedies that, while not inclusive of cash payment, are tied to the surrender of compliance instruments and could, therefore, easily be satisfied by monetary payment. *Id.* The travel vouchers or injunctive relief in *TWA* were not cash obligations, but because they could be easily reducible to a monetary value, they satisfied 363(f)(5). The same is true here. Indeed, CARB has previously settled with covered entities that failed to surrender compliance instruments through payment of a cash penalty calculated by assigning a dollar value to the outstanding compliance instruments. *See Settlement Agreement*, Feb. 24, 2017, https://ww2.arb.ca.gov/resources/documents/faq-cap-and-trade-program (last visited Aug. 21, 2026) (stipulated penalty of $2,990,600 calculated by valuing the 29,906 outstanding compliance instruments at $100 per instrument).

12. Additionally, CARB tries to muddy the waters by claiming that the Debtors' obligations under the Cap-and-Invest Regulation are forward-looking remediation obligations and that the Debtors' sale motion purports to absolve a would-be purchaser of compliance with California environmental law. MOL at 9-11; CARB Objection at ¶¶ 22-26. Not so. The Debtors' surrender obligations at issue are for emissions from to 2024, 2025, and 2026. MOL at 6-7; CARB Objection at ¶ 14. Two of three years at issue are entirely retrospective, as are the pre-closing

amounts for 2026. The obligations covered by the sale order and section 363(f) are strictly *pre*-closing amounts. Nothing in the Debtors' Sale Motion purports to cut off compliance for a buyer following its acquisition of the Debtors' assets.

13. In support of this incorrect and inaccurate argument, CARB relies on *Torwico*, *CMC Heartland*, and *Chataeugay*. But these cases are inapposite. First, these rulings deal with whether certain go-forward environmental obligations can be discharged as claims in bankruptcy and have no bearing on the application of section 363(f). *See generally In re Torwico Elecs., Inc.*, 8 F.3d 146 (3d Cir. 1993); *In re CMC Heartland Partners*, 966 F.2d 1143 (7th Cir. 1992); *In re Chateaugay Corp.*, 944 F.2d 997 (2d Cir.1991). Beyond that, none of these cases have any factual similarity to the case at bar. Here, the obligations in question have nothing to do with the prevention of or remediation of ongoing or future pollution. *See In re Torwico*, 8 F.3d at (state order to remediate pollution and prevent ongoing pollution was not a dischargeable claim); *In re CMC*, 966 F.2d at 1147 (obligations to remediate pollution under CERCLA survive bankruptcy); *In re Chateaugay*, 944 F.2d at 1008 (cleanup order to remove and ameliorate future pollution is not a claim for bankruptcy purposes). Rather, the Debtors' obligations under the Cap-and-Invest Regulation are, essentially, payments for the privilege of emitting greenhouse gases from 2024 through 2026. Moreover, while those cases found that the ongoing environmental obligations at issue could not be reduced to a right to payment, as discussed above, the failure to surrender compliance instruments on account of past emissions could easily be satisfied with a cash payment.

14. Finally, CARB appears to argue that ruling that the Cap-and-Invest obligations are within the scope of section 363(f) would require preemption of state law, simply because the regulation was modified, following the *La Paloma* ruling, to expressly provide for

successor liability. MOL at 12.; CARB Objection at ¶ 27. This argument misinterprets the operation of section 363(f). While the revisions to the Cap-and-Invest Regulation may prevent a finding, such as the one in *La Paloma*, that the obligations under such regulation fall within subsection (f)(1) because applicable non-bankruptcy law (*i.e.* the revised regulation) does not permit the sale of property free and clear of the obligations, the revisions do nothing to impact the ***other four*** subjections of 363(f). If revising a statute or regulation to provide for successor liability was all that was necessary to eliminate a debtor's ability to sell property free and clear of obligations under such statute or regulation, then the other four subsections of section 363(f) would be toothless. Finding that the Debtors' obligations under the revised Cap-and-Invest Regulation falls under section 363(f)(5) is not preempting state law—it is simply applying the disjunctive provisions of section 363(f). Indeed, the Third Circuit in *TWA* found that the sale in that case was free and clear of the EEOC and travel voucher obligations based on section 363(f)(5) alone and the appellate court assumed, for the sake of argument, that those obligations did carry successor liability. *See In re TWA*, 322 F.3d at 288 n.4.

## III. The CARB Motion Should be Decided Through the Sale Order, Not a Separate Order, as the Issues Raised in the CARB Motion Are Inextricably Tied to the relief requested in the Sale Motion.

15. The CARB Motion is procedurally improper, as is the request for a standalone order specifically pertaining to the ability to sell the Debtors' assets free and clear of liability under the Cap-and-Invest Regulation. This issue is inextricably tied to the free and clear sale of the Debtors' assets pursuant to the Sale Motion, and should be dealt with in any sale order approving that motion. Deciding the issues presented in the CARB Motion in a separate order would create uncertainty as to the application of section 363(m) to that order, and thus would

undermine the Debtors' sale process and their efforts to maximize value for the estate—no buyer would want to enter a transaction that may only be *partly* granted the protections of section 363(m).

16. In addition to being harmful to the Debtors' estate and its creditors, CARB's attempt to seek a standalone order is unsupported by precedent. CARB cites *General Motors* and *La Paloma*, yet both citations omit key context and neither supports CARB's procedural maneuver here. In *General Motors*, parties objected to the debtors' sale motion on the basis that the debtors could not use section 363 ***at all*** to sell substantially all of their assets and argued that a plan was required to dispose of such a substantial quantum of assets. *In re Gen. Motors. Corp.*, 407 B.R. 463, 486 (Bankr. S.D.N.Y. 2009). This is a far cry from a motion raising a discrete issue that the Debtors' assets cannot be sold free and clear of a single liability, but most importantly, the objecting parties in *General Motors* asserted this issue through an objection to the debtors' sale motion which the court resolved through the same order approving the section 363 sale transaction. *See generally id.* The posture of *La Paloma* similarly provides no support for CARB's standalone order. There, the debtors' plan specifically called for the Court to resolve the issue of whether liability under California's prior cap-and-trade regulation was subject to section 363(f) and the parties specifically agreed that the Court should separately adjudicate the issue. *See In re La Paloma*, 2017 Bankr. LEXIS 3876, at *6. Those are not the facts here.

## CONCLUSION

**WHEREFORE**, the DIP Lender respectfully requests that the Court deny the CARB Motion and overrule the CARB Objection.

Dated: August 21, 2026
Wilmington, Delaware

Respectfully submitted,

*/s/ Kenneth A. Listwak*

**TROUTMAN PEPPER LOCKE LLP**
David M. Fournier (DE No. 2812)
Kenneth A. Listwak (DE No. 6300)
1313 N. Market Street, Suite 1000
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Email: david.fournier@troutman.com
ken.listwak@troutman.com

*Counsel to Karnavati Holdings, Inc.*