**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>SEARLES VALLEY MINERALS INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10966 (BLS)<br><br>Jointly Administered<br><br>**Re D.I.**: 18, 77, 149, 259 & 298<br><br>**Objection Deadline:** Aug. 24, 2026 at 12:00 p.m. EDT<br><br>**Hearing Date:** Aug. 26, 2026 at 1:30 p.m. EDT |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, LAHONTAN REGION WITH RESPECT TO SALE OF DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS**

California Regional Water Quality Control Board, Lahontan Region ("California Lahontan Regional Water Board"), by and through its undersigned counsel, submits this objection and reservation of rights (the "Objection") in response to the Sale of Debtors' assets free and clear of all liens, encumbrances, and other interests [D.I. 18] (the "Sale Notice") filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"). In support of this Objection, California Lahontan Regional Water Board respectfully states as follows:

**BACKGROUND**

1. On June 15, 2026 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. On the Petition Date, the Debtors filed the Motion of Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for the Sale of Certain or All of the Debtors' Assets; (B) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Mineral, Inc. (9263), Trona Railway Company LLC (3177), and Searles Domestic Water Company LLC (N/A).

Protections; (C) Approving Assumption and Assignment Procedures; (D) Scheduling a Hearing to Consider any Proposed Sale; and (II) (A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief [D.I. 18] (the "Bidding Procedures Motion"). In filing the Bidding Procedures Motion, the Debtors sought entry of an order approving certain procedures in connection with the sale of the Debtors' assets to a stalking horse bidder or other successful bidder (the "Successful Bidder"), and procedures for the assumption and assignment of contracts and leases in connection with such sale (the "Assumption and Assignment Procedures"). On July 7, 2026, the Court entered an order [D.I. 140] (the "Bidding Procedures Order") approving the Bidding Procedures Motion, including the Assumption and Assignment Procedures.

3. On June 15, 2026, Debtors filed a motion for entry of orders approving bidding procedures for the sale of certain or all of Debtors' assets, among other requests (D.I. 18) and have since file related pleadings (D.I. 77, 149, 259, and 298) most recently moving the auction to August 24, 2026, establishing objection deadlines on both August 24 and 25, 2026, and leaving the Sales Hearing on calendar for August 26.

4. The Debtors propose to sell their assets—including a power plant and mining facilities—free and clear of all encumbrances except for "Assumed Liabilities" or "Permitted Encumbrances," though Debtors do not state whether they view their environmental obligations (or any other obligations under environmental laws) as liabilities or encumbrances that would be *cleared* by a sale. Through their filings with this Court, Debtors are largely silent regarding their environmental obligations. Because Debtors fail to identify their environmental obligations, they also do not explicitly confirm that their environmental obligations are neither claims nor interests and therefore not subject to being cleared by a sale.

5. In addition to failing to identify those environmental obligations that will not be cleared by the sale, Debtors do not adequately identify or otherwise discuss the environmental law obligations issued pursuant to the authority of the California Lahontan Regional Water

Board, or any other environmental regulator, thereby creating uncertainty for a buyer. The California Lahontan Regional Water Board therefore brings this Objection to ensure that a buyer is aware of certain environmental obligations subject to the Board's jurisdiction and enforcement.

6. This Court should resolve that uncertainty by 1) requiring Debtors to provide accurate and adequate disclosure of Debtors' environmental information and 2) modifying the proposed sale order to clarify the sale's impact regarding environmental liabilities.

7. Although Paragraph 25 of the proposed sale order (D.I. 18-2) references "environmental liabilities", it does so as an undefined term and without context as to scope of that term. This is insufficient for the reasons set forth in this Objection.

**STATUTORY AND REGULATORY BACKGROUND**

8. In 1969, the California Legislature enacted the Porter-Cologne Water Quality Control Act. (Wat. Code, § 13000, *et seq*. [Porter-Cologne].) Porter-Cologne "created the State Water Board to formulate statewide water quality policy and established nine regional boards to prepare water quality plans (known as basin plans) and issue permits governing the discharge of waste." *Building Industry Assn. of San Diego County v. State Water Resources Control Bd.* 124 Cal.App.4th 866, 875 (2004). Porter-Cologne requires any person discharging, or proposing to discharge, waste that could affect the quality of state waters to file a report with the appropriate regional board. Cal. Water Code § 13260(a)(1). Any discharge of waste or pollution into state waters is prohibited unless waste discharge requirements (WDRs) have been issued by the State Water Board or applicable regional board and the discharger follows the board's requirements. *Id*. § 13264(a)(1). Water Code Section 13304 authorizes the Regional Board to issue a cleanup and abatement order requiring any person who has discharged waste into the waters of the state to clean up the waste, abate the effects of the waste, or take other necessary remedial action. *Id*. § 13304; see also Cal. State Water Resources Control Board Resolution No. 92-49.

## OBJECTION

***Debtor Does Not Accurately Specify Environmental Obligations***

1. The Debtors fail to specify their environmental liabilities in their petition or supplemental materials.

2. In Official Form 207, Part 12, Debtor Searles Valley Minerals Inc (SVM) provided "Details About Environmental Information." (D.I. 190 *amended at* D.I. 280.) Part 12, Questions 22 through 24 require the debtor to report environmental liabilities. Debtors should have marked "Yes" to some or all of the questions in Part 12 but did not. The Debtors' other disclosures also do not provide any additional information regarding Debtors' environmental obligations either as originally filed or as amended. (D.I. 1, 189, 191, 192, 193, and 194 *amended at* D.I. 279 & 281.)

3. Accordingly, California Lahontan Regional Water Board objects to Debtors' inaccurate and incomplete disclosure.

4. However, Debtor SVM has been a party to administrative proceedings and compliance actions, when it fully assumed those liabilities beginning in 2004 from its predecessor, IMC Chemicals, at three separate sites: Argus, Trona, and Westend.[2]

5. Debtor SVM is primarily subject to two distinct administrative proceedings. The first arises from a Cleanup and Abatement Order (CAO) issued by the California Lahontan Regional Water Board, CAO No. 6-00-64A2.[3] The second relates to permits issued by the

[2] The State Water Resources Control Board maintains the GeoTracker database to centralize and consolidate regulatory filings. The relevant pages for each of the three facilities are as follows: http://geotracker.waterboards.ca.gov/?gid=T10000002472 (Argus), http://geotracker.waterboards.ca.gov/?gid=T10000002473 (Trona), and http://geotracker.waterboards.ca.gov/?gid=T10000002474 (Westend)

[3] The California Lahontan Regional Water Board has issued three separate CAOs and the final one, CAO No. CAO No. 6-00-64A2, is controlling. The three CAOs are available at the following links: https://geotracker.waterboards.ca.gov/view_documents?global_id=T10000002473&enforcement_id=6063408 (CAO No. 6-00-64), https://geotracker.waterboards.ca.gov/view_documents?global_id=T10000002473&enforcement_id=6063524 (CAO No. 6-00-64A1), and

California Lahontan Regional Water Board and known as Waste Discharge Requirements (WDRs). These three WDRs apply to the Argus, Trona, and Westend sites.

6. Debtor SVM has undertaken compliance efforts consistent with the CAO since it assumed liability for the sites in 2004 and has continued its compliance efforts with the obligations of the CAO and WDRs throughout the bankruptcy, including through the submission of twice monthly CAO Reports and quarterly WDR reports documenting those efforts. The successful owner will be required to continue complying with the CAO and to request transfer or termination of the WDRs.

7. Full and accurate disclosure of environmental liabilities is critical in 363 sales to demonstrate to the Court that the sale is providing fair value and has been done in good faith.

***Environmental Obligations Are Not Impacted by the Sale***

8. The duty of the future owner of Debtor SVM's facilities is not implicated by this bankruptcy *at all*, and this Court does not have the power to adjust the duties of a non-debtor to comply with environmental law in the future. *See Matter of CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992). Responsibility for pollution imposed under environmental laws is not a claim that can be discharged, even if the duty imposed will cost the future owner money to comply with law. *In re Torwico Elecs., Inc.*, 8 F.3d 146, 149 (3d Cir. 1993).

9. This Objection seeks for this Court to issue a sale order that clearly identifies that environmental obligations are not impacted by the sale. *See In re Gen. Motors Corp.,* 407 B.R. 463, 486 (Bankr. S.D.N.Y. 2009) ("Determining the propriety of the 363 Transaction requires confirming that section 363 can be utilized for the sale . . . before confirmation of a reorganization plan . . ."). Because Debtors do not accurately identify their environmental obligations, the language of the proposed sale order does not fully achieve this goal.

10. Section 363 permits, in certain circumstances, a debtor to sell property of the estate "free and clear of any interest in such property . . . ." 11 U.S.C. § 363(f). While the term

https://geotracker.waterboards.ca.gov/view_documents?global_id=T10000002473&enforcement_id=6063558 (CAO No. 6-00-64A2).

"interests in property" is not defined by statute, it is settled law, in this circuit and at least two others, that the future obligations to prevent or remediate pollution of the environment are not discharged or otherwise altered by bankruptcy. *See In re Torwico Elecs., Inc.*, 8 F.3d 146, 149 (3d Cir. 1993); *Matter of CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992); *In re Chateaugay Corp.,* 944 F.2d 997, 1006–09 (2d Cir.1991)). This applies both to future compliance with pollution laws, such as regulations concerning the discharge of polluted water, and obligations to remediate already polluted sites that continue to release pollutants into the surrounding environment. *Torwico*, 8 F.3d at 149. That certain pollutants were originally released by a debtor in bankruptcy is no matter; "[h]aving been a debtor in bankruptcy does not authorize a firm to operate a nuisance today . . . or otherwise excuse it from complying with laws of general application." *CMC Heartland*, 966 F.2d at 1146 (citing *Ohio v. Kovacs,* 469 U.S. 274, 285 (1985) and *Chateaugay,* 944 F.2d at 1006–09). Bankruptcy courts cannot excuse polluters from the obligation to comply with environmental law in the future. *See In re Bates*, 270 B.R. 455, 462 (Bankr. N.D. Ill. 2001) (citing *CMC Heartland,* 966 F.2d at 1146-47) ("[I]f the obligation is not a claim, bankruptcy treatment is unavailable.")

11. In *CMC Heartland*, the Seventh Circuit addressed the application of these principles to the remediation requirements in the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). That court explained that the obligation to remediate was not reduceable to a payment, and a future purchaser of the relevant land would have the same obligation. This rule resulted in clear lines of accountability and predictable economic consequences: "CMC would have to compensate any buyer for the expected cost of the cleanup—by accepting a lower price, or by paying someone to take the Pit off its hands. Compensation to the buyer means that CMC bears the economic costs of cleanup, no matter what bankruptcy law says, if it sells the property." *CMC Heartland*, 966 F.2d at 1147. Put another way, a "buyer assume[s] post-sale-closing environmental liabilities." *In re Oldco M Corp.*, 438 B.R. 775, 785 (Bankr. S.D.N.Y. 2010). Debtor SVM finds itself in a similar situation to CMC, and no meaningful distinction can be made.

**REQUESTED RELIEF**

12. To resolve this objection, the California Lahontan Regional Water Board seeks for 1) accurate and adequate disclosure of Debtors' environmental information and obligations and 2) modification of the proposed sale order.

13. Disclosure of Debtors' environmental information and obligations can be accomplished through an amendment to the schedules or in another form as ordered by the Court.

14. Modification of the proposed sale order can be accomplished through amendments the Proposed Sale Order's Paragraph 25, which contains an undefined reference to environmental liability. The California Lahontan Regional Water Board proposes the following language, with amendments in bold italics and removal in strikethrough:

> Nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory power of a governmental unit ***and shall not be construed to affect any regulatory requirement, governmental interest, or liability to a governmental unit under applicable non-bankruptcy law, including any*** ~~with respect to~~ environmental liability that any entity would be subject to as the owner or operator of property after the Closing Date, ***including but not limited to the new owner or operator's obligation to comply with California Regional Water Quality Control Board, Lahontan Region ("California Lahontan Regional Water Board") Cleanup and Abatement Order No. 6-00-64A2 until such time that order is rescinded or amended***. Nothing in this Order or the Purchase Agreement authorizes the transfer or assignment of any applicable governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under applicable police or regulatory law, ***including but not limited to the new owner or operator's obligation to comply with California Lahontan Regional Water Board Waste Discharge Requirements Board Order No. R6V-2005-0024 (Argus), Board Order No. 6-00-54A2 (Westend), and Board Order No. 6-00-3A2 (Trona) until such time those orders are terminated or transferred***. Nothing in this Order divests any tribunal of any jurisdiction it may have under applicable police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order; provided, however, that the Bankruptcy Court retains jurisdiction as set forth in and pursuant to the terms of this Order or any plan of reorganization or liquidation confirmed in these Chapter 11 Cases, including jurisdiction, but not exclusive jurisdiction, to determine whether liabilities asserted by any governmental unit are discharged or

otherwise barred by this Order, any plan of reorganization or liquidation confirmed in these Chapter 11 Cases, or the Bankruptcy Code.

## CONCLUSION

15. Debtor SVM proposes to sell its facilities. But in its proposal, it did accurately and adequately disclose Debtors' environmental information and did not address the implications of that sale for the buyer's environmental law obligations. This Court should require that to be remedied for the reasons stated above.

Dated: August 21, 2026

ROB BONTA
Attorney General of California
ANNADEL ALMENDRAS
Senior Assistant Attorney General
JANELLE M. SMITH
Supervising Deputy Attorney General

*/s/ Bryant B. Cannon*
BRYANT B. CANNON (CA BAR NO. 284496)
Deputy Attorney General
1515 Clay Street, Suite 2000
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-1982
E-mail: Bryant.Cannon@doj.ca.gov
*Attorneys for California Lahontan Regional Water Board*