**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SEARLES VALLEY MINERALS INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10966 (BLS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: August 25, 2026**[2]<br>**Hearing Date: August 26, 2026 at 1:30 p.m. ET**<br><br>**RE: Docket Nos. 18, 108, 149, 259** |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION OF DEBTORS FOR ENTRY OF ORDER (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the chapter 11 cases (the "**Cases**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), by and through its undersigned counsel, hereby submits this limited objection (this "**Limited Objection**") to the *Motion of Debtors for Entry of Orders (I) Approving Bidding Procedures for the Sale of Certain or All of the Debtors' Assets; (B) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections; (C) Approving Assumption and Assignment Procedures; (D) Scheduling a Hearing to Consider Any Proposed Sale; and (II) (A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Approving the Assumption and Assignment*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Mineral Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] Extended by agreement with the Debtors.

*of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 18] (the "**Sale Motion**"), the proposed form of Sale Order filed as Exhibit B to the Sale Motion (as revised, the "**Sale Order**"), and the form of *Asset Purchase Agreement* attached as Exhibit A to the *Notice of Filing of Proposed Form of Purchase Agreement* [Docket No. 108] filed in connection with the Sale Motion (the "**APA**"). In support of this Limited Objection, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Committee supports the Debtors' efforts to sell their assets to the highest bidder and recognizes that a successful sale transaction is critical to maximizing the value of the Debtors' estates for the benefit of all creditors. The Committee, however, objects to certain terms of the Sale Order and the APA that will irreparably impair the rights of general unsecured creditors. In addition, at the time of finalizing this Limited Objection, the Committee does not know the identity of the successful bidders for the Debtors' assets nor has the Committee been able to review final proposed asset purchase agreements and sale orders. Thus, this Limited Objection addresses certain issues, to the extent that such issues may arise.

2. Specifically, the Committee objects to the Sale Order and APA to the extent they: (i) provide a release or releases to any of Karnavati Holdings, Inc. ("**KHI**"), Nirma Limited ("**Nirma**"), Navin Overseas FZC ("**Navin**") or any of their directors or officers; (ii) fail to allocate sale proceeds among specific items or categories of collateral securing the prepetition liens and escrow sale proceeds until such allocation is provided to and agreed to by the Committee; (iii) provide for the transfer of potentially valuable causes of action, including any actions arising under Chapter 5 of the Bankruptcy Code or applicable state-law equivalents (collectively, "**Causes of Action**") to the buyer without any corresponding allocation of equivalent value to the Purchase

Price and the escrowing of all sale proceeds as agreed by the Committee; and (iv) provide for the immediate and indefeasible distribution of sale proceeds to the Debtors' prepetition secured lender before the Committee has had a meaningful opportunity to investigate and, if warranted, challenge the validity, extent, and priority of the prepetition secured lender's alleged liens on the Debtors' assets.

3. Any or all of the four foregoing issues, if not resolved, will deprive general unsecured creditors of value, including proceeds to which they would otherwise be entitled to receive under the terms of the Final DIP Order (as defined below). Therefore, the Committee respectfully requests that the Court condition the approval of the Sale Order upon the resolution of these objections, as set forth herein.

## RELEVANT BACKGROUND

### A. The Chapter 11 Cases

4. On June 15, 2026, (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to section 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Cases.

5. On June 26, 2026, the United States Trustee for Region 3 (the "**UST**") filed the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 104], appointing the following seven general unsecured creditors to the Committee: (1) Mountain Coal Company, L.L.C., (2) $D^2$ Industrial Services, LLC, (3) Bakersfield Machine Co., (4) Amergin Rail 2023-1, LLC, (5) CMP Sales d/b/a Mertec Eng., (6) ChemTron Supply, LLC d/b/a CRB Water, and (7) GATX Corp.

6. On June 29, 2026, the UST filed the *Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 109], adding Metropolitan Stevedore Company (d/b/a Metro Ports) as the eighth member of the Committee.

7. On July 7, 2026, the Bankruptcy Court entered the *Order (A) Approving Bidding Procedures for the Sale of Certain or All of the Debtors' Assets; (B) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections; (C) Approving Assumption and Assignment Procedures; (D) Scheduling a Hearing to Consider any Proposed Sale; and (E) Granting Certain Related Relief* [Docket No. 140] (the "**Bidding Procedures Order**") establishing certain deadlines concerning the proposed sale.

8. On July 22, 2026, the Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Lender, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 231] (the "**Final DIP Order**"), authorizing a modified proposed DIP facility with terms heavily negotiated with the Committee. Pursuant to the Final DIP Order, the Debtors were authorized to borrow up to $20 million from Karnavati Holdings, Inc. (the "**DIP Lender**") under a secured term loan facility (the "**DIP Facility**").

9. In negotiating the Final DIP Order, the Committee preserved for the Debtors' estates a portion of the proceeds from Causes of Action and all commercial tort claims. Specifically, twenty-five percent (25%) of the proceeds of such claims against insiders or affiliates and fifty percent (50%) of the proceeds of such claims against all other parties are excluded from DIP Collateral and preserved for the direct benefit of creditors.

**B. The Debtors' Capital Structure and Prepetition Obligations**

10. As of the Petition Date, the Debtors' primary secured creditor was HSBC Bank USA, National Association ("**HSBC**"). HSBC provided two prepetition credit facilities to Debtor

Searles Valley Minerals Inc. ("**SVM**"): (i) a demand line of credit with an aggregate principal amount of up to $59.5 million (the "**Prepetition Demand Line**"), under which approximately $47.4 million in principal and $12.1 million in outstanding letters of credit were outstanding as of the Petition Date; and (ii) a recourse receivables purchase agreement (the "**Receivables Facility**"), under which approximately $26 million was outstanding as of the Petition Date (collectively, the "**Prepetition Obligations**")

11. Pursuant to the Final DIP Order, HSBC asserts first-priority liens on certain of the Debtors' assets as security for the Prepetition Obligations (collectively, the "**Prepetition Liens**"). Additionally, the Debtors stipulated to the validity and perfection of the Prepetition Liens, subject only to the challenge rights expressly preserved for the Committee (or others with the necessary standing). *See* Final DIP Order ¶ 25. HSBC and the Committee have mutually agreed to extend the Challenge Deadline (as defined in the Final DIP Order) to September 14, 2026.

**C. Committee's Prepetition Lien Investigation**

12. The Committee's investigation into the HSBC Prepetition Liens is ongoing. The Committee has not yet received, let alone had a sufficient opportunity to review and analyze, all relevant documents and information necessary to assess whether the Prepetition Liens are valid, properly perfected, and enforceable as to all of the collateral purportedly subject thereto. In particular, the Committee is investigating whether certain categories of the Debtors' prepetition assets are properly encumbered by the Prepetition Liens.

**D. The Proposed Sale Order and APA**

13. The Debtors contemplate two distinct sale transactions. One sale transaction concerns only the Debtors' soda ash contracts, while the other concerns substantially all other assets. The form APA provides that the "Transferred Assets" include "all avoidance claims or causes of action available to Sellers under Chapter 5 of the Bankruptcy Code (including Sections

544, 545, 547, 548, 549, 550 and 553) or any similar actions under any other applicable Law" against certain "Designated Parties," including the Debtors' vendors, suppliers, customers, trade creditors, counterparties under Transferred Contracts, Transferred Employees, and their affiliates. APA § 2.1(r). However, there is no allocation of the value of such claims included in the Purchase Price and, therefore, no value is preserved for creditors on account of these claims to justify the relinquishment of such claims.

14. Additionally, the Sale Order provides that "all net cash proceeds generated from the sale of the Transferred Assets that constitute HSBC's collateral shall be immediately and indefeasibly paid by the Debtors to HSBC upon the closing of the Sale Transaction for indefeasible application against the Prepetition Obligations." Sale Order ¶ 5. Similarly, the Sale Order further provides that remaining proceeds shall be immediately paid to the DIP Lender at closing. *Id.* This proposed distribution mechanism does not provide for any escrow or holdback pending resolution of potential Challenges (as defined in the Final DIP Order), nor does it require any allocation of proceeds to specific assets prior to distribution, including those assets such as Causes of Action for which the Committee negotiated to share in as part of the Final DIP Order.

## LIMITED OBJECTION

### A. The Court Should Not Approve any Sale Order or APA that Provides Releases to any of KHI, Nirma, Navin, or any of their Directors or Officers.

15. The Committee is finalizing this Limited Objection without the benefit of a final proposed Sale Order or APA. Nevertheless, the Committee objects to any proposed Sale Order or APA that provides releases for KHI, Nirma, Navin, or any of their directors or officers. To the extent *any* third-party releases are proposed in connection with the Cases, such releases would only be appropriately considered in connection with a chapter 11 plan. Third-party releases must be considered in the light of a proper plan solicitation process pursuant to which creditors are given

an opportunity to review a disclosure statement and plan, with a ballot that expressly gives creditors an opportunity to opt in or opt out of such third-party releases.

16. Any third-party release given under the Sale Order or APA that would purport to bind the Debtors' creditors, would be nonconsensual and, thus, would violate the Supreme Court's holding in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 227 (2024) (Bankruptcy Code does not authorize third-party releases without the consent of affected claimants). Although decided in the context of a chapter 11 plan of reorganization, the holding of *Purdue Pharma* applies with even greater force to a nonconsensual third-party release given pursuant to a sale order. Here, creditors have not received anywhere near the notice provided in connection with plan solicitation nor have creditors been given any opportunity to consent or to refuse consent to any such third-party release.[3]

**B. The Sale Order Should Require an Allocation of Sale Proceeds Among the Specific Assets and Sale Proceeds Should Be Escrowed Until That Allocation is Provided and Agreed to By the Committee.**

17. The terms of the Sale Order providing for the immediate and indefeasible distribution of sale proceeds without providing any mechanism to allocate the sale proceeds among specific categories of the Debtors' assets is problematic for several reasons.

18. First, the Debtors' assets consist of multiple distinct categories of property. If the sale proceeds are distributed without first allocating them among specific categories of assets, it will be impossible to determine, after the fact, which proceeds are attached to a secured creditor's collateral or to encumbered assets, or assets in which the lien may have been improperly perfected.

---

[3] In addition to the lack of consent and notice, there would be no consideration given by any of the third-party beneficiaries of any such release. *See*, *e.g.*, *In re Spansion, Inc.*, 426 B.R. 114, 145 (Bankr. D. Del. 2010) (third-party releases improper where no consideration was going to releasing parties).

19. Second, while the form APA contains a purchase price allocation provision (Section 2.9 of the APA) for tax purposes, there is no corresponding allocation for purposes of determining the proper distribution of proceeds among the Debtors' creditors. Without a proper allocation of proceeds, HSBC and/or the DIP Lender may receive credit for the full sale proceeds as if all of the Transferred Assets were subject to properly perfected liens—an outcome that would be prejudicial to general unsecured creditors if any portion of the collateral pool is subsequently determined to be improperly encumbered.

20. Third, any order distributing sale proceeds to a secured creditor must, at least, identify what amount of the purchase price is attributable to which assets, particularly where a challenge may be asserted concerning the secured creditor's liens. *See In re St. Croix Hotel Corp.*, 44 B.R. 277, 279 (Bankr. D.V.I. 1984) ("[T]he issue of whether [a valid] security interest actually existed was obviously intended to be resolved prior to the date of sale of the property."); *see also e.g.*, *In re Magna Ent. Corp.*, No. 09-10720 (MFW), 2009 WL 10809895, at *6 (Bankr. D. Del. Mar. 24, 2009) (the only sale proceeds exempt from being deposited in escrow are those paid to secured creditors on account of valid and perfected liens and security interests); *see generally In re Package Design & Supply Co.*, 217 B.R. 422, 427 (Bankr. W.D.N.Y. 1998) (recognizing that lienor should not capitalize "where the lender's lien did not encumber all prepetition assets and the unencumbered assets added significant value to what the lienor is claiming" in the context of a credit bid).

21. Accordingly, the Committee objects to the terms of the Sale Order to the extent that the Sale Order does not allocate the sale proceeds to the specific assets and categories of assets and require the sale proceeds to be escrowed pending the provision of such allocation and the Committee's agreement to it. This allocation is necessary to protect the estates' interest in any

assets subject to improperly perfected liens and to preserve the Committee's ability to seek the reallocation of any amounts improperly allocated prior to distributions being made to secured creditors.

### C. Sale Proceeds Should be Escrowed Pending the Completion of the Committee's Lien Investigation and/or Disposition of any Challenges.

22. The Committee objects to the Sale Order to the extent it provides for the immediate and indefeasible distribution of sale proceeds to HSBC and the DIP Lender at closing without first permitting the Committee to complete its investigation into the validity, extent, and priority of the Prepetition Liens. If the sale proceeds are distributed to HSBC at closing before the Committee's investigation is complete, it will become exponentially more difficult and costly—and potentially impossible—to recover funds that were distributed on account of improperly perfected or otherwise avoidable liens.

23. Courts in this district and others have routinely conditioned approval of section 363 sales on the requirement that sale proceeds be placed in escrow pending resolution of lien challenges. *See*, *e.g.*, *In re Hussey Copper Corp.*, Case No. 11-13010 (BLS) (Bankr. D. Del. Nov. 17, 2011) [Docket No. 290] (ordering deposit of disputed proceeds into a separate escrow account pending resolution of committee's lien challenge); *In re Chem Rx Corporation*, Case No. 10-11567 (MFW) (Bankr. D. Del. Nov. 4, 2010) [Docket No. 490] (placing net cash proceeds in escrow pending further court order following committee's challenge to first lien holders' liens); *In re Scimeca Foundation, Inc.*, 497 B.R. 753, 771, 774 (Bankr. E.D. Pa. 2013) (escrowing sale proceeds related to disputed claims pending resolution of adversary proceeding).

24. The Final DIP Order expressly preserved the Committee's right to challenge the Prepetition Liens within the challenge period set forth therein. The current Challenge Deadline has been extended for the Committee through September 14, 2026. The purpose of the

Committee's challenge rights is to ensure a determination concerning the perfection of the HSBC Prepetition Liens *before* HSBC receives proceeds generated from its purported collateral. If the Sale Order is entered in its current form, then the Committee's challenge rights are illusory—the Committee's right to challenge HSBC's liens would be merely theoretical, with no practical avenue for recovery. Accordingly, the Committee respectfully requests that the sale proceeds be deposited into a segregated, interest-bearing escrow account to be held pending further order of the Court.

**D. The Causes of Action Should Not Be Transferred Without an Appropriate Allocation of Value, and All Sale Proceeds Should Be Escrowed Until That Allocation is Provided and Agreed to By the Committee.**

25. Section 2.1(r) of the APA provides that the Transferred Assets include all Causes of Action against the Designated Parties, which includes the Debtors' vendors, suppliers, customers, trade creditors, counterparties under Transferred Contracts, Transferred Employees, and their affiliates. The Committee objects to this provision to the extent the value of the Causes of Action is not reflected in the Purchase Price and no appropriate allocation of value is made.

26. Avoidance actions under Chapter 5 of the Bankruptcy Code are "created by the Bankruptcy Code solely for the benefit of creditors." *In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000) ("A paramount duty of a trustee or debtor in possession in a bankruptcy case is to act on behalf of the bankruptcy estate, that is, for the benefit of the creditors. To fulfill this duty, trustees and debtors in possession have a variety of statutorily created powers, known as avoidance powers, which enable them to recover property on behalf of the bankruptcy estate."); *see also In re Vogel Van & Storage, Inc.*, 210 B.R. 27, 32 (N.D.N.Y. 1997), *aff'd*, 142 F.3d 571 (2d Cir. 1998) (explaining that it is a "well-settled principle that neither a trustee in bankruptcy, nor a debtor-in-possession, can assign, sell, or otherwise transfer the right to maintain a suit to avoid a preference").

27. While the Committee recognizes that certain causes of action may appropriately be included in a sale of assets when necessary to preserve going-concern value—particularly those relating to trade creditors with whom the buyer intends to continue doing business—any such transfer should not occur for free. The value of the Causes of Action must be accounted for in the Purchase Price and, in the absence of an allocation of specific value, these assets should be retained by the estates for the benefit of all creditors. To the extent a buyer wishes to acquire the Causes of Action described in Section 2.1(r) of the APA, the Purchase Price should reflect appropriate consideration for such claims, and any such allocation should be subject to the agreement of the Committee, whose constituents share in such proceeds.

28. Furthermore, the current APA language is broadly drafted and, absent clarification, could be read to encompass avoidance claims that are not limited to trade-related preferences and fraudulent transfers, but that could include valuable commercial tort and other claims against insiders or third parties.

29. Critically, certain proceeds of Causes of Action are expressly excluded from the DIP Collateral under the Final DIP Order and neither HSBC nor the DIP Lender holds a security interest in such proceeds. *See* Final DIP Order ¶5(a)(3). Consequently, transferring these potentially valuable Causes of Action to the buyer for no additional consideration is inconsistent with the duty to maximize the value of the estates for the benefit of all creditors. *See In re R.H. Macy & Co.*, 170 B.R. 69, 74 (Bankr. S.D.N.Y. 1994) ("it is well settled that a debtor-in-possession has 'an affirmative, overarching duty to reorganize and maximize estate assets for the benefit of all creditors.'").

30. Accordingly, the Committee requests that (i) the APA and Sale Order include clear and express language limiting any transfer of Causes of Action to those specifically identified and

enumerated in the Transferred Assets, (ii) the value of such Causes of Action be specified and reflected in the allocation of the Purchase Price, and that allocation be agreed to by the Committee; and (iii) all sale proceeds should be escrowed until that allocation has occurred and the Committee's agreement has been received.

## RESERVATION OF RIGHTS

31. The Committee expressly reserves its rights to raise additional or further objections to the Sale Motion, Sale Order, and APA at any time, including at the hearing on the Sale Motion.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court (i) modify the relief sought in the Sale Motion as necessary to incorporate the concerns and objections of the Committee set forth herein; and (ii) grant to the Committee such further relief as the Court deems just and proper.

[*Signature Page Follows*]

Dated: August 25, 2026
Wilmington, Delaware

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Matthew P. Ward*
Matthew P. Ward (DE Bar No. 4471)
Lisa Bittle Tancredi (DE Bar No. 4657)
Marcy J. McLaughlin Smith (DE Bar No. 6184)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
lisa.tancredi@wbd-us.com
marcy.smith@wbd-us.com

—and—

Philip J. Mohr, Esquire (*pro hac vice*)
300 North Greene Street, Suite 1900
Greensboro, North Carolina 27401
Telephone: (336) 574-8030
Email: philip.mohr@wbd-us.com

*Counsel for the Official Committee of Unsecured Creditors*