**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | Related Docket No(s). 18, 140 |

**ORDER (A) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, AND (B) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for an order (this "**Order**") (a) authorizing and approving the execution, delivery, and performance of that certain Assignment and Assumption Agreement, dated as of August 17, 2026 (as amended, supplemented, or otherwise modified in accordance with its terms, the "**Agreement**"), by and between Searles Valley Minerals Inc., as debtor and debtor in possession ("**Assignor**"), and TATA Chemicals North America Inc. ("**Assignee**"); (b) approving, pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the assignment by Assignor to Assignee, and Assignee's assumption, of the executory contracts identified on Schedule 1 to the Agreement and related purchase orders, together with the related books and records, customer correspondence, forecasts, pricing history, logistics records, broker communications, claims history, invoicing history, and related operational data (collectively, the "**Assigned Contracts**"), free and clear of all Encumbrances other than Assumed Liabilities, with

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the Agreement, as applicable.

the assignment and assumption to occur at the "Closing" on the "Closing Date," each as defined in the Agreement; (c) authorizing and approving Assignee's assumption of the Assumed Liabilities, payment by Assignee (or on Assignee's behalf) of the Cure Amounts, and confirming that Assignee shall have no liability, obligation, or responsibility for any Liability that is not an Assumed Liability (the "**Excluded Liabilities**"); (d) approving the Purchase Price, consisting of the Debt Forgiveness, the cash payment at closing, and Assignee's assumption of the Assumed Liabilities, and the actions necessary to effect the Debt Forgiveness under the Supply and Liquidity Agreement and enter into, at or prior to the Closing, the transition services agreement (the "**TSA**"), providing transition services and support for thirty (30) days after the Closing Date; and (e) granting related relief; and the Court having held a hearing on August 26, 2026 (the "**Sale Hearing**") to consider the Motion and the assignment and assumption of the Assigned Contracts; and the Court having reviewed and considered the relief sought in the Motion, the declarations submitted in support thereof, all objections to the Motion and Assignor's responses thereto at the Sale Hearing, and the arguments of counsel made, and the declarations admitted into evidence at the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the relief requested in this Order; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion and the Sale Hearing having been given under the particular circumstances and in

accordance with the Bidding Procedures Order; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby;

**FOUND, CONCLUDED, AND DETERMINED THAT[3]:**

A. A reasonable opportunity to object or to be heard regarding the requested relief has been afforded to all interested parties and entities.

B. On July 7, 2026, the Court entered an order [Docket No. 140] (the "**Bidding Procedures Order**"), which, among other things, (i) authorized and approved the Bidding Procedures in connection with the sale of certain or all of the assets of the Debtors (the "**Assets**"); (ii) approved procedures for the assumption and assignment of contracts and noticing of related Cure Payments; (iii) approved the form and manner of notice of the Auction and the Sale Hearing, (iv) scheduled the Sale Hearing and set other related dates and deadlines; and (iv) granted related relief.

C. On August 25, 2026, the Debtors announced their determination that Assignee submitted the highest or best bid for the assignment and assumption of the Assigned Contracts pursuant to the Agreement.

D. The Debtors have articulated good and sufficient business reasons for the Court to authorize (i) Assignor's entry into and performance under the Agreement and consummation of the assignment and assumption transaction contemplated thereby (the "**Transaction**"), including

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. Furthermore, any findings of fact or conclusions of law made by the Court on the record at the close of the Sale Hearing are incorporated herein pursuant to Fed. R. Bank. P. 7052.

the assignment of the Assigned Contracts to Assignee pursuant to the terms of the Agreement and this Order; (ii) the assumption and assignment of the Assigned Contracts as set forth herein and in the Agreement; (iii) Assignee's assumption of the Assumed Liabilities and payment of the Cure Amounts; (iv) the Debt Forgiveness; and (v) the entry into and performance under the TSA. Entry into the Agreement and consummation of the Transaction pursuant to this Order are sound exercises of business judgment and are in the best interests of the Debtors, their estates and creditors, and all parties in interest.

E. The Debtors have articulated good and sufficient business reasons justifying the assignment and assumption of the Assigned Contracts to Assignee. Additionally, (i) Assignor conducted a robust marketing process with respect to the Assigned Contracts and the Agreement constitutes the highest and best offer for the Assigned Contracts; (ii) the Bidding Procedures were designed to yield the highest or otherwise best bid for the Assigned Contracts; (iii) the Agreement and the Closing of the Transaction present the best opportunity to realize the highest value for the Assigned Contracts; (iv) there is risk of deterioration of the value of the Assigned Contracts if the Transaction is not consummated promptly; and (v) the Agreement and the assignment and assumption of the Assigned Contracts provide greater value to Debtors' estates than would be provided by any other presently available alternative.

F. The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose for the assignment and assumption of the Assigned Contracts outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code and in connection with the assumption and assignment provisions of section 365 of the Bankruptcy Code, in that, among other things, immediate consummation of the Transaction is necessary and appropriate to maximize the value of Debtors' estates.

G. The Debtors have also determined, in a valid and sound exercise of their business judgment and in consultation with their advisors and the Consultation Parties, that the next highest or otherwise best Qualified Bid (as defined in the Bidding Procedures) (the "**Backup Bid**") for the Assets was that of American Soda LLC (the "**Backup Bidder**").

H. As evidenced by the affidavits of service [Docket Nos. 214, 244, 263, 267, 302] and publication [Docket Nos. 227, 228] previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Transaction, the Assumption Procedures, and the assumption and assignment of the Assigned Contracts to Assignee, and the applicable Cure Amounts has been provided in compliance with the Bidding Procedures Order and in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007, and 9014; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Motion, the Sale Hearing, the Transaction, the assumption and assignment of the Assigned Contracts to Assignee, or the Cure Amounts is or shall be required. With respect to entities whose identities were not reasonably ascertained by the Debtors, publication of the Sale Notice was made in the national edition of the *New York Times* and *The Daily Independent*, a local publication based in Ridgecrest, California, on July 17, 2026. Such notice was sufficient and reasonably calculated under the circumstances to reach all known and unknown holders of claims and interests and all known non-Debtor counterparties to the Assigned Contracts.

I. The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to assume the Assigned Contracts and provide the

consideration contemplated by the Agreement. The Debtors and their professionals adequately marketed the Assigned Contracts and conducted the marketing and sale process in accordance with the Bidding Procedures and the Bidding Procedures Order. The Debtors determined that the Agreement constituted the highest and best offer with respect to the Assigned Contracts and selected Assignee as the Successful Bidder for the Assigned Contracts. The Debtors therefore determined, in a valid and sound exercise of their business judgment and in accordance with the Bidding Procedures and the Bidding Procedures Order, that Assignee submitted the highest and best Qualified Bid for the Assigned Contracts and that the Agreement will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.

J. There is no evidence before the Court of any collusion in connection with the bidding process for the Transaction.

K. The Agreement was negotiated and is being undertaken by Assignor and Assignee at arm's-length and in good faith within the meaning of section 363(m) of the Bankruptcy Code. Assignee is not an "insider" of Assignor as that term is defined by section 101(31) of the Bankruptcy Code. Assignee recognized that Assignor was free to deal with any other party interested in assuming the Assigned Contracts, complied with the Bidding Procedures Order, and agreed to, and did, subject its bid to the competitive Bidding Procedures approved in the Bidding Procedures Order. As a result of the foregoing, Assignee is entitled to the protections of section 363(m) of the Bankruptcy Code, including in the event this Order or any portion thereof is reversed or modified on appeal, and otherwise proceeded in good faith in all respects in connection with these Chapter 11 Cases.

L. All payments to be made by Assignee and all other agreements or arrangements entered into by Assignee in connection with the Transaction, including the Debt Forgiveness and the TSA, have been disclosed.

M. Assignor (i) has full power and authority to execute the Agreement and the TSA and to perform its obligations thereunder; (ii) has all power and authority necessary to consummate the Transaction; and (iii) has taken all corporate action necessary to authorize and approve the Agreement, the assignment and assumption of the Assigned Contracts, the Debt Forgiveness, and all other actions required to be performed by Assignor to consummate the Transaction. No consents or approvals, other than those already obtained or expressly provided for in the Agreement or this Order, are required for Assignor to consummate the Transaction.

N. The total consideration provided by Assignee for the assignment and assumption of the Assigned Contracts consists of the Debt Forgiveness, the cash payment of $4,160,000.00 paid at Closing, and the assumption of the Assumed Liabilities, represents the highest and best consideration received by Assignor for the Assigned Contracts, and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable law.

O. Assignee would not have entered into the Agreement and would not agree to consummate the Transaction if the assignment of the Assigned Contracts were not free and clear of all Encumbrances to the fullest extent permitted pursuant to section 363(f) of the Bankruptcy Code or if Assignee would, or in the future could, be liable for any Liability that is not an Assumed Liability, including any Excluded Liability.

P. Assignor may assign the Assigned Contracts free and clear of all Encumbrances to the fullest extent permitted by section 363(f) of the Bankruptcy Code because, with respect to each creditor or other holder asserting an Encumbrance, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances that did not object to or withdrew their objections to the assignment, the Motion, or the Transaction are barred from challenging the Motion, the Transaction, or the assignment of the Assigned Contracts free and clear of Encumbrances. Those holders of Encumbrances that did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code or are adequately protected by the terms of this Order.

Q. There is no evidence that the Debtors or Assignee engaged in any conduct that would cause or permit the Agreement or the consummation of the Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code or any other applicable law.

R. The Agreement was not entered into, and the Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding the Debtors' creditors under the Bankruptcy Code or any other applicable law. Neither Assignor nor Assignee entered into the Agreement or is consummating the Transaction for any fraudulent or otherwise improper purpose.

S. Assignee would not have accepted the assignment of the Assigned Contracts but for the protections against potential claims based on successor liability, de facto merger, or theories of similar effect set forth in this Order.

T. The Debtors have proven and demonstrated that it is an exercise of sound business judgment to assume and assign the Assigned Contracts to Assignee in connection with the Transaction, and the assumption and assignment of the Assigned Contracts to Assignee is in the

best interests of the Debtors, their estates and creditors, and all parties in interest. The Assigned Contracts are integral to the Transaction, and accordingly, their assumption and assignment is reasonable and enhances the value of Debtors' estates.

U. The Cure Amounts with respect to the Assigned Contracts are the entire cure obligations due and owing under the Assigned Contracts under section 365(b) of the Bankruptcy Code. To the extent any non-Debtor counterparty to an Assigned Contract failed to timely file an objection to the proposed Cure Amount identified in the applicable Contract Assumption Notice, the Cure Amount listed in that notice shall be deemed the entire cure obligation due and owing under the Assigned Contract.

V. Each provision of the Assigned Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning, assignment of an Assigned Contract has been satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.

W. Assumption and assignment of an Assigned Contract to Assignee pursuant to this Order and the Agreement, and payment of the applicable Cure Amount, shall result in the full release and satisfaction of all cures, claims, and defaults, whether monetary or nonmonetary, including defaults arising from provisions restricting a change in control or ownership interest composition or other bankruptcy-related defaults, arising under the Assigned Contract at any time prior to the Closing Date. Such assumption and assignment shall relieve the Debtors and their estates from liability for any breach of the Assigned Contract occurring after the Closing, and Assignee shall be responsible for the Assumed Liabilities.

X. Assignee has demonstrated adequate assurance of future performance of all Assigned Contracts within the meaning of section 365 of the Bankruptcy Code.

Y. Upon assignment of an Assigned Contract to Assignee and payment of the applicable Cure Amount, (i) the Assigned Contract shall be deemed valid, binding, and in full force and effect in accordance with its terms, and all defaults thereunder, if any, shall be deemed cured, subject to this Order; and (ii) Assignee shall assume and perform the Assumed Liabilities arising from and relating to performance under the Assigned Contract from and after the Closing Date.

Z. The injunction set forth in this Order against creditors and third parties pursuing claims against, and Encumbrances on, the Assigned Contracts is necessary to induce Assignee to close the Transaction, and the issuance of such injunctive relief is necessary to avoid irreparable injury to the Debtors' estates and will benefit the Debtors' creditors.

AA. The Transaction does not constitute a *sub rosa* chapter 11 plan. The Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a chapter 11 plan for any of the Debtors.

BB. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in implementation of this Order, and, sufficient cause having been shown, waives such stay and expressly directs entry of judgment as set forth herein. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for immediate approval and consummation of the Transaction contemplated by the Agreement. Assignee, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the Transaction following entry of this Order, subject to the terms of the Agreement and provided that this Order has not been stayed, reversed, or modified in a manner materially adverse to Assignee.

CC. The relief granted herein is in the best interests of the Debtors, their estates and creditors, and other parties in interest.

DD. Following entry of this Order and the assumption and assignment of the Assigned Contracts, each counterparty to an Assigned Contract shall remain bound by all terms of the applicable Assigned Contract without modification, offset, defense, recoupment, termination right, reduction of volume commitment, price adjustment, or other adverse action arising from: (i) the bankruptcy filing, (ii) the assumption and assignment, (iii) the sale transaction, or (iv) the change in supplier from Assignor to Assignee

EE. Assignee is an independent operator with its own separate production facilities and is not acquiring Assignor's CARB account, ARB ID, compliance instruments, or registration under the Cap-and-Invest Program.

FF. Counterparties receiving the benefits of assumption and assignment shall continue to perform all obligations under the Assigned Contracts, including minimum purchase commitments, take-or-pay obligations, volume commitments, exclusivity obligations, payment obligations, and forecasting obligations.

GG. All counterparties to the Assigned Contracts are forever barred and estopped from asserting that: (i) the Assigned Contracts were terminated before assignment; (ii) bankruptcy constitutes a default under the Assigned Contracts; (iii) the assignment constitutes a default under the Assigned Contracts; (iv) consent rights survive the assignment; or (v) Assignee lacks privity under the Assigned Contracts.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED, to the extent set forth herein.

2. Any Objection to the Motion, the Transaction, or any other relief granted in this Order, to the extent not resolved, adjourned for hearing on a later date, waived or withdrawn, or previously overruled, and all reservations of rights included therein, is hereby OVERRULED and DENIED on the merits.

3. The Bidding Procedures utilized by the Debtors with respect to the Transaction are hereby ratified and were appropriate under the circumstances to maximize the value obtained from the Transaction for the benefit of the Debtors' estates.

4. The Agreement and the Transaction are hereby approved, and Assignor is authorized to enter into and perform under the Agreement.

5. The Purchase Price for the assignment and assumption of the Assigned Contracts is approved and shall consist of (a) the cancellation and forgiveness by Assignee of the outstanding amount of Liquidity Advances (as defined in the Supply and Liquidity Agreement dated June 14, 2026 [see Docket Nos. 12, 232] calculated as of the date of entry of this Order (the "**Debt Forgiveness**"), which Debt Forgiveness shall be effective automatically upon Closing without any further action by any Party, and (b) Assignee's assumption of the Assumed Liabilities. The Purchase Price shall be deemed paid by Assignee to Assignor as of the Closing Date. Except for the Purchase Price, which reduces the amount of the Liquidity Advances on a dollar-for-dollar basis and the termination of the Supply and Liquidity Agreement to be delivered at the Closing, nothing in this Order or the Agreement supersedes, replaces, substitutes for, expands, or extinguishes any obligation, right, or other provision of the Supply and Liquidity Agreement. The Debtors and the Assignee shall be permitted to enter into a termination agreement with respect to the Supply and Liquidity Agreement, together with any and all additional instruments and documents that may be necessary or desirable in connection with implementing and effectuating

the terms of the Agreement, without any further corporate action or orders of this Court. Upon the Closing, the Corporate Guaranty (as defined in the Supply and Liquidity Agreement) is terminated, and the Guarantor (as defined in the Corporate Guaranty) shall have no continuing liability thereunder.

6. 6. The Backup Bidder is hereby approved as the Backup Bidder (as defined in the Bidding Procedures), and the Backup Bid is hereby approved and authorized as the Backup Bid (as defined in the Bidding Procedures). To the extent necessary, the terms and conditions of the Backup Bid will be fully determined and approved at a later date pursuant to a separate sale order consistent with the terms of the Backup Bid; provided that no such separate sale order shall modify, alter, or expand the terms of the Backup Bid, or impose any obligation on the Backup Bidder beyond those set forth in the Backup Bid and the Bidding Procedures, without the Backup Bidder's prior written consent. Notwithstanding anything to the contrary herein or in the Bidding Procedures, the Backup Bidder's obligation to keep its Backup Bid open shall automatically terminate, and the Backup Bidder shall be released from all obligations with respect thereto, upon the earliest of (a) the Closing of the Transaction with Assignee, (b) the date that is the outside date for consummation of the Backup Bid set forth in the Bidding Procedures (or, if none, sixty (60) days after entry of this Order), and (c) written notice from the Debtors (after consultation with the Consultation Parties, as defined in the Bidding Procedures), that the Backup Bid will not be consummated. Within three (3) business days of such termination, the Debtors shall return the Backup Bidder's good faith deposit, together with any interest accrued thereon, and the Backup Bidder shall have no further liability or obligation in connection with the Backup Bid, the Bidding Procedures, or the Transaction. If the Backup Bid becomes the prevailing Bid, the Backup Bidder may seek an amended, supplemental, or separate sale order approving the Backup Bid and granting

protections substantially equivalent to those granted to the Assignee, as modified to reflect and incorporate the terms of the Backup Bid. The Debtors shall reasonably cooperate in obtaining such relief.

7. In accordance with Paragraph 27 of the Bidding Procedures Order, any Other Sale Transaction Fee due to Lazard as a result of the closing of the Transaction shall be segregated and escrowed (for the exclusive benefit of Lazard) from the proceeds of such Transaction, as an express carve-out from the collateral of the Debtors' pre- and postpetition secured lenders, prior to any other use or distribution of such proceeds. If any Transaction is the result of a successful bid (including on account of any successful credit bid) without a cash component sufficient to pay the corresponding Other Sale Transaction Fee due to Lazard in full, then any resulting unpaid portion of the Other Sale Transaction Fee due to Lazard shall be segregated and escrowed (for the exclusive benefit of Lazard) at the closing of such Transaction from the available cash of the Debtors, as an express carve-out from the collateral of the Debtors' pre- and postpetition secured lenders; provided that if the Debtors do not have sufficient cash to pay the unpaid portion of such Other Sale Transaction Fee in full, or any portion thereof, then the successful bidder (including on account of any successful credit bid) shall immediately set aside from its own funds and escrow (for the exclusive benefit of Lazard) any such amount necessary to pay Lazard such unpaid portion of the Other Sale Transaction Fee in full at the closing of such Transaction; and provided further, that under no circumstance shall Assignee be required to pay any amount in excess of the Purchase Price or have any obligation to set aside funds or escrow amounts to pay the Other Sale Transaction Fee. For the avoidance of doubt, nothing in this Order shall prohibit or be construed to prohibit the use of any unencumbered assets of the Debtors or the proceeds thereof to pay any fees and expenses of Lazard or the assertion or allowance of an administrative priority claim under sections

503(b)(2) and 507(a)(2) of the Bankruptcy Code, if applicable, on account of any fees or expenses of Lazard.

8. Subject in all respects to the Carve Out and the funding of the Post-Carve Out Trigger Notice Cap into the Professional Fee Escrow Account (as defined in the Final DIP Order), and subject to paragraph 7 above, all net cash proceeds generated from the Transaction shall be immediately and indefeasibly paid by the Debtors to the Prepetition Secured Lender upon the closing of the Transaction for indefeasible application against the Prepetition Obligations (as defined in the Final DIP Order) in accordance with the terms and conditions of the Final DIP Order and the Prepetition Loan Documents (each as defined in the Final DIP Order). Notwithstanding the foregoing, cash proceeds paid to the Prepetition Secured Lender shall be made without prejudice to any "Challenge" the Committee may institute pursuant to section 25 of the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Lender, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [D.I. 231].

9. Each of the Debtors and the Assignee are authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Transaction and the Closing in accordance with the Motion, the Agreement, and this Order; (b) assume and assign the Assigned Contracts to Assignee pursuant to the Agreement and this Order; (c) provide for the payment of the Cure Amounts by Assignee (or on Assignee's behalf) and effect the Debt Forgiveness; (d) provide for Assignee's assumption and performance of the Assumed Liabilities; (e) enter into and perform under the TSA; (f) enter into a termination agreement with respect to the Supply and Liquidity Agreement; and (g) perform, consummate, implement, and close fully the Agreement

together with all additional instruments and documents reasonably necessary or desirable to implement the Agreement.

10. Notwithstanding any provision of an Assigned Contract or applicable non-bankruptcy law that prohibits, restricts, or conditions assignment, Assignor is authorized to assume the Assigned Contract and assign it to Assignee, which assignment shall take place at and be effective as of the Closing Date or as otherwise provided by this Order. There shall be no acceleration, assignment fee, increase, or other fee charged to Assignee or Assignor as a result of the assumption and assignment of an Assigned Contract.

11. Assignee shall be deemed to have assumed the Assigned Contracts, and Assignor's assignment of those Assigned Contracts shall not be a default thereunder. After payment of any applicable Cure Amount, neither the Debtors, their estates, nor Assignee shall have any further liability to the non-Debtor counterparties for defaults or obligations arising before the Closing Date, other than Assignee's obligations under the Assigned Contracts that accrue or become due and payable on or after the Closing Date and constitute Assumed Liabilities.

12. Assignor's assumption and assignment of an Assigned Contract is subject to consummation of the Transaction. To the extent an objection by a counterparty to an Assigned Contract, including an objection to any applicable Cure Amount, is not resolved before the Closing Date, Assignor, with Assignee's written consent and in accordance with the Agreement, may (a) elect not to assume and assign the Assigned Contract; (b) postpone assumption and assignment until resolution of the objection; or (c) reserve the disputed portion of the Cure Amount and assume and assign the Assigned Contract on the Closing Date. So long as the claimed Cure Amount is held in reserve and no other unresolved objection exists, Assignor may assume and assign the

Assigned Contract without further delay, and the objecting counterparty's recourse shall be limited to the reserved funds.

13. Upon the Closing, (a) Assignor is authorized and directed to consummate, and shall be deemed for all purposes to have consummated, the assignment of all of Assignor's rights, title, and interest in the Assigned Contracts to Assignee, free and clear of all Encumbrances to the fullest extent permitted by section 363(f) of the Bankruptcy Code; and (b) no Encumbrance or Liability that is not an Assumed Liability, including any Excluded Liability, shall be enforceable against Assignee, its affiliates, successors, or permitted assigns or the Assigned Contracts. A certified copy of this Order may be filed with the appropriate clerk or recorder to cancel any such Encumbrance of record.

14. The assignment to Assignee of Assignor's rights, title, and interest in the Assigned Contracts pursuant to the Agreement shall be, and hereby is deemed to be, a legal, valid, and effective assignment of all such rights, title, and interest and vests in Assignee all of Assignor's rights, title, and interest in the Assigned Contracts pursuant to the Agreement, free and clear of all Encumbrances to the fullest extent permitted by section 363(f) of the Bankruptcy Code, with any such Encumbrances attaching to the proceeds of the assignment with the same validity, extent, and priority as existed immediately before the assignment, subject to this Order and any rights, claims, and defenses of the Debtors and their estates.

15. Unless expressly included in the Assumed Liabilities, neither Assignee nor any of its affiliates, successors, permitted assigns, equity holders, officers, directors, employees, agents, or professionals shall be responsible for any Excluded Liability.

16. Subject to the Closing, none of Assignee or its affiliates, successors, permitted assigns, equity holders, officers, directors, employees, agents, or professionals shall have or incur

any liability to, or be subject to any action by, Assignor or its estate, predecessors, successors, or assigns arising out of the negotiation, investigation, preparation, execution, or delivery of the Agreement or the entry into and consummation of the assignment and assumption of the Assigned Contracts, except as expressly provided in the Agreement and this Order.

17. Except as expressly provided in the Agreement or this Order, all persons and entities, including debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, vendors, suppliers, customers, employees, trade creditors, litigation claimants, and other persons, holding claims, liens, interests, or other Encumbrances of any kind or nature whatsoever arising before the Closing Date against Assignor or Assignor's interests in the Assigned Contracts (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, and whether arising before or after commencement of the Chapter 11 Case), including non-Debtor counterparties to the Assigned Contracts holding claims arising before the Closing Date, are hereby forever barred, estopped, and permanently enjoined to the fullest extent permitted by section 363(f) of the Bankruptcy Code from asserting, prosecuting, or otherwise pursuing such claims, liens, interests, or Encumbrances against Assignee or its affiliates, successors, permitted assigns, equity holders, directors, officers, employees, agents, or professionals, the Assigned Contracts, or Assignor's interests therein. Following the Closing, and to the fullest extent permitted by section 363(f) of the Bankruptcy Code, no holder of a pre-Closing Date claim, lien, interest, or Encumbrance against Assignor, other than an obligation expressly constituting an Assumed Liability, shall interfere with Assignee's rights under or use and enjoyment of the Assigned Contracts based on or related to such claim, lien, interest, or Encumbrance. Except as otherwise provided in the Agreement with respect to Assumed Liabilities or this Order, all such

claims, liens, interests, and Encumbrances, if any, shall be transferred and will attach to the net available proceeds from the assignment in the order of their priority, with the same validity, force, and effect as they had against the Assigned Contracts immediately before the Closing, subject to any rights, claims, and defenses that the Debtors or their estate may possess. All persons are hereby enjoined from taking action that would interfere with or adversely affect the ability of Assignor to assign the Assigned Contracts to Assignee in accordance with this Order.

18. By virtue of the Transaction, and notwithstanding any otherwise applicable law, rule, or regulation to the contrary, neither Assignee nor any of its affiliates shall be deemed to: (i) be a legal successor, or otherwise a successor, to Assignor under any theory of law or equity; (ii) have, *de facto* or otherwise, merged with or into Assignor or its estate; (iii) have a common identity or continuity of enterprise with Assignor; (iv) be a mere continuation or substantial continuation, or hold itself out as a mere continuation, of Assignor or any business, enterprise, or operation of Assignor; or (v) be liable for any act or omission of Assignor in the conduct of its business or arising under or related to the Assigned Contracts, other than as expressly set forth in the Agreement with respect to Assumed Liabilities. To the maximum extent available under applicable law, Assignee's acceptance of the assignment of the Assigned Contracts shall be free and clear of any successor-liability claims and other transferee liability of any nature whatsoever, whether known or unknown and whether asserted or unasserted at the Closing. The operations of Assignee and its affiliates shall not be deemed a continuation of Assignor's business as a result of the Transaction.

19. The assignment of the Assigned Contracts is limited exclusively to contractual rights and obligations under such Assigned Contracts for the supply of soda ash, is distinct from any sale of Assignor's physical assets, and does not transfer any ownership interest in Assignor's

emitting facilities, real property, mining operations, permits, emissions allowances, compliance instruments, CARB account, ARB ID, or environmental obligations. For the avoidance of doubt, the assets assigned, assumed and transferred pursuant to the Agreement, as approved hereby, do not include inventory, including but not limited to, any as-extracted minerals.

20. Assignee shall not be liable for any administrative expense claim, priority claim, reclamation claim, section 503(b) claim, section 507 claim, or similar claim arising from acts, omissions, contracts, operations, shipments, or conduct occurring prior to the Closing Date, unless such amounts are Cure Amounts.

21. The Agreement has been entered into by Assignee in good faith, and Assignee is a good faith purchaser of the Assigned Contracts within the meaning of section 363(m) of the Bankruptcy Code. Assignee is entitled to all protections afforded by section 363(m) of the Bankruptcy Code.

22. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the assignment of the Assigned Contracts. Except as expressly provided in the Agreement or this Order, no obligation or liability, contingent or otherwise, for brokerage fees, finders' fees, agents' commissions, or other similar payments is due to any person in connection with the Agreement or the Transaction for which Assignee is or will become liable.

23. The Purchase Price provided by Assignee for the assignment and assumption of the Assigned Contracts shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the assignment of the Assigned Contracts may not be avoided, or costs or damages imposed or awarded under section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Uniform

Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or any other similar federal or state law.

24. There is no evidence that the Debtors or the Assignee engaged in any conduct that would cause or permit the Agreement or the consummation of the Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code or any other applicable law.

25. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of Assignor's rights, title, and interest in the Assigned Contracts to Assignee pursuant to the Agreement, free and clear of all Encumbrances to the fullest extent permitted by section 363(f) of the Bankruptcy Code.

26. This Order (a) is and shall be effective as a determination that all Encumbrances of any kind or nature whatsoever existing with respect to the Assigned Contracts before the Closing have been unconditionally released, discharged, and terminated to the fullest extent permitted by section 363(f) of the Bankruptcy Code, including claims in connection with any tax liability or claims asserted by CARB relating to its $CO_2$ cap-and-trade credit obligations, and that the assignment described herein has been effected; and (b) is and shall be binding upon and shall authorize all entities, including filing agents, filing officers, title agents, title companies, recorders of mortgages and deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assigned Contracts assigned to

Assignee. All recorded claims, liens, interests, and Encumbrances against the Assigned Contracts shall be deemed stricken from their records, official and otherwise.

27. If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances on, or claims against or interests in, the Assigned Contracts has not delivered to Assignor before the Closing, in proper form for filing and executed by appropriate parties, termination statements, instruments of satisfaction, releases, and other documents necessary to document the release of all such Encumbrances, Assignor and Assignee are authorized to file copies of this Order as evidence of termination, satisfaction, and release of such claims, liens, interests, and Encumbrances.

28. Each federal, state, and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Transaction, including the assignment and assumption of the Assigned Contracts, the Debt Forgiveness, and the Closing.

29. Nothing in this Order or the Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory power of a governmental unit with respect to environmental liability that any entity would be subject to after the Closing Date. Nothing in this Order or the Agreement authorizes the transfer or assignment of any applicable governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under applicable police or regulatory law. The Bankruptcy Court retains jurisdiction as set forth in this Order or any plan of reorganization or liquidation confirmed in the Chapter 11 Case, including jurisdiction, but not exclusive jurisdiction, to determine whether liabilities asserted by any

governmental unit are discharged or otherwise barred by this Order, any plan of reorganization or liquidation confirmed in the Chapter 11 Case, or the Bankruptcy Code.

30. Without limiting paragraph **Error! Reference source not found.** above, but subject to section 525(a) of the Bankruptcy Code, no governmental unit may revoke or suspend any right, license, trademark, or other permission relating to the Assigned Contracts or rights thereunder on account of the filing or pendency of the Chapter 11 Case or the consummation of the Transaction.

31. To the extent this Order is inconsistent with any prior order or pleading filed in the Chapter 11 Case, the terms of this Order shall govern. To the extent there is any inconsistency between this Order and the Agreement, this Order shall govern.

32. All entities that are presently, or on the Closing Date may be, in possession of any of the Assigned Contracts or books and records, customer correspondence, forecasts, pricing history, logistics records, broker communications, claims history, invoicing history, and related operational data relating directly thereto are hereby directed to deliver such Assigned Contracts, books and records, customer correspondence, forecasts, pricing history, logistics records, broker communications, claims history, invoicing history, related operational data, and related rights to Assignee on the Closing Date.

33. This Order shall not be modified by any chapter 11 plan of Assignor confirmed in the Chapter 11 Case, and neither a chapter 7 trustee, liquidating trustee, plan administrator, creditors' trust, litigation trust, nor any successor fiduciary may challenge, avoid, unwind, recharacterize, subordinate, or otherwise impair the transaction contemplated by the Agreement.

34. This Order and the Agreement shall be binding in all respects upon all creditors and interest holders of the Debtors, all non-Debtor parties to the Assigned Contracts, any statutory

committee appointed in these Chapter 11 Cases, all successors and assigns of Assignor and its affiliates, and any trustees, examiners, responsible persons, or other fiduciaries appointed in the Chapter 11 Cases or upon conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee; and the Agreement shall not be subject to rejection or avoidance under any circumstances. If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Order and the rights granted to Assignee hereunder shall remain effective and, notwithstanding dismissal or conversion, shall remain binding on parties in interest.

35. The failure specifically to include or make reference to any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court that the Agreement is authorized and approved in its entirety, subject to 31the limitations and protections set forth in this Order.

36. Nothing in this Order shall prohibit or be construed to prohibit the use of any unencumbered property of the Debtors or proceeds thereof to pay any fees and expenses of Lazard or the assertion or allowance of an administrative priority claim under sections 503(b)(2) and 507(a)(2) of the Bankruptcy Code, if applicable, on account of any fees or expenses of Lazard. The requirements and obligations contained in this paragraph to pay Lazard any such Sale Transaction Fee or Other Sale Transaction Fee on account of the Transaction shall be subject in all respects to entry of an order by the Court approving such fees.

37. The Court retains jurisdiction with respect to all matters arising from or related to implementation of this Order, including authority to (a) interpret, implement, and enforce this Order (including the injunctive relief provided herein), the Agreement, all amendments thereto, and any waivers and consents thereunder; (b) protect Assignee and the Assigned Contracts from

and against any Encumbrances; (c) compel delivery of the Assigned Contracts, books and records, customer correspondence, forecasts, pricing history, logistics records, broker communications, claims history, invoicing history, related operational data, and related rights to Assignee; (d) compel Assignee to perform its obligations under the Agreement, including the Assumed Liabilities; (e) resolve disputes arising under or related to the Agreement, the assignment and assumption of the Assigned Contracts, the Debt Forgiveness, Cure Amounts, or the Transaction; and (f) enforceability of the Assigned Contracts.

38. The Agreement, the TSA, and any related agreements, documents, or instruments may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with their terms without further order of this Court; *provided*, *however*, that any such modification, amendment, or supplement is neither material nor materially changes the economic substance of the Transaction contemplated hereby.

39. The assignment of the Assigned Contracts to Assignee includes any of the following arising before, on, or after the Petition Date, as further described in the Agreement: (a) all of Assignor's right, title, and interest in, to, and under the Assigned Contracts, pursuant to Sections 363 and 365 of the Bankruptcy Code and the Sale Order, free and clear of any Encumbrances; (b) all rights, claims, and causes of action against any party arising out of or related to the Assigned Contracts, including all rights to (i) recover damages, deficiency payments, liquidated damages, take-or-pay charges, minimum volume shortfall charges, and other remedies arising after Closing, and to (ii) enforce historical and future volume commitments under the Assigned Contracts arising before or after Closing; (c) any and all rights under non-disclosure agreements or other confidentiality agreements executed by Assignor in connection with the marketing of the Assigned Contracts; and (d) all deposits and advances received from customers

under the Assigned Contracts held or received by Assignor as of and after the Closing Date, in each case of (a) through (d) excluding the Excluded Assets.

40. Following the Closing, Assignee may enforce the Assigned Contracts through all contractual and equitable remedies available under applicable law, including specific performance where provided under applicable contract law or equity.

41. Neither Assignor nor Assignee shall have an obligation to close the Transaction until all conditions precedent in the Agreement to their respective obligations to close the Transaction have been met, satisfied, or waived in accordance with the Agreement.

42. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including Bankruptcy Rule 6004(h), the Court expressly finds there is no reason for delay in implementation of this Order and, accordingly, (a) this Order shall be immediately effective and enforceable upon entry; (b) the Debtors are not subject to any stay of this Order or in the implementation, enforcement, or realization of the relief granted herein; and (c) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

43. The provisions of this Order are nonseverable and mutually dependent.

**Dated: August 28th, 2026**
**Wilmington, Delaware**

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**