**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | Related Docket No. 366 |

**DEBTORS' RESPONSE TO CALIFORNIA AIR RESOURCES BOARD'S PREMATURE REQUEST FOR STAY PENDING APPEAL**

Searles Valley Minerals Inc. ("SVM") and certain of its subsidiaries, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") respectfully submit this response to the California Air Resources Board's ("CARB") Request for Stay Pending Appeal [D.I. 366] (the "Request").

**RESPONSE**

1. CARB acknowledges the fundamental problem with its Request: There is nothing to stay. [D.I. 366 ¶¶ 2–3.] There has not even been a hearing on the Debtors' Sale Motion,[2] let

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] The Debtors' Sale Motion is the Motion of Debtors for Entry of Orders (I) Approving Bidding Procedures for the Sale of Certain Or All of the Debtors' Assets; (B) Authorizing the Debtors to Designate One Or More Stalking Horse Bidders and to Provide Bid Protections; (C) Approving Assumption and Assignment Procedures; (D) Scheduling a Hearing to Consider Any Proposed Sale; and (II) (A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief [D.I. 18].

alone a final sale order issued by the Court. When CARB raised this same issue during the August 26th hearing, the Court explained that the issue of a stay was not ripe because there was not yet an approved sale order. Aug. 26, 2026 Hr'g Tr. at 98-99, 118. That hasn't changed.

2. The Debtors will be prepared to fully brief the merits of CARB's stay motion if and when it is properly before the Court on whatever schedule the Court orders. But for now, CARB's Request is premature and procedurally improper.

3. Because, however, CARB has provided substantive merits argument in its Request, the Debtors respond briefly below so that the Court has the benefit of their position. In short, CARB cannot meet a single one of the elements required for the Court to grant the extraordinary relief of a stay pending appeal.

4. First, CARB has no likelihood of success on the merits: As the Court has already held, CARB's interests in the Debtors' assets are "more readily defined as … a right to payment, than, indeed, even the vouchers that were before the Court in the *TWA* case." Hr'g Tr. 118:11–16. That is because, as discussed more fully in the Debtors' Response to CARB's Sale Objection [D.I. 301], there is an "undisputed . . . robust, dollar-based marketplace" for the compliance instruments that are at the heart of the Cap-and-Trade Program. Hr'g Tr. 114:13–23. Accordingly, as the Court correctly held, this case is unlike *Torwico*, *Chateaugay, and CMC Heartland* because the program requires the purchase and surrender of compliance instruments that give CARB a right to payment; it does not require the affirmative cleanup or remediation of ongoing pollution by the Debtors. *See, e.g*., D.I. 310; Hr'g Tr. 114:13–23.

5. Second, CARB faces no irreparable harm. At most, it faces a delay in asserting its right to payment, a quintessential economic injury. *See In re Vill. Roadshow Entm't Group USA, Inc.*, 676 B.R. 821, 830 (D. Del. 2025) ("[A] purely economic injury, compensable in money,

cannot satisfy the irreparable injury requirement[.]") (internal citation omitted). CARB argues that absent a stay it will not be able to carry out the Cap-and-Trade Program. [D.I. 366 ¶¶ 7–8.] Judge Sontchi rejected the identical "program integrity" argument in *Paloma*, noting that any such harm was speculative. *In Re La Paloma Generating, Co.*, No.: 16-12700 (CSS), 2017 WL 5197116 (Bankr. D. Del. Nov. 9, 2017) Stay Hr'g Tr. 33:9–18 (Jan. 9, 2018) ("There is no evidence that I'm going to destroy the market in certificates, that I'm going to gut the cap and trade program, that somehow this order is going to result in chaos in the State of California. And I certainly can't rely on speculation on those issues."). Indeed, the billions of dollars the program brings into the State of California each year [D.I. 301 at 9–10] dwarfs the approximately $76 million of CARB liabilities the Debtors estimate they owe. Hr'g Tr. 95:16–23. And any new owner will be subject to the Cap-and-Trade Program going forward for its own emissions.

6. Third, a stay would threaten irreparable harm to the Debtors, any purchaser, and the estates. As the Debtors have explained, no buyer will take these assets saddled with the CARB obligations. [D.I. 301 at 7.] The only way to maximize the value of the estates for all creditors is through a going-concern sale free and clear of CARB's interests. A stay threatens to upend that sale and endanger the livelihood of all of the employees who work at the Debtors' facilities.

7. Finally, the public interest weighs in the Debtors' favor. In addition to harming all interested parties other than CARB, a stay would also undermine the Bankruptcy Code's policy of preserving going-concern value. *See In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004) (noting Chapter 11 serves two basic purposes, both to preserve "going concern" value of debtor's business and to maximize property available to satisfy creditor claims). A stay would also hold in limbo the future jobs of more than 200 employees, and jeopardize the continued

operation of the Debtors' water treatment facility that provides potable water to the residents of Trona, California. [*See* D.I. 310 ¶¶ 12, 60.]

8. For all these reasons, although the Request is not properly before the Court, to the extent the Court decides to rule on it at the Sale Hearing, the Court should deny the Request.

***[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]***

Dated: Wilmington, Delaware
September 11, 2026

*<u>/s/ Laura Davis Jones</u>*
**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: 302-652-4100
ljones@pszjlaw.com
joneill@pszjlaw.com
ecorma@pszjlaw.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Joseph O. Larkin (I.D. No. 4883)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com

- and -

James J. Mazza, Jr. (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
320 S. Canal Street
Chicago, Illinois 60606
Telephone: (312) 407-0700
James.Mazza@skadden.com
Jennifer.Madden@skadden.com

- and –

Abigail E. Davis (admitted *pro hac vice*)
845 Texas Avenue, Suite 2300
Houston, Texas 77002
Telephone: (713) 655-5120
Abigail.Sheehan@skadden.com

- and -

Destiny N. Almogue (admitted *pro hac vice*)
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Destiny.Almogue@skadden.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*