**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | Related Docket No. 84, 377 |

**DEBTORS' OBJECTION TO FILED**
**CLAIM #34 OF PROCESS EQUIPMENT INC.**

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby submit this objection (this "**Objection**") to the secured proof of claim filed by Process Equipment Inc. ("**Process**") against Searles Valley Minerals, Inc. In further support of this Objection the Debtors rely upon and incorporate by reference the previously filed *Declaration of Adrian Frankum in Support of Chapter 11 Petitions and First Day Papers* [Docket No. 17] (the "**First Day Declaration**"), and the contemporaneously filed *Declaration of Philip J. Gund in Support of Debtor's Objection to Filed Claim #34 of Process Equipment Inc. and Debtors' Reply to Limited Objection by Process Equipment, Inc. to Sale and Disposition of Sale Proceeds* (the "**Gund Declaration**"), and, by and through their undersigned counsel, respectfully represent:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157(a)–(b)(1) and 1334(b) and the Amended Standing Order of Reference from the United

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue of these cases and this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are sections 105(a), 501, 502, and 1111(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 1009-2 and 2002-1, and 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**").

3. Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final order with respect to this Objection if it is determined that this Court would lack Article III power to enter such final order absent the consent of the parties.

## BACKGROUND

### I. The Chapter 11 Cases

4. On June 15, 2026 (the "**Petition Date**"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). These Chapter 11 Cases are being jointly administered under Local Bankruptcy Rule 1015-1.

5. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6. On June 26, 2026 and June 29, 2026, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors' [Docket Nos. 104 and 109] (the "**Committee**").

7. On September 14, 2026, the Debtors entered into an asset purchase agreement (the "**APA**") for the going-concern sale of substantially all of their assets (the "**Sale**") to 5E SVM, LLC (the "**Buyer**") [Docket No. 377-1].

8. SVM (together with its Debtor and non-Debtor subsidiaries, the "**Company**") operates a vertically integrated mining and processing complex at Searles Lake in Trona, California, where it produces critical industrial minerals, including borates, sodium sulfate, and salt, sourced from one of the largest known deposits of water-soluble borates in North America. The Company is among the largest and lowest cost producers of borates, serving a diversified global customer base across industrial, agricultural, and specialty chemical end markets. The Company historically mined and processed Sodium Carbonate (soda ash) until February 2026, and continues to source and supply soda ash to its customers in North America. In addition, the Debtors source and provide potable water for approximately 760 residential and commercial customers in certain areas on the west shoreline of Searles Lake, California, including the town of Trona, California. The Company's business operations, corporate and capital structures, and restructuring efforts are described in greater detail in the First Day Declaration.

## II. The Process Mechanics Lien

9. Process asserts a mechanics lien in the amount of $3,178,916.26 against real property located at 13200 Main Street, Trona California 93562, which was recorded in San Bernardino County on June 16, 2026. A notice of perfection pursuant to 11 U.S.C. § 546(b) was filed on June 19, 2026 [Docket No. 84]. The lien is predicated on a Master Work Agreement dated December 5, 2024 and Purchase Order CS2407540 dated December 19, 2024, with a fixed base contract value of $3,177,435.00. On July 8, 2026, Process filed claim #34 against debtor Searles Valley Minerals, Inc. (the "**Proof of Claim**"), asserting a purportedly secured claim in the amount of $3,178,916.26 on account of the foregoing asserted mechanics lien. The Proof of Claim contains

no allegations or information regarding the value of the collateral securing the purportedly secured claim.

10. Process was hired to order and install certain equipment in connection with the Trona Boiler ID & FD Fan Electrification Project on the Debtors' utility plant located at parcel number 0485-041-38. Process asserts its lien encompasses "[e]ngineering, design, fabrication, supply, and field installation services in connection with the Boiler ID & FD Fan Electrification Project, including without limitation: design and supply of fan rotors, shafts, and inlet cones; supply and installation of electric motors, couplings, concrete motor pedestals, and related structural modifications; pipe re-routing and condensate drain line relocation; rotating assembly balancing; and associated field labor, crew mobilization, and engineering submittals." *See* Claim of Mechanics Lien, recorded June 16, 2026, San Bernardino County Recorder (Document No. 2026-0153549) [Docket No. 84, Ex. A].

11. Critically, while Process was contracted to order, deliver and install four motors and two rotors, at least two motors and one rotor remain completely uninstalled and are sitting on the ground at the project site. Of the two motors placed on concrete pedestals, neither has been connected or coupled to the fan shafts it is designed to drive. Coupling cannot occur until the motors are electrically connected and ready to operate the fans—a stage of work that was never reached. Thus, these motors remain uncoupled and not yet operational, and the two uninstalled motors and one rotor remain loose personal property. A significant portion of the equipment was never incorporated into the realty, and thus never became a fixture for which Process might have a lien. Even if Process did have a valid lien for all the equipment delivered to the worksite, as discussed below the value of the collateral securing its claim is a small fraction of the amount of its asserted claim.

## BASIS FOR RELIEF

12. Section 502 of the Bankruptcy Code provides, in pertinent part, as follows: "[a] claim or interest, proof of which is filed under [§] 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The Court shall not allow a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." *See id.* § 502(b)(1). Moreover, Bankruptcy Rule 3001 requires that proofs of claim based on a writing be filed with sufficient supporting documentation. *See* Fed. R. Bankr. P. 3001(c).

13. As set forth more fully below, the Debtors object to Process's claim on two grounds: (i) Process has not met its burden to establish a valid security interest for the full amount claimed; and (ii) even if some amount of the lien is valid, it is limited in value (a) given the incomplete nature of the project, and (b) by the value of the collateral to which it attaches.

### A. Process' Burden to Establish a Security Interest Has Not Been Met.

14. Section 502 of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The burden of proof for determining the validity of claims rests on different parties at different stages of the claim objection process. As explained by the United States Court of Appeals for the Third Circuit:

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meets this standard of sufficiency, it is "*prima facie*" valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimants' initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim . . . . In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove

> the validity of the claim by a preponderance of the evidence.*In re Allegheny Int'l Inc.*, 954 F.2d 167, 173-34 (3d Cir. 1992). "The claimant bears the ultimate burden of establishing a valid . . . claim by a preponderance of the evidence." *In re SRC Liquidation, LLC*, 573 B.R. 537, 540 (Bankr. D. Del. 2017) (citing *In re Allegheny Int'l Inc.*, 954 F.2d at 173-74)).

15. The validity of a lien, including the property interests to which it attaches, is determined by applicable state law. As the Supreme Court has explained, "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979); *see also Matter of Perona Bros.*, 186 B.R. 833, 838 n.13 (D.N.J. 1995) Consistent with that principle, "creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000). Because the property at issue is located in California, California law governs the validity and scope of Process's asserted mechanics lien.

**B. Process Has Not Established That It Has a Lien for All Equipment and Services Provided.**

16. Under California's mechanics lien statute, a contractor bears the burden of establishing that it provided equipment and material for an authorized work of improvement. See Cal. Civ. Code §§ 8048, 8400, 8404; *see also Ensele v. Jolley*, 188 Cal. 297, 300 (1922) (It is "well settled that the complaint whereby a lien for such materials is sought to be established and enforced must contain substantial allegations to the effect that the said materials were furnished for and to be used in, and that they were used in, the buildings in question."). A "work of improvement" is defined as the "construction, alteration, or repair of . . . any building, wharf, bridge, ditch, flume, aqueduct, well, tunnel, fence, machinery, railroad, or road" on real property. Cal. Civ. Code § 8050.

Critically, to support a valid mechanics lien, the materials furnished must not merely be delivered to the site—they must be actually incorporated into the improvement and become fixtures affixed to the real property. *See Consol. Elec. Distribs., Inc. v. Kirkham, Chaon & Kirkham, Inc.*, 18 Cal. App. 3d 54, 58 (1971); *Banis Rest. Design, Inc. v. Serrano*, 134 Cal. App. 4th 1035, 1045 (2005) ("[T]he material supplied must be attached to and incorporated into the project so that it becomes a fixture, and the supplier cannot have a lien if it remains personal property" (citation omitted)). Materials that were never installed, or that remain personal property rather than fixtures, fall outside the scope of what a valid mechanics lien can secure. *See Banis*, 134 Cal. App. 4th at 1045 ("[T]he supplier cannot have a lien if [the material] remains personal property." (citation omitted)).

17. The fixture analysis under California law involves a three-part test: "(1) physical annexation [to the realty]; (2) adaptation to use with the real property; and (3) intention to [make a permanent annexation] to the realty". *See Cornell v. Sennes*, 18 Cal. App. 3d 126, 132 (1971). Additionally, California Civil Code § 660 defines a thing as "affixed to land" when it is "permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws." Cal. Civ. Code § 660.

18. At least two motors and one rotor remain sitting on the ground at the project site. They were never installed, bolted down, or otherwise attached to the real property. Because they were never affixed to the realty, they remain personal property rather than fixtures and cannot support a mechanics lien. *See Banis*, 134 Cal. App. 4th at 1045. Moreover, the uninstalled equipment was never adapted to the use of the real property because it was never incorporated into any functioning system. The motors and rotor on the ground were not connected to, or made part of, the Boiler ID & FD Fan system and serve no function as part of any improvement. Thus, they

fail not only the physical-annexation requirement but also the adaptation prong of the fixture test. *See Cornell*, 18 Cal. App. 3d at 132; Cal. Civ. Code § 660.

19. Notwithstanding that it was contemplated that the motors and rotor would eventually be permanently affixed, the work stopped well short of that stage. Fixture status turns on objective intent as manifested by physical facts, not subjective plans. *See Kruse Metals Mfg. Co. v. Util. Trailer Mfg. Co.*, 206 Cal. App. 2d 176, 182–83 (1962) (the relevant inquiry is "objective intent rather than subjective"). Here, the absence of installation, attachment, and integration into a functioning system demonstrates that at least the equipment on the ground had not become a permanent and integral part of the realty. The Debtors do not concede that the remaining half of equipment that was placed on the concrete mounts, but yet not integrated into a functioning system, qualify for mechanics lien treatment under California law, and reserve all rights and arguments on that issue.

20. Taken together, the three-part fixture test indicates that at least the two motors and one rotor on the ground are not fixtures: they were neither physically annexed nor adapted to the real property, and the physical facts do not show permanent annexation. They therefore remain personal property outside the scope of a mechanics lien. *See Banis*, 134 Cal. App. 4th at 1045; *Kruse Metals*, 206 Cal. App. 2d at 182–83. Because at least two motors and one rotor were never incorporated into the realty as fixtures, they are personal property for which Process cannot assert a mechanics lien. The face amount of the lien asserted should therefore be reduced by at least half at minimum.[2]

[2] The scope of services and design work generally corresponds with the equipment components and should accordingly also be reduced by at least fifty percent.

**C. Process's Lien Is Further Limited by the Value of the Collateral to Which It Attaches.**

21. Under section 506(a) of the Bankruptcy Code, "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property. . . ." 11 U.S.C. § 506(a)(1). Secured creditors' claims are thus divided into secured and unsecured portions, with the secured portions of the claims limited to the value of the collateral. *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 140 (3d Cir. 2012). Even if Process holds a valid mechanics lien, its secured claim is nonetheless limited to the value of the specific parcel and improvements to which the lien attaches, in this case parcel number 0485-041-38 as described in Process's lien. *See Credit Bureau of San Diego, Inc. v. Williams*, 153 Cal. App. 2d 834, 836–37 (1957) (finding that a lien only attaches to a property it sufficiently describes); *see also Forsgren Assocs. v. Pac. Golf Cmty. Dev. LLC*, 182 Cal. App. 4th 135, 141-42 (2010) (holding that a contractor's mechanic's lien attached only to the portions of parcels on which the contractor actually performed work and did not extend to the entirety of the adjacent properties merely because they benefited from the improvement). Process's Proof of Claim is silent on the value of its collateral, although Process anticipates an insufficiency of collateral value when it asserts, as part of its Proof of Claim, a general unsecured claim to the extent it is not fully secured.

22. In determining the value of collateral under section 506(a), "the 'proposed disposition or use' of the collateral is of paramount importance to the valuation question." *In re Heritage Highgate, Inc.*, 679 F.3d at 141 (quoting *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 962 (1997)). Where the debtor proposes to sell collateral, the relevant measure of value is the sale proceeds allocable to the specific collateral. *See id.* at 141–42. Here, the Debtors are selling substantially all of their assets under the APA, and the allocation of the sale proceeds among those assets is determinative of the value of Process's collateral for purposes of § 506(a).

23. Any lien Process may hold is limited to the specific facility upon which Process performed its work, which is the Trona Boiler ID & FD Fan Electrification Project at the utility facility located on parcel number APN 0485-041-38 at 13200 Main Street, Trona, California (the "**Utility Facility**"). Process's lien cannot extend to any of the Debtors' other facilities or to assets unrelated to that specific project.

24. The Debtors have consulted with the Buyer with respect to the allocation of total sale consideration and the value of the Utility Facility. The Debtors and the Buyer expect to allocate approximately 85% of the total consideration to real property interests (the "**Real Property Consideration**"). After consulting with the Buyer, the Debtors understand that the Buyer would allocate approximately 87% to 92% of the Real Property Consideration to ground rights under the BLM leases and fee property with minerals, and approximately 0.5 to 1.0 % of the Real Property Consideration to the Utility Facility. Based on a net present value of the sale consideration (assuming a share price of $2.09 and discount rate of 7.0% to 15.0%), the Utility Facility would be would be valued at no more than approximately $117,000 to $250,300. Accordingly, Process's lien on the property cannot exceed $250,300 by operation of law.

**RESERVATION OF RIGHTS**

25. The Debtors reserve any and all additional grounds for objection, substantive or procedural, and reserve the right to amend this Objection. Nothing herein is (i) an admission as to validity, amount, or categorization of any claim, (ii) a waiver of any rights, or (iii) a promise to pay the Process claim. For the avoidance of doubt, the Debtors, Buyer, KHI, Nirma and the Prepetition Lender reserve all rights, remedies, claims and defenses regarding the valuation or appraisal of the purchased assets for any purpose other than this proceeding.

**NOTICE**

26. Notice of this Objection will be given to: (a) the U.S. Trustee; (b) the Committee; (c) counsel to the DIP Lender; and (d) all parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court sustain this Objection, reduce and limit Process's claim to its proper amount, and grant such other relief as is just and proper.

Dated: September 23, 2026
Wilmington, Delaware

*/s/ Laura Davis Jones*
**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
ljones@pszjlaw.com
joneill@pszjlaw.com
ecorma@pszjlaw.com

*Co-Counsel to Debtors and*
*Debtors in Possession*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Joseph O. Larkin (I.D. No. 4883)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com

\- and -

James J. Mazza, Jr. (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
320 S. Canal Street
Chicago, Illinois 60606
Telephone: (312) 407-0700
James.Mazza@skadden.com
Jennifer.Madden@skadden.com

\- and -

Destiny N. Almogue (admitted *pro hac vice*)
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Destiny.Almogue@skadden.com

*Co-Counsel to Debtors and*
*Debtors in Possession*