**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re*<br><br>SEARLES VALLEY MINERALS, INC., *et al.*,[1]<br><br>Debtors. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Chapter 11<br><br>Case No. 26-10966 (BLS)<br>(Jointly Administered)<br><br>**Hearing Date: Oct. 13, 2026 at 10:00 A.M. ET**<br>**Obj. Deadline: Oct. 7, 2026 at 4:00 P.M. ET**<br>**(Extended for U.S. Trustee)** |

**OBJECTION OF UNITED STATES TRUSTEE TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) GRANTING CONDITIONAL APPROVAL OF THE ADEQUACY OF DISCLOSURES IN THE COMBINED DISCLOSURE STATEMENT AND PLAN; \(II) SCHEDULING A COMBINED CONFIRMATION HEARING AND SETTING DEADLINES RELATED THERETO; (III) APPROVING SOLICITATION PACKAGES AND PROCEDURES; (IV) APPROVING THE FORMS OF BALLOTS; AND (V) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 ("U.S. Trustee"), through his undersigned counsel, hereby objects (the "Objection") to: (i) approval on an interim basis of the disclosures in the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Searles Valley Minerals, Inc. and Its Debtor Affiliates* [D.I. 425] ("Combined Plan and Disclosure Statement" or, separately in relevant part, the "Disclosure Statement" or the "Plan") and (ii) *Debtors' Motion for Entry of an Order (I) Granting Conditional Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

*Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* [D.I. 426] (the "Procedures Motion"),[2] and in support of this Objection respectfully states:

## PRELIMINARY STATEMENT

1. The Court should deny interim approval of the Combined Plan and Disclosure Statement for the following reasons:

> (a) The Combined Plan and Disclosure Statement fails to provide adequate disclosures to creditors because it does not currently attach a separate liquidation analysis.
>
> (b) The Plan is unconfirmable and should not be solicited using procedures that facilitate the plan's defects. The court must deny approval of a disclosure statement if the proposed related plan is not confirmable on its face. Here, the Combined Plan and Disclosure Statement is unconfirmable because it imposes non-consensual third-party releases on holders of claims who are unimpaired, holders of claims who vote to accept the plan, as well as holders of claims who abstain from voting on the Plan and do not opt out of the releases. Because the Plan's releases would be facilitated through the solicitation procedures, review of the scope and consensual nature of the releases is ripe at this stage.
>
> (c) At the confirmation stage, the U.S. Trustee anticipates objecting to certain Plan provisions which may render the Plan unconfirmable as drafted.
>
> (d) Assuming the above deficiencies are remedied, as set forth in further detail below, the proposed form of order, ballots and notices should be modified in several respects.

2. Accordingly, and for the reasons set forth in more detail herein, the U.S. Trustee respectfully requests that the Court enter an order or orders: (a) denying interim approval of the disclosures in the Combined Plan and Disclosure Statement; and (b) denying approval of the Procedures Motion.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Combined Plan and Disclosure Statement and the Procedures Motion, as applicable.

## JURISDICTION AND STANDING

3. This Court has jurisdiction to hear and determine the Procedures Motion and this Objection pursuant to: (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court of the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2).

4. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. The duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the Courts. *See In re Revco D.S., Inc.*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

5. The U.S. Trustee has standing to be heard on the Procedures Motion pursuant to 11 U.S.C. § 307. *See In re Columbia Gas Sys., Inc.*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

### The Chapter 11 Cases

6. On June 15, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7. The U.S. Trustee appointed an official committee of unsecured creditors (the "Committee") on June 26, 2026.

### The Procedures Motion

8. On September 29, 2026, the Debtors filed the Procedures Motion.

9. In the Procedures Motion, the Debtors request interim approval of the disclosures in the Combined Plan and Disclosure Statement and approval of procedures for the solicitation

and tabulation of votes on the Combined Plan and Disclosure Statement.

10. The Combined Plan and Disclosure Statement effectuates the liquidation and wind down of the Debtors and provides for the distributions from the GUC Liquidating Trust to unsecured creditors.

11. The Motion requests approval of the forms of Ballot for use in soliciting votes from Class 3 (Prepetition Loan Claims) and Class 4 (General Unsecured Claims). Procedures Mot. ¶ 32. The forms of ballot are attached to the Procedures Motion as Exhibit C. Only the Class 4 ballot contains an opt-out provision, which states as follows:[3]

> **Item 2. (Optional) Plan Releases (Do not complete if you have accepted the Plan).**
>
> Pursuant to the Plan, if you return a Ballot and vote to REJECT the Plan, but do not elect to opt out of the third party release provision contained in Section 16.2(a).2 of the Plan, you are automatically deemed to have agreed to give the releases in Section 16.2(a).2 of the Plan. However, you may check the box below to opt out of, and therefore not give, the releases in Section 16.2(a).2 of the Plan.
>
> ☐ I hereby ELECT TO OPT OUT of the release provision contained in Section 16.2(a).2 of the Plan.

12. The Motion also requests approval of (i) a Notice of Non-Voting Status for service on holders of Class 1 (Priority Claims) and Class 2 (Other Secured Claims) who are unimpaired under the Combined Plan and Disclosure Statement, and (ii) a Notice of Non-Voting Status for services on holders of Class 5 (Subordinated Claims) and Class 6 (Equity Interests) who are impaired and deemed to reject the Combined Plan and Disclosure Statement. Procedures Mot. ¶ 38. These forms of Notice of Non-Voting Status are attached to the Procedures Motion as Exhibits D and E. The forms of Notice of Non-Voting Status do not contain any conspicuous reference to

[3] As the Prepetition Secured Lender is specifically excluded from the definition of Releasing Parties at Plan Section 1.154, it appears that the Opt-Out Provision is not needed for the Class 3 ballot. Also, the Opt-Out Provision on the Class 4 ballot appears to inadvertently refer to Section 16.2(a).2 of the Plan in several places, instead of Section 10.7 of the Plan.

the Third-Party Release or its effect on unimpaired claimants other than repeating the exculpation, release, and injunction provisions verbatim from the Combined Plan and Disclosure Statement. Procedures. Mot. Ex. D.

**The Combined Plan and Disclosure Statement**

13. The Combined Plan and Disclosure Statement includes the following provisions relevant to this Objection.

*Abstaining Classes Provision*

14. The Combined Plan and Disclosure Statement provides the following with respect to abstaining classes: "If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class." Combined Plan and Discl. Stmt. § 8.8.

*Exculpation Provisions*

15. Section 10.5 of the Combined Plan and Disclosure Statement provides as follows ("Exculpation Provision"):

> Exculpation.
>
> To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each of the Exculpated Parties are hereby exculpated from any liability for, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, or loss arising on or after the Petition Date through the Effective Date in connection with or arising out of the filing or administration of the Chapter 11 Cases, the postpetition marketing and sale process, the postpetition purchase, sale, or rescission of the purchase or sale of any security or asset of the Debtors; the negotiation and pursuit of the Disclosure Statement, the Soda Ash Sale Transaction, the Going Concern Sale Transaction, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or Consummation of the Plan; the occurrence of the Effective Date; the DIP Credit Agreement; the post-Effective Date administration of the Plan or the property to be distributed under the Plan (including GUC Liquidating Trust Assets and the Wind-Down Trust Assets); the creation of the GUC Liquidating Trust or the Wind-Down Trust; or the transactions in furtherance of any of the foregoing; except for intentional fraud or willful misconduct, as determined by a Final Order, but in all respects such parties shall be

> entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth herein does not release any post-Effective Date obligation or liability of any Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

*Id.* § 10.5.

16. Section 1.74 of the Combined Plan and Disclosure Statement defines Exculpated Parties as follows:

> "Exculpated Parties" means the following, in their respective capacities as such: (a) the Debtors; (b) each current or former director or officer of any Debtor who served in such capacity at any time between the Petition Date and the Effective Date; (c) all Professionals retained by the Debtors or the Committee during the Chapter 11 Cases, (d) the Committee and each member of the Committee; (e) the Wind-Down Trust; (f) the Wind-Down Trustee; (g) the GUC Liquidating Trust; (h) the GUC Liquidating Trustee; and (i) the Related Parties for each Entity in the foregoing clauses (c) and (d) to the extent they are estate fiduciaries.

*Id.* § 1.74.

*Third Party Release Provisions*

17. Section 10.7 of the Combined Plan and Disclosure Statement provides as follows (the "Third-Party Release"):

> Release by Holders of Claims.
>
> **EFFECTIVE AS OF THE EFFECTIVE DATE--AND EXCEPT TO THE EXTENT A HOLDER OF A CLAIM MAKES AN OPT-OUT ELECTION--FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE OBLIGATIONS OF THE DEBTORS UNDER THIS COMBINED DISCLOSURE STATEMENT AND PLAN AND THE CONTRIBUTIONS OF THE RELEASED PARTIES TO FACILITATE AND IMPLEMENT THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE RELEASING PARTIES, AND EACH OF THE RELEASING PARTIES' SUCCESSORS AND ASSIGNS, SHALL BE DEEMED TO, COMPLETELY, CONCLUSIVELY, ABSOLUTELY,UNCONDITIONALLY, IRREVOCABLY AND FOREVER RELEASE, WAIVE, VOID AND EXTINGUISH THE RELEASED PARTIES**

**FROM ANY CLAIM, CLAIM, CAUSE OF ACTION, OBLIGATION, SUIT, JUDGMENT, DAMAGES, DEBT, RIGHT, REMEDY OR LIABILITY, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, MATURED OR UNMATURED, CONTINGENT OR FIXED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THE ESTATES, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) FOR ANY ACT, OMISSION OR OTHER OCCURRENCE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS AND/OR ANY AFFILIATE OF THE DEBTORS (INCLUDING, IN EITHER CASE, THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE ESTATES, IN-OR OUT-OF-COURT RESTRUCTURING EFFORTS OF THE DEBTORS OR ANY AFFILIATE THEREOF, INTERCOMPANY TRANSACTIONS, THE CHAPTER 11 CASES, THE DIP FACILITY, THE SALE TRANSACTIONS, THE NEGOTIATION AND FILING OF THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE FILING OF THE CHAPTER 11 CASES, THE SETTLEMENT OF CLAIMS OR RENEGOTIATION OF EXECUTORYCONTRACTS, THE TREATMENT OF CLAIMS AND INTERESTS UNDER THECOMBINED DISCLOSURE STATEMENT AND PLAN, THE PURSUIT OF CONFIRMATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN,THE CONSUMMATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN, OR THE ADMINISTRATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE COMBINED DISCLOSURE STATEMENT AND PLAN, AND THE NEGOTIATION, FORMULATION, OR PREPARATION OF ANY OF THE FOREGOING, OR ANY OTHER ACT OR OMISSION, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

**WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EFFECTIVE AS OF THE EFFECTIVE DATE, THE (X) THE DIP LENDER, (Y) THE PREPETITION SECURED LENDER, AND (Z) THE SPONSOR, AND EACH OF THEIR SUCCESSORS AND ASSIGNS, FOR GOOD AND VALUABLE CONSIDERATION, SHALL BE DEEMED TO, COMPLETELY, CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER RELEASE, WAIVE, VOID AND EXTINGUISH THE D&OS FROM ANY CLAIM, CAUSE OF ACTION, OBLIGATION, SUIT, JUDGMENT, DAMAGES, DEBT, RIGHT, REMEDY ORLIABILITY, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR**

**UNLIQUIDATED, MATURED OR UNMATURED, CONTINGENT OR FIXED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THE ESTATES, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) FOR ANY ACT, OMISSION OR OTHER OCCURRENCE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS AND/OR ANY AFFILIATE OF THE DEBTORS (INCLUDING, IN EITHER CASE, THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE ESTATES, IN-OR OUT-OF-COURT RESTRUCTURING EFFORTS OF THE DEBTORS OR ANY AFFILIATE THEREOF, INTERCOMPANY TRANSACTIONS, THE CHAPTER 11 CASES, THE DIP FACILITY, THE SALE TRANSACTIONS, THE NEGOTIATION AND FILING OF THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE FILING OF THE CHAPTER 11 CASES, THE SETTLEMENT OF CLAIMS OR RENEGOTIATION OF EXECUTORY CONTRACTS, THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE PURSUIT OF CONFIRMATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE CONSUMMATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN, OR THE ADMINISTRATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE COMBINED DISCLOSURE STATEMENT AND PLAN, AND THE NEGOTIATION, FORMULATION, OR PREPARATION OF ANY OF THE FOREGOING, OR ANY OTHER ACT OR OMISSION, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 10.7 DO NOT RELEASE: (A) THE RIGHT OF ANY HOLDER OF AN ALLOWED CLAIM TO THE TREATMENT PROVIDED FOR SUCH ALLOWED CLAIM IN THIS PLAN; (B) ANY CLAIMS AND LIENS OF THE DIP LENDER OR THE PREPETITION SECURED LENDER; OR (C) ANY POST-PLAN EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY SALE TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.**

*Id*. § 10.7.

18. The Combined Plan and Disclosure Statement provides the following definition for the term "Releasing Parties":

> "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) **Holders of Claims**; (b) the Committee and the members of the Committee in their capacity as members of the Committee; and (c) each Related Party of each Entity in clauses (a) through (c) for which such Entity is legally entitled to bind such Related Party to the releases contained herein; ***provided*****, that the following shall not be a Releasing Party:** (i) any Holder of a Claim or Interest in a Class that is deemed to reject this Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code and that is not entitled to vote to accept or reject this Combined Disclosure Statement and Plan; (ii) any Holder of a Claim that validly makes an Opt-Out Election; (iii) any Holder of a Claim that timely objects to such releases and does not withdraw such objection before Confirmation; (iv) any Holder of a Claim that timely votes to reject the Combined Disclosure Statement and Plan; (v) the DIP Lender; or (vi) the Prepetition Secured Lender.

*Id.* § 1.154 (emphasis added).

19. The Combined Plan and Disclosure Statement provides the following definition for the term "Released Parties:"

> "Released Partes" means, collectively, and in each case in its capacity as such: (a) the Debtors and their Estates; (b) the current and former employees, D&Os, agents, representatives, advisors, attorneys, investment bankers, and financial advisors of the Debtors, (c) the Wind-Down Debtors; (d) the Wind-Down Trustee; (e) the DIP Lender; (f) the Prepetition Secured Lender; (g) the Nirma Released Parties; (h) the GUC Liquidating Trust and the GUC Liquidating Trustee; (i) the Committee and each of the members of the Committee in its respective capacity as a member of the Committee; (j) all Professionals retained by the Committee and any of its members in the Chapter 11 Cases; and (k) each Related Party of each Entity in clauses (a) through (j).

*Id.* § 1.153.

20. Based on the definition of Releasing Parties in the Combined Plan and Disclosure Statement, the Debtors would impose third-party releases on holders of claims who (i) are deemed to accept the Plan, (ii) timely vote to accept the Plan and do not either (a) opt out of the third-party release or (b) timely object to the third-party release, or (iii) abstain from voting unless such claimants timely opt out of (or timely object to) the third-party release.

# ARGUMENT

## I. THE COMBINED PLAN AND DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION.

### A. Applicable Legal Standard

21. The disclosure statement requirement of Bankruptcy Code section 1125 is "crucial to the effective functioning of the federal bankruptcy system" and, consequently, "the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co*., 81 F.3d 355, 362 (3d Cir. 1996) (*citing Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.*), 848 F.2d 414, 417-18 (3d Cir. 1988)). "Adequate information" under section 1125 is "determined by the facts and circumstances of each case." *See Oneida*, 848 F.2d at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)). The "adequate information" requirement is designed to help creditors in their negotiations with debtors over the plan. *See Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94, 100 (3d Cir. 1988). Further, section 1129(a)(2) of the Bankruptcy Code conditions confirmation upon compliance with applicable Code provisions. The adequate disclosure requirement of section 1125 is one of those provisions. *See* 11 U.S.C. § 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

22. The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, *that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan*[.]

*See* 11 U.S.C. § 1125(a)(1) (emphasis added); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

23. To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives so that they can intelligently accept or reject the plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

24. Section 1125 of the Bankruptcy Code is geared towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors. *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (citing *Century Glove*, 860 F.2d at 100).

25. Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement if the information is accurate, and its inclusion is not misleading. *See id.* The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y.), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999). The disclosure

statement must inform the average creditor what it is going to get and when, and what contingencies there are that might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

**B. The Combined Plan and Disclosure Statement Lacks Adequate Information Regarding Amounts Creditors Would Receive in a Chapter 7 Liquidation**

26. The Debtors do not provide sufficient disclosures appropriate to the circumstances of these chapter 11 cases because they do not currently attach a separate liquidation analysis to the Combined Plan and Disclosure Statement.[4] As a result, the Combined Plan and Disclosure Statement does not contain adequate information to allow a creditor to make an informed judgment as to whether such creditor would receive at least as much as it would receive in a chapter 7 liquidation. The Combined Plan and Disclosure Statement does not provide any estimate of the cost if the Debtors' remaining assets were liquidated by a chapter 7 trustee, other than to state that the Debtors believe the costs would be higher in a chapter 7 scenario.

27. The application of the best interest test involves a hypothetical application of chapter 7 to a chapter 11 plan. See *In re Stone & Webster, Inc*., 286 B.R. 532 (Bankr. D. Del. 2002). If the plan fails the section 1129(a)(7) test, then the creditors are better off in a chapter 7 liquidation. Here, the creditors are essentially being asked to accept a general statement from the Debtors without any comparative analysis demonstrating what they would receive in a hypothetical chapter 7 liquidation.

28. Accordingly, the Combined Plan and Disclosure Statement fails to provide sufficient information for creditors and parties in interest to make an informed decision regarding whether to vote in favor of or to reject the Plan.

[4] The Combined Plan and Disclosure Statement references a Liquidation Analysis attached as Exhibit A, but it was not included with the filed version at D.I. 425.

## II. THE COURT SHOULD DENY APPROVAL OF THE COMBINED PLAN AND DISCLOSURE STATEMENT BECAUSE THE PLAN PROPOSES UNAUTHORIZED, NON-CONSENSUAL THIRD-PARTY RELEASES

### A. Introduction

29. The Supreme Court held in *Harrington v. Purdue Pharma L.P.* that bankruptcy courts cannot involuntarily alter relationships between non-debtors by imposing nonconsensual releases of, or injunctions barring, claims between them. 603 U.S. 204, 209, 227 (2024). The Court did not prohibit chapter 11 plans from memorializing consensual third-party releases, and it did not "express a view on what qualifies as a consensual release." *Id.* at 226.

30. A consensual third-party release is a separate agreement between non-debtors governed by nonbankruptcy law. As the Supreme Court recognized in *Purdue*, a release is a type of settlement agreement. *Purdue*, 603 U.S. at 223 (explaining that what the Sacklers sought was not "a traditional release" because "settlements are, by definition, consensual") (cleaned up). A bankruptcy court can acknowledge the parties' agreement to a third-party release, but the authority for a consensual release is the agreement itself, not the Bankruptcy Code. If a claim has been extinguished by virtue of the agreement of the parties, then the court is not using the forcible authority of the Bankruptcy Code or the bankruptcy court to extinguish the property right.

31. Here, there is no existing release agreement between non-debtors. Debtors instead seek approval of solicitation procedures that would use the power of the court to impose a third-party release on claimants without their affirmative and voluntary consent. This would impermissibly alter the relations between non-debtors because a valid release does not exist under nonbankruptcy law.

**B. State Contract Law Applies**

32. "[T]he basic federal rule in bankruptcy is that state law governs the substance of claims." *Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-451 (2007) (cleaned up); *accord Butner v. United States*, 440 U.S. 48 (1979). Thus, courts apply state law when the question is whether a debtor has entered a valid settlement agreement. *See Houston v. Holder (In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995) ("Federal bankruptcy law fails to address the validity of settlements and this gap should be filled by state law."); *De La Fuente v. Wells Fargo Bank, N.A. (In re De La Fuente)*, 409 B.R. 842, 845 (Bankr. S.D. Tex. 2009) ("Where the United States is not a party, it is well established that settlement agreements in pending bankruptcy cases are considered contract matters governed by state law.").

33. The rule is no different for third-party releases. They are separate agreements between non-debtors governed by state law. Unlike a bankruptcy discharge, which "is an involuntary release by operation of law," "[i]n the case of voluntary releases, the nondebtor is released from a debt, not by virtue of 11 U.S.C. § 1141(b), but because the *creditor agrees to do so*." *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 503, 507 (Bankr. D.N.J. 1997) (emphasis in original); *see Continental Airlines Corp. v. Air Line Pilots Assn., Int'l (In re Continental Airlines Corp.)*, 907 F.2d 1500, 1508 (5th Cir. 1990) (holding that for settlement provisions "unrelated to substantive provisions of the Bankruptcy Code," "the settlement itself is the source of the bankruptcy court's authority"). Thus, "the Bankruptcy Code has not altered the contractual obligations of third parties, the parties themselves have so agreed." *Arrowmill*, 211 B.R. at 507.

34. Because the Bankruptcy Code does not authorize the imposition of an involuntary release, *Purdue*, 603 U.S. at 209, 227, the release must be consensual under non-bankruptcy law. There is no Bankruptcy Code provision that preempts otherwise applicable state contract law

governing releases between non-debtors. *See, e.g., Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (plurality) ("For where neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal court to supply one, 'state law must govern because there can be no other law.'") (quoting *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965)); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Section 105(a), for example, "serves only to carry out authorities expressly conferred elsewhere in the code." *Purdue*, 603 U.S. at 216 n.2 (quotation marks omitted). But the Code does not confer any authority to impose a release of claims between non-debtors that would not be valid under state law. The Bankruptcy Code does not define a "consensual release." *See* 11 U.S.C. § 101. "There is no rule that specifies an 'opt out' mechanism or a 'deemed consent' mechanism" for third-party releases in chapter 11 plans. *In re Chassix Holdings, Inc.*, 533 B.R. 64, 78 (Bankr. S.D.N.Y. 2015). And no Code provision authorizes bankruptcy courts to deem a non-debtor to have consented to release claims against other non-debtors where such consent would not exist as a matter of state law.

35. Some courts have held that federal rather than state law applies to determine whether a third-party release is consensual. But because there is no applicable Code provision, whether a non-debtor has consented to release another non-debtor is not, as one court concluded, a "matter of federal bankruptcy law." *In re Spirit Airlines, Inc.*, No. 24-11988, 2025 WL 737068, at *18, *22 (Bankr. S.D.N.Y Mar. 7, 2025); *see In re Robertshaw US Holding Corp.*, 662 B.R. 300, 323 (Bankr. S.D. Tex. 2024) (relying on caselaw in the district rather than any provision of the Bankruptcy Code). Absent express authority in the Code, federal courts cannot simply make up their own rules for when parties have given up property rights by releasing claims. Bankruptcy

courts cannot "create substantive rights that are otherwise unavailable under applicable law," nor do they possess a "roving commission to do equity." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (quotation omitted). Indeed, nearly a hundred years ago, the Supreme Court rejected the notion that federal courts can displace state law as "an unconstitutional assumption of powers by the Courts of the United States which no lapse of time or respectable array of opinion should make us hesitate to correct." *Erie*, 304 U.S. at 79 (cleaned up); *accord Rodriquez v. FDIC*, 589 U.S. 132, 133 (2020) (holding state law applies to determine allocation of federal tax refund resulting from consolidated tax return). Courts thus may not invent their own rule for when parties may be "deemed" to have given up property rights by releasing claims.

36. Accordingly, state-law contract principles govern whether a third-party release is consensual. *See, e.g.*, *Patterson v. Mahwah Bergen Ret. Grp., Inc.,* 636 B.R. 641, 684-85 (E.D. Va. 2022) (describing bankruptcy courts in the District of New Jersey as "look[ing] to the principles of contract law rather than the bankruptcy court's confirmation authority to conclude that the validity of the releases requires affirmative consent"); *In re Smallhold, Inc.*, 665 B.R. 704, 720 (Bankr. D. Del. 2024) (recognizing that "some sort of affirmative expression of consent that would be sufficient as a matter of contract law" is required); *In re SunEdison, Inc.,* 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally apply contract principles in deciding whether a creditor consents to a third-party release."); *Arrowmill*, 211 B.R. at 506, 507 (explaining that a third-party release "is no different from any other settlement or contract" and thus "the validity of the release . . . hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order") (internal quotation marks omitted) (alterations in original). Because "'nothing in the bankruptcy code contemplates (much less authorizes it)' . . . any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance

and consent." *In re Tonawanda Coke Corp.*, 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024) (quoting *Purdue*, 603 U.S. at 223). And "any such consensual agreement would be governed by state law." *Id.*

37. Even if federal law applied, however, it would not lead to a different result. That is because "federal contract law is largely indistinguishable from general contract principles under state common law." *Young v. BP Expl. & Prod., Inc. (In re Deepwater Horizon)*, 786 F.3d 344, 354 (5th Cir 2015) (cleaned up); *see Deville v. United States*, 202 F. App'x 761, 763 n.3 (5th Cir. 2006) ("The federal law that governs whether a contract exists 'uses the core principles of the common law of contracts that are in force in most states.' . . . These core principles can be derived from the Restatements.") (quoting *Smith v. United States*, 328 F.3d 760, 767 n.8 (5th Cir. 2003)).

**C. Under State Law, Silence Is Not Acceptance**

38. Debtors bear the burden to prove that their plan is confirmable. *In re American Cap. Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012). They have not met this burden because they have failed to establish that the third-party release is consensual under state law, nor have they contended that consent exists under state law.

39. Under Delaware law, like in other states, an agreement to release claims—like any other contract—requires a manifestation of assent to that agreement.[5] *See, e.g.*, RESTATEMENT

[5] The Court may apply Delaware law because no party has suggested that any other state's law applies. Plan & Discl. Stmt. § 15.7 (with certain exceptions, Delaware law governs interpretation of the Plan); *see, e.g., Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits."). Nor has anyone suggested there would be a different outcome under the law of any other jurisdiction, so no choice of law is required. *See, e.g., In re Syntax-Brillian Corp.*, 573 F. App'x 154, 162 (3d Cir. 2014). Thus, the statement of one bankruptcy court that there is "no answer" to the choice of law question, *In re LaVie Care Cntrs., LLC*, No. 24-55507, 2024 WL 4988600, at *14 (Bankr. N.D. Ga. Dec. 5, 2024), is not true. Even if a choice of law had to be made, if such a choice is made difficult by the breadth of the third-party release that may be a reason not to approve the plan, but it is not an excuse to flout the court's obligation to make a choice of law if there is an actual conflict of laws. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985); *Cf. Patterson v. Mahwah Bergen Ret. Grp., Inc.*, 636

(SECOND) OF CONTRACTS § 17(1) ("[T]he formation of a contract requires a bargain in which there is manifestation of mutual assent to the exchange and a consideration."); *In re Hertz Corp.*, 120 F.4th 1181, 1192 (3d Cir. 2024) ("Contract law does not bind parties to promises they did not make."); *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018) ("Under Delaware law, overt manifestation of assent . . . controls the formation of a contract.") (cleaned up).

40. Thus, "[o]rdinarily[,] an offeror does not have power to cause the silence of the offeree to operate as acceptance."[6] RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981); *see Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) ("[T]he offeror cannot prescribe conditions so as to turn silence into acceptance."); *Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 433 n.3 (D. Del. 2012) ("Merely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting."); *Elfar v. Wilmington Trust, N.A.*, No. 20-0273, 2020 WL 7074609, at *2 n.3 (E.D. Cal. Dec. 3, 2020) ("The court is aware of no jurisdiction whose contract law construes silence as acceptance of an offer, as the general rule."), *adopted by* 2020 WL 1700778, at *1 (E.D. Cal. Feb. 11, 2021); *accord* 1 CORBIN ON CONTRACTS § 3.19 (2018); 4 WILLISTON ON CONTRACTS § 6:67 (4th ed.).

41. There are only very limited exceptions to the "general rule of contracts . . . that silence cannot manifest consent." *Patterson*, 636 B.R. at 686; *see, e.g.*, *McGurn v. Bell Microproducts, Inc.*, 284 F.3d 86, 90 (1st Cir. 2002) (recognizing "general rule" that "silence in

---

B.R. 641, 669 (E.D. Va. 2022).

[6] Delaware, like many states, follows the Restatement (Second) of Contracts § 69. *See, e.g.*, *Mack v. Mack*, No. 4240, 2015 WL 1607797, at *2 n.6 (Del. Ch. Mar. 31, 2015); *Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.*, 768 A.2d 983, 991 (Del. Super. Ct. 2000).

response to an offer . . . does not constitute acceptance of the offer"). "[T]he exceptional cases where silence is acceptance fall into two main classes: those where the offeree silently takes offered benefits, and those where one party relies on the other party's manifestation of intention that silence may operate as acceptance. Even in those cases the contract may be unenforceable under the Statute of Frauds." RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a.

42. But absent such extraordinary circumstances, "[t]he mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak." *Id.* And "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting." *Id.* § 69, cmt. c; *see Patterson*, 636 B.R. at 686 (explaining how contract law does not support deeming consent based upon a failure to opt out); *Jacques*, 886 F. Supp. 2d at 433 n.3.

### D. Merely Voting for a Plan Does Not Provide the Required Affirmative Consent

43. Under the proposed Plan, the non-debtor releases would bind all parties who vote to accept it. Because the Plan would impose non-debtor releases on these parties based on their silence, the releases are not consensual under state law and thus cannot be approved under *Purdue*.

44. Debtors mistakenly equate a vote for the Plan, which is governed by the Bankruptcy Code's provisions for adjusting relations between a debtor and its creditors, with acceptance of proposed third-party releases, which are contracts governed by state law dealing with relations between non-debtor parties. Those are distinct legal constructs involving distinct parties: the Plan disposes of a creditor's claims against the debtor, while a third-party release disposes of a non-debtor's right to sue other non-debtors. There is nothing in the Code that authorizes treating a vote to accept a chapter 11 plan as consent to a third-party release. "[A] creditor should not expect that [its] rights [against non-debtors] are even subject to being given away through the debtor's

bankruptcy." *Smallhold,* 665 B.R. at 721.

45. Debtors' conflation of voting for the Plan with acceptance of the third-party release violates black-letter contract law, which requires a manifestation of intent to be bound by the third-party release. *See supra* Part III. C. Voting to accept a plan does not manifest that intent. A chapter 11 plan allocates how the bankruptcy estate will pay claims and interests against the debtor. *See* 11 U.S.C. § 1123. If the plan is confirmed, only claims and interests against the debtor are discharged. 11 U.S.C. § 524(e). And it is "[b]ecause discharge affects a creditor's rights, [that] the Code generally requires a debtor to vie for the creditor's vote first." *Keystone Gas Gathering, L.L.C. v. Ad Hoc Comm. (In re Ultra Petroleum Corp.)*, 943 F.3d 758, 763 (5th Cir. 2019). The right to vote on a plan depends solely on how the plan treats claims and interests against the debtor. *See* 11 U.S.C. §§ 1124, 1126, 502, 501, 101(10); *Ultra Petroleum Corp.*, 943 F.3d at 763; 7 Collier on Bankruptcy ¶ 1126.02 (16th 2025). Claims and interests that are not impaired by the plan are deemed accept it. *See* 11 U.S.C. §§ 1124, 1126; *Ultra Petroleum Corp.*, 943 F.3d at 763. Because the purpose of a chapter 11 plan is to determine how claims and interests *against the debtor* will be treated, voting to accept a chapter 11 plan does not manifest an intent to be bound by the third-party release. *See In re Congoleum Corp.*, 362 B.R. 167, 194 (Bankr. D.N.J. 2007); *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 507 (Bankr. D.N.J. 1997); *In re Digital Impact, Inc.*, 223 B.R. 1, 14 (Bankr. N.D. Okla. 1998).

46. Because "a creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings," "it is not enough for a creditor . . . to simply vote 'yes' as to a plan." *Arrowmill*, 211 B.R. at 507 (quotation marks omitted); *accord Congoleum Corp.*, 362 B.R. at 194 ("[A] consensual release cannot be based solely on a vote in favor of a plan."); *Digital Impact, Inc.*, 223 B.R. at 14. Rather, a creditor must "unambiguously

manifest[] assent to the release of the nondebtor from liability on its debt." *Arrowmill*, 211 B.R. at 507. The "validity of th[at] release" necessarily "hinges upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order." *Id.* (citation and alterations omitted).

47. In addition to the lack of consent under state law, imposing a third-party release on everyone who votes to accept the plan may discourage creditors from voting. This would distort the voting process, which is intended to provide a valuable signal about the extent of creditor support, within each voting class, for the plan's treatment of creditors' allowed claims against the debtor. *Smallhold,* 665 B.R. 716.

48. Further, for those who believe the plan is the best way to maximize the return of their money from the debtor, requiring them to vote "no" on the Plan or to refrain from voting solely because of an objectionable non-debtor release—thus raising the possibility that the Plan may not be confirmed and they thus cannot receive the economic benefit under the Plan—would be penalizing them for exercising their right to vote in favor of the Plan. If an offeree is penalized unless an "offer" is accepted, that circumstance "preclud[es] an inference of assent." *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1230-31 (9th Cir. 2022).

**E. Failing to Opt Out Does Not Provide the Required Affirmative Consent**

49. In addition to imposing a non-debtor release on parties who vote to accept Plan, the Debtors' Plan imposes a third-party release on all holders of claims and interest who are deemed to accept the plan. In other words, Debtors purport to impose an otherwise non-existent duty to speak on claimants regarding the offer to release non-debtors, and their silence—the failure to opt out—is "deemed" consent. But under black-letter law that silence is not acceptance of the offer to release non-debtors. *See, e.g.*, *Patterson*, 636 B.R. at 688 ("Whether the Court labels these

'nonconsensual' or based on 'implied consent' matters not, because in either case there is a lack of sufficient affirmation of consent.").

50. A case from the Ninth Circuit illustrates the point. In *Norcia v. Samsung Telecom. Am., LLC*, 845 F.3d 1279, 1286 (9th Cir. 2017), cited with approval by the Third Circuit in *Noble v. Samsung Elec. Am., Inc.*, 682 F. App'x 113, 117-118 (3d Cir. 2017), and the Fifth Circuit in *Imperial Ind. Supply Co. v. Thomas*, 825 F. App'x 204, 207 (5th Cir. 2020), the court held that a failure to opt out did not constitute consent to an arbitration agreement. A consumer bought a Samsung phone and signed the Verizon Wireless Customer Agreement. *Norcia*, 845 F.3d at 1282. The phone came with a Samsung warranty brochure that contained an arbitration provision but gave purchasers the ability to opt out of it without affecting the warranty coverage. *Id*. The customer did not opt out. *Id*. When the customer later sued Samsung, Samsung argued that the arbitration provision applied. *Id*. at 1282-83.

51. The Ninth Circuit in *Norcia* held that the customer's failure to opt out did not constitute consent to arbitrate. The court applied the "general rule," applicable under California law, that "silence or inaction does not constitute acceptance of an offer." *Norcia*, 845 F.3d at 1284 (quotation marks omitted); *accord See Urban Green Techs., LLC v. Sustainable Strategies 2050 LLC, No. N136-12-115, 2017 WL 527565, at *3 (Del. Super. Ct. Feb. 8, 2017)*. The customer did not agree to arbitrate because he did not "sign the brochure or otherwise act in a manner that would show his intent to use his silence, or failure to opt out, as a means of accepting the arbitration agreement." *Norcia*, 845 F.3d at 1285 (quotation marks omitted). This was true, even though the customer *did* take action to accept the offered contract from Verizon Wireless. "Samsung's offer to arbitrate all disputes with [the customer] cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken

as consent, unless an exception to this general rule applies." *Id*. at 1286 (quotation marks and citation omitted).

52. The Ninth Circuit held that none of the exceptions to this rule applied. *Norcia*, 845 F.3d at 1284-85. There was no state law imposing a duty on the customer to act in response to the offer, the parties did not have a prior course of dealing that might impose such a duty, and the customer did not retain any benefits by failing to act given that the warranty applied whether or not he opted out of the arbitration provision. *Id*. at 1286.

53. Here, too, Debtors' creditors have not signed an agreement to release the non-debtor releasees nor acted in any other manner to suggest that their silence manifests an intention to accept an offer to release the non-debtors.

**i. Not voting and not opting out is not consent to release non-debtors**

54. Third-party releases cannot be imposed on those who do not vote and do not opt out. *See Smallhold,* 665 B.R. at 709; *SunEdison*, 576 B.R. at 458–61; *Chassix*, 533 B.R. at 81–82; *In re Washington Mut., Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011). 442 B.R. 314, 355 (Bankr. D. Del. 2011). This applies to both those creditors who simply abstain from voting and those who are not entitled to vote on the plan because they are deemed to accept. There is no basis to infer consent by those who do not vote and are taking no action with respect to the plan.

55. Even where there are conspicuous warnings that a party will be bound if they remain silent, that is not sufficient to recast a party's silence as consent to a third-party release. *SunEdison*, 576 B.R. at 458–61. Creditors have no legal duty to vote on a plan, much less to respond to an offer to release non-debtors included in a plan solicitation. *See, e.g.*, 11 U.S.C. § 1126(a) (providing that creditors "may" vote on a plan); *SunEdison,* 576 B.R. at 460–61 (recognizing that creditors have no duty to speak regarding a plan that would allow a court to infer

consent to third-party releases from silence). Consent thus cannot be inferred from their silence because "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting." RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. c (1981). Nor can it "impose on him any duty to speak." *Id.* § 69 cmt. a.

56. Further, "[w]hen the circumstances are equally consistent with either of two facts, neither fact may be inferred." *See In re Couture Hotel Corp.*, 554 B.R. 369, 383 n.80 (Bankr. N.D. Tex. 2016). Consent thus cannot be inferred here because parties who are solicited but do not vote may have failed to vote for reasons other than an intention to assent to the releases.[7] *SunEdison*, 576 B.R. at 461. This is especially true for those whose votes are not solicited at all—but who are instead sent a notice informing them they cannot vote, along with a form to opt out that they must return to avoid being bound by the third-party release.

57. "Charging all inactive creditors with full knowledge of the scope and implications of the proposed third-party releases, and implying a 'consent' to the third-party releases based on the creditors' inaction, is simply not realistic or fair and would stretch the meaning of 'consent' beyond the breaking point." *Chassix*, 533 B.R. at 81. "It is reasonable to require creditors to pay attention to what the debtor is doing in bankruptcy as it relates to the creditor's rights against the debtor. But as to the creditor's rights against third parties—which belong to the creditor and not the bankruptcy estate—a creditor should not expect that those rights are even subject to being given away through the debtor's bankruptcy." *Smallhold*, 665 B.R. at 721; *see id.* at 719-20 (discussing *Chassix*). "A party's receipt of a notice imposing an artificial opt-out requirement, the recipient's *possible* understanding of the meaning and ramifications of such notice, and the

[7] Here, the Combined Plan and Disclosure Statement and associated materials run in excess of 100 pages.

recipient's failure to opt-out simply do not qualify" as consent. *Emerge Energy Services, LP*, No. 19-11563, 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) (emphasis in original). "[B]asic contract principles" require affirmative assent, not inferences drawn from inaction that in fact may reflect only "[c]arelessness, inattentiveness, or mistake." *Id.*

58. Simply put, an "opt out mechanism is not sufficient to support the third-party releases . . . particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place)." *In re Washington Mut., Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011); *see Chassix*, 533 B.R. at 81–82.

**ii. Smallhold's conclusion that voting plus a failure to opt out equals consent to a non-debtor release is incorrect.**

59. One bankruptcy court has found that, in at least some circumstances, a failure to opt out constitutes consent when a claimant votes—either to accept or reject a plan—but not if they do not vote. *See Smallhold,* 665 B.R. at 723. Notably, though, *Smallhold* did not allow a mere vote in favor of the plan to constitute consent to a third-party release. Although stating it was applying "ordinary contract principles," *id*. at 724, the *Smallhold* decision did not correctly apply those principles to the question of when silence can constitute consent for those who vote on the plan.

60. As an initial matter, the *Smallhold* court correctly recognized that a failure to opt out by those who do not vote does not constitute consent. *See Smallhold*, 665 B.R. at 721-23. The *Smallhold* court elucidated the point with a hypothetical: a chapter 11 plan requiring that any creditor that did not "check an 'opt out' box on a ballot . . . make a $100 contribution to the college education fund for the children of the CEO of the debtor." *Id*. at 710. As the court observed, "no court would find that in these circumstances, a creditor that never returned a ballot could properly be subject to a legally enforceable obligation to make the $100 contribution." *Id*. None of the

cases that allow imposing a non-debtor release based on a failure to opt out "provides any limiting principle that would distinguish the third-party release from the college education fund plan." *Id*.

61. Contract law likewise does not support imputing consent to a third-party release based on a failure to opt-out by those who vote on the plan. Nevertheless, the *Smallhold* court incorrectly reasoned that because the act of voting on a debtor's plan is an "affirmative step" taken after notice of the third-party release, failing to opt out binds the voter to the release. *Smallhold,* 665 B.R. at 717, 723-724. But while voting is an "affirmative step" with respect to the debtor's plan, it is not a "*manifestation of intention* that silence may operate as acceptance" of a third-party release. RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981) (emphasis added).

62. "The mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction," RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a—in these cases, the federal right to vote on a chapter 11 plan. 11 U.S.C. § 1126(a). Nor does it "impose on him any duty to speak," RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a, such as by checking an opt out box. Voting on a plan while failing to opt out thus cannot be equated with affirmative conduct manifesting consent to the non-debtor release. Just like the hypothetical creditors in *Smallhold* could not be forced to contribute $100 to a college fund to benefit the debtor's CEO's children merely because they failed to return a ballot with an "opt out" box, *Smallhold*, 665 B.R. at 710, creditors who cast such a ballot should not be forced to make such a contribution merely because they failed to check that "opt out" box.[8]

[8] The *Spirit* court concluded that "creditors entitled to vote who returned a ballot but did not check the opt-out box on that ballot also clearly manifested their consent to the Third-Party Releases." *In re Spirit Airlines, Inc.*, No. 24-11988, 2025 WL 737068, at *21 (Bankr. S.D.N.Y Mar. 7, 2025). That is wrong because an unsolicited offer of a third-party release cannot impose a duty to speak or impair the freedom to vote on a plan. Further, the *Spirit* court erred in assuming that the failure to check an opt-out box on a ballot necessarily shows that a creditor "affirmatively chose" not to check the box. *Id*. at *21. "When the circumstances are equally consistent with either of two facts, neither fact may be inferred." *See In re Couture Hotel Corp.*, 554 B.R. 369, 383 n.80 (Bankr. N.D. Tex. 2016). And a failure to check an opt-out

63. State law affords no basis to conclude that consent to release *third-party* claims (which are governed by *nonbankruptcy* law) can properly be inferred from a party's failure to check an opt-out box on a ballot expressing its views about the proposed treatment of its claims against the *debtor* (governed by *bankruptcy* law). *See supra* Part II.C. As a result, the "general proposition" that *Smallhold* recognized continues to apply: "creditors must *affirmatively express consent to the release* in order to be bound by it." *Id.* at 717 (emphasis added).

64. Notably, the Ninth and Second Circuit cases cited by *Smallhold* do not support its conclusion that the act of voting on a chapter 11 plan while remaining silent regarding the non-debtor release constitutes consent. *Smallhold,* 665 B.R. at 724 n.60 (citing *Berman v. Freedom Financial Network*, 30 F.4th 849, 856 (9th Cir. 2022); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). Those cases emphasize that notice to the offeree is a prerequisite to consent "*regardless of apparent manifestation of his consent*." *Meyer*, 868 F.3d at 74 (internal quotation marks omitted; emphasis added). But while notice of a contractual term is necessary for consent, notice alone is not sufficient.[9] *See, e.g., Meyer*, 868 F.3d at 74; *Norcia*, 845 F.3d at 1284; RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a. There must also be a manifestation of an intent to accept the offer. *See, e.g., Berman*, 30 F.4th at 85; *Norcia*, 845 F.3d at 1284; RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a. For the reasons discussed above, the failure to opt out of the third-party release is not such a manifestation of consent.

**F. Opt Outs Cannot Be Imposed Based on a Procedural Default Theory**

65. Applicable state contract law cannot be disregarded on a procedural default theory,

box is equally consistent with inadvertence or lack of understanding.

[9] For this reason, cases that rely solely on notice to conclude that there is consent to a third-party release are likewise off base. *See, e.g., In re Spirit Airlines, Inc.*, No. 24-11988, 2025 WL 737068, at *9-*10, *12 (Bankr. S.D.N.Y Mar. 7, 2025) (collecting cases).

applied by some courts, under which creditors who remain silent are held to have forfeited their rights against non-debtors if they received notice of the non-debtor release but failed to object, just as they would forfeit their right to object to a debtor's plan if they failed timely to do so.[10] *See, e.g., In re Arsenal Intermediate Holdings, LLC*, No. 23-10097, 2023 WL 2655592, at *5-*6 (Bankr. D. Del. Mar. 27, 2023), *abrogated by Smallhold, Inc.*, 665 B.R. at 716; *In re Mallinckrodt PLC*, 639 B.R. 837, 879-80 (Bankr. D. Del. 2022); *In re DBSD North America, Inc.*, 419 B.R. 179, 218-19 (Bankr. S.D.N.Y. 2009), *aff'd on other grounds*, 2010 WL 1223109 (S.D.N.Y. Mar. 24, 2010), *rev'd in part and aff'd in part*, 634 F.3d 79 (2d Cir. 2011). These courts reasoned that so long as the creditors received notice of a proposed non-debtor release and were informed of the consequences if they did not opt out or object to that release, there is no unfairness or deprivation of due process from binding them to the release. *Cf. Smallhold*, 665 B.R. at 708 (describing this reasoning as having treated a mere "failure to opt out" as "allow[ing] entry of the third-party release to be entered by default").

66. A fuller explanation of this theory was articulated prior to the *Purdue* ruling in *In re Mallinckrodt PLC*, 639 B.R. 837, 879-80 (Bankr. D. Del. 2022). The *Mallinckrodt* court stated that "the notion that an individual or entity is in some instances deemed to consent to something by their failure to act is one that is utilized throughout the judicial system." *Id*. "When a party to a lawsuit is served with a complaint or a motion, they need to file an answer or otherwise respond, or a judgment is automatically entered against them." *Id*. at 879. The court reasoned that "[t]here is no reason why this principle should not be applied in the same manner to properly noticed releases within a plan of reorganization." *Id*.

---

[10] Although the court in *Spirit* disclaimed relying on a default theory, *Spirit Airlines,* 2025 WL 737068, at *17, it based its holding on the same rationale: that a party may be deemed to consent based on notice and a failure to respond, *id*. at *9-*10, *12-*13.

67. This is wrong. First, when a party in litigation is bound to a result based on a failure to timely respond, it is not because the defaulting party has *consented* to an adverse ruling. Rather, "failure to make timely assertion of [a] right before a tribunal having jurisdiction to determine it" results in *forfeiture* of the right. *United States v. Olano*, 507 U.S. 725, 731 (1993). Forfeiture, unlike waiver, is not an intentional relinquishment of a known right. *Id*. at 733. *Cf. Smallhold*, 665 B.R. at 718 ("In this context, the word 'consent' is used in a shorthand, and somewhat imprecise, way. It may be more accurate to say that the counterparty forfeits its objection on account of its default."). Forfeiture principles thus do not show consent.

68. Second, there is no basis to hold that parties have forfeited claims against non-debtor third parties based on their silence in response to a debtor's chapter 11 plan. No one has submitted the released claims for adjudication by the bankruptcy court. *See Olano*, 507 U.S. at 731.

69. And under *Purdue*, imposition of a nonconsensual non-debtor release is not available relief through a debtor's chapter 11 plan. *See Purdue,* 603 U.S. at 215-227 & n.1; *see also Smallhold*, 2665 B.R. at 709 ("After *Purdue Pharma*, a third-party release is no longer an ordinary plan provision that can properly be entered by 'default' in the absence of an objection."). It is therefore "no longer appropriate to require creditors to object or else be subject to (or be deemed to 'consent' to) such a third-party release." *Smallhold*, 665 B.R. at 719.

70. The Supreme Court's *Purdue* decision rejected a fundamental premise of the procedural default theory—that a bankruptcy proceeding legally could lead to the destruction of creditors' rights against non-debtors, so they had best pay attention lest they risk losing those rights. *Smallhold*, 665 B.R. at 708-09; *see id*. at 708 ("The possibility that a plan might be confirmed that provided a nonconsensual release was sufficient to impose on the creditor the duty

to speak up if it objected to what the debtor was proposing."). The courts that relied on this procedural-default theory had reasoned that non-debtor releases were no different from any other plan provision to which creditors had to object or risk forfeiture of their rights, because pre-*Purdue* a chapter 11 plan could permissibly include nonconsensual, non-debtor releases under certain circumstances. *Id*. at 717-18. As the *Smallhold* court explained, however, under the default theory, a plan's opt-out provision functions not as a method to secure consent, but rather serves as "an administrative shortcut to relieve those creditors of the burden of having to file a formal plan objection." *Id*. at 709; *see id*. at 718 ("In this context, the word 'consent' is used in a shorthand, and somewhat imprecise, way. It may be more accurate to say that the counterparty forfeits its objection on account of its default.").

71. But "[u]nder established principles," courts may enter relief against a party who procedurally defaults by not responding "only after satisfying themselves that the relief the plaintiff seeks is relief that is at least potentially available to the plaintiff" in contested litigation. *Id*. at *2; *see id*. at *13 ("[T]he obligation of a party served with pleadings to appear and protect its rights is limited to those circumstances in which it would be appropriate for a court to enter a default judgment if a litigant failed to do so."); *see Thomson v. Wooster*, 114 U.S. 104, 113 (1885) (holding a decree *pro confesso* may only be entered if it "is proper to be decreed"); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) ("Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered.") (cleaned up).

72. "[After *Purdue*], that is no longer the case in the context of a third-party release." *Smallhold*, 665 B.R. at 722. A third-party release is not "an ordinary plan provision that can properly be entered by 'default' in the absence of an objection." *Id*. "It is unlike the listed cure

amount where one can properly impose on a creditor the duty to object, and in the absence of such an objection bind the creditor to the judgment." *Id*. That is because, unlike for a creditor's claims against the debtor, the Bankruptcy Code affords no affirmative authority to order a release of claims against third parties. Because imposition of a nonconsensual non-debtor release is not relief available through a debtor's chapter 11 plan, it is not "appropriate to require creditors to object or else be subject to (or be deemed to 'consent' to) such a third-party release." *Id*. at 719-20.

73. Because *Purdue* establishes that a *non*consensual third-party release is "*per se* unlawful," it follows that a third-party release "is not the kind of provision that would be imposed on a creditor on account of that creditor's default." *Id*. at 709. And besides the now-discredited default theory, there is "no other justification for treating the failure to 'opt-out' as 'consent' to the release [that] can withstand analytic scrutiny." *Id*. Because a chapter 11 plan cannot permissibly impose non-debtor releases without the affirmative consent of the releasing parties, a release cannot be imposed based on their mere failure to respond regarding the non-debtor release.[11] Rather, an "*affirmative expression of consent* that would be sufficient as a matter of contract law" is required. *Id*. at 720 (emphasis added).

## III. OBJECTIONS TO SPECIFIC PLAN PROVISIONS

74. Without waiving the right to raise further issues at confirmation, the U.S. Trustee hereby gives notice of several problematic provisions that could ultimately make the Combined Plan and Disclosure Statement unconfirmable.

[11] For those reasons, the *Smallhold* court expressly disapproved of its prior decision in *Arsenal*, which had relied on the procedural default theory. *See id.* at 716 ("On the central question presented, the Court concludes that its decision in *Arsenal* does not survive *Purdue Pharma*.").

**A. The Plan Deems Non-Voting Classes to be Accepting Classes**

75. Section 1129(a)(8) of the Bankruptcy Code provides that a plan can only be confirmed if "[w]ith respect to each class of claims or interests . . . such class has accepted the plan." 11 U.S.C. § 1129(a)(8). Section 1126 governs acceptance of a plan by a creditor, providing that the holder of a claim "may accept or reject a plan" and Rule 3018(c) requires such acceptances or rejections to be in writing. 11 U.S.C. §1126; Fed. R. Bankr. Pro. 3018(c). Section 1126 also enumerates who may vote on a plan and the numerosity and debt thresholds that must be met for a class to accept a plan for purposes of § 1129(a)(8).

76. Only a few courts have held that a non-voting class should be deemed to have accepted a plan. *See, e.g., In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir. 1988); *In re Cypresswood Land Partners I*, 409 B.R. 396, 430 (Bankr. S.D. TX 2009). The majority of courts that have considered the issue have held that a non-vote cannot be deemed to be an acceptance. *See, e.g.*, *In re M. Long Arabians*, 103 B.R. 211 (B.A.P. 9th Cir. 1989); *see also In re Vita Corp.*, 358 B.R. 749, 751-52 (Bankr. C.D. Ill. 2007), *aff'd*, 380 B.R. 525, 528 (C.D. Ill. 2008); *In re 7th Street and Beardsley P'ship*, 181 B.R. 426 (Bankr. D. Ariz. 1994); *In re Townco Realty, Inc.*, 18 C.B.C.2d 13, 81 B.R. 707 (Bankr. S.D. Fla. 1987) (section 1126(c) and Bankruptcy Rule 3018 require express acceptance).

77. In both *In re Franco's Paving, LLC* and *In re Hot'z Power Wash, Inc.*, two recent Subchapter V cases from the Southern District of Texas, the bankruptcy court held that non-voting classes should simply not be counted for purposes of § 1126 and plan confirmation. Discussing the issue, the *Hot'z* court concluded that "that the result of a § 1126(c) computation for a nonvoting class is absurd, unsolvable, and was not contemplated by Congress." *See In re Hot'z Power Wash, Inc.*, Case No. 23-30749 (TXSB November 7, 2023)(quoting *In re Franco's Paving, LLC*, 2023

Bankr. LEXIS 2505 at *8 ("a nonvoting class renders the mathematical calculation required by § 1126(c) as impossible to calculate. . . . the indeterminate result obtained by dividing zero by zero was absurd and could not have been intended by Congress.")). This, not presumed acceptance, is the more appropriate treatment of non-voting classes.

78. Here, Section 8.8 of the Combined Plan and Disclosure Statement provides that, in the event that there are no votes cast with respect to a class entitled to vote on the Plan, that class is deemed to have accepted the Plan. But a "non-vote" does not satisfy the plain language of § 1126—it is neither an acceptance nor a rejection. Therefore, a class that does not vote cannot be deemed to accept the plan. Unless this provision is removed, the Combined Plan and Disclosure Statement may not be confirmed.

**B. The Exculpation Provision is Overbroad**

79. The definition of Exculpated Parties contained in section 1.74 of the Combined Plan and Disclosure Statement is overbroad because it is not limited to estate fiduciaries who served during the chapter 11 cases. The definition should be revised to remove the Wind-Down Trust, the Wind-Down Trustee, the GUC Liquidating Trust, and the GUC Liquidating Trustee. The Exculpation Provision is also overbroad in that it is not limited to conduct occurring between the Petition Date but instead extends to causes of action or loss arising between the Petition Date and the Effective Date.

80. To the extent exculpation is permissible beyond the provisions of section 1125(e), this Circuit has only approved exculpations that are limited to estate fiduciaries. In *In re PWS Holding Corp*., the Third Circuit considered whether an official committee of unsecured creditors could be exculpated and held that 11 U.S.C. § 1103(c) implies both a fiduciary duty and a limited grant of immunity to members of the unsecured creditors' committee. 228 F.3d 224, 246 (3d Cir.

2000). This Court has repeatedly interpreted PWS Holding as requiring a party's exculpation to be based upon its status as an estate fiduciary. *See In re Mallinckrodt PLC, 639 B.R. 837, 882 (Bankr. D. Del. 2022); In re Indianapolis Downs, LLC*, 486 B.R. 286, 304 (Bankr. D. Del. 2013); *In re Tribune Co*., 464 B.R. 126, 189 (Bankr. D. Del. 2011); *In re Washington Mut., Inc*., 442 B.R. 314, 350-51 (Bankr. D. Del. 2011); *In re PTL Holdings LLC*, No. 11-12676 (BLS), 2011 WL 5509031, at *12 (Bankr. D. Del. Nov. 10, 2011).

81. Because the Wind-Down Trustee and GUC Liquidating Trustee will not even be in existence until the plan effective date it is improper to include them in the definition of Exculpated Parties. *See In re Mallinckrodt*, 639 B.R. at 883 (holding that inclusion of a distribution agent in exculpation clause improper because entity is not in existence until after plan effective date).

82. Further, the Exculpation Provision extends to "any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, or loss arising on or after the Petition Date through the Effective Date." Combined Plan and Discl. Stmt. § 10.5. This language is overbroad and should be revised to apply to conduct occurring between the Petition Date and the Effective Date. In *In re Mallinckrodt PLC*, 639 B.R. 837 (Bank. D. Del. 2022), this court held that exculpation "only extends to conduct that occurs between the Petition Date and the effective date," and ordered the debtors to strike contrary language from the exculpation provision. *Id*. at 883.

83. Because the definition of Exculpated Parties is not limited to fiduciaries who have served during the chapter 11 cases, the Exculpation Provision is overbroad and the Plan cannot be confirmed as written. This overbreadth is reflected in both the inclusion of the parties not yet in existence, as well as the temporal scope which potentially extends back in time to the prepetition period.

### C. Payment of Statutory Fees Pursuant to 28 U.S.C. § 1930(a)

84. The Combined Plan and Disclosure Statement provides for the payment of statutory fees at Sec. 6.1, but the language needs to be revised to clearly provide for the payment of statutory fees and filing of post-confirmation reports until entry of an order closing or converting the cases. In addition, Sec. 6.1 of the Combined Plan and Disclosure Statement improperly limits the payment of post-Effective Date quarterly fees by providing that distributions from the Wind-Down Truste and distributions from the GUC Trust Liquidating Trust, respectively, shall not constitute "disbursements" made by or on behalf of the Debtors under 28 U.S.C. § 1930(a)(6).

## IV. MISCELLANEOUS OBJECTIONS TO SOLICITATION PROCEDURES ORDER

85. The U.S. Trustee has the following additional objections concerning the proposed form of order and exhibits attached to the Procedures Motion:

- A deadline to object to claims for voting purposes should be added to the solicitation procedures timeline. This deadline should be October 23, 2026, which is two weeks before the proposed November 7, 2026 deadline to file 3018 motions to allow claims for voting purposes.

- The chart with the confirmation schedule on page 5 of the Motion should be included in the proposed order for ease of reference by parties in interest.

- The forms of ballot and non-voting status should be revised to include conspicuous language that advises claimants that the Third-Party Release provision should be carefully reviewed as it may affect their rights against non-Debtor third parties.

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court enter an order or orders: (i) denying interim approval of the disclosures in the Combined Plan and Disclosure

Statement; (ii) denying the Procedures Motion; and (iii) granting such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

**By:** *__/s/ Jane M. Leamy*
Jane M. Leamy (DE Bar #4113)
Trial Attorney
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
Jane.M.Leamy@usdoj.gov

Dated: October 7, 2026