**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | Related Docket Nos. 425, 426, 459 |

**DEBTORS' REPLY TO THE UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) GRANTING CONDITIONAL APPROVAL OF THE ADEQUACY OF DISCLOSURES IN THE COMBINED DISCLOSURE STATEMENT AND PLAN; (II) SCHEDULING A COMBINED CONFIRMATION HEARING AND SETTING DEADLINES RELATED THERETO; (III) APPROVING SOLICITATION PACKAGES AND PROCEDURES; (IV) APPROVING THE FORMS OF BALLOTS; AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession Searles Valley Minerals Inc. ("**SVM**") and its debtor affiliates (collectively, the "**Debtors**") file this reply (the "**Reply**") to the *Objection of United States Trustee to Debtors' Motion for Entry of an Order (I) Granting Conditional Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* [Docket No. 459] (the "**Objection**") to the *Debtors' Motion for Entry of an Order (I) Granting Conditional Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV)

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

*Approving the Forms of Ballots; and (V) Granting Related Relief* [Docket No. 426] (the "**Motion**"), which seeks, among other things, interim approval of the disclosures in the *Combined* Disclosure Statement *and Chapter 11 Plan of Liquidation of Searles Valley Minerals, Inc. and Its Debtor Affiliates* [Docket No. 425] (as may be amended, modified, or supplemented, the "**Combined Disclosure Statement and Plan**" or, separately in relevant part, the "**Disclosure Statement**" or the "**Plan**").

## PRELIMINARY STATEMENT

1. The Combined Disclosure Statement and Plan[2] is the product of hard-fought, arm's-length negotiations among the Debtors, the DIP Lender, the Sponsor, and the official committee of unsecured creditors (the "**Committee**"). The Debtors' Chapter 11 Cases were commenced to pursue a value-maximizing sale transaction for the Debtors' assets and complete an orderly wind-down. In connection with the Going Concern Sale Transaction, the Debtors, the DIP Lender, the Sponsor, and the Committee reached a settlement (the "**Committee Settlement**") relating to, among other things, the release of the Sponsor under the Going Concern Purchase Agreement, the Committee's right to investigate and challenge the liens and claims of the DIP Lender and Prepetition Secured Lender, and the funding of the GUC Liquidating Trust for the benefit of Holders of General Unsecured Claims. The terms of the Committee Settlement are memorialized in the Combined Disclosure Statement and Plan, which provides the means for distributing the available proceeds of the Debtors' sale transactions to the Debtors' creditors and represents the best available outcome for the Debtors and their constituents.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion or the Combined Disclosure Statement and Plan, as applicable.

2. No creditors objected to the Disclosure Statement. The Debtors received one objection to the interim approval of the Disclosure Statement from the Office of the United States Trustee (the "**U.S. Trustee**"). The Debtors have worked to resolve the issues raised by the U.S. Trustee in the Objection, and such resolutions are reflected in the amended Combined Disclosure Statement and Plan and in the solicitation materials that will be filed in advance of the October 15, 2026 hearing on the interim approval of the Disclosure Statement (the "**Hearing**"). To that end, the Debtors (a) will file the Liquidation Analysis in advance of the Hearing; (b) added an Opt-Out Form for Class 1 and Class 2 Holders of Claims in deemed accepting Classes, added an opt-out election to the Class 3 Ballot, and added further conspicuous language to the Ballots and notices advising claimants of the effect of the third-party release provision in Section 10.7 of the Plan, which will be filed in advance of the Hearing (the "**Third-Party Release**"); and (c) made certain other revisions to the Combined Disclosure Statement and Plan and the solicitation materials, which will be filed in advance of the Hearing.

3. However, one main issue remains: the U.S. Trustee's objection to the Third-Party Release. This remaining objection is a confirmation-related issue that is not yet ripe for this Court's consideration and is not an impediment to conditional approval of the Disclosure Statement. Even if this issue were ripe, the Objection should be overruled on the merits. The Third-Party Release is consensual and complies with the well-established law of this Court, this District, and this Circuit.

4. The Third-Party Release proposed in the Plan is only applicable to Holders who (a) are either eligible to vote or are deemed to accept the Plan and (b) also elect not to opt out of the Third-Party Release. Any Holder that votes to accept the Plan or is deemed to accept the Plan is free to also make an election on the ballot to opt out of the release. Holders that vote to reject

the Plan, are deemed to reject the Plan, or that timely object to the Third-Party Release are not providing a release.

5. This Court, along with other courts in this District and throughout the Third Circuit, has found that plans with substantially the same release as the Third-Party Release are consensual and confirmed those plans. Notwithstanding the clear precedent established by courts in this District (including this Court), the U.S. Trustee attempts to redefine "consent" by requiring each creditor to opt into a release. That is not consistent with precedent in the Third Circuit, and the Court is not bound by any precedent to adopt this position.

6. The Disclosure Statement and the Plan, including, in particular, the narrowly crafted consensual Third-Party Release, comply with applicable law. Accordingly, the Objection should be overruled.

## ARGUMENT

### I. THE OBJECTION TO THE THIRD-PARTY RELEASE IS A PREMATURE CONFIRMATION OBJECTION AND SHOULD BE OVERRULED

7. The Objection raises premature substantive challenges to the Third-Party Release, arguing that the Plan is allegedly unconfirmable because the Third-Party Release is non-consensual and runs afoul of *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) ("***Purdue***"). *See* Objection ¶¶ 1(b), 29–73. This Objection fundamentally misconstrues the limited scope of this Court's review at the conditional disclosure statement stage.

8. In the Third Circuit, a court may reach confirmation issues at the disclosure statement stage only where "(1) confirmation defects [cannot] be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 154–55 (3d Cir. 2012) (internal quotation and citation omitted). Because this is an

extreme measure, it "must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing." *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 332–33 (Bankr. E.D. Pa. 1987); *see also In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (absent a plan that on its face cannot be confirmed, "confirmation issues are left for later consideration"), and is reserved for plans that display "fatal facial deficiencies or the stark absence of good faith," *In re Phoenix Petrol. Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001).

9. This Court has previously held that the opt out mechanics of a third party release are not yet ripe when considering approval of the disclosure statement. *See In re Lugano Diamonds & Jewelry Inc.*, No. 25-12055-BLS (Bankr. D. Del. July 7, 2026) [Docket No. 661, ¶ 24] (conditionally approving the disclosure statement and solicitation procedures that expressly preserved "parties' rights to object to the Opt-Out structure on the basis that the Third-Party Release is non-consensual . . . for the Combined Confirmation Hearing."); *see also In re Molecular Templates, Inc.,* No. 25-10739-BLS (Bankr. D. Del. May 27, 2025) [Docket No. 122, ¶ 2] (approving the disclosure statement and solicitation procedures on an interim basis while expressly preserving "[a]ny objection to the adequacy of information . . . at the Confirmation Hearing"); Hr'g Tr. 36:9–11, *In re Molecular Templates, Inc.,* No. 25-10739-BLS (Bankr. D. Del. May 21, 2025) [Docket No. 126] (holding that the U.S. Trustee's objection to the debtors' proposed third-party release "is a confirmation issue"); *id.* at 19:16–17 (U.S. Trustee acknowledging that an objection to a third-party release "is, ultimately, a confirmation issue").

10. Other courts in this District have likewise routinely rejected substantially similar (if not identical) objections from the U.S. Trustee when considering approval of a debtor's disclosure statement. *See, e.g., In re Salt House, Inc. (f/k/a Food52, Inc.)*, No. 25-12277-LSS (Bankr. D. Del. Mar. 27, 2026) [Docket No. 301, ¶ 2] (finding the debtors' disclosure statement to

contain adequate information for solicitation purposes over the U.S. Trustee's objection to third-party opt-out releases); Hr'g Tr. 15:13–16, *In re Salt House, Inc. (f/k/a Food52, Inc.)*, No. 25-12277-LSS (Bankr. D. Del. Mar. 27, 2026) [Docket No. 308] (holding that the U.S. Trustee's objection to the debtors' proposed third-party release "[is a] confirmation issue"); *In re Vill. Roadshow Ent. Grp. USA, Inc.*, No. 25-10475-TMH (Bankr. D. Del. Feb. 20, 2026) [Docket No. 1376, ¶ 11–12] (approving the debtors' disclosure statement for solicitation purposes and preserving objections in connection with releases and exculpatory provisions until the confirmation objection deadline); Hr'g Tr. 18:8–17, *In re Vill. Roadshow Ent. Grp. USA, Inc.*, No. 25-10475-TMH (Bankr. D. Del. Feb. 20, 2026) [Docket No. 1428] (same).

11. The U.S. Trustee's contention that the Third-Party Release is "ripe at this stage" because it "would be facilitated through the solicitation procedures," Objection ¶ 1(b), fails both prongs of *American Capital Equipment*. Whether the Third-Party Release binds any Holder depends entirely on that Holder's response to solicitation: Holders that vote to reject, make an Opt-Out Election, or timely object are not Releasing Parties. Combined Disclosure Statement and Plan § 1.154. The defect the U.S. Trustee alleges is thus one that turns on voting and opt-out results, and the material facts—who the Releasing Parties are and how each responded—will not exist until after the Voting Deadline. Indeed, the U.S. Trustee's own merits arguments depend on inferences from particular creditor conduct. *See* Objection ¶¶ 56, 62 n.8.

12. The U.S. Trustee's own Objection confirms the point. The U.S. Trustee states that "[a]t the confirmation stage, [it] anticipates objecting to certain Plan provisions which may render the Plan unconfirmable as drafted." *See* Objection ¶ 1(c). By the U.S. Trustee's own framing, provisions that may be revised before or at confirmation are not facial defects, and the Debtors have already revised several of them. The Third-Party Release here is no different.

13. The issues raised by the U.S. Trustee regarding the Third-Party Release—including its scope, what constitutes consent, and its ultimate enforceability—are quintessential confirmation issues that should be reserved for the confirmation hearing, are not ripe for consideration by the Court at this time, and should be overruled.

## II. THE THIRD-PARTY RELEASES ARE CONSENSUAL AND COMPLY WITH APPLICABLE LAW

14. To the extent that the Court determines to rule on the merits of the Objection to the Third-Party Release at this stage, the Objection should be overruled. The Third-Party Releases are consensual and the Objection misinterprets the law, including in this Court and this District specifically.

15. Pursuant to the Plan, "Releasing Parties" that are providing a release pursuant to the Third-Party Release are defined as follows:

> "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) Holders of Claims; (b) the Committee and the members of the Committee in their capacity as members of the Committee; and (c) each Related Party of each Entity in clauses (a) through (c) for which such Entity is legally entitled to bind such Related Party to the releases contained herein; *provided*, that the following shall not be a Releasing Party: (i) any Holder of a Claim or Interest in a Class that is deemed to reject this Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code and that is not entitled to vote to accept or reject this Combined Disclosure Statement and Plan; (ii) any Holder of a Claim that validly makes an Opt-Out Election; (iii) any Holder of a Claim that timely objects to such releases and does not withdraw such objection before Confirmation; (iv) any Holder of a Claim that timely votes to reject the Combined Disclosure Statement and Plan; (v) the DIP Lender; or (vi) the Prepetition Secured Lender.

*See* Combined Disclosure Statement and Plan § 1.155.

16. Accordingly, the Third-Party Release proposed in the Plan is only applicable to Holders of Claims who (a) are either eligible to vote or are deemed to accept the Plan and *also* (b) elect not to opt out of the Third-Party Release. Any Holder that votes to accept the Plan or is

deemed to accept the Plan is free to also make an election on the ballot to opt out of the release. Holders that vote to reject the Plan, are deemed to reject the plan, or timely object to the Third-Party Release are not providing a release.

17. Moreover, the Debtors' proposed Ballots prominently and conspicuously display in bold, capital letters that acceptance of the Plan is also an acceptance of the Third-Party Release, and if a creditor votes to reject the Plan, it will not be subject to the Third-Party Release.[3] Accordingly, creditors who vote in favor of the Plan will be fully aware of the consequences of that decision and have an opportunity to make an election to opt out of the Third-Party Release.

18. The existing, longstanding precedent established by this Court and courts within the Third Circuit and elsewhere is to approve third-party releases where creditors have the opportunity to opt out. These courts have consistently found that opt-out release provisions are consensual, both pre-*Purdue* and post-*Purdue*. In *Indianapolis Downs, LLC*, this Court approved third-party releases binding unimpaired creditors deemed to accept the plan and impaired creditors who abstained or voted to reject without opting out, explaining:

> In this case, the third party releases in question bind certain unimpaired creditors who are deemed to accept the Plan: these creditors are being paid in full and have therefore received consideration for the releases. As for those impaired creditors who abstained from voting on the Plan, or who voted to reject the Plan and did not otherwise opt out of the releases, the record reflects these parties were provided detailed instructions on how to opt out, and had the opportunity to do so by marking their ballots. Under these circumstances, the Third-Party Releases may be properly characterized as consensual and will be approved.

*See In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013).

[3] In accordance with the U.S. Trustee's comments, the Debtors will file a revised proposed solicitation package in advance of the Hearing, which addresses certain comments of the U.S. Trustee, including (a) providing an Opt-Out Form for Holders of Claims in Class 1 and Class 2, and (b) adding additional conspicuous language advising claimants that the Third-Party Release should be carefully reviewed as it may affect their rights against non-Debtor third parties.

19. *Purdue* did not change the law governing consensual third-party releases, including *Indianapolis Downs*. In *Purdue*, the Supreme Court expressly declined to opine on consensual third-party releases and only addressed whether a bankruptcy court may approve a plan of reorganization with a release and injunction that extinguishes claims against non-debtor third parties *without the consent of affected claimants*, holding that it may not. *Purdue*, 603 U.S. at 227–30. The Supreme Court expressly stated: "Nothing in what we have said should be construed to call into question consensual third-party releases offered in connection with a bankruptcy reorganization plan." *Id.* at 226–27. The Court likewise did not "express a view on what qualifies as a consensual release." *Id*. at 226.

20. By its express terms, nothing in *Purdue* disturbs the Court's existing jurisprudence with respect to consensual releases and, given the Supreme Court's guidance on this point, the Court is fully entitled to rely on existing precedent.[4] This Court has since confirmed its view that *Purdue* does not "materially affect[] the landscape for what is a consensual release," because the majority "was scrupulous in saying we make no comment on consensual releases and what constitutes consent." Hr'g Tr. 40, *Molecular Templates* [Docket No. 188].

[4] The Objection separately contends that opt-outs cannot be sustained on a "procedural default theory," under which a creditor's failure to object or opt out after receiving notice of a release is treated like a litigant's default for failure to timely respond, and argues that this analogy is flawed and was foreclosed by *Purdue*. *Objection* ¶¶ 65-73. The Third-Party Release here does not rest on a default theory. Every Holder receives either a Ballot or a Notice of Non-Voting Status and an Opt-Out Form (apart from Holders who are deemed to reject and therefore automatically not subject to the Third-Party Release), each of which conspicuously discloses the Third-Party Release and provides a simple mechanism to opt out, and the Holder's knowing decision not to exercise that right in the face of clear notice is what renders the release consensual. *See Wellness Int'l Network*, *Ltd. v. Sharif*, 575 U.S. 665, 683–85 (2015) (consent may be implied from a party's knowing and voluntary conduct); *In re Trib. Media Co.*, 902 F.3d 384, 395–96 (3d Cir. 2018). This Court has approved that structure for voting Holders, abstaining Holders, and Holders in Classes deemed to accept the plan, both before and after *Purdue*. *See Indianapolis Downs*, 486 B.R. at 304–06; Hr'g Tr. 37–38, *Molecular Templates* [Docket No. 188]; Confirmation Order at 12–13, *Lugano* [Docket No. 914]; *infra* ¶ 23. As this Court explained in *Molecular Templates*, parties "that choose not to respond have been fully informed and there are consequences to their decision not to respond." Hr'g Tr. 38, *Molecular Templates* [Docket No. 188].

21. Nevertheless, in the two years since *Purdue*, the U.S. Trustee has filed countless objections asserting the same or similar arguments to those raised in the Objection, which have been overruled by courts in this jurisdiction, including this Court, time after time. Here, the Objection relies principally on decisions from other circuits and on the Restatement of Contracts, and asks this Court to disregard Judge Goldblatt's decision in *Smallhold* and the consistent body of post-*Purdue* rulings in this District. *See* Objection ¶¶ 39–42, 50–52, 59–64. Courts in this District, including this Court, have repeatedly rejected that invitation. *See, e.g.,* Confirmation Order at 12–13, *In re Lugano Diamonds & Jewelry Inc.*, No. 25-12055-BLS (Bankr. D. Del. Sept. 24, 2026) [Docket No. 914] (discussed *infra*); Hr'g Tr. 36–41, *Molecular Templates* [Docket No. 188] (overruling the U.S. Trustee's objection and confirming a plan whose third-party release bound, among others, holders of claims deemed to accept the plan that did not return a release opt-out form and holders that abstained from voting and did not opt out); *see also In re Vill. Roadshow Ent. Grp. USA, Inc.,* No. 25-10475-TMH (Bankr. D. Del. Apr. 17, 2026) [Docket No. 1565] (confirming a plan wherein the third-party release applied to creditors who returned a ballot and did not make an opt-out election).

22. In *Molecular Templates,* this Court overruled the U.S. Trustee's objection and confirmed a plan whose third-party release bound (a) holders that voted to accept and did not opt out, (b) holders deemed to accept the plan that did not return an opt-out form, (c) holders entitled to vote that abstained and did not opt out, and (d) holders that voted to reject the plan and did not opt out. *See* Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Revised Combined Disclosure Statement and Joint Chapter 11 Plan ¶ 2, *In re Molecular Templates*, *Inc.*, No. 25-10739-BLS (Bankr. D. Del. July 7, 2025) [Docket No. 186]. At the confirmation hearing, the Court found the opt-out structure

"was sufficient in terms of process and mechanics, consistent with what has been approved in this jurisdiction before," Hr'g Tr. 36–39, *Molecular Templates* (Bankr. D. Del. July 1, 2025) [Docket No. 188] (confirmation hearing transcript), and explained:

> [the] principles of due process and . . . fundamental fairness are met when a plan with release provisions is properly noticed, communicated to parties, a meaningful and non-burdensome opportunity to opt in or opt out or to express your decision is afforded to those parties. Those parties that choose not to respond have been fully informed and there are consequences to their decision not to respond. And among those consequences are that the releases procured by virtue of an opt out structure are indeed effective.

Hr'g Tr. 37:24–38:9, *Molecular Templates* [Docket No. 188]; *see also id.* at 37:18–21 ("I have observed before that consistent with my ruling in *Indianapolis Downs*, I am satisfied that the opt out structure is when properly implemented, is indeed effective to provide for releases under a confirmed chapter 11 plan."); *In re Molecular Templates, Inc.,* No. 25-10739-BLS (Bankr. D. Del. July 2, 2025) [Docket No. 177, ¶ 2] (overruling U.S. Trustee's objection and confirming plan with opt-out third-party release).

23. Most notably, this Court confirmed the plan in *In re Lugano Diamonds & Jewelry Inc.*, which contained an opt-out release substantially the same as the Third-Party Release and which provided for Holders in unimpaired Classes deemed to accept the plan to be provided opt-out forms, and for non-voting holders who received notice of their non-voting status and an opt-out from. There, the U.S. Trustee objected that the plan would impose third-party releases on, among others, "creditors who are unimpaired or unclassified under the Plan and do not opt-out" and creditors "who are eligible to vote but do not opt out." *Objection of the United States Trustee to Approval of Solicitation Procedures* ¶ 35, *Lugano* [Docket No. 638]. At confirmation, the Court found that the third-party release "was consensually provided after due notice, an opportunity for a hearing, and remains subject to any Creditor's right to opt out of the Third-Party Release by making an Opt-Out Election," and that the release provisions "were conspicuous and emphasized

with boldface type in the Plan, the Disclosure Statement, the Ballots, the Notice of Non-Voting Status, and the Confirmation Hearing Notice." Confirmation Order at 12–13, *Lugano* [Docket No. 914]; *see also id*. at 21 (overruling all remaining unresolved objections on the merits). Here, the Debtors' proposed procedures for obtaining consent to releases mirror those approved in *Lugano*, including the Opt-Out Form provided to Holders in Classes 1 and 2. Other courts in this District have likewise found opt-out releases consensual as to Holders that returned a Ballot and did not opt out. *See* Hr'g Tr. 40:20–41:3, *In re Amerifirst Fin., Inc.*, No. 23-11240-TMH (Bankr. D. Del. Jan. 13, 2026) [Docket No. 1225] (rejecting and overruling the U.S. Trustee's arguments (similar to those raised here) noting that those voting creditors "who returned ballots and did not check an opt-out box . . . clearly had the opportunity and did, in fact, review the [third-party release] materials. And short of an opt-in, which I'm not prepared to require, I can't think of anything else that would evidence affirmative consent more than having had the opportunity to [opt-out] and actually having returned a ballot and elected not to tick the box to opt out of the releases").

24. Likewise, in *Indianapolis Downs*, this Court approved third-party releases that bound "unimpaired pursuant to the Plan and therefore deemed to accept" holders, as well as holders that abstained from voting and did not opt out. 486 B.R. at 304–06. The Third-Party Release, which binds fewer parties than the releases in *Molecular Templates* and *Indianapolis Downs* because it excludes Holders that vote to reject the Plan, falls comfortably within this precedent.

25. The Third-Party Release is accordingly consensual, proper, and consistent with the law in the Third Circuit, and the Objection should be overruled.

## III. THE DEBTORS HAVE ADDRESSED THE U.S. TRUSTEE'S REMAINING DISCLOSURE AND SOLICITATION COMMENTS

26. While the balance of the Objection relates to, in large part, confirmation matters that do not bear on the adequacy of the Disclosure Statement, the Debtors have addressed the majority of the Objection's remaining issues through revisions to the Combined Disclosure Statement and Plan and the solicitation materials, which will be filed in advance of the Hearing.

(a) *First*, in response to the U.S. Trustee's contention that the Disclosure Statement lacks adequate information absent a liquidation analysis, *see* Objection ¶¶ 26–28 & n.4, the Debtors will file the Liquidation Analysis in advance of the Hearing.

(b) *Second*, the exculpation provision now applies only to liability "arising between the Petition Date and the Effective Date," in response to the U.S. Trustee's temporal-scope concern, *see* Combined Disclosure Statement and Plan § 10.5 to be filed in advance of the Hearing; Objection ¶ 82, and the definition of Exculpated Parties no longer includes the Wind-Down Trust, the Wind-Down Trustee, the GUC Liquidating Trust, or the GUC Liquidating Trustee, *see* Combined Disclosure Statement and Plan § 1.74 to be filed in advance of the Hearing; Objection ¶¶ 79, 81.

(c) *Third*, Section 6.1 of the Plan has been revised to provide for the payment of statutory fees and the filing of post-confirmation reports until entry of an order closing the Chapter 11 Cases. *See* Combined Disclosure Statement and Plan § 6.1 to be filed in advance of the Hearing; Objection ¶ 84. To the extent the U.S. Trustee maintains that Section 6.1 improperly limits post-Effective Date quarterly fees, the Debtors disagree. U.S. Trustee Fees will be paid on the funds transferred from the Debtors' Estates into the GUC Liquidating Trust and the Wind-Down Trust; assessing additional fees on the same funds when they are later distributed from those trusts would result in a double payment of U.S. Trustee Fees. In any event, that dispute concerns the Plan's treatment of statutory fees and is properly addressed at confirmation, and not at this stage.

(d) *Fourth*, the revised Proposed Order and solicitation materials address the U.S. Trustee's solicitation comments. Specifically, they (i) set a deadline to object to Claims for voting purposes two weeks prior to the deadline to file Rule 3018 motions, *see* Proposed Order ¶ 5 and the Proposed Solicitation and Confirmation Timeline in the Combined Disclosure Statement and Plan to be filed in advance of the Hearing; (ii) include a chart of the confirmation schedule and related deadlines, *see* Proposed Order ¶ 5; (iii) add to each Ballot, Notice of Non-Voting Status, and the Opt-Out Form conspicuous language advising Holders that the Third-Party Release should be carefully reviewed because it may affect their rights, *see* Proposed Order Exhibits A–E; (iv) add an opt-out election to the Class 3 Ballot, *see*

Proposed Order Exhibit B; and (v) make certain other revisions. *See* Objection ¶ 85 & n.3.

27. Apart from the Objection to the Third-Party Releases, one final issue remains: the U.S. Trustee's objection to the Plan's provision that, in the event that there are no votes cast with respect to a class entitled to vote on the Plan, that class is deemed to accept the Plan. *See* Plan, § 8.8. This is a confirmation matter that does not bear on the adequacy of the Disclosure Statement and is therefore not ripe for consideration. *See In re Am. Cap. Equip., LLC*, 688 F.3d 145, 154–55 (3d Cir. 2012); *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 332–33 (Bankr. E.D. Pa. 1987); *In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989); *In re Phoenix Petrol. Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001). In any event, the language of section 10.7 of the Plan is consistent with similar language confirmed by this Court. *See In re Molecular Templates, Inc.,* No. 25-10739-BLS (Bankr. D. Del. July 7, 2025) [Docket No. 186-1, section 10.7]. On October 11, 2026, the Debtors reached out to the U.S. Trustee's office to identify its position regarding this matter. At the time of this filing, the Debtors have not yet received a response from the U.S. Trustee on this issue. The Debtors acknowledge that their outreach to the U.S. Trustee was sent over the weekend and that today is a federal holiday.

28. Accordingly, the U.S. Trustee's objections, apart from its objection to the Third-Party Release, have either been addressed or, in the alternative, are not ripe for this Court to consider. Thus, the Objection should be overruled.

**[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]**

**CONCLUSION**

For the foregoing reasons, the Court should overrule the Objection in its entirety and approve the Disclosure Statement.

Dated: Wilmington, Delaware
October 12, 2026

*/s/ Laura Davis Jones*
**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: 302-652-4100
ljones@pszjlaw.com
joneill@pszjlaw.com
ecorma@pszjlaw.com

*Co-Counsel to Debtors and Debtors in Possession*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
James J. Mazza, Jr. (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
Claire Stephens (admitted *pro hac vice*)
320 S. Canal Street
Chicago, Illinois 60606
Telephone: (312) 407-0700
James.Mazza@skadden.com
Jennifer.Madden@skadden.com
Claire.Stephens@skadden.com

*Co-Counsel to Debtors and Debtors in Possession*