**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| Debtors. | ) | (Jointly Administered)<br>Hearing Date: November 3, 2026 at 1:30 p.m. (ET)<br>Obj. Deadline: November 2, 2026 at 4:00 p.m. (ET) |

# FIRST INTERIM FEE APPLICATION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, AS BANKRUPTCY CO-COUNSEL FOR THE DEBTORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF ALL ACTUAL AND NECESSARY EXPENSES FOR THE PERIOD JUNE 15, 2026 THROUGH AUGUST 31, 2026

| | |
|---|---|
| Name of Applicant: | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention: | July 13, 2026, *nunc pro tunc* to June 15, 2026 |
| Interim Period for which compensation and reimbursement is sought: | June 15, 2026 through August 31, 2026 |
| Interim Amount of compensation sought as actual, reasonable and necessary: | $6,285,924.50 |
| Interim Amount of reimbursement sought as actual, reasonable and necessary: | $45,226.34 |

This is a: ___ monthly __x__ interim ___ final application

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

If this is not the first application filed, disclose the following for each prior application:

| DATE FILED | PERIOD COVERED | REQUESTED FEES/EXPENSES | APPROVED FEES/EXPENSES (INTERIM BASIS) |
|---|---|---|---|
| 07/31/26 D.I. 256 | 6/15/26-6/30/26 | $1,079,043.00/$10,944.26 | $863,234.40/$10,944.26 |
| 09/04/26 D.I. 358 | 7/1/26-7/31/26 | $2,509,079.00/$19,439.23 | $2,007,263.20/$19,439.23 |
| 09/24/26 D.I. 414 | 8/1/26-8/31/26 | $2,703,978.50/$14,842.85 | $TBD[2] |

[2] The objection deadline for Skadden's Third Monthly Fee Application is October 15, 2026.

**INTERIM COMPENSATION BY PROFESSIONAL**

**SEARLES VALLEY MINERALS INC., ET AL**
**(CASE NO 26-10966 (BLS))**

**JUNE 15, 2026 THROUGH AUGUST 31, 2026**

| NAME | DEPARTMENT | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|---|---|---|---|---|---|
| **PARTNER** | | | | | |
| Abby Davis | Litigation | 2013 | $ 2,625.00 | 104.40 | $ 274,050.00 |
| Shalom D. Huber | Executive Compensation | 2012 | $ 2,625.00 | 24.40 | $ 64,050.00 |
| Dohyun Kim | Mergers and Acquisitions | 2011 | $ 2,625.00 | 160.30 | $ 420,787.50 |
| Joseph O. Larkin | Litigation | 2006 | $ 2,625.00 | 2.00 | $ 5,250.00 |
| Danielle Li | Finance | 2006 | $ 2,625.00 | 6.60 | $ 17,325.00 |
| Peter Luneau | Mass Tort | 2004 | $ 2,625.00 | 2.40 | $ 6,300.00 |
| Liz Malone | Environmental | 2002 | $ 2,175.00 | 20.10 | $ 43,717.50 |
| James J. Mazza, Jr. | Corporate Restructuring | 2001 | $ 1,313.00 | 24.00 | $ 31,500.00 |
| | | | $ 2,625.00 | 423.10 | $ 1,110,637.50 |
| Joseph M. Penko | Executive Compensation | 2006 | $ 2,625.00 | 2.30 | $ 6,037.50 |
| Ryne C. Posey | Labor | 2014 | $ 2,430.00 | 10.90 | $ 26,487.00 |
| Vered Rabia | Real Estate | 1998 | $ 2,625.00 | 2.70 | $ 7,087.50 |
| Joseph M. Rancour | Antitrust/ Competition | 2010 | $ 2,625.00 | 2.60 | $ 6,825.00 |
| Resa K. Schlossberg | IP & Technology | 2005 | $ 2,625.00 | 1.30 | $ 3,412.50 |
| Paul Schockett | Tax | 2006 | $ 2,625.00 | 6.00 | $ 15,750.00 |
| Richard H. West | Mergers and Acquisitions | 2000 | $ 2,625.00 | 0.40 | $ 1,050.00 |
| Mingda Zhao | Corporate | 2007 | $ 2,625.00 | 2.00 | $ 5,250.00 |
| **TOTAL PARTNER** | | | | **795.50** | **$ 2,045,517.00** |
| **COUNSEL** | | | | | |
| John J. Battaglia | Executive Compensation | 1995 | $ 2,060.00 | 1.50 | $ 3,090.00 |
| Thomas R. Gentry | Antitrust/ Competition | 2019 | $ 1,950.00 | 2.00 | $ 3,900.00 |
| Jason M. Liberi | Corporate Restructuring | 2003 | $ 1,030.00 | 5.30 | $ 5,459.00 |
| | | | $ 2,060.00 | 156.60 | $ 322,596.00 |
| Jennifer Madden | Corporate Restructuring | 2010 | $ 975.00 | 18.80 | $ 18,330.00 |
| | | | $ 1,950.00 | 411.20 | $ 801,840.00 |
| Kabir Phaguda | Corporate | 2017 | $ 1,950.00 | 34.50 | $ 67,275.00 |
| Jaynah J. Ross-Mendoza | Labor | 2020 | $ 1,950.00 | 0.20 | $ 390.00 |
| Bryan Uelk | Corporate Restructuring | 2014 | $ 1,030.00 | 8.30 | $ 8,549.00 |
| | | | $ 2,060.00 | 14.10 | $ 29,046.00 |
| Jaime Wamble | Labor | 2018 | $ 1,950.00 | 33.00 | $ 64,350.00 |
| Matthew Weston | Executive Compensation | 2015 | $ 1,950.00 | 0.40 | $ 780.00 |
| **TOTAL COUNSEL** | | | | **685.90** | **$ 1,325,605.00** |
| **ASSOCIATE/LAW CLERK** | | | | | |
| Destiny N. Almogue | Corporate Restructuring | 2017 | $ 1,825.00 | 481.60 | $ 878,920.00 |

| | | | | | |
|---|---|---|---|---|---|
| Alexis K. Banks | Corporate Restructuring | 2023 | $ 1,525.00 | 338.70 | $ 516,517.50 |
| Allison D. Clark | Tax | 2022 | $ 1,525.00 | 11.20 | $ 17,080.00 |
| Tate Curington | Litigation | 2022 | $ 1,525.00 | 0.70 | $ 1,067.50 |
| Ryan Dunn | Consumer Class Action Litigation | 2025 | $ 1,175.00 | 0.80 | $ 940.00 |
| Brianna Flores | Labor | 2019 | $ 1,780.00 | 0.30 | $ 534.00 |
| Joel Francia | Corporate Restructuring | 2025 | $ 588.00 | 17.60 | $ 10,340.00 |
| | | | $ 1,175.00 | 271.20 | $ 318,660.00 |
| James Hebish | Real Estate | 2026 | $ 975.00 | 1.20 | $ 1,170.00 |
| Mike Jones | Corporate Restructuring | 2011 | $ 1,825.00 | 16.40 | $ 29,930.00 |
| Nicole M. Kastelic* | IP & Technology | N/A | $ 795.00 | 17.20 | $ 13,674.00 |
| Kimberly A. LaMaina | Corporate Restructuring | 2001 | $ 1,825.00 | 18.10 | $ 33,032.50 |
| Mandy Li | Mergers and Acquisitions | 2023 | $ 1,525.00 | 8.60 | $ 13,115.00 |
| Yan Li | Finance | 2022 | $ 1,635.00 | 31.30 | $ 51,175.50 |
| Eitan Y. Morris | Executive Compensation | 2021 | $ 1,700.00 | 1.30 | $ 2,210.00 |
| Rebekah J. Mott | Consumer Class Action Litigation | 2012 | $ 1,825.00 | 0.40 | $ 730.00 |
| Hunter B. Newell | Litigation | 2021 | $ 1,635.00 | 71.10 | $ 116,248.50 |
| Lee A. Place | Litigation | 2025 | $ 1,175.00 | 53.40 | $ 62,745.00 |
| Alexis Sandoval | Corporate Restructuring | 2025 | $ 1,175.00 | 13.60 | $ 15,980.00 |
| Zev Schecter | Executive Compensation | 2026 | $ 975.00 | 43.70 | $ 42,607.50 |
| Zev Schecter* | Executive Compensation | N/A | $ 795.00 | 1.60 | $ 1,272.00 |
| Samuel R. Schraer | IP & Technology | 2022 | $ 1,635.00 | 17.00 | $ 27,795.00 |
| Sharon Shaoulian | Labor | 2019 | $ 1,700.00 | 10.00 | $ 17,000.00 |
| Stephanie M. Swift | Labor | 2024 | $ 1,175.00 | 19.30 | $ 22,677.50 |
| Alyvia L. Todd | Litigation | 2025 | $ 1,175.00 | 62.30 | $ 73,202.50 |
| Andrew H. Townsend | Litigation | 2024 | $ 1,395.00 | 55.90 | $ 77,980.50 |
| Tyler Viljaste | Corporate Restructuring | 2026 | $ 975.00 | 100.10 | $ 97,597.50 |
| Daniel Villalba | Corporate Restructuring | 2019 | $ 1,700.00 | 18.70 | $ 31,790.00 |
| Wenyue Zhu | Mergers and Acquisitions | 2025 | $ 1,175.00 | 255.70 | $ 300,447.50 |
| **TOTAL ASSOCIATE/LAW CLERK** | | | | **1,939.00** | **$ 2,776,439.50** |
| | | | | | |
| **SUMMER/WINTER ASSOCIATE** | | | | | |
| Jackson Stephens | | N/A | $ 260.00 | 1.30 | $ 338.00 |
| **TOTAL SUMMER/WINTER ASSOCIATE** | | | | **1.30** | **$ 338.00** |
| | | | | | |
| **TRIAL CONSULTANT** | | | | | |
| Todd J. Frank | Trial Consultant | N/A | $ 840.00 | 37.40 | $ 31,416.00 |
| **TOTAL TRIAL CONSULTANT** | | | | **37.40** | **$ 31,416.00** |
| | | | | | |
| **CLIENT SPECIALIST** | | | | | |
| Eric M. Patry | Legal Technology | N/A | $ 840.00 | 11.10 | $ 9,324.00 |
| **TOTAL CLIENT SPECIALIST** | | | | **11.10** | **$ 9,324.00** |
| | | | | | |
| **PARAPROFESSIONALS** | | | | | |
| Abanti Ahmed | Real Estate | N/A | $ 395.00 | 1.50 | $ 592.50 |
| Wendy Cathers | Litigation | N/A | $ 695.00 | 5.90 | $ 4,100.50 |
| Christopher M. Heaney | Corporate Restructuring | N/A | $ 695.00 | 36.30 | $ 25,228.50 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Ava Morey | Litigation | N/A | $ | 395.00 | 5.50 | $ | 2,172.50 |
| Kayla Pham | IP/IT Transactions | N/A | $ | 395.00 | 4.00 | $ | 1,580.00 |
| Rachel Redman | Litigation | N/A | $ | 695.00 | 3.20 | $ | 2,224.00 |
| Monique L. Ribando | IP/IT Transactions | N/A | $ | 840.00 | 6.50 | $ | 5,460.00 |
| Anni Shewmake | Litigation | N/A | $ | 395.00 | 10.30 | $ | 4,068.50 |
| John Beaulieu | Professional Support | N/A | $ | 610.00 | 1.10 | $ | 671.00 |
| Kwok T. Chiu | Legal Technology | N/A | $ | 450.00 | 1.20 | $ | 540.00 |
| Phillip Clayton | Legal Technology | N/A | $ | 550.00 | 3.20 | $ | 1,760.00 |
| Maureen A. Cleary | Library | N/A | $ | 695.00 | 3.40 | $ | 2,363.00 |
| Stacey P. Delacruz | Legal Technology | N/A | $ | 550.00 | 1.00 | $ | 550.00 |
| Richard Gallagher | Professional Support | N/A | $ | 610.00 | 4.50 | $ | 2,745.00 |
| David B. Gautschy | Professional Support | N/A | $ | 610.00 | 5.40 | $ | 3,294.00 |
| Jennifer Hoddinott | Operations Group | N/A | $ | 610.00 | 1.40 | $ | 854.00 |
| C. James Jahn | Professional Support | N/A | $ | 610.00 | 5.50 | $ | 3,355.00 |
| Jessie LeMar | Library | N/A | $ | 695.00 | 1.10 | $ | 764.50 |
| Alex Neustein | Legal Technology | N/A | $ | 695.00 | 36.70 | $ | 25,506.50 |
| Carrie E. Port | Library | N/A | $ | 695.00 | 1.20 | $ | 834.00 |
| Sandy X. Qiu | Library | N/A | $ | 695.00 | 4.30 | $ | 2,988.50 |
| Tara Quintuna | Legal Technology | N/A | $ | 395.00 | 4.80 | $ | 1,896.00 |
| Gregory Sargeant | Library | N/A | $ | 695.00 | 2.00 | $ | 1,390.00 |
| Debra A. Shore | Document Processing | N/A | $ | 450.00 | 1.20 | $ | 540.00 |
| Jacqueline D. Steele | Library | N/A | $ | 695.00 | 1.00 | $ | 695.00 |
| Caitlyn Stewart | Library | N/A | $ | 695.00 | 1.60 | $ | 1,112.00 |
| **TOTAL PARAPROFESSIONALS** | | | | | **153.80** | **$** | **97,285.00** |
| **GRAND TOTAL** | | | | | **3,624.00** | **$** | **6,285,924.50** |

* Law clerks are law school graduates who are not presently admitted to practice.
** Trainee Solicitors are law school graduates who are not presently admitted to practice.

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

**PROJECT CATEGORY SUMMARY**
**(JUNE 15, 2026 - AUGUST 31, 2026)**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| General Corporate Advice | 59.10 | $97,647.50 |
| Asset Analysis and Recovery | 0.80 | $2,100.00 |
| Asset Dispositions (General) | 1,330.50 | $2,427,551.00 |
| Asset Dispositions (Real Property) | 1.20 | $2,190.00 |
| Business Operations / Strategic Planning | 25.30 | $59,425.00 |
| Case Administration | 241.10 | $420,838.00 |
| Claims Admin (General) | 7.20 | $12,727.50 |
| Creditor Meetings / Statutory Committees | 172.20 | $297,543.00 |
| Disclosure Statement / Voting Issues | 10.60 | $12,455.00 |
| Employee Matters (General) | 185.90 | $320,591.00 |
| Employee Matters (Labor Unions) | 10.90 | $23,090.50 |
| Environmental Matters | 1.60 | $3,210.00 |
| Executory Contracts (Personalty) | 85.70 | $148,420.50 |
| Financing (DIP and Emergence) | 826.60 | $1,399,183.00 |
| Insurance | 6.60 | $13,565.00 |
| Leases (Real Property) | 9.60 | $17,950.00 |
| Litigation (General) | 374.20 | $634,244.00 |
| Nonworking Travel Time | 74.00 | $74,178.00 |
| Regulatory Matters | 1.20 | $2,277.50 |
| Reorganization Plan / Plan Sponsors | 4.60 | $6,625.00 |
| Retention / Fee Matters (SASM&F) | 135.10 | $211,278.00 |
| Retention / Fee Matters / Objections (Others) | 17.40 | $24,627.50 |
| Secured Claims | 0.20 | $390.00 |
| U.S. Trustee Matters | 9.70 | $17,922.50 |
| Utilities | 16.50 | $28,250.00 |
| Vendor Matters | 16.20 | $27,645.00 |
| **TOTAL** | **3,624.00** | **$6,285,924.50** |

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

**EXPENSE SUMMARY**
**(JUNE 15, 2026 - AUGUST 31, 2026)**

| Expense Category | Total Expenses |
|---|---|
| Computer Legal Research | $8,791.70 |
| Reproduction-color | $535.80 |
| Outside Reproduction | $4,060.00 |
| Outside Research | $1,608.15 |
| Court Reporting | $8,247.55 |
| Out-Of-Town Travel | $19,370.88 |
| Business Meals | $541.38 |
| Courier & Express Carriers (e.g. Federal Express) | $120.00 |
| Electronic Document Management | $1,950.88 |
| **TOTAL** | **$45,226.34** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| Debtors. | ) | (Jointly Administered)<br>Hearing Date: November 3, 2026 at 1:30 p.m. (ET)<br>Obj. Deadline: November 2, 2026 at 4:00 p.m. (ET) |

**FIRST INTERIM FEE APPLICATION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, AS BANKRUPTCY CO-COUNSEL FOR THE DEBTORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF ALL ACTUAL AND NECESSARY EXPENSES FOR THE PERIOD JUNE 15, 2026 THROUGH AUGUST 31, 2026**

Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**" or the "**Firm**"), as bankruptcy co-counsel for the debtors and debtors in possession in the above-captioned cases (the "**Debtors**"), submits this application (the "**Application**") for: (a) allowance of compensation for professional services rendered by Skadden to the Debtors for the period June 15, 2026, through August 31, 2026 (the "**Application Period**"); and (b) reimbursement of actual and necessary expenses incurred by Skadden during the Application Period in rendering professional services on behalf of the Debtors. In support of this Application, Skadden represents as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

under 28 U.S.C. § 157(b). Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "**Bankruptcy Code**"), as supplemented by Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013 (the "**U.S. Trustee Guidelines**"); and the *Order (I) Authorizing and Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and (II) Granting Related Relief* [Docket No. 183] (the "**Interim Compensation Order**").

## BACKGROUND

3. On June 15, 2026 (the "**Petition Date**"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). These Chapter 11 Cases are being jointly administered under Local Rule 1015-1.

4. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5. On June 26, 2026 and June 29, 2026, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors [Docket Nos. 104 and 109] (the "**Committee**").

## RETENTION OF SKADDEN

6. On June 24, 2026, the Debtors filed the application to retain and employ Skadden as counsel to the Debtors [Docket No. 99] (the "**Retention Application**"), *nunc pro tunc* to the

Petition Date, pursuant to and in accordance with the terms and conditions set forth in that certain engagement letter, dated May 1, 2026 (the "**Engagement Agreement**"). A copy of the Engagement Agreement was appended to the Retention Application as Exhibit 1. As of the Petition Date, Skadden was holding an advanced payment retainer in the amount of $1,023,504.56 with respect to the Debtors.

7. On July 13, 2026, the Court entered the order approving the Retention Application [Docket No. 186] (the "**Retention Order**"). The Retention Order, among other things, approved the Engagement Agreement, as modified by the Retention Order, pursuant to sections 327(a) and 329 of the Bankruptcy Code, and authorized the Debtors to pay, reimburse, and indemnify Skadden in accordance with the terms and conditions of, and at the times specified in, the Engagement Agreement as modified by the Retention Order.

## INTERIM COMPENSATION PROCEDURES

8. On July 13, 2026, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals retained in the Chapter 11 Cases (the "**Interim Compensation Procedures**"). The Interim Compensation Procedures provide, in pertinent part, that on or after the 5th day of each month, each retained professional may file an application for interim allowance of its fees earned and expenses incurred during the preceding month. If no objection is filed within 21 days of the service of a monthly fee application, the Debtors are authorized to pay the retained professional 80% of the fees and 100% of the expenses requested in the applicable monthly fee application.

9. Further, the Interim Compensation Procedures provide that, unless a chapter 11 plan of reorganization or liquidation has become effective, beginning with the period from the Petition Date through August 31, 2026, and at three-month intervals thereafter, each professional may file with the Court and serve upon certain notice parties an interim fee application for

compensation and reimbursement of expenses sought in the monthly fee applications served during such three-month period. This Application includes a brief description identifying (a) the monthly fee applications that are the subject of the request, (b) the amount of fees and expenses requested, (c) the amount of fees and expenses paid to date or subject to an objection, (d) the deadline for parties to file objections to the interim fee application, and (e) any other information requested by the Court or required by the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules.

**MONTHLY FEE APPLICATIONS**

10. In accordance with the Interim Compensation Procedures, Skadden filed monthly fee applications:

(a) On July 31, 2026 [Docket No. 256], covering the period from June 15, 2026, through June 30, 2026;

(b) On September 4, 2026 [Docket No. 358], covering the period from July 1, 2026, through July 31, 2026; and

(c) On September 24, 2026 [Docket No. 414], covering the period from August 1, 2026, through August 31, 2026.

11. No objections were received as to the first two monthly fee applications, and Skadden professionals filed certificates of no objection accordingly. On that basis, Skadden has received payment for 80% of the fees and 100% of the expenses requested in the first two monthly fee applications. The objection deadline for the third monthly fee application is October 15, 2026, and as of October 12, 2026, no objection had been filed. Subject to any objections received by the deadline, Skadden intends to file a certificate of no objection and seek payment of 80% of the fees and 100% of the expenses requested in the third monthly fee application. In the event any objections are filed to Skadden's third monthly fee application, Skadden will, pursuant to the Interim Compensation Procedures, either (a) file with the Court a response to

such objections, together with a request for payment of any portion of the amounts subject to the objection, or (b) forgo payment of the amount subject to such objections until the hearing to consider this Application, at which time Skadden will request that the Court adjudicate any unresolved objections. By this Application, Skadden is seeking approval of the amounts already paid or to be paid (assuming no objection is made to Skadden's third monthly fee application) under the monthly fee applications, as well as of the 20% fee holdbacks outstanding. Combined, such outstanding holdback amounts equal $1,257,184.90.

## RELIEF REQUESTED

12. By this Application, Skadden requests allowance and approval, on an interim basis, of compensation for professional services rendered to the Debtors, in the amount of $6,285,924.50,[2] and reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $45,226.34, for the Application Period. Skadden incorporates herein by reference each of its monthly fee applications filed during the Application Period together with the corresponding certificates of no objection.

13. A narrative statement of the services rendered during the period covered by this Application is set forth herein. Fees for services have been determined based solely on Skadden professionals' billing rates and hours billed. While certain significant events occurred after August 31, 2026, compensation for the time associated with those events is not being sought in this Application.

---

[2] Skadden voluntarily reduced its fees by $6,176.00 in connection with this Application by reducing certain paraprofessional time.

14. Skadden has received no promise of payment for professional services rendered or to be rendered in the Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code.

**BASIS FOR INTERIM AND FINAL RELIEF**

15. Skadden submits that the legal services and advice that it rendered to the Debtors during the Application Period were necessary and beneficial to the Debtors, their creditors, and their estates. Throughout the Chapter 11 Cases, Skadden professionals provided a high level of service to the Debtors. Skadden professionals devoted substantial time to researching, drafting, analyzing, negotiating, and resolving numerous issues. Skadden's efforts on behalf of the Debtors assisted the Debtors in obtaining approval for and entering into an assignment and assumption agreement (the "**Soda Ash Purchase Agreement**") between Searles Valley Minerals Inc. and TATA Chemicals North America Inc. for certain soda ash contracts sold pursuant to the Soda Ash Purchase Agreement (the "**Soda Ash Sale**") and advancing the going-concern sale of substantially all of the Debtors' assets (the "**Going Concern Sale**", and together with the Soda Ash Sale, the "**Sales**"), in an effort to maximize value for their estates and creditors.

16. During the Application Period, Skadden attorneys and paraprofessionals devoted a total of 3,624.0 hours to representing the Debtors in the Chapter 11 Cases, for which Skadden seeks compensation in the net amount of $6,285,924.50. Of the aggregate time expended, 795.5 hours were spent by partners, 685.9 hours were spent by counsel, 1,940.3 hours were spent by associates, law clerks, and summer associates, 37.4 hours were spent by trial consultants, and 164.9 hours were spent by client specialists and paraprofessionals. Schedules showing the name and position of each such partner, counsel, associate, trial consultant, client specialist, and paraprofessional, together with that person's practice group, year of admission to the bar (if applicable), hours worked during the Application Period, and hourly billing rate, as well as

Skadden's blended hourly rate, are included at the front of this Application pursuant to Local Rule 2016-1.

17. Skadden also incurred actual and necessary out-of-pocket expenses in the amount of $45,226.34 in connection with the rendition of required professional services on behalf of the Debtors during the Application Period, for which reimbursement is sought. Schedules showing total expenses for which reimbursement is sought during the Application Period are included at the front of this Application pursuant to Local Rule 2016-1. The fees and expenses sought in this Application reflect voluntary reductions for the Application Period of $14,590.54 in the aggregate, consisting of $13,101.50 in fees and $1,489.04 in expenses.

**SUMMARY OF SERVICES RENDERED**

18. During the Application Period, Skadden worked closely with the Debtors and the Debtors' other professionals to achieve the Debtors' objectives, including working toward consummating the Sales and realizing the resulting maximization of value. The services described herein have been directed towards those tasks necessary to fulfill the Debtors' fiduciary and statutory duties and to accomplish the Debtors' objectives. To meet the Debtors' needs, Skadden professionals provided multi-disciplinary services on a daily basis, working nights, weekends, and holidays as necessary, to research, draft, analyze, negotiate, and resolve numerous issues. Throughout this process, certain of the principal Skadden attorneys working on the Chapter 11 Cases were required to devote a substantial portion of their time to this engagement.

19. Certain tasks were allocated to the Debtors' co-counsel Pachulski Stang Ziehl & Jones LLP ("**Pachulski**") in an effort to efficiently perform services that did not require Skadden's breadth and depth of expertise and institutional knowledge about the Debtors' operations, but that nonetheless needed to be performed as part of the Chapter 11 Cases.

Accordingly, Skadden and Pachulski sought to work with one another to manage any perceived conflicts and to lower overall cost to the estates by allocating to Skadden the most complex work that demanded its unique expertise, while Pachulski handled the remaining tasks more economically.

20. At the commencement of the Chapter 11 Cases, Skadden created 26 different matter numbers to which its professionals billed their time.[3] Skadden kept a contemporaneous record of the time spent rendering services and separated tasks in billing increments of one-tenth of an hour. All of the services performed by Skadden have been legal in nature and necessary and appropriate for the effective administration of the Chapter 11 Cases.

21. Skadden devoted approximately 69.8% of its time to the following matters, fees for each of which were greater than $500,000: (a) Asset Dispositions (General); (b) Financing (DIP and Emergence); and (c) Litigation (General).

22. Skadden devoted approximately 16.5% of its time to the following matters, fees for each of which were between $275,000 and $500,000: (a) Case Administration; (b) Creditor Meetings / Statutory Committees; and (c) Employee Matters (General).

23. Skadden devoted approximately 6.1% of its time to the following matters, fees for each of which were between $100,000 and $275,000: (a) Retention / Fee Matters (SASM&F); and (b) Executory Contracts (Personalty)

24. Skadden devoted approximately 5.3% of its time to the following matters, fees for each of which were between $25,000 and $100,000: (a) General Corporate Advice; (b) Business

[3] These matters to which Skadden professionals billed their time during the Application Period are listed in the Compensation by Project Category table above.

Operations / Strategic Planning; (c) Nonworking Travel Time; (d) Utilities; and (e) Vendor Matters.

25. Skadden devoted the remaining approximately 2.3% of its time to the following matters, fees for each of which were less than $25,000: (a) Asset Analysis and Recovery; (b) Asset Dispositions (Real Property); (c) Claims Admin. (General); (d) Disclosure Statement / Voting Issues; (e) Employee Matters (Labor Unions); (f) Environmental Matters; (g) Insurance; (h) Leases (Real Property); (i) Regulatory Matters; (j) Reorganization Plan / Plan Sponsors; (k) Retention / Fee Matters / Objections (Others); (l) Secured Claims; and (m) U.S. Trustee Matters.

## I. Matters over $500,000

26. During the Application Period, Skadden professionals devoted significant time to various key matters, each of which had a time value of more than $500,000. These matters were as follows:

### A. Asset Dispositions (General)<br>Amount Sought: $2,427,551.00

27. During the Application Period, Skadden professionals advised the Debtors in connection with the Sales, including the marketing of the Debtors' assets and preparing for the auction for the Soda Ash Sale (the "**Soda Ash Auction**") and the potential auction for the Going Concern Sale (the "**Going Concern Auction**", and together with the Soda Ash Auction, the "**Auctions**"). On June 15, 2026, the Debtors filed a motion to approve certain bidding and sale procedures (the "**Bidding Procedures**") in connection with the Sales [Docket No. 18] (the "**Sales Motion**"). Skadden professionals successfully secured the Bankruptcy Court's approval of the Bidding Procedures on July 7, 2026 [Docket No. 140] (the "**Bidding Procedures Order**").

28. Beginning on the Petition Date, Skadden professionals assisted the Debtors and their other advisors, including their investment banker Lazard Frères & Co. LLC ("**Lazard**"), with the marketing process for the Debtors' assets. Among other things, Skadden professionals negotiated confidentiality agreements with parties interested in participating in the Sales. Skadden professionals also spent significant time assisting the Debtors in responding to due diligence requests from, and participating in diligence calls with, potential bidders, reviewing and evaluating proposals, advising the Debtors regarding bids, and remaining in constant communication with potential bidders for both Sales. Skadden professionals also remained in constant communication with the Debtors' senior management, the Debtors' other advisors, as well as various other key stakeholders including the Committee, the Debtors' labor union covering certain of their employees, contract and lease counterparties, and other interested parties, regarding the Auctions and Sales processes. Skadden professionals also updated and collaborated with the Consultation Parties under the Bidding Procedures as the Sales progressed.

29. In preparation for the Soda Ash Auction, Skadden professionals drafted and negotiated the terms of multiple assignment and assumption agreements and purchase agreements for bidders and the exhibits and schedules related thereto. Ultimately, the Debtors received three bids for the Soda Ash Sale. Skadden professionals, in conjunction with the Debtors' other advisors, reviewed and evaluated the proposals and advised the Debtors regarding the bids and the selection of the starting bids for the Soda Ash Auction. Skadden hosted and assisted the Debtors in conducting the virtual Soda Ash Auction on August 25, 2026. In addition, Skadden professionals spent considerable time facilitating negotiations among the Debtors, the Qualified Bidders, and the Consultation Parties, and advising the Debtors with respect to such negotiations, both in the time leading up to the Soda Ash Auction and during the Soda Ash

Auction. Following the selection of the successful bidder at the Soda Ash Auction, Skadden professionals finalized the transaction documentation and the proposed order approving the Soda Ash Sale, and began working with the Debtors, Ankura, and the buyer on a transition services agreement for the Soda Ash Sale.

30. In advance of the sale hearing on August 26, 2026 (the "**Soda Ash Sale Hearing**"), Skadden professionals spent significant time negotiating with numerous parties to resolve informal and formal objections to the Sales. In advance of the Soda Ash Sale Hearing, the Debtors had one remaining outstanding objection to the Soda Ash Sale from the California Air Resources Board [Docket Nos. 266; 278; 355]. Skadden was ultimately successful in resolving consensually all other outstanding objections to the Soda Ash Sale by the time of the Soda Ash Sale Hearing, and at the Soda Ash Sale Hearing, the Bankruptcy Court overruled the California Air Resources Board objection and approved the Soda Ash Sale, as described in more detail in paragraphs 40–41 below.

31. Following the Bankruptcy Court's approval of the Soda Ash Sale, Skadden professionals continued to advise the Debtors in connection with preparing for the anticipated closing of the Soda Ash Sale, including coordinating with the buyer and their respective counsel with respect to the closing and related tasks, drafting necessary documentation to effectuate the closing.

32. In parallel, Skadden professionals devoted substantial time to the Going Concern Sale. In particular, Skadden professionals negotiated simultaneously with two potential bidders for substantially all of the Debtors' assets in the lead-up to the potential Going Concern Auction. With respect to both bidders, this work included responding to inquiries and diligence requests, reviewing and analyzing each bidder's markups of the asset purchase agreement and disclosure

schedules, preparing issues lists, and drafting and negotiating revised asset purchase agreements, including through numerous calls with each bidder and its counsel. Skadden's corporate, restructuring, and specialist teams, including employee benefits, labor and employment, tax, intellectual property, real property, environmental, and regulatory professionals, worked together to address the issues raised in each bidder's proposal. In addition, Skadden professionals updated and collaborated with the Debtors' other advisors, the DIP Lender, and the Consultation Parties under the Bidding Procedures throughout the Going Concern Sale process.

33. In connection with this matter, Skadden professionals devoted a total of 1,330.5 hours, for which compensation is sought in the amount of $2,427,551.00.

**B. Financing (DIP and Emergence)**
**Amount Sought: $1,399,183.00**

34. During the Application Period, Skadden professionals devoted a significant amount of time assisting the Debtors in negotiating debtor-in-possession ("**DIP**") financing to ensure the Debtors' ability to pursue the Sales while maintaining ordinary course operations to preserve transactional optionality. The Skadden team provided extensive advice and services in connection with negotiating, drafting, and revising documents and interim and final orders related to authorization for the use of cash collateral and approval of DIP financing.

35. Specifically, on the Petition Date, Skadden professionals filed, on behalf of the Debtors, a motion requesting orders on an interim and final basis seeking approval of a priming DIP financing facility offered by Karnavati Holdings, Inc. ("**Karnavati**") [Docket No. 15].

36. The Debtors received a variety of formal and informal comments from several stakeholders, including the U.S. Trustee and the Committee, and the Committee filed an objection to the Debtors' request for final approval of the DIP financing [Docket Nos. 161 (sealed), 198 (redacted)]. In connection with the Committee's objection, the Committee pursued

extensive expedited discovery, which included document requests and depositions of the Debtors' witnesses and other parties' witnesses. Skadden professionals responded to the Committee's discovery requests, conducted an expedited review and production of documents, prepared the Debtors' witnesses for and defended their depositions, attended the depositions of other parties' witnesses, and prepared a reply in support of the DIP financing and supporting declarations. At the same time, Skadden professionals worked with the Debtors, the DIP Lender, and these various stakeholders to address and incorporate their comments in a revised form of final order. As a result of Skadden's efforts, the parties reached a consensual resolution in advance of the contested final hearing, and the Court entered an order reflecting the parties' agreement and approving the relief requested on a final basis [Docket No. 231] (the "**Final DIP Order**").

37. In addition to the foregoing efforts, throughout the Chapter 11 Cases, Skadden professionals worked closely with the Debtors, the Debtors' other advisors, and the advisors to the DIP Lender to ensure that the Debtors and the DIP Lender adhered to the terms of the DIP Facilities. This included consistent communications with all parties as well as contingency planning.

38. In connection with this matter, Skadden professionals devoted a total of 826.6 hours, for which compensation is sought in the amount of $1,399,183.00.

**C. Litigation (General)**
**Amount Sought: $634,244.00**

39. During the Application Period, Skadden professionals spent considerable time preparing for actual and threatened litigation and responding to discovery requests. Skadden professionals also advised the Debtors in connection with various other litigation issues that arose during the Chapter 11 Cases, including, among other things, (a) assessing and resolving

actual and potential issues related to the Sales and the formal and informal objections from other stakeholders and parties-in-interest; and (b) evaluating litigation strategy in connection with the Sales, including with respect to the California Air Resources Board's objection to the sale of certain assets free and clear of certain legacy obligations arising under California's Cap-and-Trade program.

40. In advance of the Soda Ash Sale Hearing, Skadden professionals prepared hearing agendas, exhibit lists, and witness outlines for the Debtors' declarant, prepared trial presentation materials, and represented the Debtors at the evidentiary hearing on the California Air Resources Board's objection. Following the Bankruptcy Court's ruling, Skadden professionals analyzed issues related to a potential appeal by the California Air Resources Board, including stay and bond requirements.

41. Because of the overlapping nature of litigation matters (with respect to other matter categories), to the extent time spent on litigation-related issues was not billed to this matter, time spent on such matters was billed to the specific matter that was the subject of the litigation, such as General Corporate Advice, Asset Analysis and Recovery, Secured Claims, Asset Dispositions (General), Creditor Meetings / Statutory Committees, Employee Matters (General), Executory Contracts (Personalty), Financing (DIP and Emergence), and others, as applicable.

42. In connection with this matter, Skadden professionals devoted a total of 374.2 hours, for which compensation is sought in the amount of $634,244.00.

**II. Matters Between $275,000 and $500,000**

43. During the Application Period, Skadden professionals devoted significant time to various key matters, each of which had a time value of between $275,000 and $500,000. These matters were as follows:

**A. Case Administration**
**Amount Sought: $420,838.00**

44. Skadden professionals devoted resources to case administration matters and worked with the Debtors' management and other professionals to ensure that the Debtors conducted their affairs in accordance with the Bankruptcy Code and applicable non-bankruptcy law. Moreover, Skadden professionals communicated both internally and with the Debtors' management, co-counsel, and other advisors, as well as with the advisors to the DIP Lender, the Prepetition Secured Lender, the Committee, and other key constituents, in order to keep the various parties apprised of case developments, facilitate the efficient administration of the Chapter 11 Cases, and reduce expenses by ensuring that professional efforts were not duplicated. Skadden professionals also devoted time coordinating required notices and mailings, preparing case calendars, files, and task lists, and monitoring the Court's docket. Skadden professionals also tracked and coordinated compliance with the Debtors' reporting obligations under the first- and second-day orders and related agreements with the Committee.

45. In connection with this matter, Skadden professionals devoted a total of 241.1 hours, for which compensation is sought in the amount of $420,838.00.

**B. Employee Matters (General)**
**Amount Sought: $320,591.00**

46. As of the Petition Date, the Debtors had approximately 279 full-time employees and one part-time employee. During the Application Period, Skadden provided the Debtors with legal services and advice in connection with the various employee issues that arose during the pendency of the Chapter 11 Cases, starting with filing a motion on the Petition Date seeking to pay certain prepetition employee wage and benefit obligations and to continue certain employee benefit programs in the ordinary course [Docket No. 6] (the "**Wages Motion**"). Prior to the hearing to approve the Wages Motion on an interim basis, the Debtors received informal

comments from the U.S. Trustee. Skadden professionals assisted the Debtors in addressing and consensually resolving the U.S. Trustee's comments. Skadden professionals successfully secured the Court's approval of the Wages Motion on an interim basis as part of the Debtors' "first-day" relief [Docket No. 54]. Skadden professionals successfully secured the Court's approval of the Wages Motion on a final basis as part of the Debtors' "second-day" relief [Docket No. 154].

47. In addition, Skadden professionals spent significant time consulting with the Debtors' other advisors on the development of the Debtors' key employee incentive plan and key employee retention plan (together, the "**KEIP/KERP**"). Skadden professionals also drafted the motion seeking approval of the KEIP/KERP, the supporting declarations, and a related motion to shorten notice, advised the Debtors' board of directors with respect to the same, and, with the other advisors, negotiated the terms of the KEIP/KERP with the Committee and the U.S. Trustee.

48. Skadden professionals also advised the Debtors on the treatment of their employees and related liabilities in connection with the proposed Sales, including with respect to considerations under the federal Worker Adjustment and Retraining Notification Act.

49. In addition, Skadden provided general advice to the Debtors regarding other employee matters in connection with the Chapter 11 Cases including (a) benefits, (b) severance plans and agreements, and (c) employee communications.

50. In connection with this matter, Skadden professionals devoted a total of 185.9 hours, for which compensation is sought in the amount of $320,591.00.

**C. Creditor Meetings / Statutory Committees**
**Amount Sought: $297,543.00**

51. During the Application Period, Skadden professionals worked with the Committee's professionals to negotiate and ultimately come to agreement on many issues in the Chapter 11 Cases. The Debtors conferred with the Committee throughout the Application Period

on issues related to DIP financing, the Sales, and various other issues. In connection therewith, Skadden professionals, along with the Debtors' other retained professionals, prepared for and attended meetings with Committee professionals and responded to various information requests.

52. In connection with this matter, Skadden professionals devoted a total of 172.2 hours, for which compensation is sought in the amount of $297,543.00.

## III. Matters Between $100,000 and $275,000

53. During the Application Period, Skadden professionals devoted significant time to various key matters, each of which had a time value of between $100,000 and $275,000. These matters were as follows:

### A. Retention / Fee Matters (SASM&F)
**Amount Sought: $211,278.00**

54. At the inception of the Chapter 11 Cases, Skadden professionals prepared and filed the Retention Application.

55. In order to comply with the Interim Compensation Procedures, Skadden professionals prepared and filed three monthly fee applications [Docket Nos. 256, 358, and 414]. In connection with the Retention Application, Skadden professionals also reviewed the list of parties-in-interest in the Chapter 11 Cases and worked with the Debtors' other advisors to identify additional parties-in-interest for inclusion, and ran searches of Skadden's client databases to identify relevant relationships to the Debtors, their affiliates, and other parties-in-interest.

56. In connection with this matter, Skadden professionals devoted a total of 135.1 hours, for which compensation is sought in the amount of $211,278.00.

### B. Executory Contracts (Personalty)
**Amount Sought: $148,420.50**

57. Skadden professionals advised the Debtors with respect to the Debtors' review of their executory contracts, focusing primarily on the legal aspects surrounding assumption and cure. The Bidding Procedures Order set deadlines by which the Debtors were required to provide notice of proposed assumption and cure amounts for contract and lease counterparties, and Skadden professionals assisted the Debtors in preparing and filing such schedules.

58. Thereafter, Skadden assisted the Debtors with responding to and resolving the various informal comments, inquiries, and reconciliations, as well as formal objections, received from contract counterparties to the assumption and assignment of their executory contracts. As a result of these efforts, Skadden professionals were able to assist the Debtors in consensually resolving or mooting many of the formal and informal objections to assumption or cure, including research and negotiations surrounding the rejection of certain unexpired railcar leases, the associated motion to reject those certain unexpired railcar leases, and § 1168 stipulations filed and a settlement with a railcar lessor.

59. In connection with this matter, Skadden professionals devoted a total of 85.7 hours, for which compensation is sought in the amount of $148,420.50.

## IV. Matters Between $25,000 and $100,000

60. During the Application Period, Skadden professionals devoted significant time to various key matters, each of which had a time value of between $25,000 and $100,000. These matters were as follows:

### A. General Corporate Advice<br>Amount Sought: $97,647.50

61. During the Application Period, Skadden professionals assisted and advised the Debtors with respect to various corporate governance matters. This included advising on issues

relating to the (a) proposed Sales, (b) board resolutions, (c) potential litigation, and (d) corporate strategy with respect to the progression of the Chapter 11 Cases and updates regarding the same.

62. Skadden professionals regularly prepared presentation decks and other materials to present to the Debtors' management team and Board to provide updates on the status of the Chapter 11 Cases and also regularly participated in telephonic Board meetings to discuss key issues in the Chapter 11 Cases including, among other things, the first- and second-day pleadings, the Sales, the various settlements in the Chapter 11 Cases, employee issues, and related relief.

63. In connection with this matter, Skadden professionals devoted a total of 59.1 hours, for which compensation is sought in the amount of $97,647.50.

**B. Nonworking Travel Time**
**Amount Sought: $74,178.00**

64. The Debtors retained an engagement team of Skadden professionals residing in New York, Chicago, Wilmington, Los Angeles, and Palo Alto. The engagement team drew on the experience and talent of a number of professionals from Skadden's global organization in representing the Debtors across a broad range of complex legal matters, including mergers and acquisitions, tax, labor, litigation, and restructuring. Skadden professionals traveled as necessary for the court hearings in Delaware.

65. Skadden professionals who spent time traveling, but not otherwise working, allocated their time to this billing category, which, as reflected in the tables above, was billed at 50% of standard hourly rates.

66. In connection with this matter, Skadden professionals devoted a total of 74.0 hours, for which compensation is sought in the amount of $74,178.00.

**C. Business Operations / Strategic Planning**
**Amount Sought: $59,425.00**

67. During the Application Period, Skadden professionals spent time on many matters related to the Debtors' business operations as well as strategic planning relating to the Chapter 11 Cases. Skadden professionals collaborated with the Debtors' management team, co-counsel, and other advisors to develop strategies with respect to a variety of strategic scenarios and to keep the various teams apprised of case developments. Among other things, Skadden professionals spent significant time on strategic and operational calls with Lazard, Ankura and management, which sought to facilitate a smooth transition into chapter 11 and a value-maximizing sale process.

68. Skadden professionals also assisted the Debtors with the impact of the Chapter 11 Cases on their debtor-in-possession and go-forward business operations, including advice with respect to strategic planning, and review and analysis of certain manufacturing, supply, licensing, and sales issues.

69. In connection with this matter, Skadden professionals devoted a total of 25.3 hours, for which compensation is sought in the amount of $59,425.00.

**D. Utilities**
**Amount Sought: $28,250.00**

70. To prevent any disruption to the Debtors' utility services, on the Petition Date, Skadden professionals prepared and filed, on behalf of the Debtors, a motion seeking approval of (i) the Debtors' proposed form of adequate assurance of payment to their utility providers and (ii) procedures for resolving requests by utility providers for additional adequate assurance [Docket No. 10] (the "**Utilities Motion**").

71. Two utility providers (together, the "**Objecting Utilities**") filed an objection to the Utilities Motion [Docket No. 90]. Skadden professionals negotiated with counsel to the Objecting Utilities and reached a consensual settlement, pursuant to which the Objecting Utilities

withdrew their objection [Docket No. 130]. Skadden professionals also responded to inquiries from other utility providers and assisted the Debtors in implementing the relief granted under the Utilities Motion.

72. In connection with this matter, Skadden professionals devoted a total of 16.5 hours, for which compensation is sought in the amount of $28,250.00.

**E. Vendor Matters**
**Amount Sought: $27,645.00**

73. To maintain the Debtors' ability to operate and provide a continuous flow of products to the Debtors' customers during the Chapter 11 Cases, Skadden professionals sought and received first-day relief allowing payments to those vendors that posed the greatest risk of interruption to the Debtors' operations [Docket No. 11]. Thereafter, Skadden professionals helped to communicate and implement this relief and to respond to and track vendor inquiries regarding the same, requests for "critical vendor" treatment and payment, advising the Debtors with respect to their negotiation of "critical vendor" agreements, issues with payment terms, and review of contractual provisions.

74. In connection with this matter, Skadden professionals devoted a total of 16.2 hours, for which compensation is sought in the amount of $27,645.00.

**V. Matters Under $25,000**

75. During the Application Period, Skadden also devoted time to other matters that had a time value of less than $25,000. These matters were as follows: (a) Retention / Fee Matters / Objections (Others): $24,627.50; (b) Employee Matters (Labor Unions): $23,090.50; (c) Leases (Real Property): $17,950.00; (d) U.S. Trustee Matters: $17,922.50; (e) Insurance: $13,565.00; (f) Claims Admin. (General): $12,727.50; (g) Disclosure Statement / Voting Issues: $12,455.00; (h) Reorganization Plan / Plan Sponsors: $6,625.00; (i) Environmental Matters: $3,210.00; (j)

Regulatory Matters: $2,277.50; (k) Asset Dispositions (Real Property): $2,190.00; (l) Asset Analysis and Recovery: $2,100.00; and (m) Secured Claims: $390.00.

## REASONABLENESS OF FEES AND DISBURSEMENTS

76. Bankruptcy Code section 330 authorizes the Court to award "reasonable compensation for actual, necessary services rendered by the . . . professional person." 11 U.S.C. § 330. In order to evaluate a request for allowance of fees by a professional person, a court must determine whether the services rendered were actual and necessary and the fees requested are reasonable. Skadden respectfully submits that its request for interim and final awards of compensation for the Application Period satisfies that standard.

77. In accordance with the factors enumerated in 11 U.S.C. § 330, the amount requested herein by Skadden is fair and reasonable in light of (a) the nature and complexity of the Chapter 11 Cases, (b) the time and labor required to effectively represent the Debtors, (c) the nature and extent of the services rendered, (d) Skadden's experience, reputation, and ability, (e) the value of Skadden's services, and (f) the cost of comparable services outside of cases under the Bankruptcy Code.

### I. Nature and Complexity of the Chapter 11 Cases, Time and Labor Involved, and Extent of Services Rendered

78. The Chapter 11 Cases are complex and present a unique set of circumstances. The nature and complexity of the Chapter 11 Cases require Skadden to develop case management and staffing solutions to enhance efficiency. Skadden assisted the Debtors by employing a streamlined case management structure that generally consisted of small, core teams and assigned discrete tasks to other attorneys, all with the goal of avoiding duplicative and unnecessary work. Moreover, Skadden's efforts have been important in promptly and consensually resolving the vast majority of disputes that arose during the Application Period and

in preserving value. Indeed, during the Application Period, Skadden and the Debtors' other professionals were able to secure the Bankruptcy Court's approval of the Soda Ash Sale and worked toward the Going Concern Sale in an effort to maximize value for their estates and creditors.

79. Given the complexity of the Chapter 11 Cases, the expedited timetable involved, and the variety of issues that arose in the Chapter 11 Cases, there were circumstances where a number of Skadden professionals had to be present at, and to participate in, discussions, negotiations, team meetings, and court hearings. Skadden believes that it has, through the narratives contained in this Application and the time entries attached to each of the previously filed monthly fee applications [Docket Nos. 256, 358, and 414], articulated specific reasons for attendance and participation by multiple attorneys on such occasions.

## II. Experience of Skadden

80. The experience of Skadden also benefited the Debtors' estates. Skadden is among the world's largest, most experienced firms. As set forth more fully in the Retention Application, Skadden's restructuring attorneys and attorneys from other practice areas have extensive knowledge and experience in dealing with the fast-paced needs of similar chapter 11 cases. Accordingly, Skadden's depth of experience in chapter 11 matters ensured that pressing matters were addressed promptly.

## III. Comparable Services

81. An award of compensation also must be based on the cost of comparable services other than in a case under the Bankruptcy Code. Skadden's rates are consistent with rate structures charged to other clients in bankruptcy and non-bankruptcy matters and with customary compensation charged by comparably skilled practitioners in non-bankruptcy engagements. Disclosures related to Skadden's rate structure are attached hereto as **Exhibit A**. Moreover,

Skadden's rate structure was disclosed clearly in its Retention Application, which the Court approved. The amounts sought by Skadden are consistent with the fees, charges, and disbursements incurred in other chapter 11 cases of similar size, complexity, and duration by Skadden and its peer firms. Accordingly, the cost of comparable services supports the Application and the services performed during the Application Period warrant the allowance of compensation, particularly in view of the results achieved.

## BUDGET AND STAFFING PLAN

82. Attached hereto as **Exhibit A** is a summary of blended hourly rates for Firm timekeepers who billed to (a) non-bankruptcy matters and (b) the Debtors.

83. Attached hereto as **Exhibit B** is Skadden's staffing plan for the Application Period.

84. Attached hereto as **Exhibit C** is a budget for Skadden for the Application Period.

## ALLOWANCE OF COMPENSATION

85. Because of the benefits realized by the Debtors, the nature of the Chapter 11 Cases, the standing at the bar of the attorneys who have rendered services, the amount of work done, the time consumed, the skill required, and the contingent nature of the compensation, Skadden requests that it be allowed at this time compensation for the value of the professional services rendered during the Application Period in the amount of $6,285,924.50. Complete descriptions of the time detail for services rendered by Skadden professionals during the Application Period are attached as exhibits to each of the previously filed monthly fee applications [Docket Nos. 256, 358, and 414]. Additionally, tables summarizing the compensation sought for the Application Period are included at the front of this Application.

86. Other than among Skadden and its affiliated law practices and their members, no agreements or understandings exist between Skadden and any other person or persons for the

sharing of compensation received, or to be received, for professional services rendered in or in connection with the Chapter 11 Cases, nor will any such agreements or understandings be made except as permitted pursuant to Bankruptcy Code section 504(b)(1).

**REIMBURSEMENT OF EXPENSES**

87. Consistent with the Firm's policy with respect to its other clients, Skadden is seeking reimbursement for charges and disbursements incurred as out-of-pocket expenses in the rendition of necessary services to the Debtors and their estates. These charges and disbursements include, among other things, costs for computer legal research, reproduction, outside research, court reporting, out of town travel, business meals, courier and express carriers, and electronic data management.

88. Complete descriptions of each expense incurred during the Application Period are attached as exhibits to each of the previously filed monthly fee applications [Docket Nos. 256, 358, and 414]. Additionally, tables summarizing the expenses for the Application Period are included at the front of this Application. Skadden's policies require all attorneys to retain and submit for review receipts and invoices for all disbursements incurred through outside vendors. Skadden maintains all receipts and invoices related to each client's disbursement account in a central storage facility, and these records can be produced upon request. Skadden has disbursed, and requests reimbursement of, $45,226.34 on an interim basis and final basis, each of which represents actual and necessary expenses incurred in the rendition of professional services in the Chapter 11 Cases.

**NOTICE**

89. Notice of this Application will be given to: (a) the U.S. Trustee; (b) counsel to the Prepetition Secured Lender; (c) counsel to the Committee; (d) counsel to the DIP Lender; (e) the office of the attorney general for each of the states in which the Debtors operate; and (f) all

parties entitled to notice pursuant to Local Rules 2002-1(b) and 9013-1(m). The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

90. No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

Skadden respectfully requests that this Court enter an order granting (a) interim and final approval of compensation of $6,285,924.50 for fees incurred for professional services rendered as counsel for the Debtors during the Application Period, plus reimbursement of actual and necessary charges and disbursements incurred in the amount of $45,226.34; (b) the release and payment of all outstanding amounts, including the outstanding 20% holdbacks from each of the monthly fee applications and Application Period, as reduced by the additional voluntary reduction as discussed herein, the aggregate sum of which is $1,257,184.90; and (c) such other and further relief as may be just and proper.

***[Remainder of Page Intentionally Left Blank]***

Dated: Wilmington, Delaware
October 12, 2026

*<u>/s/ Laura Davis Jones</u>*
**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: 302-652-4100
ljones@pszjlaw.com
joneill@pszjlaw.com
ecorma@pszjlaw.com

*Co-Counsel to Debtors and Debtors in Possession*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
James J. Mazza, Jr.
Jennifer Madden
Claire Stephens
320 S. Canal Street
Chicago, Illinois 60606
Telephone: (312) 407-0700
James.Mazza@skadden.com
Jennifer.Madden@skadden.com
Claire.Stephens@skadden.com

*Co-Counsel to Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| Debtors. | ) | (Jointly Administered)<br>Hearing Date: November 3, 2026 at 1:30 p.m. (ET)<br>Obj. Deadline: November 2, 2026 at 4:00 p.m. (ET) |

**DECLARATION OF JAMES J. MAZZA, JR.**

I, James J. Mazza, Jr., pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am a partner of the firm of Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**" or the "**Firm**"),[2] which maintains offices for the practice of law at, among other locations, 320 S. Canal St, Chicago, Illinois 60606. I am admitted in, practicing in, and a member in good standing of the bar of the State of Illinois, and I have been admitted *pro hac vice* to appear before the United States Bankruptcy Court for the District of Delaware in the above-captioned cases.

2. I have personally performed certain of the legal services rendered by Skadden as counsel to the Debtors and am thoroughly familiar with the other work performed on behalf of the Debtors by the attorneys and other persons in the Firm.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

3. I have reviewed the foregoing Application, and the facts set forth therein are true and correct to the best of my knowledge, information, and belief. Moreover, I have reviewed Local Rule 2016-1 and submit that the Application complies with such rule. However, to the extent that the Application does not comply in all respects with such rule, I believe that such deviations are not material.

**Disclosures Pursuant to the U.S. Trustee Guidelines**

4. The Court authorized the Debtors to retain Skadden as their attorneys in the Chapter 11 Cases pursuant to the Retention Order entered on July 13, 2026.

5. Skadden discussed its rates, fees, and staffing with the Debtors at the outset of the Chapter 11 Cases. Further, Skadden provided the Debtors with a budget and discussed staffing and fees with the Debtors throughout the Chapter 11 Cases.

6. Skadden voluntarily reduced its fees and expenses for the Application Period by $14,590.54 in the aggregate.

7. In accordance with the U.S. Trustee Guidelines, Skadden responds to the questions identified therein as follows:

(a) Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the Application Period? If so, please explain.

- No.

(b) If the fees sought in this Application as compared to the fees budgeted for the time period covered by this Application are higher by 10% or more, did you discuss the reasons for the variation with the client?

- The fees sought in the Application did not exceed the fees budgeted for the time period covered by the Application by 10% or more, as described in Exhibit C.

(c) Have any of the professionals included in this Application varied their hourly rate based on the geographic location of the bankruptcy cases?

- No.

(d) Does the Application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.) If so, please quantify by hours and fees.

- Any time expended for such matters during the Application Period is included under task code 33, Retention / Fee Matters (SASM&F).

(e) Does this Application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

- Time spent reviewing and *revising* invoices to comply with the Local Rules and the U.S. Trustee Guidelines is included under task code 33, Retention / Fee Matters (SASM&F). In connection with such review, Skadden concurrently revised its invoices for privileged and confidential information and, accordingly, did not spend any additional time reviewing time records to redact such information.

(f) Does this Application include any rate increases since retention?

- The Application does not include any rate increases. Skadden implements firm-wide step increases to reflect class on class progression and promotions of certain Skadden professionals. These increases constitute annual "step increases," as defined in section B.2.d of the U.S. Trustee Guidelines, determined by Skadden in the ordinary course regarding attorneys and other billers throughout the firm due to advancing seniority and promotion. Pursuant to the U.S. Trustee Guidelines, such "step increases" do not constitute "rate increases." One attorney had a step increase during the Application Period.

***[Remainder of Page Intentionally Left Blank]***

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 12, 2026

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP

*/s/ James J. Mazza, Jr.*
James J. Mazza, Jr.
320 S Canal St
Chicago, IL 60606
Telephone: (312) 407-0700
james.mazza@skadden.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| Debtors. | ) | (Jointly Administered)<br>Hearing Date: November 3, 2026 at 1:30 p.m. (ET)<br>Obj. Deadline: November 2, 2026 at 4:00 p.m. (ET) |

**NOTICE OF FIRST INTERIM FEE APPLICATION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, AS BANKRUPTCY CO-COUNSEL FOR THE DEBTORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF ALL ACTUAL AND NECESSARY EXPENSES FOR THE PERIOD JUNE 15, 2026, THROUGH AND INCLUDING AUGUST 31, 2026**

**PLEASE TAKE NOTICE** that on October 12, 2026, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *First Interim Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP as Bankruptcy Co-Counsel for the Debtors, For Allowance of Compensation and Reimbursement of All Actual and Necessary Expenses for the Period from June 15, 2026, Through and Including August 31, 2026* (the "**Application**") with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Application or the relief requested therein must be made in accordance with the *Order (I) Authorizing and Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and (II) Granting Related Relief* [Docket No. 183] (the "**Interim Compensation Order**") and must be (i) made in writing and (ii) filed with the Clerk of the Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, and served so as to be received on or before **4:00 p.m. (prevailing Eastern Time) on November 2, 2026** (the "**Objection Deadline**"). Objections, if any, shall be served on:

(a) Searles Valley Minerals Inc., 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210 (Attn: Dennis Cruise, President (cruise@svminerals.com));

(b) co-counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 320 S. Canal Street, Chicago, Illinois 60606 (Attn: James J. Mazza, Jr., Esq.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

(james.mazza@skadden.com), Jennifer Madden, Esq. (jennifer.madden@skadden.com), and Claire Stephens, Esq. (claire.stephens@skadden.com));

(c) co-counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899 (Courier 19801) (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com), James E. O'Neill, Esq. (joneill@pszjlaw.com), and Edward A. Corma, Esq. (ecorma@pszjlaw.com));

(d) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane M. Leamy, Esq. (jane.m.leamy@usdoj.gov));

(e) counsel to the Prepetition Secured Lender (Attn: William Hao, Esq. (william.hao@alston.com));

(f) counsel to the DIP Lender (Attn: David Fournier, Esq. (david.fournier@troutman.com)); and

(g) counsel to the Official Committee of Unsecured Creditors, Womble Bond Dickinson US LLP, 1313 North Market Street, Wilmington, Delaware 19801 (Attn: Matthew Ward, Esq. (Matthew.Ward@wbd-us.com) and Marcy J. McLaughlin Smith, Esq. (Marcy.Smith@wbd-us.com)).

PLEASE TAKE FURTHER NOTICE that, if an objection is properly filed and served in accordance with the above procedures, a hearing ("**Hearing**") on the Application will be held on **November 3, 2026,** at **1:30 PM (prevailing Eastern Time)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801 (the "**Bankruptcy Court**"). Only objections made in writing and timely filed and received will be considered by the Court at such Hearing.

***[Remainder of Page Intentionally Left Blank]***

**PLEASE TAKE FURTHER NOTICE THAT IF NO OBJECTIONS TO THE REQUEST ARE TIMELY FILED AND RECEIVED IN ACCORDANCE WITH THE INTERIM COMPENSATION ORDER, THE RELIEF REQUESTED IN THE APPLICATION MAY BE GRANTED WITHOUT FURTHER NOTICE OR HEARING.**

Dated: Wilmington, Delaware
October 12, 2026

*/s/ Laura Davis Jones*

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: 302-652-4100
ljones@pszjlaw.com
joneill@pszjlaw.com
ecorma@pszjlaw.com

*Co-Counsel to Debtors and Debtors in Possession*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
James J. Mazza, Jr.
Jennifer Madden
Claire Stephens
320 S. Canal Street
Chicago, Illinois 60606
Telephone: (312) 407-0700
James.Mazza@skadden.com
Jennifer.Madden@skadden.com
Claire.Stephens@skadden.com

*Co-Counsel to Debtors and Debtors in Possession*

# EXHIBIT A

## Rate Disclosures

# EXHIBIT A

## Rate Disclosures

| | **Debtor's Blended Billed Rate** | **Non-Bankruptcy Blended Billed Rate** |
|---|---|---|
| Partners/Of Counsel | $2,571.36 | $2,195.72 |
| Special Counsel/Counsel | $1,932.65 | $1,706.90 |
| Associates | $1,431.89 | $1,178.54 |
| Legal Assistants | $690.86 | $459.90 |
| All Others | $578.28 | $638.12 |
| **Total** | **$1,734.53** | **$1,399.76** |

# EXHIBIT B

## Staffing Plan

# EXHIBIT B

## Staffing Plan

Skadden prepared and submitted to the Debtors a budget for the Application Period consistent with the Debtors' 13-week cash flow budget and the budget requirements under the Debtors' DIP financing.

During the Application Period, the core Skadden team consisted of attorneys in the corporate restructuring, mergers and acquisitions, finance, and litigation practices, led by James J. Mazza, Jr., Jennifer Madden, Jason M. Liberi, and Destiny N. Almogue (Corporate Restructuring), Dohyun Kim (Mergers and Acquisitions), Danielle Li (Finance), and Abby Davis (Litigation). The core team consulted with attorneys in specialist practice areas, including executive compensation, labor, environmental, tax, real estate, intellectual property, and antitrust, on discrete issues as needed.

In addition, Skadden wrote off all time billed by the approximately 27 paraprofessionals who each billed less than one hour to the Chapter 11 Cases during the Application Period.

# EXHIBIT C

## Budget & Compensation Summary June 15, 2026 through August 31, 2026

# EXHIBIT C

## Budget & Compensation Summary June 15, 2026 through August 31, 2026

| Month | Budget Allocation[1] | Actual Fees Billed |
|---|---|---|
| June | $1,601,000.00 | $1,079,043.00 |
| July | $2,670,000.00 | $2,509,079.00 |
| August | $1,457,000.00 | $2,703,978.50 |
| **TOTAL** | **$5,728,000.00** | **$6,285,924.50** |

1 Skadden prepared a budget in connection with the Debtors' DIP financing, *see* Retention Application ¶ 33, which was subsequently reforecast to reflect the extended case timeline. As reforecast, Skadden projected $5,728,000.00 in fees for the Application Period. The Actual Fees Billed reflect the amounts requested in Skadden's monthly fee applications [Docket Nos. 256, 358, and 414], which total $6,292,100.50, less the amount that Skadden voluntarily reduced its fees by in this Application (an additional $6,176.00), such that the fees sought in this Application total $6,285,924.50. The total fees sought is 9.74% higher than the budgeted amount, primarily as a result of additional litigation, including with respect to the California Air Resources Board's objection to the Soda Ash Sale, and extended negotiations regarding the Sales.