**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEARLES VALLEY MINERALS INC., *et al.*, | ) | Case No. 26-10966 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related to Docket No. 449** |
| | ) | |
| | ) | **Obj. Deadline: 10/15/26 by 4:00 p.m.** |
| | ) | **Hearing Date: To Be Determined** |

**OBJECTION OF PROGRESS RAIL LEASING CORPORATION TO OMNIBUS MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) REJECT CERTAIN UNEXPIRED RAILCAR LEASES *NUNC PRO TUNC* TO THE REJECTION DATE AND (B) ABANDON CERTAIN PROPERTY AND (III) GRANTING RELATED RELIEF**

Progress Rail Leasing Corporation ("PRLC"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the Omnibus Motion of Debtors for Entry of an Order (i) Authorizing the Debtors to (a) Reject Certain Unexpired Railcar Leases *Nunc Pro Tunc* to the Rejection Date and (b) Abandon Certain Property and (iii) Granting Related Relief (Docket No. 449) (the "Rejection Motion") filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), and in support thereof, respectfully represents as follows:

## BACKGROUND

1. On June 15, 2026 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

2. Prior to the Petition Date, on or about December 15, 1993, a predecessor of PRLC and a predecessor of the Debtors, entered into a Railroad Car Net Lease Agreement, as it has been amended from time to time (collectively, the "Contract"). Pursuant to the Contract, PRLC currently leases 262 railcars (the "Railcars") to debtor Trona Railway Company LLC ("Trona").

Pursuant to Article 6 of the Contract, the Debtors are required to pay PRLC for their use of the railcars on the 1st of every month, in advance. Debtor Searles Valley Minerals Inc. ("SVMI") guaranties Trona's rental obligations to PRLC under the Contract pursuant to a Guaranty that has been amended and extended from time to time (the "Guaranty").

3. As of the Petition Date, the Debtors owed PRLC $448,020.00 for unpaid invoices and rental charges due under the Contract for the period January of 2026 through June of 2026. Of the foregoing amount, $37,380.00 relates to rental charges due from the Petition Date through June 30, 2026, which is entitled to post-petition administrative expense claim priority.

4. During these bankruptcy cases, the Debtors paid for their lease and use of the Railcars for the months of July, August, and September while they were deciding whether to assume, assume and assign or reject the Contract. At the Debtors' request, on or about August 17, 2026, PRLC and the Debtors entered into a Stipulation Regarding Section 1168(b) Extension (the "Stipulation"), pursuant to which the parties stipulated that the Railcars and any records and documents relating to the Railcars, were "rolling stock equipment" as that term is used in section 1168(a)(2)(A) of the Bankruptcy Code. In addition, pursuant to the Stipulation and section 1168(b) of the Bankruptcy Code, PRLC agreed to an extension of the Debtors' time within which to comply with Section 1168(a) of the Bankruptcy Code, through and including September 30, 2026. The Court entered an order that approved the Stipulation on or about August 18, 2026 (Docket No. 286).

5. Ultimately, the Debtors sold substantially all of their assets to 5E SVM, LLC, TATA Chemicals North America Inc., 5E Advanced materials, Inc. and Nirma Limited (collectively, the "Purchaser"), which sale closed on October 1, 2026 (*see* Rejection Motion, ¶ 9, at 4). Apparently, the Purchaser decided that it did not want the Contract to be assumed and

assigned by the Debtors to Purchaser. Accordingly, on or about October 1, 2026, the Debtors filed the Rejection Motion.

6. In the Rejection Motion, the Debtors request that they be permitted to reject the Contract, effective as of September 30, 2026 (the "Proposed Rejection Effective Date"), which appears to be the day before the Debtors closed on their sale of assets to Purchaser. However, the Railcars remain in the possession of the Debtors and/or the Purchaser and PRLC currently has no idea where all of the Railcars are located. In addition, in the Rejection Motion, the Debtors state that they may have customized the Railcars with all types of equipment (*see* Rejection Motion, ¶ 14, at 5), and the Debtors request to abandon any equipment that may remain in the Railcars (*id.*, at 6). Finally, the Debtors request in the Rejection Motion that PRLC be entitled to and required to retrieve its Railcars although not until after an order approving the Rejection Motion is entered by the Court (*id.*, ¶ 25, at 11).

## OBJECTION AND BASIS THEREFOR

7. First and foremost, the Court should deny the Debtors' request in the Rejection Motion to set the effective rejection date of the Contract as the Proposed Rejection Effective Date of September 30, 2026. Although PRLC will concede that bankruptcy courts have in the past permitted retroactive rejection under certain circumstances, PRLC submits that the circumstances for retroactive rejection do not exist in this case.

8. Importantly, as stated previously, the Railcars currently remain in the possession of the Debtors and/or the Purchaser and PRLC has no idea where the Railcars are currently located. Typically, when retroactive rejection is allowed, it is because the debtor has already surrendered possession of the premises or the property to the non-debtor third party,[1] which has not occurred

[1] *See generally,* In re Namco Cybertainment, Inc., Case No. 98-00173 (PJW) (Bankr. D. Del. Transcript from Hearing held on April 15, 1998; Docket No. 245).

in this case. Moreover, the Debtors' request in the Rejection Motion that the rejection of the Contract be retroactively effective and that PRLC be required to pay for the retrieval of its Railcars, flies directly in the face of the plain language contained in section 1168(c) of the Bankruptcy Code.

9. The Debtors have already stipulated that section 1168 of the Bankruptcy Code applies to the Railcars.[2] Section 1168(c) plainly and clearly provides that debtors must immediately surrender **and return** to a lessor any equipment covered by section 1168(a) if the debtor has not cured all defaults within the time prescribed in section 1168(a) of the Bankruptcy Code. PRLC hereby makes a written demand regarding its right to possess the Railcars and PRLC hereby demands that the Debtors and/or their estates pay for the return of the Railcars to PRLC, as required by the plain language contained in section 1168(c) of the Bankruptcy Code. Given the language contained in section 1168(c) of the Bankruptcy Code, PRLC submits that it would be wholly inequitable to instead force PRLC to incur the costs necessary to track down each of the Railcars and then incur the expense necessary in order to return the Railcars to PRLC's possession. As an alternative, and only if the Debtors can first guaranty that any chapter 11 administrative expense claim held by PRLC will be paid in full, at a minimum, PRLC should have an allowed administrative expense claim for any and all costs it must incur in order to track down and return the Railcars so that they are in PRLC's possession.[3]

10. In addition, although PRLC recognizes that the Debtors have a general right to abandon burdensome property of the estate under section 554 of the Bankruptcy Code, courts have generally held that debtors are NOT permitted to abandon property in contravention of a state

---

[2] *See* Stipulation, a copy of which is attached as an exhibit to Docket No. 286.

[3] *See, e.g.,* In re Republic Airways Holdings Inc., 547 B.R. 578, 586 (Bankr. S.D.N.Y. 2016) (in the context of section 1110 of the Bankruptcy Code, which addresses aircraft equipment but is worded very similar to section 1168 of the Bankruptcy Code, the court held that although the Court would not require the debtors to return the aircraft and related equipment in a particular condition for surrender and return, the court also would not foreclose any claim made by the lessor for costs associated with the surrender and return).

statute or regulation that is reasonably designed to protect the public health or safety from hazardous materials.[4] Due to the Debtors' lack of specificity regarding the types of equipment or materials that may be currently located in the Railcars, and given that PRLC currently has no way to determine what is contained in the Railcars before they are returned to PRLC and/or what condition each of the Railcars may be in, PRLC submits that the Debtors' request to generally abandon everything within the Railcars be denied and/or modified at this time.

11. In addition, the proposed order that the Debtors submitted along with the Rejection Motion provides that if lessors of the railcars fail to remove their railcars within 45 days after entry of the order, the disposal costs may be charged to such lessors (*see* proposed order attached to the Rejection Motion, ¶5, at 3). However, typically when a debtor abandons property under section 554 of the Bankruptcy Code, whomever owns the premises where the abandoned property is located, is the party that is forced to incur any disposal costs. Neither the Debtors nor the Purchaser have set forth any grounds or basis as to why the order granting the Rejection Motion should be permitted to manufacture a right or action that permits the Debtors or the Purchaser to be able to collect from the lessors any disposal costs for the rejected and abandoned railcars in instances when the lessors may have also deemed that the property is too burdensome to retrieve and remove. This portion of the proposed order for the Rejection Motion should be stricken in its entirety.

12. Lastly, PRLC hereby reserves any and all rights it has to: (i) further object to the requested abandonment of equipment or materials in the Railcars if any of such equipment or materials constitute hazardous materials and/or request that the Debtors and their estates be responsible for removing all such hazardous materials, and (ii) assert a post-petition administrative

---

[4] *See generally,* Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 507 (1986)

expense claim if the Railcars are damaged and all or some of the damage may have occurred post-petition.

WHEREFORE, for all of the foregoing reasons, PRLC respectfully requests that the Court deny the Rejection Motion with respect to PRLC and the Contract, but also requests that if the Court is inclined to grant the Rejection Motion, that any such order entered by the Court (a) mandate that the Debtors immediately arrange for and pay for the return of the Railcars to PRLC, (b) preserves PRLC's rights to further object to the proposed abandonment of any equipment or materials in the Railcars after the Railcars are returned to PRLC and PRLC can inspect same, (c) preserves PRLC's rights to assert against the Debtors a post-petition administrative expense claim until a minimum of sixty (60) days after the Debtors have returned the Railcars to PRLC, (d) strikes paragraph 5 from the proposed order for the Rejection Motion, and (e) grants PRLC such other and further relief as is just and proper.

Dated: October 15, 2026

**CONNOLLY GALLAGHER LLP**

*/s/ Karen C. Bifferato*
Karen C. Bifferato (#3279)
1201 N. Market Street, 20th Floor
Wilmington, DE 19801
Telephone: (302) 757-7300
Email: kbifferato@connollygallagher.com

*Attorneys for Progress Rail Leasing Corporation*

#2032143