**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SEARLES VALLEY MINERALS INC.[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-10966 (BLS)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: Nov. 9, 2026 at 4:00 p.m.**<br>**Hearing Date: Nov. 23, 2026 at 10:30 a.m.** |

**INFINITY TRANSPORTATION 2020-1, LLC AND INFINITY TRANSPORTATION 2024, LLC'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM FOR POST-PETITION USE OF LEASED EQUIPMENT**

NOW COMES Infinity Transportation 2020-1, LLC and Infinity Transportation 2024, LLC (collectively, "Infinity'), by and through their undersigned counsel, and move this Court pursuant to 11 U.S.C. §§ 503(a) and 503(b)(1)(A) for entry of an order allowing Infinity an administrative expense claim in the amount of at least $42,050.33 (the "Motion"). In support, Infinity states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

## II. FACTUAL BACKGROUND

### A. Trona Operates Railways to Assist SVM's Plant

2. Debtor Searles Valley Minerals Inc. ("SVM") is a raw materials mining and production company whose principal asset is a chemical and mineral processing plant located in Trona, California. At this plant, SVM produces, among other things, borax, boric acid and soda ash.

3. Debtor Trona Railway Company LLC ("Trona") is a railway company that operates a 30.5 mile short-line railroad in Trona, California. Trona's railway is used to haul those commodities (*e.g.*, soda ash and boron) that are produced by SVM's plant to a nearby railroad interchange. SVM is the managing member of Trona.

4. To effectively operate its railway and haul SVM's commodities, Trona leased hundreds of railcars for use on its railway. Trona entered into two leases in 1993 for railcars (the "Infinity Railcars"). Both of those leases were subsequently assigned to Infinity. (Declaration of Jonathan Kantor (the "Kantor Declaration"), attached hereto as Exhibit 1, ¶ 3.)

### B. The Leases

5. The first lease was created by a Railroad Car Net Lease Agreement dated March 31, 1993 (the "March 1993 Lease"), entered into between Trona and General Electric Railcar Leasing Services Corporation ("General Electric"). A copy of the March 1993 Lease is attached as Exhibit A to the Kantor Declaration. (Kantor Decl., ¶ 4.)

6. The March 1993 Lease concerned 618 railcars rented at a rate of $383.00 per month per car, as stated in the March 1993 Lease's Rider No. 1. Since its execution, the March 1993 Lease and its rider have been amended on several occasions to reflect the assignment of the March 1993 Lease, as well as its changing rental terms.

7. The March 1993 Lease was assigned by General Electric to The CIT Group/Equipment Financing, Inc. ("CIT") in or around 2004. Then, on or around September 10, 2021, CIT assigned the March 1993 Lease to Infinity. Following this assignment, Infinity was Trona's lessor under the March 1993 Lease. (Kantor Decl., ¶ 5.)

8. After the most recent amendment to the March 1993 Lease's rider, entered into on March 7, 2025, Trona leased railcars from Infinity at a rate of $375.00 per month. (Kantor Decl., ¶ 6.)

9. Trona's second lease with Infinity originates from a Railroad Car Net Lease Agreement dated December 15, 1993 (the "December 1993 Lease" and together with the March 1993 Lease, the "Leases"), entered into between General Electric and The Hutchinson & Northern Railway Company ("H&N"). A copy of the December 1993 Lease is attached as Exhibit B to the Kantor Declaration. (Kantor Decl., ¶ 7.)

10. At the time the December 1993 Lease was executed, it concerned 950 cars leased at a monthly rate of between $444.00 and $484.00 per month per car, as described in the December 1993 Lease's Rider No. 1. Since its execution, the December 1993 Lease and its rider have been amended on several occasions to reflect the assignment of the December 1993 Lease, as well as its changing rental terms.

11. On or around January 1999, the December 1993 Lease was assigned by General Electric to CIT. Then, in 2004, H&N wished to assign its rights in the leased railcars to Trona. Accordingly, on or around January 31, 2004, H&N, Trona, and CIT, among others, entered into an Assignment, Assumption of Obligations and Amendment to Lease (the "H&N Assignment Agreement"), whereby CIT consented to H&N's assignment of its leased railcars to Trona. Following the H&N Assignment Agreement, Trona was the lessee under the December 1993 Lease.

12. On or around September1, 2016, CIT assigned the December 1993 Lease to CIT Bank, N.A. ("CIT Bank"). In or around January 2022, CIT Bank and its parent company merged with First-Citizens Bank & Trust Company ("First Citizens Bank"), causing the December 1993 Lease to be held by First Citizens Bank. Finally, on or around December 16, 2024, First Citizens Bank assigned the December 1993 Lease to Infinity. Following this assignment, Infinity was Trona's lessor under the December 1993 Lease. (Kantor Decl., ¶ 8.)

13. After the most recent amendment to the December 1993 Lease's rider, entered into on August 25, 2021, Trona leased railcars from Infinity at a rate of $395.00 per month. (Kantor Decl., ¶ 9.)

14. The underlying content of the Leases is substantially the same. (Kantor Decl., ¶ 10.)

15. The Leases (and their riders) each set rent to be charged at a monthly rate per railcar. Accordingly, Infinity consistently invoiced Trona monthly for the rent owed under both Leases. (Kantor Decl., ¶ 11.)

**C. Bankruptcy Filings and Status of Infinity Railcars**

16. On June 15, 2026 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

17. On July 7, 2026, the Court entered its *Order (I) Authorizing the Debtor to (A) Reject Certain Unexpired Railcar Leases Nunc Pro Tunc and (B) Abandon Certain Property and (II) Granting Related Relief* (the "Lease Rejection Order") [Dkt. No. 145]. Among other things, the Lease Rejection Order rejected the Leases effective as of the Petition Date. (Lease Rejection Order, ¶ 2.)

18. Infinity obtained tracing information for the Infinity Railcars from railroad industry car tracking systems, which show continuous use of the Infinity Railcars after the Petition Date. Based on an analysis of the information obtained from the tracking systems, Infinity has determined that 42 Infinity Railcars subject to the March 1993 Lease were in use by the Debtors after the Petition Date and 72 Infinity Railcars subject to the December 1993 Lease were in use by the Debtors after the Petition Date. (*See* Kantor Decl., ¶¶ 12-13 & Ex. C.) In total, 114 Infinity Railcars were used by the Debtors after the Petition Date. (Kantor Decl., ¶¶ 12, 14 & Ex. C.)

19. On any given day since the Petition Date, the Infinity Railcars were utilized – they were continuously loaded with a commodity or were in transit or unloaded on another railroad other than the railroad associated with Trona. (Kantor Decl., ¶ 15.)

20. The Car Marks, Numbers, and number of days used post-petition for the 42 Infinity Railcars subject to the March 1993 Lease used post-petition (the "March 1993 Infinity Railcars") are as follows:

| **Mark** | **Number** | **Days Used Post-Petition** |
|---|---|---|
| DGHX | 3334 | 17 |
| DGHX | 3347 | 24 |
| DGHX | 3347 | 15 |
| DGHX | 3349 | 17 |
| DGHX | 3354 | 13 |
| DGHX | 3354 | 54 |
| DGHX | 3366 | 32 |
| DGHX | 3366 | 9 |
| DGHX | 3385 | 8 |
| DGHX | 3385 | 24 |

| **Mark** | **Number** | **Days Used Post-Petition** |
|---|---|---|
| DGHX | 3394 | 38 |
| DGHX | 3412 | 21 |
| DGHX | 3414 | 38 |
| DGHX | 3416 | 38 |
| DGHX | 3416 | 18 |
| DGHX | 3425 | 100 |
| DGHX | 3440 | 17 |
| DGHX | 3452 | 18 |
| DGHX | 3456 | 32 |
| DGHX | 3465 | 32 |
| DGHX | 3474 | 33 |
| DGHS | 3483 | 9 |
| DGHX | 3496 | 29 |
| DGHX | 3512 | 65 |
| DGHX | 3514 | 31 |
| DGHX | 3523 | 38 |
| DGHX | 3531 | 33 |
| DGHX | 3541 | 14 |
| DGHX | 3542 | 39 |
| DGHX | 3542 | 19 |
| DGHX | 3546 | 33 |
| DGHX | 3554 | 29 |

| **Mark** | **Number** | **Days Used Post-Petition** |
|---|---|---|
| DGHX | 3571 | 65 |
| DGHX | 3585 | 39 |
| DGHX | 3585 | 19 |
| DGHX | 3625 | 33 |
| DGHX | 3639 | 39 |
| DGHX | 3639 | 19 |
| DGHX | 3645 | 39 |
| DGHX | 3645 | 19 |
| DGHX | 3649 | 39 |
| DGHX | 3647 | 22 |
| **Total Days** | | 1,270 |

(Kantor Decl., ¶ 12 & Ex. C.)

21. Based on the tracing data in Infinity's possession, at a monthly rate of $375 per railcar, the rent owed for the period in which the March 1993 Infinity Railcars were used post-petition totals $15,875. Had Trona paid the Holdover Rate under the March 1993 Lease (i.e., the amount to which Infinity would be entitled due to Trona holding over the Infinity Railcars beyond the terminate date, calculated at 1.5 times the standard contract rate), the total amount owing to Infinity would have been $23,812.50. (Kantor Decl., ¶ 16 & Ex. C.)

22. The Car Marks, Numbers, and number of days used post-petition for the 72 Infinity Railcars subject to the December 1993 Lease used post-petition (the "December 1993 Infinity Railcars") are as follows:

| **Mark** | **Number** | **Days Used Post-Petition** |
|---|---|---|
| AJPX | 6512 | 10 |
| AJPX | 6518 | 4 |
| AJPX | 6523 | 11 |
| AJPX | 6531 | 26 |
| AJPX | 6532 | 12 |
| AJPX | 6534 | 18 |
| AJPX | 6537 | 45 |
| AJPX | 6552 | 94 |
| AJPX | 6554 | 39 |
| AJPX | 6558 | 18 |
| AJPX | 6558 | 16 |
| AJPX | 6559 | 28 |
| AJPX | 6569 | 39 |
| AJPX | 6569 | 17 |
| AJPX | 6573 | 17 |
| AJPX | 6574 | 21 |
| AJPX | 6575 | 18 |
| AJPX | 6576 | 19 |
| AJPX | 6577 | 25 |
| AJPX | 6578 | 21 |
| AJPX | 6579 | 20 |
| AJPX | 6588 | 34 |

| Mark | Number | Days Used Post-Petition |
|---|---|---|
| AJPX | 6590 | 38 |
| AJPX | 6591 | 58 |
| AJPX | 6591 | 11 |
| AJPX | 6605 | 26 |
| AJPX | 6610 | 38 |
| AJPX | 6612 | 17 |
| AJPX | 6612 | 35 |
| AJPX | 6617 | 65 |
| AJPX | 6619 | 12 |
| AJPX | 6621 | 29 |
| AJPX | 6622 | 17 |
| AJPX | 6623 | 29 |
| AJPX | 6624 | 13 |
| AJPX | 6625 | 34 |
| AJPX | 6631 | 13 |
| AJPX | 6637 | 65 |
| AJPX | 6641 | 29 |
| AJPX | 6642 | 34 |
| AJPX | 6643 | 19 |
| AJPX | 6648 | 27 |
| AJPX | 6648 | 8 |
| AJPX | 6651 | 24 |

| **Mark** | **Number** | **Days Used Post-Petition** |
|---|---|---|
| AJPX | 6652 | 22 |
| AJPX | 6652 | 9 |
| AJPX | 6654 | 20 |
| AJPX | 6661 | 34 |
| AJPX | 6663 | 17 |
| AJPX | 6666 | 36 |
| AJPX | 6667 | 23 |
| AJPX | 6670 | 32 |
| AJPX | 6677 | 22 |
| AJPX | 6678 | 3 |
| AJPX | 6681 | 25 |
| AJPX | 6683 | 22 |
| AJPX | 6688 | 16 |
| AJPX | 6699 | 39 |
| AJPX | 6699 | 32 |
| AJPX | 6712 | 32 |
| AJPX | 6720 | 28 |
| AJPX | 6723 | 24 |
| AJPX | 6725 | 21 |
| AJPX | 6730 | 45 |
| AJPX | 6734 | 26 |
| AJPX | 6738 | 53 |

| **Mark** | **Number** | **Days Used Post-Petition** |
|---|---|---|
| AJPX | 6739 | 16 |
| AJPX | 6741 | 53 |
| AJPX | 6742 | 24 |
| AJPX | 6746 | 39 |
| AJPX | 6746 | 17 |
| AJPX | 6747 | 65 |
| **Total Days** | | 1,988 |

(Kantor Decl., ¶ 12 & Ex. C.)

23. Based on the tracing data in Infinity's possession, at a monthly rate of $395 per railcar, the rent owed for the period in which the December 1993 Infinity Railcars were used post-petition totals $26,175.33. Had Trona paid the Holdover Rate under the December 1993 Lease, the total amount owing to Infinity would have been $39,263. (Kantor Decl., ¶ 17 & Ex. C.)

24. The rent owed for the period in which all of the Infinity Railcars were used post-petition totals $42,050.33. Had Trona paid the Holdover Rate under both Leases, the total amount owing to Infinity would have been $63,075.50. (Kantor Decl., ¶ 18 & Ex. C.)

## III. LEGAL ARGUMENT

### A. Pursuant to 11 U.S.C. § 503(b)(1)(A), Infinity is Entitled to an Administrative Expense Claim for Debtors' Post-Petition Use of the Infinity Railcars

25. Section 503(a) permits an entity to file a request for payment of an administrative expense. The Debtors continue to utilize the Infinity Cars post-petition. Administrative expense motions under section 503(b)(1) govern damages sustained after the Petition Date unless a lease or executory contract is not assumed or rejected within sixty days thereafter. The Debtors rejected the Leases on July 7, 2026, within sixty days of the Petition Date. Thus, the amounts due to Infinity

based upon the Debtors' post-petition use of the Infinity Railcars should be classified as an administrative expense claim. *See In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 479 (Bankr. D. Del. 2006).

26. Section 503 of the Bankruptcy Code provides administrative expense priority to "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). "An administrative expense claim is entitled to priority under Section 503(b)(1)(A) if: (1) there was a 'post-petition transaction between the claimant and the estate,' and (2) those expenses yielded a 'benefit to the estate.'" *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) (internal citations and quotations omitted). *See also In re Res. Tech. Corp.*, 254 B.R. 215, 221 (N.D. Ill. 2000) ("During the period prior to assumption or rejection of an executory contract or unexpired lease, the estate must pay the reasonable value of any contractual benefits the estate receives during that period, as an administrative expense."). "If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984). Moreover, where a debtor rejects a lease but continues to utilize the equipment subject to the lease post-rejection, the lessor is entitled to an administrative expense claim under 11 U.S.C. § 503(b). *See In re Int'l Ventures*, 215 B.R. 726, 728 (Bankr. E.D. Ark. 1997) ("In the post-rejection period . . . an administrative claimant must demonstrate a tangible benefit to the estate."); *In re Williams Contract Furniture, Inc.*, 148 B.R. 799, 804 (Bankr. E.D. Va. 1992) ("once a lease is rejected, . . . if the debtor remains in possession by failing to vacate the premises, the estate becomes liable to the lessor for an administrative expense claim arising from the benefit accruing to the estate for the continued use of the estate"). The Debtors have used the Infinity Railcars both prior to and after the entry of the Lease Rejection Order, yet Infinity has not received any post-petition

payments for the use of the Infinity Railcars. Therefore, Infinity is entitled to an administrative expense claim from the Debtors' bankruptcy estates pursuant to 11 U.S.C. §§ 503(a) and 503(b)(1)(A).

27. First, a pre-petition lease, like the Leases here, can be properly considered to be a transaction with a debtor in possession.

> Appellants argue that Premium cannot establish a prima facie case necessary to claim an administrative expense because a preexisting lease cannot be considered a transaction with a debtor-in-possession. This Court disagrees. Case law throughout the country indicates that administrative claims are routinely asserted based on equipment leases existing pre-petition.

*Kimzey v. Premium Casing Equip., LLC*, No. 16-CV-01490, 2018 U.S. Dist. LEXIS 42744, at *12 (W.D. La. Mar. 14, 2018). *See also Goody's Family Clothing, Inc. v. Mountaineer Property Co. II, LLC (In re Goody's Family Clothing, Inc.)*, 401 B.R. 656, 671 (D. Del. 2009) ("the weight of authority clearly supports permitting administrative expense claims for post-petition rent on pre-petition leases").

28. Second, the Debtors continued to utilize the Infinity Railcars in their business operations for their benefit post-petition, even after the Leases were rejected. "The claimant need not prove that the property was put to its highest and best use; instead, the claimant need only show that the property was actually used by the debtor in the ordinary course of business." *In re Garden Ridge Corp.*, 323 B.R. 136, 142 (Bankr. D. Del. 2005). "The benefit does not . . . 'have to be substantial' to qualify" as an administrative claim. *In re Energy Future Holdings Corp.*, 990 F.3d at 742 (internal citations omitted). *See also In re Shreyas Hospitality, LLC*, No. 09-70523, 2010 Bankr. LEXIS 2074, at *16 (Bankr. C.D. Ill. July 15, 2010) ("'Benefit' in the context of an administrative expense claim is akin to 'use' not 'profit.'") (internal citations omitted); *In re John's Meat Emporium, Inc.*, 176 B.R. 700, 707 (Bankr. E.D.N.Y. 1995) (stating that "[i]t is abundantly clear to this Court that the use of the vans directly benefitted the Debtor by allowing it to carry on

its business of retailing meat products" and finding that vehicle lessor was entitled to administrative expense for the vehicles that debtor-in-possession used without payment).

29. Finally, the amount of Infinity's administrative expense claim for post-petition rent is presumptively governed by the rates set forth in the Leases. "As for leased property, most courts take the position that the rent specified in the lease itself is the presumed reasonable value of the property to the debtor-in-possession." *In re Raymond Cosstte Trucking, Inc.*, 231 B.R. 80, 85 (Bankr. D.N.D. 1999); *In re Pettingill Enters.*, 486 B.R. 524, 533 (Bankr. D.N.M. 2013) ("There is presumption that the contractual rate is the reasonable value of the goods or services provided to the estate under Section 503(b) . . . . This presumption can be rebutted if the debtor introduces convincing evidence to the contrary.") (internal citation omitted). "In the absence of evidence to the contrary, it is presumed that the contract rate is the fair rental value." *In re Garden Ridge Corp.*, 323 B.R. at 142. *See also In re N-Ren Corp.*, 68 B.R. 404, 407 (Bankr. S.D. Ohio 1986) ("While a debtor is only required to pay for actual usage of leased property as an administrative expense, it does not seem fair to us that it be able to arrive at an appropriate rate for such compensation on a bargain basement basis.").

30. For the period between the Petition Date and September 29, 2026, the date the last Infinity Railcar was emptied and returned to Infinity's possession, Infinity is entitled to receive outstanding rents of $42,050.33, which represents the monthly contractual rate of each of the Infinity Railcars in the Leases prorated based on the number of days each Infinity Railcar was actually used following the Petition Date. (*See* Kantor Decl., ¶ 19.) *See In re Climax Chem. Co.*, 167 B.R. 665 (Bankr. D.N.M. 1994) ("[T]his Court finds . . . that the freight services supplied by the Railroads benefitted the estate by facilitating the operation of the Debtor's business."). This is more than $20,000 less than the amount that Infinity would have otherwise been entitled to under

the Leases had the rent for the Infinity Railcars been paid at the Holdover Rate. (*See* Kantor Decl., ¶ 18.)

### B. <u>Infinity Reserves the Right to Seek an Additional Administrative Expense Claim</u>

31. Infinity reserves the right to seek an administrative expense claim for any damages to the Infinity Railcars that occurred or will occur post-petition. "[A] number of courts have held that [repair costs associated with a debtor's post-petition use of leased equipment] are entitled to administrative priority under Section 503(b) . . . [t]he Court agrees that repair costs stemming from [the debtor-in-possession]'s post-petition damage to the equipment, if any, should be treated as an administrative expense." *In re Pettingill Enters.*, 486 B.R. at 535-36.

32. Infinity also reserves the right to seek an administrative expense claim for freight, return, clean-up, and other charges relating to the Infinity Railcars.

## IV. <u>CONCLUSION</u>

WHEREFORE, Infinity respectfully requests that the Court grants its Motion and enter an Order (1) directing the Debtors to pay Infinity $42,050.33 for their use of the Infinity Railcars from the Petition Date through September 29, 2026, which constituted an actual, necessary cost and expense of preserving the Debtors' bankruptcy estates pursuant to 11 U.S.C. §§ 503(a) and 503(b)(1)(A); and (2) granting such other and further relief as the Court deems just and proper.

Dated: October 21, 2026

*<u>/s/ Nicholas J. Brannick</u>*

**BALLARD SPAHR LLP**
Nicholas J. Brannick (DE No. 5721)
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Telephone: (302) 252-4464
Email: brannickn@ballardspahr.com

*-and-*

**PARKER, HUDSON, RAINER & DOBBS LLP**
Matthew M. Weiss (*pro hac vice* application forthcoming)
303 Peachtree Street, Suite 3600

Atlanta, GA 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
Email: mweiss@phrd.com

*Counsel for Infinity Transportation 2020-1, LLC and Infinity Transportation 2024, LLC*