**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 (BLS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket Nos. 483, 488** |

**NOTICE OF FILING OF PLAN SUPPLEMENT FOR THE AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF SEARLES VALLEY MINERALS, INC. AND ITS DEBTOR AFFILIATES**

**PLEASE TAKE NOTICE** that on October 15, 2026, the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed the *Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Searles Valley Minerals, Inc. and its Debtor Affiliates* [Docket No. 483] (as may be further amended, modified, or supplemented, the "Combined Disclosure Statement and Plan") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[2]

**PLEASE TAKE FURTHER NOTICE** that on October 15, 2026, the Bankruptcy Court entered the *Order (I) Granting Conditional Approval of the Disclosures; (II) Scheduling a Combined Hearing to Consider Final Approval of the Disclosures and Confirmation of the Plan, and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* [Docket No. 488] (the "Solicitation Procedures Order").

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "Combined Hearing") to consider, among other things, (i) final approval of the Combined Disclosure Statement and Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and (ii) confirmation of the Combined Disclosure Statement and Plan will be held before the Honorable Brendan Linehan Shannon, in the United States Bankruptcy Court for the District of

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Minerals Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Combined Disclosure Statement and Plan.

Delaware, 824 N. Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801, on **November 23, 2026 at 10:30 a.m. (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that the Combined Hearing may be adjourned from time to time by the Bankruptcy Court or the Debtors without further notice, other than by such adjournment being announced in open court or by a notice of adjournment being filed with the Bankruptcy Court and served on parties entitled to such notice.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Solicitation Procedures Order and the Combined Disclosure Statement and Plan, the Debtors hereby file the following documents as part of this plan supplement (the "Plan Supplement"):

| Exhibit | Plan Supplement Document |
|---|---|
| **A** | **GUC Liquidating Trust Agreement** |
| **A-1** | **Identity and Terms of Compensation of the GUC Liquidating Trustee and GUC Oversight Board** |
| **B** | **Wind-Down Trust Agreement** |
| **B-1** | **Identity and Terms of Compensation of the Wind-Down Trustee and Wind-Down Trust Oversight Board** |
| **C** | **Retained Causes of Action** |
| **D** | **Assumption Schedule** |

**PLEASE TAKE FURTHER NOTICE** that the documents, schedules, and other information contained in the Plan Supplement are integral to and comprise part of the Combined Disclosure Statement and Plan.

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement have not yet been approved by the Bankruptcy Court. If the Combined Disclosure Statement and Plan is approved, the documents in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Combined Disclosure Statement and Plan.

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement are not final and, accordingly, remain subject to change. The Debtors reserve all rights to amend, supplement, or modify the Plan Supplement, and any of the documents contained therein, in accordance with the terms of the Combined Disclosure Statement and Plan. If material amendments or modifications are made to any of these documents, the Debtors will file a redline with the Bankruptcy Court of such changes.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan Supplement, the Combined Disclosure Statement and Plan, and the Solicitation Procedures Order are available free of charge at Debtors' restructuring website at: https://cases.stretto.com/svm. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov.

[***Remainder of Page Intentionally Left Blank***]

Dated: Wilmington, Delaware
November 9, 2026

*[/s/ Laura Davis Jones](#)*

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: 302-652-4100
ljones@pszjlaw.com
joneill@pszjlaw.com
ecorma@pszjlaw.com

*Co-Counsel to Debtors and Debtors in Possession*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
James J. Mazza, Jr. (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
Claire Stephens (admitted *pro hac vice*)
320 S. Canal Street
Chicago, Illinois 60606
Telephone: (312) 407-0700
James.Mazza@skadden.com
Jennifer.Madden@skadden.com
Claire.Stephens@skadden.com

*Co-Counsel to Debtors and Debtors in Possession*

# EXHIBIT A

## GUC Liquidating Trust Agreement

# LIQUIDATION TRUST AGREEMENT

This Liquidation Trust Agreement is made as of the Effective Date (defined below), by and between Searles Valley Minerals, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**"), and SVM Liquidation Trust Co. LLC, a Delaware limited liability company, as trustee (the "**Liquidation Trustee**").

## RECITALS

WHEREAS, on June 15, 2026 (the "**Petition Date**"), the Debtors filed voluntary petitions for bankruptcy under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), thereby commencing chapter 11 bankruptcy cases jointly administered as Case No. 26-10966-BLS (Jointly Administered); and

WHEREAS, on October 15, 2026, the Debtors filed the *Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Searles Valley Minerals, Inc. and its Debtor Affiliates* [D.I. 483] (as may be amended, modified or supplemented from time to time and together with all Plan Supplements, the "**Plan**");[1] and

WHEREAS, the Plan was confirmed by the Bankruptcy Court by Order entered on [●] (the "**Confirmation Order**"); and

WHEREAS, the Plan's Effective Date occurred on [●] (the "**Effective Date**"); and

WHEREAS, the Plan contemplates, on the Effective Date, (a) the creation of a liquidation trust (the "**Liquidation Trust**") and (b) the creation of beneficial interests in the Liquidation Trust of holders of Allowed Claims in Class 4 (General Unsecured Claims) of the Plan (collectively, the "**Beneficiaries**" and, each individually, a "**Beneficiary**") and the transfer to the Liquidation Trust

[1] Capitalized terms not defined herein have the meanings given to them in the Plan.

of the following: (i) the $3.0 million in funding provided in the Going Concern Purchase Agreement as consideration for the Sellers Nirma Release (the "**Trust Funds**"); (ii) the GUC Chapter 5 Actions (collectively, the "**Causes of Action**,"); and (iii) the Extended Committee Budget Savings, if any (together with the Trust Funds and the Causes of Action, collectively, the "**Trust Assets**");

WHEREAS, the Trust Assets are to be liquidated and distributed to the Beneficiaries, as set forth in the Plan; and

WHEREAS, the Plan contemplates that the Liquidation Trust shall be created for the sole benefit of the Beneficiaries, with the primary purpose of liquidating the Trust Assets in an expeditious but orderly manner for the benefit of the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidation Trust and the Plan; and

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I

## DECLARATION OF TRUST

**A. Creation and Purpose of the Liquidation Trust**. The Debtors and the Liquidation Trustee hereby create the Liquidation Trust for the primary purpose of liquidating and distributing the Trust Assets to the Beneficiaries in accordance with the Plan, the Confirmation Order, and applicable tax statutes, rules and regulations, and in an expeditious but orderly manner, with no objective to continue or engage in the conduct of a trade or business. In particular, the Liquidation

Trustee shall make timely distributions and not unduly prolong the duration of the Liquidation Trust.

**B. Declaration of Trust**. In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Debtors and the Liquidation Trustee have executed this Liquidation Trust Agreement and, effective on the Effective Date, the Debtors hereby irrevocably transfer to the Liquidation Trust, all of the right, title and interests of the Debtors in and to the Trust Assets, to have and to hold unto the Liquidation Trust and its successors and assigns forever, under and subject to the terms of the Plan and the Confirmation Order for the benefit of the Beneficiaries and their successors and assigns as provided for in this Liquidation Trust Agreement and in the Plan and Confirmation Order.

**C. Vesting of Trust Assets**. As of the Effective Date and upon execution of this Agreement, the Trust Assets shall be vested in the Liquidation Trust pursuant to the terms of the Plan and the Confirmation Order, subject to the rights and interests of the Liquidation Trust's beneficiaries.

**D. Transfer of Trust Assets**. Pursuant to Bankruptcy Code section 1141, the Plan, and the Confirmation Order, the transfer of the Trust Assets to the Liquidation Trust is made free and clear of all Claims, Interests, Liens, or other encumbrances of any kind. Upon completion of the transfer of the Trust Assets to the Liquidation Trust, the Debtors will have no further interest in, or with respect to, the Trust Assets, or the Liquidation Trust, and neither the Debtors nor the Wind-Down Debtors shall have no further duties or responsibilities in connection with the implementation of the Plan as it relates to the Liquidation Trust. For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Wind-Down Trustee, the Liquidation Trustee, and the Beneficiaries) will treat the transfer of assets to the Liquidation Trust

in accordance with the terms of the Plan, as a transfer to the Beneficiaries, followed by a transfer by the Beneficiaries to the Liquidation Trust in exchange for the Liquidation Trust interests; provided, however, that the Trust Assets will be subject to any post-Effective Date obligations incurred by the Liquidation Trust relating to monetizing Trust Assets, reconciling Claims and making Distributions. The foregoing treatment shall apply, to the extent permitted by applicable law, for state and local income tax purposes. All Trust Assets shall, pursuant to the provisions of the Plan and Confirmation Order, conclusively be deemed to have been delivered to the Liquidation Trust free and clear of Claims, Interests, Liens, or other encumbrances of any kind, except the Allowed Claims of the Beneficiaries. On the Effective Date, all privileges with respect to any of the Trust Assets, including the attorney/client privilege, to which the Debtors are entitled shall be automatically vested in, and available for assertion by or waiver on behalf of the Liquidation Trust. To the extent any of the foregoing does not automatically occur on the Effective Date or is not effectuated through the Confirmation Order or this Agreement, the Debtors shall, on the Effective Date, execute such other and further documents as are reasonably necessary to effectuate all of the foregoing.

**E. Funding of the Trust**. The Liquidation Trust shall be funded with the Trust Assets.

**F. Acceptance by Liquidation Trustee**. The Liquidation Trustee hereby accepts the trust imposed upon it by this Liquidation Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Liquidation Trust Agreement, the Plan, and the Confirmation Order. In connection with and in furtherance of the purposes of the Liquidation Trust, the Liquidation Trustee hereby accepts the transfer of the Trust Assets.

**G. Name of the Liquidation Trust**. The Liquidation Trust established hereby shall be known as the "**The SVM Liquidation Trust**."

## ARTICLE II
## THE LIQUIDATION TRUSTEE

**A.** **Appointment**. The Liquidation Trustee has been selected pursuant to the provisions of the Plan. The Liquidation Trustee's appointment shall continue until the earlier of: (a) the termination of the Liquidation Trust, in accordance with the Plan; or (b) the Liquidation Trustee's resignation, death, dissolution, removal, or liquidation.

**B.** **General Powers**. Except as otherwise provided in this Liquidation Trust Agreement, the Plan, or the Confirmation Order, and subject to consulting with the "GUC Oversight Board", as identified in the Plan Supplement (as may be reconstituted from time to time, the "**Advisory Board**"), the Liquidation Trustee may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the business of the Liquidation Trust. No person dealing with the Liquidation Trust shall be obligated to inquire into the Liquidation Trustee's authority in connection with the acquisition, management, or disposition of Trust Assets. Without limiting the foregoing, but subject to the Plan, the Confirmation Order, and other provisions of this Liquidation Trust Agreement, the Liquidation Trustee is expressly authorized, empowered, and has been directed, pursuant to the Plan and as the representative of the Debtors' Estates solely with respect to the Trust Assets and Class 4 Claims, to take all actions necessary to comply with the Plan and with all rights and powers of a trustee under the Bankruptcy Code, and exercise and fulfill the duties and obligations arising hereunder, including, without limitation, in the exercise of its business judgment, to:

1. to administer all Class 4 Claims, including the filing of objections to claims asserted as General Unsecured Claims (other than Claims of the Sponsor or its non-Debtor

Affiliates, except for SVME) and the litigation, settlement or other resolutions of Claims asserted as General Unsecured Claims;

2. to make Distributions of the Trust Assets and any proceeds thereof, in excess of any amounts necessary to pay or reserve for GUC Liquidating Trust Expenses, to Beneficiaries as provided for or contemplated by the Plan and take other actions consistent with the Plan and the implementation thereof, including the establishment and maintenance of appropriate reserves in accordance with the Plan and this Liquidation Trust Agreement, in the name of the Debtors or the Liquidation Trustee, even in the event of the dissolution of the Debtors;

3. to take all actions necessary to preserve and maximize the value of the Trust Assets;

4. to prosecute, settle, release or abandon any Causes of Action by which the Liquidation Trustee shall be granted standing to prosecute any such Causes of Action, and the authority to settle Causes of Action pursuant to the Plan without Bankruptcy Court approval;

5. to maintain, at the expense of the Liquidation Trust, customary insurance coverage for the protection of the Liquidation Trustee and the Advisory Board on and after the Effective Date;

6. to object to any claims asserted as Class 4 Claims (Disputed or otherwise), and to defend, compromise and/or settle any Class 4 Claims prior to or following objection without the necessity of approval of the Bankruptcy Court;

7. to make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees and consultants by the Liquidation

Trust and to pay, from the Trust Assets, (i) the charges incurred by the Liquidation Trust on or after the Effective Date for services of professionals, without application to the Bankruptcy Court, and (ii) disbursements, expenses or related support services relating to implementation of the Plan, without application to the Bankruptcy Court;

8. to maintain appropriate books and records (including financial books and records) to govern the liquidation and Distribution of the Trust Assets;

9. to pay fees payable in the Chapter 11 Cases pursuant to 28 U.S.C. § 1930(a)(6);

10. to file with the Bankruptcy Court and serve on the U.S. Trustee quarterly post-confirmation financial reports for the Liquidation Trust until such time as such reports are no longer required, or the Bankruptcy Court orders otherwise, a final decree is entered closing the Chapter 11 Cases, or the Chapter 11 Cases are converted or dismissed;

11. to dissolve the Liquidation Trust if the Liquidation Trustee determines, in reliance on such professionals as it may retain, that the expense of administering the Liquidation Trust so as to make a final Distribution is likely to exceed the value of the remaining Trust Assets;

12. to serve as representative of the Debtors' Estates after the Estate Representative Transition Date as provided in the Plan, without being the successor to the Debtors nor having any successor liability on account thereof; and

13. to do all other acts or things consistent with the provisions of the Plan and the Confirmation Order that the Liquidation Trustee deems reasonably necessary or desirable with respect to administration of the Liquidation Trust.

**C. Compensation of Liquidation Trustee and its Professionals**. The Liquidation Trustee shall be entitled to receive reasonable compensation and reimbursement of expenses in connection with the performance of its duties, plus the reimbursement of reasonable out-of-pocket expenses, including as set forth in the Plan. The Liquidation Trustee shall receive the following compensation: (i) for the first calendar year of service, $20,000 monthly from and after the Effective Date, and thereafter, $10,000 monthly until the termination of the Liquidation Trust, and (ii) 3.0% of the gross proceeds from Causes of Action. Professionals retained by the Liquidation Trustee shall be entitled to receive reasonable compensation and reimbursement of expenses from Trust Assets, provided that, in the event that Trust Assets are insufficient to compensate the Liquidation Trustee or members of the Advisory Board for the performance of their duties, the Liquidation Trustee and/or members of the Advisory Board may resign in accordance with the terms of this Liquidation Trust Agreement. On or before the last day of each month following the month for which compensation or reimbursement is sought, each of the Liquidation Trustee's professionals seeking compensation shall deliver to the Liquidation Trustee a monthly statement. The Liquidation Trustee will have fifteen (15) days from the date each monthly statement is received to review such monthly statement and object to such monthly statement by delivering to such professional an objection setting forth the precise nature of the objection and the amount at issue. At the expiration of the fifteen (15) day period, the Liquidation Trustee shall pay from Trust Assets 100% of the amounts requested, except for the portion of such fees and disbursements to which any objection has been made. The parties shall attempt to consensually resolve objections, if any, to any monthly statement. If the parties are unable to reach a consensual resolution of any such objection, the party who received an objection to its fees and costs may seek payment of such fees and costs by filing a motion with the Bankruptcy Court. If any professional fails to submit a

monthly statement on or before the thirtieth (30th) day after the due date therefor, it shall be ineligible to receive payment of fees and expenses therefor as provided in this Liquidation Trust Agreement until the monthly statement is submitted.

**D. Bankruptcy Court Approval of Liquidation Trustee Actions**. Except as provided in the Plan or otherwise specified in this Liquidation Trust Agreement, the Liquidation Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court. The Liquidation Trustee shall exercise its business judgment for the benefit of the Beneficiaries in order to maximize the value of the Trust Assets and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, the Liquidation Trustee shall have the right, in its discretion, to submit to the Bankruptcy Court any question or questions regarding which the Liquidation Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidation Trust with respect to any of the Trust Assets, this Liquidation Trust Agreement, or the Plan, including the administration, distribution, or proposed sale of any of the Trust Assets

**E. Removal**. Any Person serving as Liquidation Trustee may be removed and replaced only by an order of the Bankruptcy Court upon the motion of the Advisory Board and a showing of good cause; provided, however, that the proposed removal and replacement of SVM Liquidation Trust Co. LLC as Liquidation Trustee will require a determination by the Bankruptcy Court that "cause" exists for such removal and replacement using the standard under Bankruptcy Code section 1104 made after notice of such proposed removal and replacement in accordance with applicable law. The removal shall be effective on the date specified in the order. Notwithstanding the removal of the Liquidation Trustee pursuant hereto, the rights of the resigning Liquidation

Trustee under this Liquidation Trust Agreement with respect to acts or omissions occurring prior to the effectiveness of such removal will continue for the benefit of such resigning Liquidation Trustee following the effectiveness of such removal.

**F. Replacement of the Liquidation Trustee**. The Liquidation Trustee may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, provided that such resignation shall become effective only upon the appointment of a permanent or interim successor Liquidation Trustee. In the event of the resignation or removal of the Liquidation Trustee, the Advisory Board may designate a person to serve as successor Liquidation Trustee based upon submissions from interested parties (including any Beneficiary) or, in the event a successor Liquidation Trustee is not appointed, as approved by the Bankruptcy Court, upon notice and a hearing. Upon its appointment, any successor Liquidation Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor, and all responsibilities of the predecessor Liquidation Trustee relating to the Liquidation Trust shall be terminated. In the event of the removal or resignation of any Liquidation Trustee, such Liquidation Trustee (or its estate or representatives) shall be entitled to seek compensation for all reasonable fees and expenses accrued through the effective date of termination, in accordance with the procedures set forth in this Liquidation Trust Agreement. The provisions of Article V hereof shall survive the resignation or removal of any Liquidation Trustee.

**G. Liquidation Trust Continuance**. The death, dissolution, resignation or removal of the Liquidation Trustee shall not terminate the Liquidation Trust or revoke any existing agency created by the Liquidation Trustee pursuant to this Liquidation Trust Agreement or invalidate any action theretofore taken by the Liquidation Trustee, and the successor Liquidation Trustee agrees

that the provisions of this Liquidation Trust Agreement shall be binding upon and inure to the benefit of the successor Liquidation Trustee and all its successors or assigns.

**H. Limitations on Liquidation Trustee.** The Liquidation Trustee shall not at any time, on behalf of the Liquidation Trust or the Beneficiaries, (i) enter into or engage in any trade or business, (ii) take any actions that are not related, directly or indirectly, to the purposes of this Liquidation Trust Agreement and the Liquidation Trust or the administration or implementation of the terms hereof, or that are contrary to the terms of the Plan or Confirmation Order, (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Liquidation Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Revenue Procedure 94-45, 1994-2 C.B. 684, or (iv) take any action that would jeopardize treatment of the Liquidation Trust as a grantor trust for U.S. federal income tax purposes under Sections 671-677 of the Internal Revenue Code of 1986, as amended.

## ARTICLE III
## ADVISORY BOARD

A. **Advisory Board.** The Advisory Board shall consist of two (2) members, which initially shall be Amergin Rail 2023-1, LLC and Metropolitan Stevedore Company (d/b/a Metro Ports). The Advisory Board shall consult with the Liquidation Trustee as necessary and in accordance with this Liquidation Trust Agreement and the Plan. In the event that an Advisory Board shall not continue to exist under this Liquidation Trust Agreement, all references herein that require approval or other action of such Advisory Board shall be of no force or effect.

**B. Resignation, Replacement, or Removal of Member of Advisory Board**. A member of the Advisory Board may resign following written notice to the Liquidation Trustee and the other member of the Advisory Board. Such resignation will become effective on the later to

occur of (i) the day specified in such written notice and (ii) the date that is thirty (30) days after the date such notice is delivered. A member of the Advisory Board may only be removed by entry of a Bankruptcy Court order finding that cause exists to remove such member. In the event that a member of the Advisory Board is removed in accordance with the immediately preceding sentence, dies, becomes incapacitated, resigns, or otherwise becomes unavailable for any reason, a replacement member shall be appointed in a reasonable time thereafter. The remaining member, in consultation with the Liquidation Trustee, shall select the replacement member.

**C. Compensation.** Each member of the Advisory Board shall receive the following compensation in respect of his or her service on the Advisory Board: for the first calendar year of service, $10,000 monthly from and after the Effective Date, and thereafter, $5,000 monthly until the earlier of termination of the Liquidation Trust or such member ceases service on the Advisory Board. The members of the Advisory Board shall also be entitled to reimbursement from the Trust Assets of all actual, reasonable and documented out-of- pocket costs and expenses incurred thereby in connection with their service on the Advisory Board. Except for (i) the compensation and expense reimbursement set forth herein and (ii) indemnification as set forth herein, the members of the Advisory Board shall receive no compensation or other payment for the performance of their duties hereunder.

**D. Confidentiality.** Each member of the Advisory Board shall, while serving as a member of the Advisory Board, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Trust Assets relate or of which he or she has become aware in his or her capacity as a member of the Advisory Board.

## ARTICLE IV
## PROSECUTION AND RESOLUTION OF CAUSES OF ACTION

**A. The Liquidation Trust's Exclusive Authority to Pursue, Settle, or Abandon Causes of Action**. The Liquidation Trust shall have exclusive rights, powers, and interests of the Estates to pursue, settle or abandon all of the Causes of Action, in each case as the sole representative of the Estates with respect thereto pursuant to Bankruptcy Code section 1123(b)(3).

**B. Settlement of Causes of Action**. The Liquidation Trustee will have the sole power to resolve, compromise, abandon and settle any Causes of Action on behalf of the Liquidation Trust without Bankruptcy Court approval.

## ARTICLE V
## LIABILITY OF LIQUIDATION TRUSTEE;
## INDEMNIFICATION RESERVE AND INSURANCE

**A. Standard of Care; Exculpation**. Neither the Liquidation Trustee nor any director, officer, affiliate, employee, employer, attorney, professional, agent or representative of the Liquidation Trustee shall be liable for losses, claims, damages, liabilities or expenses in connection with the affairs of the Liquidation Trust to any holder of a Claim against, or interest in, the Debtors, or to any Beneficiary of the Liquidation Trust, or any other person, for the acts or omissions of the Liquidation Trustee; provided, however, that the foregoing limitation shall not apply to any losses, claims, damages, liabilities or expenses suffered or incurred by any holder of an Allowed Claim that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the actual fraud, gross negligence or willful misconduct of the Liquidation Trustee, or any director, officer, affiliate, employee, employer, attorney, professional, agent or representative of the Liquidation Trustee, in which case the party committing such actual fraud, gross negligence or willful misconduct shall not be protected by this paragraph with respect to such acts.

**B. Limitation of Liability; Exculpation and Indemnification**. Including as otherwise set forth in the Plan, the Liquidation Trustee, and each current and former member of the Advisory Board and all respective directors, officers, affiliates, partners, employees, employers, attorneys, professionals, agents or representatives of any of them (each, an "**Indemnified Party**" and collectively, the "**Indemnified Parties**") shall not be liable for actions taken or omitted in their respective capacities as, or on behalf of, the Liquidation Trustee or the Liquidation Trust, except those acts arising out of its or their gross negligence, actual fraud, or willful misconduct, each as determined by a Final Order from a court of competent jurisdiction. Any Indemnified Party shall be entitled to indemnification and advancement for fees and expenses in defending any and all of its or their actions or inactions in its or their capacity as, or on behalf of, the Liquidation Trust or the Liquidation Trustee (and its agents and professionals) and/or the Advisory Board and the current and any former members thereof (and each of their agents and professionals), except for any actions or inactions involving gross negligence, actual fraud, or willful misconduct, each as determined by a Final Order from a court of competent jurisdiction. The Liquidation Trustee, the Advisory Board, and each of its current and any former members, shall be entitled to rely, in good faith, on the advice of their professionals. Satisfaction of any obligation of the Liquidation Trust arising pursuant to the terms of this section shall be payable only from the Trust Assets and such right to payment shall be prior and superior to any other rights to receive a Distribution of the Trust Assets. The Liquidation Trustee shall, from Trust Assets, promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in connection with the Liquidation Trust Agreement or the duties, acts or omissions of the Liquidation Trustee, upon submission of

invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise; provided that, prior to making such advances, the Liquidation Trust shall have received from such Indemnified Party an undertaking, in writing, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor under this Liquidation Trust Agreement or applicable law.

**C.** **Insurance**. The Liquidation Trustee may purchase customary insurance, for itself (and its agents and professionals) and each current and former member of the Advisory Board (and any of their agents and professionals), using Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Liquidation Trustee deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs and expenses it may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its actual fraud, gross negligence, or willful misconduct, with respect to the implementation and administration of the Plan or this Liquidation Trust Agreement.

## ARTICLE VI
## PROVISIONS CONCERNING ADMINISTRATION OF THE LIQUIDATION TRUST

**A.** **Register of Beneficiaries**. The Liquidation Trust shall cause to be maintained at all times a register of the Beneficiaries' names, addresses of record, amounts of Allowed Claims, and ratable interests in the Liquidation Trust (the "**Register**"). The Liquidation Trust shall cause the Register to be kept at its office or at such other place or places as may be designated by the Liquidation Trustee from time to time.

**B.** **Books and Records**. The Liquidation Trust also shall maintain in respect of the Liquidation Trust and the Beneficiaries' books and records relating to the Trust Assets and income

realized therefrom and the payment of expenses of and Claims against or assumed by the Liquidation Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Liquidation Trust Agreement, the Plan or the Confirmation Order, or as may be required by applicable law, nothing in this Liquidation Trust Agreement is intended to require the Liquidation Trust to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Trust Assets.

**C.** **Interim Reporting**. After the Effective Date, the Liquidation Trustee shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly post-confirmation financial reports for the Liquidation Trust until such time as such reports are no longer required, or the Bankruptcy Court orders otherwise, a final decree is entered closing the Chapter 11 Cases, or the Chapter 11 Cases are converted or dismissed.

## ARTICLE VII
## BENEFICIAL INTERESTS AND BENEFICIARIES

**A.** **Trust Beneficial Interests**. Each Beneficiary shall be entitled to receive a beneficial interest in the Liquidation Trust in accordance with the treatment of such Claim under the Plan, and shall be entitled to distributions as set forth in the Plan.

**B.** **Interest Beneficial Only**. The ownership of a beneficial interest in the Liquidation Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of the Trust Assets or to require an accounting.

**C.** **Absolute Owners**. The Liquidation Trustee may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

**D. Change of Address**. A Beneficiary may, after the Effective Date, select an alternative distribution address by filing a notice with the Bankruptcy Court (copy served on the Liquidation Trustee) identifying such alternative distribution address. Absent such notice, the Liquidation Trustee shall not recognize any such change of distribution address. Such notification shall be effective only upon receipt by the Liquidation Trustee.

**E. Standing**. Except as expressly provided in this Liquidation Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Liquidation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Trust Assets.

## ARTICLE VIII
## DISTRIBUTIONS

**A. Distributions to Beneficiaries from Trust Assets**. All payments to be made by the Liquidation Trust to any Beneficiary shall be made only in accordance with the Plan, the Confirmation Order and this Liquidation Trust Agreement and from the Trust Assets (or from the income and proceeds realized from the Trust Assets), if any, and only to the extent that the Liquidation Trust has sufficient Trust Assets (or income and proceeds realized from the Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order and this Liquidation Trust Agreement; provided, that, the Liquidation Trustee shall make distributions at least annually of the Liquidation Trust's net income plus net proceeds from the monetization of any non-Cash Trust Assets, if any.

**B. No Distribution Pending Allowance**. No payment or distribution shall be made with respect to any Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, except for distributions into a Disputed Claims Reserve in accordance with the Plan, Confirmation Order, and this Liquidation Trust Agreement.

**C. Distributions after Allowance**. Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan; provided, that, the Liquidation Trustee shall make distributions at least annually of the Liquidation Trust's net income plus net proceeds from the monetization of any non-Cash Trust Assets, if any.

**D. Non-Cash Property**. Any non-Cash property of the Liquidation Trust may be sold, transferred or abandoned by the Liquidation Trustee. If, in the Liquidation Trustee's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Liquidation Trustee believes, in good faith, such property has no value to the Liquidation Trust, the Liquidation Trustee shall have the right to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the Liquidation Trustee. The Liquidation Trustee in its discretion may file a notice of such abandonment with the Bankruptcy Court. Except in the case of actual fraud, willful misconduct or gross negligence, no party in interest shall have a cause of action against the Liquidation Trustee or any director, officer, employee, consultant or professional of the Liquidation Trustee, arising from or related to the disposition of non-Cash property in accordance with this section.

**E. Distributions on Non-Business Days**. Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

## ARTICLE IX
## TAXES

**A. Income Tax Status**. Consistent with Revenue Procedure 94-45, 1994-2 C.B. 684, the Liquidation Trust shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Sections 671-677 of the U.S. Internal Revenue Code of 1986, as amended. As such, the Beneficiaries will be treated as both the grantors and the

deemed owners of the Liquidation Trust. Any items of income, deduction, credit and loss of the Liquidation Trust shall be allocated for U.S. federal income tax purposes to the Beneficiaries, on a pro rata basis.

**B. Tax Returns**. The Liquidation Trustee, on behalf of the Liquidation Trust, shall cause tax returns for the Liquidation Trust and all other appropriate or necessary documents related to municipal, state, federal, or other tax law to be prepared and filed timely. The Liquidation Trustee shall file any such tax returns as are necessary on behalf of the Liquidation Trust as a grantor trust in accordance with Treasury Regulation Section 1.671-4. The Liquidation Trust may provide each such Beneficiary with a copy of the IRS Form 1041 for the Liquidation Trust (without attaching any other Beneficiary's Schedule K-1 or other applicable information form) along with such Beneficiary's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement.

**C. Valuations**. As soon as possible after the Effective Date, the Liquidation Trustee shall make a good faith valuation of the Trust Assets, and such valuation shall be made available from time to time to all parties to this Liquidation Trust Agreement and to all Beneficiaries, to the extent relevant to such parties for tax purposes, and subject to any lawful objection thereto, shall be used consistently by all parties (including, without limitation, the Liquidation Trust and the Beneficiaries) for all U.S. federal income tax purposes, including for determining tax basis and gain or loss. For the avoidance of doubt, the Liquidation Trustee's final valuation shall not be binding on the Beneficiaries, the Liquidation Trust, the Liquidation Trustee or any other party to this Liquidation Trust Agreement for any purpose other than U.S. federal income tax purposes, and the valuation shall not impair or prejudice any rights, claims, powers, duties, authority, and privileges of the Beneficiaries, the Liquidation Trust, the Liquidation Trustee or any other party to

this Liquidation Trust Agreement except with respect to U.S. federal income tax purposes. The Liquidation Trustee also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Liquidation Trust that are required by any Governmental Unit.

**D.** **Tax Basis**. For all U.S. federal income tax purposes, a Distribution will be allocated to the principal amount of a Claim first and then, to the extent the Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

**E.** **Withholding Taxes**. Subject to the Plan and the Confirmation Order, any U.S. federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder and treated as amounts distributed to such Beneficiaries for all purposes under this Liquidation Trust Agreement, the Plan, and the Confirmation Order. All Beneficiaries shall be required to provide any information necessary to effect the withholding of such taxes. If the Liquidation Trustee fails to withhold in respect of amounts received or distributable with respect to any Beneficiary and the Liquidation Trustee is later held liable for the amount of such withholding, such Beneficiary shall reimburse the Liquidation Trustee for such liability.

**F.** **Expedited Determination of Taxes**. The Liquidation Trust may request an expedited determination of taxes of the Liquidation Trust under Bankruptcy Code section 505(b) for all returns filed for, or on behalf of, the Liquidation Trust for all taxable periods through the termination of the Liquidation Trust.

## ARTICLE X
## TERMINATION OF LIQUIDATION TRUST

**A.** **Termination of Liquidation Trust**. The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated on the earlier of (a) the date on which (i) all Disputed Claims against the Liquidation Trust have been resolved, (ii) all of the Trust Assets have been

liquidated, (iii) all duties and obligations of the Liquidation Trustee hereunder have been fulfilled, (iv) all distributions required to be made by the Liquidation Trustee under the Plan and this Liquidation Trust Agreement have been made, and (v) the Chapter 11 Cases have been closed; and (b) the second (2nd) anniversary of the Effective Date; provided, however, that the term of the Liquidation Trust may be further extended by the Liquidation Trustee in accordance with the Plan and each such extension must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term, provided that such extensions shall not extend the term of the Liquidation Trust beyond the ___ anniversary of the Effective Date.

**B. Events Upon End of Term Termination**. At the conclusion of the term of the Liquidation Trust, except as otherwise set forth herein, the Liquidation Trust shall distribute the remaining Trust Assets, if any, to the Beneficiaries, in accordance with the Plan, the Confirmation Order and this Liquidation Trust Agreement or as provided by further order of the Bankruptcy Court.

**C. Winding Up and Discharge of the Liquidation Trustee**. For the purposes of winding up the affairs of the Liquidation Trust at the conclusion of its term, the Liquidation Trustee shall continue to act as Liquidation Trustee until its duties under this Liquidation Trust Agreement have been fully discharged or its role as Liquidation Trustee is otherwise terminated under this Liquidation Trust Agreement and the Plan. Upon a motion by the Liquidation Trustee, the Bankruptcy Court may enter an order relieving the Liquidation Trustee, its agents and employees of any further duties, discharging the Liquidation Trustee and releasing its bond, if any.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

**A. Amendments**. The Liquidation Trustee may, without the approval of the Bankruptcy Court, modify, supplement, or amend this Liquidation Trust Agreement to clarify any

ambiguity or inconsistency, or render the Liquidation Trust Agreement in compliance with its stated tax purposes, and only if such amendment does not materially and adversely affect the interests, rights, treatment or distributions of any Beneficiaries. The Liquidation Trustee may, with the approval of the Bankruptcy Court, modify, supplement, or amend this Liquidation Trust Agreement in any way that is not inconsistent with the Plan or the Confirmation Order.

**B. Waiver**. No failure to exercise, or delay in exercising, any right, power or privilege hereunder by the Liquidation Trust or the Liquidation Trustee, shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

**C. Cumulative Rights and Remedies**. The rights and remedies provided in this Liquidation Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

**D. Irrevocability**. This Liquidation Trust Agreement and the Liquidation Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Liquidation Trust Agreement.

**E. Tax Identification Numbers**. The Liquidation Trustee may require any Beneficiary to furnish to the Liquidation Trustee its social security number or employer or taxpayer identification number as assigned by the IRS, and the Liquidation Trustee may condition any distribution to any Beneficiary upon the receipt of such identification number.

**F. Relationship to the Plan**. The principal purpose of this Liquidation Trust Agreement is to aid in the implementation of the Plan and, therefore, this Liquidation Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Liquidation Trust Agreement is found to be inconsistent

with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.

**G. Division of Liquidation Trust**. Under no circumstances shall the Liquidation Trustee have the right or power to divide the Liquidation Trust unless authorized to do so by the Bankruptcy Court.

**H. Applicable Law**. The Liquidation Trust is made in the State of Delaware, and the Liquidation Trust and this Liquidation Trust Agreement, and the rights and obligations of the Liquidation Trustee are to be governed by and construed and administered according to the laws of the State of Delaware; provided, however, that, except as expressly provided in this Liquidation Trust Agreement, there shall not be applicable to the Liquidation Trust, the Liquidation Trustee, or this Liquidation Trust Agreement (a) the provisions of Section 3540 of Title 12 of the Delaware Code; or (b) any provisions of the laws (statutory or common) of the State of Delaware pertaining to trusts which relate to or regulate: (i) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges; (ii) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust; (iii) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property; (iv) fees or other sums payable to trustees, officers, agents or employees of a trust; (v) the allocation of receipts and expenditures to income or principal; (vi) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets; or (vii) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees, which are inconsistent with the limitations or liabilities or authorities and powers of the Liquidation Trustee set forth or referenced in this Liquidation Trust Agreement.

**I. Retention of Jurisdiction**. Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain jurisdiction over the Liquidation Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Liquidation Trust Agreement, or any entity's rights or obligations in connection herewith, including without limitation, any action against the Liquidation Trustee, or any professional retained by the Liquidation Trustee in each case in its capacity as such. Each party to this Liquidation Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Liquidation Trust Agreement or of any other agreement or document delivered in connection with this Liquidation Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.

**J. Severability**. In the event that any provision of this Liquidation Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the remainder of this Liquidation Trust Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Liquidation Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

**K. Limitation of Benefits**. Except as otherwise specifically provided in this Liquidation Trust Agreement, the Plan or the Confirmation Order, nothing herein or therein is intended or shall be construed to confer upon or to give any person other than the parties hereto

and the Beneficiaries any rights or remedies under or by reason of this Liquidation Trust Agreement.

**L. Notices**. All notices, requests, demands, consents and other communication hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered: (a) in person; (b) by regular first-class mail; or (c) by overnight mail, registered mail, or certified mail, to the following addresses:

If to the Liquidation Trustee:

SVM Liquidation Trust Co., LLC
c/o Womble Bond Dickinson (US) LLP
Attn: Matthew P. Ward
1313 N. Market Street, Suite 1200
Wilmington, DE 19801

with a copy to (which shall not constitute notice or service):

Mark W. Eckard, Esq.
Marcy McLaughlin Smith, Esq.
Michael Barber, Esq.
Womble Bond Dickinson (US), LLP
1313 N. Market Street, Suite 1200
Wilmington, DE 19801

If to a Beneficiary:

To the name and Distribution Address set forth in the Register with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

**M. Further Assurances**. From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Liquidation Trust Agreement, and to consummate the transactions contemplated hereby.

**N.** **Integration**. This Liquidation Trust Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. To the extent there is an inconsistency between this Liquidation Trust Agreement and the Plan or Confirmation Order, the Plan or the Confirmation Order, as applicable, shall control.

**O.** **Interpretation**. The enumeration and section headings contained in this Liquidation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Liquidation Trust Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Liquidation Trust Agreement, the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Liquidation Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**P.** **Counterparts**. This Liquidation Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Liquidation Trust Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

[*signature page follows*]

**SEARLES VALLEY MINERALS, INC.**

By: ______________________________________
Name:
Title:

**SEARLES DOMESTIC WATER COMPANY, LLC**

By: ______________________________________
Name:
Title:

**SEARLES VALLEY MINERALS, INC.**

By: ______________________________________
Name:
Title:

**THE LIQUIDATION TRUSTEE**

**SVM Liquidation Trust Co. LLC**

By: Thetford Holding Co. LLC, its sole member and manager

By: ______________________________________
Matthew P. Ward, its sole member and manager

# <u>EXHIBIT A-1</u>

## Identity and Terms of Compensation of the GUC Liquidating Trustee and the GUC Oversight Board

# Identity and Terms of Compensation of the GUC Liquidating Trustee and the GUC Oversight Board[1]

**Identity of the GUC Liquidating Trustee:**

As of the Effective Date, the GUC Liquidating Trustee shall be SVM Liquidation Trust Co. LLC, a Delaware limited liability company.

**Compensation for the GUC Liquidating Trustee:**

The GUC Liquidating Trustee shall receive the following compensation for its role as GUC Liquidating Trustee: (i) for the first calendar year of service, $20,000 monthly from and after the Effective Date, and thereafter, $10,000 monthly until the termination of the GUC Liquidating Trust, and (ii) 3.0% of the gross proceeds from the GUC Chapter 5 Actions.

**Members of the GUC Oversight Board:**

As of the Effective Date, the members of the GUC Oversight Board shall be:

1. **Amergin Rail 2023-1, LLC**
   Attn: Jerrold Rosen
   317 Country Club Drive
   Butler, KY 41006
   Phone: 201-615-0555
   Email: jorsen@amerginam.com

2. **Metropolitan Stevedore Company (d/b/a Metro Ports)**
   Attn: Helen Yu
   3806 Worsham Avenue
   Long Beach, CA 90808
   Phone: 562-900-3504
   Email: helen.yu@nautilisintl.com

**Compensation for GUC Oversight Board Members:**

Each member of the GUC Oversight Board shall receive the following compensation in respect of his or her service on the GUC Oversight Board: for the first calendar year of service, $10,000 monthly from and after the Effective Date, and thereafter, $5,000 monthly until the earlier of termination of the GUC Liquidating Trust or such member ceases service on the GUC Oversight Board.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the *Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Searles Valley Minerals, Inc. and its Debtor Affiliates* [Docket No. 483] (as may be further amended, modified, or supplemented, the "Combined Disclosure Statement and Plan").

# **EXHIBIT B**

## **Wind-Down Trust Agreement**

# WIND-DOWN TRUST AGREEMENT

This wind-down trust agreement (this "Agreement"), dated as of [●], 2026, is made by and among Searles Valley Minerals, Inc., Searles Domestic Water Company, LLC and Trona Railway Company, LLC (together and severally, the "Debtors"), and Rock Creek Advisors, LLC, as trustee of the SVM Wind-Down Trust (the "Wind-Down Trustee"), on behalf of and for the sole benefit of the Beneficiaries, pursuant to the terms of the *Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Searles Valley Minerals, Inc. and Its Debtor Affiliates* [D.I. 483] [as modified at [D.I. [●]] (including all exhibits thereto and as further amended, modified, or supplemented from time to time, the "Plan"), which was confirmed by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Case No. 26-10966 (BLS), by order dated November [●], 2026 [D.I. [●]] (the "Confirmation Order").[1]

## RECITALS

**WHEREAS**, on June 15, 2026 (the "Petition Date"), the Debtors filed voluntary petitions in the Bankruptcy Court for relief under chapter 11 of the United States Bankruptcy Code;

**WHEREAS**, on October 15, 2026, the Debtors Filed the Plan with the Bankruptcy Court;

**WHEREAS**, by the Confirmation Order, the Bankruptcy Court confirmed the Plan;

**WHEREAS**, the Plan, among other things, provides for the creation of the Wind-Down Trust, for the primary purpose of monetizing and distributing the Wind-Down Trust Assets to the Beneficiaries under the Plan;

**WHEREAS**, the purpose of the Wind-Down Trust is to (a) reconcile and object to any Claims (Disputed or otherwise) (other than Class 4 Claims) and to defend, compromise and/or settle any Claims (other than Class 4 Claims), as provided for in the Plan; (b) liquidate, monetize or otherwise administer any non-Cash Wind Down Trust Assets, including the Wind-Down Trust Retained Causes of Action; and (c) make Distributions to the Beneficiaries in accordance with the Plan and with United States Treasury Regulations (the "Treasury Regulations") Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating trust purpose of the Wind-Down Trust;

**WHEREAS**, the Wind-Down Trust is to be administered by the Wind-Down Trustee;

**WHEREAS**, the Wind-Down Trustee has accepted such appointment and has agreed to serve in such capacity under the terms and conditions set forth in the Plan and herein;

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Plan.

**WHEREAS**, the Wind-Down Trust is intended to qualify as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d), and this Agreement, the Wind-Down Trust, the Confirmation Order, and the Plan are intended to comply with the advance ruling guidelines contained in Revenue Procedure 94-45;

**NOW THEREFORE**, in consideration of the premises and mutual covenants and agreements contained herein, Debtors and the Wind-Down Trustee agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.1 *Certain Terms Defined*. Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to such terms in the Plan. As used herein, the following terms have the respective meanings specified below:

"Available Cash" shall mean all Cash held by the Wind-Down Trust from time to time on and after the Effective Date, net of amounts reasonably necessary to satisfy all known and anticipated Wind-Down Trust Expenses.

"Beneficiaries" shall mean, each in its respective capacity as such, all holders of (a) Administrative Expense Claims, Priority Tax Claims or Priority Claims, in each case to the extent Allowed, (b) Other Secured Claims, in each case solely to the extent that both (i) such Other Secured Claim is Allowed as a secured claim after the Effective Date and (ii) the Plan treatment for such Other Secured Claim is designated by the Debtors in the Plan Supplement, with the consent of the DIP Lender, to be payment in cash; (c) DIP Facility Claims, or (d) Prepetition Loan Claims.

"Claim Objection" shall mean an objection, motion, adversary proceeding or lawsuit challenging the validity, priority, or amount of any Claim that is not asserted solely as a General Unsecured Claim, including, without limitation, requests to estimate, recharacterize or subordinate such Claim that has been Filed or that may be Filed with the Bankruptcy Court.

Section 1.2 *Interpretation*. When a reference is made in this Agreement to a section or article, such reference shall be to a section or article of this Agreement unless otherwise clearly indicated to the contrary.

(a) Whenever the words "include" "includes" or "including" are used in this Agreement they shall be deemed to be followed by the words "without limitation."

(b) The words "hereof," "herein" and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement as a whole and not to any particular provision of this Agreement, and article, section, paragraph, exhibit and schedule references are to the articles, sections, paragraphs, exhibits and schedules of this Agreement unless otherwise specified.

(c) The meaning assigned to each term defined herein shall be equally applicable to both the singular and the plural forms of such term. Where a word or phrase is defined herein, each of its other grammatical forms shall have a corresponding meaning.

(d) A reference to any party to this Agreement or any other agreement or document shall include such party's successors and permitted assigns.

(e) A reference to any legislation or to any provision of any legislation shall include any amendment to, and any modification or reenactment thereof, any legislative provision substituted therefor and all regulations and statutory instruments issued thereunder or pursuant thereto.

(f) When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

(g) Any reference in this Agreement to "$" shall mean U.S. dollars.

## ARTICLE II

## CREATION/TERMINATION OF WIND-DOWN TRUST

Section 2.1 *Creation of the Wind-Down Trust*. The Wind-Down Trust is hereby constituted and created, in accordance with Treasury Regulations Section 301.7701-4(d) and Revenue Procedure 94-45, to (i) contest, object to, litigate, compromise, or settle Claims in accordance with the Plan and this Agreement, (ii) liquidate and monetize the non-Cash Wind-Down Trust Assets, including the Wind-Down Trust Retained Causes of Action; (iii) make Distributions of Available Cash to the Beneficiaries in accordance with the Plan; and (iv) take such other action consistent with the terms of this Agreement, the Plan, the Confirmation Order, and any other agreement executed by the Wind-Down Trust and/or the Wind-Down Trustee on behalf of the Wind-Down Trust pursuant to the Plan, as is necessary and appropriate to administer and implement the Plan and this Agreement.

Section 2.2 *Purpose of Wind-Down Trust.*

(a) The Wind-Down Trust is established for the primary purpose of monetizing and distributing the Wind-Down Trust Assets to the Beneficiaries, in accordance with the Plan and with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Wind-Down Trust. Accordingly, subject to the terms and conditions of this Agreement, the Plan, and the Confirmation Order, the Wind-Down Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash or otherwise administer any non-Cash Wind-Down Trust Assets, resolve any Disputed Claims that are not solely General Unsecured Claims, make timely Distributions to the Beneficiaries, and not unduly prolong the duration of the Wind-Down Trust. For so long as the Wind-Down Trust remains in existence, the Wind-Down Trustee shall be charged with liquidating, abandoning or otherwise administering any

non-Cash Wind-Down Trust Assets in the most cost-effective manner possible in the shortest reasonable time, with regard for the risk that undue haste may reduce the liquidation proceeds of any non-Cash portion of the Wind-Down Trust Assets, and in all instances in accordance with the Plan, the Confirmation Order, and this Agreement.

(b) This Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust. The Wind-Down Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Wind-Down Trustee, members of the WTOB (as defined below) or the Beneficiaries, or any of them, for any purpose be, or be deemed to be or be treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Beneficiaries to the Wind-Down Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement.

Section 2.3 *Appointment and Acceptance of the Wind-Down Trustee*. ________ is hereby appointed as the Wind-Down Trustee, to act and serve as the trustee of the Wind-Down Trust. ________ hereby accepts the appointment as the trustee of the Wind-Down Trust, and, in such capacity, agrees to hold the Wind-Down Trust Assets in trust, in accordance with the terms of this Agreement, the Plan, and the Confirmation Order, and to administer the Wind-Down Trust pursuant to the terms and conditions of this Agreement, the Plan, and the Confirmation Order.

Section 2.4 *Name of the Wind-Down Trust*. The trust established through the Plan, the Confirmation Order, and pursuant to this Agreement shall bear the name "SVM Wind-Down Trust." In connection with the exercise of the Wind-Down Trustee's powers under this Agreement, the Wind-Down Trustee may use this name or such variation thereof as the Wind-Down Trustee, in the Wind-Down Trustee's discretion, may determine.

Section 2.5 *Transfer of Assets to the Wind-Down Trust*. Pursuant to the Plan and the Confirmation Order, on the Effective Date, all right, title, and interest in and to the Wind-Down Trust Assets shall be deemed to have been irrevocably transferred, assigned, conveyed and delivered by the Debtors to the Wind-Down Trust free and clear of all encumbrances, Liens and Claims of any Person except the DIP Lender and the Prepetition Secured Lender, whose Liens, claims, and interests shall attach to the Wind-Down Trust Assets with the same priority that such Liens, claims, and interests were attached to the property of the Debtors prior to the Effective Date, but subject to the provisions of this Agreement, the Plan, and the Confirmation Order, in trust for the benefit of the Beneficiaries for the uses and purposes stated therein and herein. Without limiting the generality of the foregoing, the Wind-Down Trust Assets shall include:

(a) All Cash held by the Debtors as of the Effective Date that is not GUC Liquidating Trust Cash (provided that the Professional Fee Escrow Account will continue to be maintained and held in escrow and shall not be considered property of the Debtors' Estates, the GUC Liquidating Trust, or the Wind-Down Trust, as set forth in and subject to the provisions set forth in Section 6.2 of the Plan);

(b) The Wind-Down Trust Retained Causes of Action, and the Wind-Down Trust shall have full authority and standing to commence and litigate, settle, release or abandon all Wind-Down Trust Retained Causes of Action that are not released under the Plan; and

(c) Any other unsold assets that are not GUC Liquidating Trust Assets, *provided*, *that*, Permits shall not be Wind-Down Trust Assets to the extent prohibited by any applicable law and SVM's Interests in SDWC and TRC shall only vest in the Wind-Down Trust and become Wind-Down Trust Assets on the Permit Transfer Date.

The Wind-Down Trustee hereby accepts all such Wind-Down Trust Assets free and clear of all Claims and Interests of any Person other than the DIP Lender and the Prepetition Secured Lender, except as provided in this Agreement, the Plan, the Confirmation Order, and agrees to hold and administer the Wind-Down Trust Assets for the benefit of the Beneficiaries, subject to the terms and conditions of this Agreement, the Plan, and the Confirmation Order. Upon the transfer of the Wind-Down Trust Assets, the Wind-Down Trust shall succeed to all of the Debtors' right, title, and interest in and to the Wind-Down Trust Assets, and neither the Debtors nor the Wind-Down Debtors shall have any further interest in or with respect to the Wind-Down Trust Assets or the Wind-Down Trust.

Section 2.6 *Estate Representative*. Upon occurrence of the Effective Date and until termination of the Wind-Down Trust, the Wind-Down Trustee shall automatically, and without need for further notice or approval of the Bankruptcy Court or the Debtors (or any other entity), be made the sole director and sole officer of each of the Wind-Down Debtors and be designated as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

Section 2.7 *Maintenance of Cash and Proceeds*. Cash in the Wind-Down Trust shall be invested in demand-and-time deposits in banks or other savings institutions, or in other temporary, liquid investments, such as Treasury bills, consistent with the liquidity needs of the Wind-Down Trust as determined by the Wind-Down Trustee, in accordance with Bankruptcy Code section 345, unless the Bankruptcy Court otherwise requires; *provided, however*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

Section 2.8 *Fiscal Year*. The fiscal year of the Wind-Down Trust shall be the calendar year.

Section 2.9 *Termination of Wind-Down Trust*. The Wind-Down Trust shall have an initial term of two years. The Wind-Down Trust may be dissolved or otherwise terminated earlier than its scheduled termination if at such time (i) all Disputed Claims (other than Disputed Claims that are also Class 4 Claims) have been resolved; (ii) all of the Wind-Down Trust Assets have been liquidated, resolved, or abandoned pursuant to, and in accordance with, the Plan and this Agreement; (iii) all duties and obligations of the Wind-Down Trust under the Plan, the Confirmation Order, and this Agreement have been fulfilled; (iv) all Distributions required under the Plan and this Agreement have been made; and (v) the Wind-Down Trustee shall have filed a notice with the Bankruptcy Court that the foregoing conditions (i) through (iv) have been met;

*provided, however*, in no event shall the Wind-Down Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court determines, within six (6) months of the beginning of the extension, that a fixed period extension (not to exceed two (2) years, including any prior extensions) is necessary to facilitate or complete the recovery and liquidation of the Wind-Down Trust Assets. Subject to the requirements of the preceding sentence, upon dissolution or termination of the Wind-Down Trust, any remaining Wind-Down Trust Assets may be transferred by the Wind-Down Trustee to a charitable organization(s) in accordance with the terms of the Plan. To the extent that the final Distribution Date of the Wind-Down Trust occurs after the final Distribution Date of the GUC Liquidating Trust, the Wind-Down Trustee shall seek entry of a Final Order closing the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code as soon as practicable after the final Distribution Date for the Wind-Down Trust.

Section 2.10 *Creation of the Disputed Claim Reserve*. The Wind-Down Trustee may establish a reserve for payment of Disputed Claims that are not General Unsecured Claims (the "Disputed Claim Reserve"). The amount held back in the Disputed Claim Reserve shall be equal to (a) the amount necessary to satisfy the Distributions that would be required to be made from the Wind-Down Trust on account of such Disputed Claims if such Disputed Claims were subsequently to be Allowed, or (b) such lesser amount as (i) the Bankruptcy Court may order, including without limitation based upon any estimation by the Bankruptcy Court of such Disputed Claims, or (ii) the Wind-Down Trustee and the Holder of a Disputed Claim may agree.

Section 2.11 *Status of Wind-Down Trust.* The Wind-Down Trust will be the successor-in-interest to the Debtors with respect to the Wind-Down Trust Assets. The Wind-Down Trustee shall step into the shoes of the Debtors when making Distributions to the Beneficiaries, objecting to, defending, compromising and/or settling any Claims (Disputed or otherwise) other than Class 4 Claims, or pursuing any claims that are Wind-Down Trust Assets, including the Wind-Down Trust Retained Causes of Action. The Wind-Down Trustee, on behalf of the Wind-Down Trust, will be the sole director, officer, and representative of the Wind-Down Debtors' Estates and will have the rights and powers provided in the Bankruptcy Code in addition to any rights and powers granted in this Agreement, the Plan, and Confirmation Order when making Distributions to the Beneficiaries, objecting to any Claims (Disputed or otherwise), or pursuing any claims that are Wind-Down Trust Assets, including the Wind-Down Trust Retained Causes of Action.

Section 2.12 *Wind-Down Trust Oversight Board.*

(a) The Wind-Down Trust Oversight Board ("WTOB") is hereby established and created as a special advisory board to monitor the Wind-Down Trustee and its activities required in connection with the management and distribution of the Wind-Down Trust Assets, including the performance of the Wind-Down Trustee's obligations under the Plan, the Confirmation Order, and this Agreement. Subject to the provisions of Article VIII of this Agreement, the WTOB shall be responsible for any termination and replacement of the Wind-Down Trustee pursuant to the terms of this Agreement.

(b) As of the Effective Date, the members of the WTOB shall be those persons designated on Exhibit A to this Agreement, subject to acceptance of such position by such persons. Any or all members of the WTOB may resign from the WTOB at any time by written notice of resignation to the other members of the WTOB. A member of the WTOB shall be deemed to be

immediately removed as a member of the WTOB in the event that a WTOB member (i) sells, transfers, or assigns all of that member's rights to or interest in that member's Claim and no longer holds such Claim, (ii) dies, resigns, or becomes incapacitated, (iii) otherwise fails or refuses to serve, or (iv) receives all payments of its Allowed Claim that are to be made by the Wind-Down Trust. In the event of a WTOB member's resignation or removal, the remaining WTOB members may, but are not required to, elect a replacement member. In the event that there are no members of the WTOB, the DIP Lender may, but is not required to, appoint one or more Persons to serve as member(s) of the WTOB. There shall be no minimum number of members of the WTOB to retain its function; provided, however, if there shall have been no members of the WTOB for a period of thirty (30) consecutive days, then the Wind-Down Trustee may, during such vacancy, and thereafter, ignore any reference in the Plan, this Agreement, or the Confirmation Order to the WTOB, and all such references in the Plan, this Agreement or the Confirmation Order shall be null and void without effecting the enforceability of the remaining provisions of the Plan, Confirmation Order, or this Agreement. Any deadlock in a vote by the members of the WTOB may be broken by a vote cast by the Wind-Down Trustee. If the Wind-Down Trustee determines not to vote, the deadlocked matter shall be decided by the Bankruptcy Court by submission of a motion on proper notice. For the avoidance of doubt, the Wind-Down Trustee shall not be entitled to vote with respect to its own removal or termination.

(c) The Wind-Down Trustee shall provide the WTOB with such reports as the WTOB shall reasonably request from time to time. Members of the WTOB shall not be entitled to receive compensation for their service. The WTOB may, but shall not be required to, adopt by-laws addressing the conduct of the WTOB.

(d) The WTOB, any of the WTOB's members or designees, attorneys, accountants, or other professionals in their capacities as such, any duly designated agent or representative of the WTOB, and the respective employees of any of the foregoing, shall not owe fiduciary duties of any kind to the Wind-Down Trust or Beneficiaries, and shall not be liable for any act or omission of any other member, designee, agent, or representative of the WTOB, nor shall any member be liable for any act or omission taken or to be taken in that member's capacity as a member of the WTOB, other than acts resulting from such member's actual fraud or willful misconduct. The WTOB may, in connection with the performance of the WTOB's functions, and in the WTOB's sole and absolute discretion, consult with counsel, accountants, and any other professionals, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such counsel, accountants, or other professionals, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, the WTOB shall be under no obligation to consult with counsel, accountants or other professionals, and the WTOB's determinations to not do so shall not result in the imposition of liability on the WTOB or the WTOB's members or designees, unless such determination is based on actual fraud or willful misconduct.

## ARTICLE III

## BENEFICIARIES

Section 3.1 *Wind-Down Trust Interests*. Beneficiaries shall have undivided beneficial interests in the Wind-Down Trust Assets. The ownership of a beneficial interest in any

Wind-Down Trust Assets hereunder shall not entitle any Beneficiary to (a) any title in or to the Wind-Down Trust Assets, (b) any right to call for a partition or division of Wind-Down Trust Assets, (c) require an accounting, or (d) any management of or control of the Wind-Down Trust or the Wind-Down Trust Assets.

Section 3.2 *No Suits by Beneficiaries*. No Beneficiary shall have any right by virtue of any provision of this Agreement to institute any action or proceeding, at law or in equity, against any Person, including the Wind-Down Trustee or any member of the WTOB, with respect to the Wind-Down Trust, Wind-Down Trust Assets, or Claims Objections; *provided, however*, that upon prior entry of an order of the Bankruptcy Court authorizing such action or proceeding for good cause shown, a Beneficiary may institute in the Bankruptcy Court an action or proceeding against the Wind-Down Trustee with respect to this Agreement, the Plan, the Confirmation Order, or the Wind-Down Trust Assets for acts or omissions arising from the Wind-Down Trustee's gross negligence, actual fraud, or willful misconduct.

Section 3.3 *Recording of Wind-Down Trust Interests*. As soon as practicable after the creation of the Wind-Down Trust, the Wind-Down Trustee (or a duly authorized agent of the Wind-Down Trustee) shall record all ownership and permitted transfers (if any) of interests in Wind-Down Trust Assets in a register (the "Register") maintained by the Wind-Down Trustee (or a duly authorized agent of the Wind-Down Trustee) for such purpose.

Section 3.4 *Non-Transferability of Interests in Wind-Down Trust Assets*. Interests in the Wind-Down Trust Assets shall not be certificated and no physical certificates shall be issued representing such interests. Interests in the Wind-Down Trust Assets shall not be transferable, assignable, pledged, sold, or hypothecated, in whole or in part, except with respect to a transfer by operation of law, by will or under the laws of descent and distribution. Any such transfer, however, will not be effective until and unless the Wind-Down Trustee receives written notice of and approves such transfer as satisfying the limited exceptions to transfer in the preceding sentence. Other than with respect to transfers by operation of law, will or under the laws of descent and distribution, neither the Wind-Down Trustee nor any Persons affiliated with the Wind-Down Trust or the Debtors will take any action to cause, facilitate or encourage any trading in or transfer of interests in the Wind-Down Trust Assets or support or take any action to support the establishment of an active trading market for such interests.

Section 3.5 *Notice of Change of Address; Undeliverable Property*. Each Beneficiary shall be responsible for providing the Wind-Down Trustee with written notice of any change in address. The Wind-Down Trustee is not obligated to make any effort to determine the correct address of a Beneficiary.

(a) *Undeliverable and Unclaimed Property.* Subject to the Plan and the Confirmation Order, all Distributions under the Plan and this Agreement shall be made to each Beneficiary at the address of such Beneficiary as listed on the Schedules as of the Distribution Record Date, unless the Wind-Down Trustee has been notified in writing of a change of address, including, without limitation, by the timely filing of a Proof of Claim by such Beneficiary that provides an address for such Beneficiary different from the address reflected on the Schedules. In the event that any Distribution to any such Beneficiary is returned as undeliverable and a new address is not provided within ninety (90) days of the issuance of such Distribution, or in the event

an unreturned distribution check has not been cashed within ninety (90) days of issuance, then the Wind-Down Trustee may cancel any outstanding checks and return the funds for Distribution automatically and without need for a further order by the Bankruptcy Court, in accordance with the Plan; and such Beneficiary shall, in the Wind-Down Trustee's sole discretion, not be entitled to any further distribution from the Wind-Down Trust.

(b) *Failure to Provide Requested Tax Identification Information.* If a Beneficiary fails to complete and return to the Wind-Down Trustee the appropriate Form W-8 or Form W-9 (if applicable) within ninety (90) days of a request by the Wind-Down Trustee for the completion and return to it of such form, then such Beneficiary shall be deemed to have forfeited its right to any current, reserved and future Distributions from the Wind-Down Trust. The forfeited Distributions shall revert to the Wind-Down Trust automatically and without need for a further Order by the Bankruptcy Court for Distribution in accordance with the Plan.

Section 3.6 *Notices*. The Wind-Down Trustee shall distribute such notices to the Beneficiaries as the Wind-Down Trustee determines are necessary or desirable.

## ARTICLE IV

## TAX AND SECURITIES MATTERS

Section 4.1 *Income Tax Status*. The Wind-Down Trust is established for the sole purpose of liquidating, monetizing, and distributing the Wind-Down Trust Assets, and any proceeds therefrom, in accordance with Treasury Regulations Section 301.7701-4(d) and Revenue Procedure 94-45, with no objective to continue or engage in the conduct of a trade or business. It is intended that the Wind-Down Trust qualify as a grantor trust pursuant to Sections 671-677 of the United States Internal Revenue Code of 1986, as amended (the "Code"), or any successor provisions thereof for federal income tax purposes, and that the Beneficiaries are treated as grantors. To the extent consistent with Revenue Procedure 94-45 and not otherwise inconsistent with this Agreement, this Agreement shall be construed so as to satisfy the requirements for liquidating trust status. Except with respect to the Wind-Down Trust Assets allocable to the Disputed Claim Reserve, (i) the Beneficiaries will be treated as the grantors, deemed owners and beneficiaries of the Wind-Down Trust, and (ii) any items of income, gain, loss, deduction and credit of the Wind-Down Trust shall be allocated for United States federal income tax purposes to the Beneficiaries. The Wind-Down Trust shall at all times be administered so as to constitute a domestic trust for United States federal income tax purposes.

Section 4.2 *Treatment of Wind-Down Trust Assets Transfer.* The transfer of the Wind-Down Trust Assets will be treated for United States federal income tax purposes, including any amounts or other assets subsequently transferred to the Wind-Down Trust (but only at such time as actually transferred), as a transfer (other than amounts set aside as Disputed Claim Reserves if the Disputed Claim Reserves are subject to any entity level tax) to the Beneficiaries, followed by a deemed transfer from such Beneficiaries to the Wind-Down Trust in exchange for the Wind-Down Trust interests; *provided, however*, that the Wind-Down Trust Assets will be subject to any post-Effective Date obligations incurred by the Wind-Down Trust relating to monetizing Wind-Down Trust Assets, reconciling Claims and making Distributions. Accordingly, the Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their

respective share of the Wind-Down Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. All items of income, gain, loss, deduction and credit will be included in the income of the Beneficiaries as if such items had been recognized directly by the Beneficiaries in the proportions in which they own the Wind-Down Trust Interests.

Section 4.3 *Valuation.* Except to the extent definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Wind-Down Trustee of a private letter ruling if the Wind-Down Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Wind-Down Trust as a liquidating trust for purposes of the Code and applicable Treasury Regulations, as soon as reasonably practicable after the Wind-Down Trust Assets are transferred to the Wind-Down Trust, the Wind-Down Trustee shall make a good faith valuation of the Wind-Down Trust Assets. Such valuation shall be made available from time to time to all parties to this Agreement and to all Beneficiaries, to the extent relevant to such parties for tax purposes, and subject to any lawful objection thereto, shall be used consistently by such parties for all United States federal income tax purposes, including for determining tax basis and gain or loss. For the avoidance of doubt, the Wind-Down Trustee's final valuation shall not be binding on the Beneficiaries, the Wind-Down Trust or the Wind-Down Trustee for any purpose other than United States federal income tax purposes, and the valuation shall not impair or prejudice any rights, claims, powers, duties, authority, and privileges of the Beneficiaries, the Wind-Down Trust or the Wind-Down Trustee except with respect to United States federal income tax purposes. The Wind-Down Trustee also shall file (or cause to be filed) any other statements, returns or disclosure relating to the Wind-Down Trust that are required by any Governmental Unit.

Section 4.4 *Tax Basis*. For all United States federal income tax purposes, a Distribution will be allocated to the principal amount of a Claim first and then, to the extent the Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

Section 4.5 *Tax Identification Numbers*. Subject to the Plan and the Confirmation Order, the Wind-Down Trustee may require any Beneficiary to furnish to the Wind-Down Trustee necessary information for tax and reporting purposes, including such Beneficiary's employer or taxpayer identification number as assigned by the Internal Revenue Service or the Social Security Administration, as the case may be, and to complete any related documentation (including but not limited to a Form W-8 or Form W-9). The Wind-Down Trustee may condition any Distribution to any Beneficiary upon the receipt of such information and the receipt of such other documents as the Wind-Down Trustee reasonably requests.

Section 4.6 *Withholding Taxes*. Subject to the Plan and the Confirmation Order, any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder and treated as amounts distributed to such Beneficiaries for all purposes under this Agreement, the Plan, and the Confirmation Order. All Beneficiaries shall be required to provide any information necessary to effect the withholding of such taxes. If the Wind-Down Trustee fails to withhold in respect of amounts received or distributable with respect to any Beneficiary and the Wind-Down Trustee is later held liable for

the amount of such withholding, such Beneficiary shall reimburse the Wind-Down Trustee for such liability.

Section 4.7 *Tax Returns*. The Wind-Down Trustee shall file United States federal income tax returns for the Wind-Down Trust as a grantor trust in accordance with Treasury Regulations Section 1.671-4 and report, but not pay tax on, the Wind-Down Trust's tax items of income, gain, loss, deduction and credit, other than such tax items allocable to the Disputed Claim Reserve (the "Reserve Tax Items"). Each Beneficiary shall report such Reserve Tax Items on its United States federal income tax returns and pay any resulting United States federal income tax liability. In addition, the Wind-Down Trust shall file in a timely manner such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. Within a reasonable time following the end of the taxable year, the Wind-Down Trust shall send to each Beneficiary a separate statement setting forth the Beneficiary's share of Reserve Tax Items and will instruct each such Beneficiary to report such items on its applicable income tax return. The Wind-Down Trust may provide each Beneficiary with a copy of the Form 1041 for the Wind-Down Trust (without attaching any other Beneficiary's Schedule K-1 or other applicable information form) along with such Beneficiary's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement.

Section 4.8 *Expedited Determination of Taxes*. The Wind-Down Trustee may request an expedited determination of taxes of the Wind-Down Trust under applicable law for all returns filed for, or on behalf of, the Wind-Down Trust for all taxable periods through the dissolution of the Wind-Down Trust.

Section 4.9 *Tax Treatment of Disputed Claim Reserve*. Notwithstanding any other provision of this Agreement to the contrary, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, with respect to any Wind-Down Trust Assets allocable to the Disputed Claim Reserve, the Wind-Down Trustee may in the Wind-Down Trustee's discretion, for United States federal income tax purposes (and to the extent permitted by law, for state and local income tax purposes), either (i) make an election to treat such assets as held in a "disputed ownership fund" within the meaning of Treasury Regulations Section 1.468B-9, or (ii) treat such assets as held in a discrete trust (which may consist of separate and independent shares) in accordance with the trust provisions of the Code (Section 641, *et seq*.). In either case, the Wind-Down Trustee shall treat as taxable income or loss of such fund or separate trust with respect to each taxable year, the portion of the taxable income or loss and other tax items for such year that would have been allocated to holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved). Any separate entity level tax incurred with respect to the Disputed Claim Reserve shall be paid by the Wind-Down Trustee out of the Disputed Claim Reserve. All parties (and the Beneficiaries) must report consistently with the income tax treatment determined by the Wind-Down Trustee in the Wind-Down Trustee's discretion.

Section 4.10 *Securities Laws*. It is the intention of the parties hereto that the rights of the Beneficiaries under this Agreement and the interests in the Wind-Down Trust Assets do not constitute "securities" under the Securities Act of 1933, the Securities Exchange Act of 1934, or any state securities law; however, if the rights of the Beneficiaries under this Agreement or the Wind-Down Trust Interests do constitute "securities," the parties hereto intend that the exemption

from registration for the issuance and distribution of the interests in the Wind-Down Trust Assets provided in section 1145 of the Bankruptcy Code shall apply. If the Wind-Down Trustee determines, with the advice of counsel, that the Wind-Down Trust is required to comply with the registration and reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Wind-Down Trustee shall take any and all actions reasonably necessary or appropriate to comply with such reporting requirements and file periodic reports with the Securities and Exchange Commission.

## ARTICLE V

## POWERS OF AND LIMITATIONS ON THE WIND-DOWN TRUSTEE

Section 5.1 *Powers of the Wind-Down Trustee*. In connection with the administration of the Wind-Down Trust, and subject to the Plan and the Confirmation Order, the Wind-Down Trustee is authorized to perform any and all acts necessary and desirable to accomplish the purposes of the Wind-Down Trust. The Wind-Down Trustee will act for the Wind-Down Trust, subject to the provisions of the Plan, the Confirmation Order and this Agreement. On the Effective Date, the Wind-Down Trustee shall become the sole director and sole officer of each of the Wind-Down Debtors and shall succeed to all rights of the Debtors with respect to the Wind-Down Trust Assets. Without limiting, but subject to, the foregoing, the Plan and the Confirmation Order, the Wind-Down Trustee shall be expressly authorized to:

(a) establish and maintain bank accounts, make Distributions and take other actions consistent with the Plan;

(b) make decisions regarding the retention or engagement of professionals or other Persons and to pay, without court approval, all Wind-Down Trust Expenses accruing from and after the Effective Date, which the Wind-Down Trustee in its sole discretion determines to be reasonable;

(c) prosecute, compromise, settle, otherwise resolve, withdraw or abandon any Wind-Down Trust Retained Causes of Action and make claims against any applicable insurance policies, all without approval of the Bankruptcy Court;

(d) object to, litigate or seek estimation of Claims (other than Class 4 Claims), as and when appropriate;

(e) for all Claims other than Class 4 Claims, compromise, settle, otherwise resolve or withdraw any Claim Objections or resolve and settle any Claims, all without approval of the Bankruptcy Court;

(f) maintain a Disputed Claim Reserve, if necessary;

(g) make Distributions, in the Wind-Down Trustee's reasonable discretion, from the Disputed Claims Reserve (if any) as Disputed Claims are resolved;

(h) sell, liquidate, abandon or otherwise dispose of any non-Cash Wind-Down Trust Assets;

(i) procure insurance, to the extent necessary, at the expense of the Wind-Down Trust;

(j) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan and this Agreement;

(k) liquidate and dissolve the Wind-Down Debtors;

(l) take all other actions not inconsistent with the provisions of the Plan which the Wind-Down Trustee deems reasonably necessary or desirable in connection with the administration of the Wind-Down Trust; and

(m) exercise such other powers as may be vested in the Wind-Down Trustee by Order of the Bankruptcy Court, including the Confirmation Order.

Section 5.2 *Limitations on Wind-Down Trustee*. The Wind-Down Trustee shall not at any time, on behalf of the Wind-Down Trust or the Beneficiaries, (i) enter into or engage in any trade or business, (ii) take any actions that are not related, directly or indirectly, to the purposes of this Agreement and the Wind-Down Trust or the administration or implementation of the terms hereof, or that are contrary to the terms of the Plan or the Confirmation Order, (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Wind-Down Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) and in accordance with Revenue Procedure 94-45, or (iv) take any action that would jeopardize treatment of the Wind-Down Trust as a grantor trust for United States federal income tax purposes under Section 671-677 of the Code, or any successor provisions thereof, except such prohibition shall not apply with respect to the Disputed Claim Reserve.

Section 5.3 *Payment of Claims, Expenses and Liabilities of the Wind-Down Trust*. The Wind-Down Trustee shall pay Wind-Down Trust Expenses, including the fees and expenses of any professionals retained by the Wind-Down Trustee.

Section 5.4 *Non-Cash Trust Assets*. To the extent Wind-Down Trust Assets consist of property other than Cash, the Wind-Down Trustee may in the exercise of his, her, or its business judgment reduce any such Wind-Down Trust Assets to Cash or abandon any such Wind-Down Trust Assets. The Wind-Down Trustee shall determine the preferred timing of reducing such Wind-Down Trust Assets to Cash or abandoning such Wind-Down Trust Assets. The Wind-Down Trustee may, in the exercise of his, her, or its business judgment, at any time dissolve or otherwise terminate the legal existence of such Debtor without need for Bankruptcy Court approval or corporate action; *provided that* upon the closing of each of their respective Chapter 11 Cases and the entry by the Bankruptcy Court of a final decree in each such case, each Debtor shall be automatically and immediately deemed dissolved, in accordance with section 303 of the Delaware General Corporation Law or other applicable law, without the necessity for any other or further actions to be taken by or on behalf of the Debtors or any other entity, or payments to be made in connection therewith; *provided, further, that* notwithstanding such dissolution, the Wind-Down Trustee shall retain the authority to file all applicable or necessary federal, state, or local filings

(including tax filings) to the extent required for each of the Debtors or Wind-Debtors (including to the extent deemed necessary or appropriate by the Wind-Down Trustee).

Section 5.5 *Request for Tax Identification Information*. As early as practicable prior to the first anticipated Distribution, the Wind-Down Trustee shall distribute to all Beneficiaries of such Distribution a form to be completed by such Beneficiary and returned to the Wind-Down Trustee requesting tax identification information from the Beneficiary.

Section 5.6 *Books and Records*. The Wind-Down Trustee shall maintain, in respect of the Wind-Down Trust and the Beneficiaries, books and records relating to the assets and the income of the Wind-Down Trust and the payment of expenses of the Wind-Down Trust, in such detail and for such period of time as is commercially reasonable. After the termination of the Wind-Down Trust, the Wind-Down Trustee shall retain for a period of six months the books, records, Beneficiary lists, and certificates and other documents and files which shall have been delivered to or created by the Wind-Down Trustee. At the Wind-Down Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after six months from the completion and winding up of the affairs of the Wind-Down Trust; *provided*, *however*, that prior to any such destruction of records, notice of the Wind-Down Trustee's intention to destroy records shall be provided to the Governmental Units which regulate or regulated the Debtors. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Wind-Down Trust and Final Distribution of the Wind-Down Trust, the Wind-Down Trustee and the WTOB shall have no further duties or obligations hereunder. For the avoidance of doubt, the limitations on liability contained in this Agreement shall apply to any act or omission by the Wind-Down Trustee or the WTOB during the course of winding up the affairs of the Wind-Down Trust.

Section 5.7 *Cash Payments*. Distributions shall be made, at the option, and in the sole discretion, of the Wind-Down Trustee, by wire, check, or such other method as the Wind-Down Trustee deems appropriate under the circumstances. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Wind-Down Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. For purposes of effectuating Distributions under the Plan, any Claim denominated in foreign currency shall be converted to U.S. dollars pursuant to the applicable published exchange rate in effect on the Petition Date.

Section 5.8 *Setoff*. The Wind-Down Trustee may, but shall not be required to, set off against, or recoup from, any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, or the Wind-Down Trust, may have against the Beneficiary that is the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Wind-Down Trustee of any such claim that it may have against such Holder.

Section 5.9 *Post-Confirmation Reports and U.S. Trustee Fees*. After the Effective Date, the Wind-Down Trustee shall (a) pay, as a Wind-Down Trust Expense, all U.S. Trustee Fees incurred under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717, by reason of the Wind-Down Debtors' and Wind-Down Trust's disbursements as required under the Plan or the Confirmation Order, and (b) prepare and

serve on the U.S. Trustee such quarterly disbursement reports for the Wind-Down Debtors and the Wind-Down Trust as required by the U.S. Trustee, in each case until the Chapter 11 Cases are closed, dismissed, or converted to cases under Chapter 7 of the Bankruptcy Code or the Wind-Down Trust is terminated; *provided, that*, any U.S. Trustee fees arising from a disbursement by the GUC Liquidating Trust shall be paid by the GUC Liquidating Trust.

## ARTICLE VI

## DISTRIBUTIONS

Section 6.1 *Distribution Agent*. The Wind-Down Trustee or its designee shall be the Distribution Agent with respect to Allowed Claims (other than Class 4 Claims) and shall make all Distributions on Allowed Claims (other than Class 4 Claims). The Wind-Down Trustee shall not be required to give any bond or surety or other security for the performance of the Wind-Down Trustee's duties as Distribution Agent unless otherwise ordered by the Bankruptcy Court.

Section 6.2 *Distributions*. After the Effective Date and the establishment and funding of any necessary Disputed Claim Reserve, subject to applicable limitations set forth in this Agreement, on any Distribution Date, the Wind-Down Trustee shall distribute from the Wind-Down Trust Assets the Available Cash to Beneficiaries in accordance with the terms of the Plan and the Confirmation Order. The timing of all Distributions shall be at the discretion of the Wind-Down Trustee; *provided, that*, the Wind-Down Trustee shall make distributions at least annually of the Wind-Down Trust's net income plus net proceeds from the monetization of any non-Cash Wind-Down Trust Assets, if any, except for amounts reasonably necessary to maintain the value of the Wind-Down Trust Assets, to fund any Disputed Claim Reserve, or to satisfy Wind-Down Trust Expenses. In the event that the Wind-Down Trustee elects to make a Distribution prior to the resolution of all Disputed Claims, the Wind-Down Trustee shall create a Disputed Claim Reserve. Prior to making any Distributions to the Beneficiaries permitted by this Agreement, the Wind-Down Trustee may retain such amounts (x) as are reasonably necessary to meet contingent liabilities, fund required or appropriate reserves, and to maintain the value of the Wind-Down Trust Assets during the liquidation, (y) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Wind-Down Trust or in respect of the Wind-Down Trust Assets), and (z) to satisfy other liabilities incurred by the Wind-Down Trust in accordance with the Plan, the Confirmation Order, and this Agreement.

Section 6.3 *Timing of Distributions*. The Wind-Down Trustee may make one or more interim Distributions to Holders of Allowed Claims, in its sole discretion; *provided, that*, the Wind-Down Trustee shall make distributions at least annually of the Wind-Down Trust's net income plus net proceeds from the monetization of any non-Cash Wind-Down Trust Assets, if any, except for amounts reasonably necessary to maintain the value of the Wind-Down Trust Assets, to fund any Disputed Claim Reserve, or to satisfy Wind-Down Trust Expenses.

Section 6.4 *Minimum; De Minimis Distributions*. With respect to any interim Distributions, no Cash payment of less than $50.00 shall be made to a Beneficiary on account of an Allowed Claim. With respect to the final Distribution, no Cash payment of less than $25.00 shall be made to a Beneficiary on account of an Allowed Claim and instead shall vest in the Wind-Down Trust for final Distribution to other Beneficiaries. In the event the Wind-Down Trustee

determines the remaining Available Cash in the Wind-Down Trust is insufficient to make any further Distributions, then after payment of any remaining Wind-Down Trust Expenses, the Wind-Down Trustee may make a contribution of the remaining funds to the charity of its choice.

Section 6.5 *Interest on Claims*. Notwithstanding anything to the contrary in the Plan, no Beneficiary shall, on account of its Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

## ARTICLE VII

## CONCERNING THE WIND-DOWN TRUSTEE

Section 7.1 *Generally*. The Wind-Down Trustee accepts and undertakes to discharge the Wind-Down Trust created by this Agreement, the Plan, and the Confirmation Order upon the terms and conditions hereof and thereof. The Wind-Down Trustee shall exercise such of the rights and powers vested in the Wind-Down Trustee by this Agreement, the Plan, and the Confirmation Order and use the same degree of care and skill in the Wind-Down Trustee's exercise as a prudent person would exercise or use under the circumstances in the conduct of Wind-Down Trustee's own affairs. No provision of this Agreement shall be construed to relieve the Wind-Down Trustee or the Wind-Down Trustee's employees, affiliates, officers, directors, principals, attorneys, accountants, experts, and agents (collectively with the Wind-Down Trustee, the "Trustee Parties") from liability for that Trustee Party's own gross negligence, actual fraud, intentional misconduct, or willful misconduct, except that:

(a) the Trustee Parties shall not be liable for any action taken in good faith in reliance upon the advice of attorneys, accountants, and other professionals;

(b) the Trustee Parties shall undertake to perform such duties and only such duties as are specifically set forth in this Agreement, the Plan, and the Confirmation Order and to the fullest extent permitted by applicable law no implied covenants or obligations shall be read into this Agreement, the Plan, or the Confirmation Order against the Trustee Parties; and

(c) the Trustee Parties shall not be liable for any error of judgment made in good faith.

Whether or not therein expressly so provided, every provision of this Agreement relating to the conduct or affecting the liability of or affording protection to the Trustee Parties shall be subject to the provisions of this section.

Section 7.2 *Certain Rights of the Wind-Down Trustee*. Except as otherwise provided in this Agreement:

(a) the Wind-Down Trustee may rely and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Wind-Down Trustee to be genuine and to have been signed or presented by the proper party or parties;

(b) the Wind-Down Trustee may consult with counsel, and the advice or opinion of counsel shall be full and complete protection to the Wind-Down Trustee in respect of any action taken, suffered, or omitted by the Wind-Down Trustee in good faith and in reliance on, or in accordance with, such advice or opinion;

(c) except in the case of liability arising from the Wind-Down Trustee's gross negligence, actual fraud, intentional misconduct, or willful misconduct, persons dealing with the Wind-Down Trustee shall look only to the Wind-Down Trust Assets to satisfy any liability incurred by the Wind-Down Trustee to such person in carrying out the terms of this Agreement and the Wind-Down Trustee shall have no personal or individual obligation to satisfy any such liability;

(d) whenever, in the administration of this Agreement, the Wind-Down Trustee shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Wind-Down Trustee (unless other evidence be herein specifically prescribed) may, in the absence of bad faith on the part of the Wind-Down Trustee, rely upon an opinion of counsel or certificate furnished to the Wind-Down Trustee by or on behalf of the Beneficiaries;

(e) the Wind-Down Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, or other paper or document, but the Wind-Down Trustee, in the Wind-Down Trustee's discretion, may make such further inquiry or investigation into such facts or matters as the Wind-Down Trustee may see fit, and, if the Wind-Down Trustee shall determine to make such further inquiry or investigation, the Wind-Down Trustee shall be entitled to examine the books, records and premises of the relevant person or entity, personally or by agent or attorney; and

(f) the Wind-Down Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys, and the Wind-Down Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by the Wind-Down Trustee hereunder.

Section 7.3 *Limitation of Liability; Indemnification*. The Wind-Down Trustee and all of its designees, employees, agents, representatives or professionals shall not be liable for the act or omission of any other member, designee, agent or representative of the Wind-Down Trustee, nor shall they be liable for any act or omission taken or omitted to be taken in their respective capacities, other than acts or omission resulting from willful misconduct, gross negligence, or actual fraud. The Wind-Down Trustee shall not be deemed to have any fiduciary duty to the Beneficiaries but shall exercise its obligations and duties under this Agreement, the Plan, and the Confirmation Order in good faith and in the reasonable best interests of the Wind-Down Trust. Subject to the terms and conditions of this Agreement, the Plan and the Confirmation Order, the Wind-Down Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee. The Wind-Down Trustee may, in connection with the performance of its functions, consult with attorneys, accountants, financial advisors and agents, which consultation may act as a defense for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons. Notwithstanding such

authority, the Wind-Down Trustee shall be under no obligation to consult with attorneys, accountants, financial advisors or agents, and its determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence, intentional misconduct, or actual fraud. The Wind-Down Trust shall indemnify and hold harmless the Wind-Down Trustee and its designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of the Plan; *provided, however*, that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence, intentional misconduct, or actual fraud.

Section 7.4 *Compensation and Reimbursement.*

(a) The Wind-Down Trustee shall be entitled to (i)(a) $25,000 per month for the first four months of its engagement as Wind-Down Trustee, (b) $15,000 per month for the next four months of its engagement as Wind-Down Trustee, and (c) $7,500 per month each month thereafter for so long as the Wind-Down Trustee is engaged in its capacity as such, and (d) such other compensation as the WTOB may approve in writing; and (ii) reimbursement of actual, reasonable and necessary out-of-pocket expenses from time to time incurred by the Wind-Down Trustee in rendering services as the Wind-Down Trustee.

(b) Subsequent to the Effective Date, the reasonable fees and expenses of any professionals retained by the Wind-Down Trustee shall be (i) deemed Wind-Down Trust Expenses, and (ii) paid by the Wind-Down Trust in accordance with any applicable retention agreements without any requirement of approval by the Bankruptcy Court of the retention, fees or expenses payable to such professionals.

Section 7.5 *Exculpatory Provisions*. The Wind-Down Trustee shall not have any obligation, responsibility or liability for: (i) the validity, execution (except the Wind-Down Trustee's own execution), enforceability, legality, or sufficiency of this Agreement; and (ii) taking any action under this Agreement, if taking such action (x) would subject the Wind-Down Trust to a tax in any jurisdiction where the Wind-Down Trust is not then subject to a tax, or (y) would require the Wind-Down Trust to qualify to do business in any jurisdiction where it is not then so qualified, unless the Wind-Down Trustee receives an indemnity satisfactory to the Wind-Down Trustee against such tax (or equivalent liability), or any liability resulting from such qualification.

Section 7.6 *Wind-Down Trustee's Connections*. The Wind-Down Trustee has reviewed the schedule of potential parties in interest attached to the declaration filed in support of the retention of the Debtors' counsel. The Wind-Down Trustee has not identified any conflicts of interest with respect to such parties in interest. The Wind-Down Trustee notes the following relationships with professionals and creditors listed among the parties in interest:

(a) ______ .

(b) ______.

# ARTICLE VIII

## REMOVAL AND SUCCESSOR TRUSTEES

Section 8.1 *Resignation or Removal*. The Wind-Down Trustee may resign and be discharged by giving at least sixty (60) days' prior written notice thereof to the members of the WTOB then serving. Such resignation shall become effective on the later to occur of (i) the date specified in such written notice, provided that such date is at least sixty (60) days following the date of such notice, and (ii) the effective date of the appointment of a successor Wind-Down Trustee in accordance with Section 8.3 hereof and such successor's acceptance of such appointment.

Section 8.2 *Removal*.

(a) The U.S. Trustee or any Beneficiary may request the removal of the Wind-Down Trustee for "cause" pursuant to a motion Filed with the Bankruptcy Court and served upon (a) the Wind-Down Trustee and its counsel, (b) the U.S. Trustee (if not the movant), (c) the members of the WTOB then serving, and (d) all other Entities that have formally requested notice pursuant to Bankruptcy Rule 2002. In connection with any such motion to remove the Wind-Down Trustee, "cause" will include: (a) the Wind-Down Trustee's willful failure to perform his, her, or its material duties under the Plan and this Agreement, which is not remedied within thirty (30) days of notice; (b) the Wind-Down Trustee's mental or physical incapacity that materially and adversely affects the Wind-Down Trustee's ability to perform his, her, or its duties under the Plan and this Agreement; (c) the Wind-Down Trustee's commission of an act of fraud, theft, or embezzlement in connection with the Wind-Down Trustee's duties under the Plan and this Agreement; or (d) the Wind-Down Trustee's conviction for the commission of a felony with all appeals having been exhausted or appeal periods lapsed. For purposes of the foregoing, no act or failure to act on the part of the Wind-Down Trustee shall be considered "willful" unless it is done, or permitted to be done, by the Wind-Down Trustee without reasonable belief that the Wind-Down Trustee's action or omission was in the best interests of the Wind-Debtors or the Wind-Down Trust.

(b) The Wind-Down Trustee may be removed, with or without cause by majority vote of the members of the WTOB then serving or by the DIP Lender if no members of the WTOB are then serving.

Section 8.3 *Appointment of Successor*. In the event of the resignation or removal, death or incapacity of the Wind-Down Trustee, the WTOB (or the DIP Lender, if no members of the WTOB are then serving) shall, subject to approval of the Bankruptcy Court, designate another Person to serve as Wind-Down Trustee.

Section 8.4 *Acceptance of Appointment by Successor Wind-Down Trustee*. The death, resignation, or removal of the Wind-Down Trustee shall not operate to terminate the Wind-Down Trust created by this Agreement or to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Wind-Down Trustee. Any successor Wind-Down Trustee appointed hereunder shall execute an instrument accepting such successor Wind-Down Trustee's appointment and shall deliver one counterpart thereof to the

Bankruptcy Court for filing, and, in case of the Wind-Down Trustee's resignation or removal, to the departing Wind-Down Trustee. Thereupon, such successor Wind-Down Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion, and privileges of the predecessor Wind-Down Trustee in the Wind-Down Trust with like effect as if originally named Wind-Down Trustee.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

Section 9.1 *Privileges*. Without compromising any other attorney-client privileges of the Debtors vis-à-vis any other Person, any and all attorney-client privileges, work product immunity, and other privileges of the Debtors related to the Claims of Beneficiaries shall vest in the Wind-Down Trust and the Wind-Down Trustee. As such, no communications between any of the Debtors and their professionals, employees, agents and representatives on the one hand, and the Wind-Down Trustee and its professionals, employees, agents and representatives on the other, shall be deemed to have waived the attorney-client privileges held by the Debtors. Moreover, any other privileges or immunities attaching to any documents or communications (whether written or oral) transferred from any of the Debtors to the Wind-Down Trust shall automatically vest in, and be available for assertion by, the Wind-Down Trust and its representatives.

Section 9.2 *Construction*. This Agreement and the Wind-Down Trust created hereby shall be governed by and construed in accordance with the laws of the State of New York without giving effect to choice of law principles. The Wind-Down Trustee's interpretation of the provisions of this Agreement, the Confirmation Order and the Plan shall be deemed conclusive in the absence of a contrary interpretation of a court of competent jurisdiction.

Section 9.3 *Jurisdiction*. The parties agree that the Bankruptcy Court shall have jurisdiction to determine all controversies and disputes arising under or in connection with this Agreement.

Section 9.4 *Severability*. In the event any provision of this Agreement shall be determined by Final Order of a court of proper jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

Section 9.5 *Notices*. Any notice, consent, approval or other communication required or permitted to be given in accordance with this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or mailed by first class mail to the following address (it being understood that any party may change its address by similar written notice to the other party):

(i) if to the Wind-Down Trustee:

Rock Creek Advisors, LLC
1738 Belmar Blvd.
Belmar, NJ 07719
Attn: James Gansman (jgansman@rockcreekfa.com)

With a copy to:

[●]

(ii) if to any Beneficiary, to the address or facsimile number of such Beneficiary as reflected in the Register.

(iii) if to the WTOB:

[●]

With a copy to:

Section 9.6 *Entire Agreement*. This Agreement (including the recitals hereof and, to the extent applicable, the Plan, and the Confirmation Order) constitutes the entire agreement by and among the parties with respect to the subject matter hereof, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, and in the Confirmation Order. This Agreement (together with the Plan and the Confirmation Order) supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, if any, of the parties hereto relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any Person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Agreement. This Agreement shall be binding on the parties hereto and their successors, including any chapter 7 trustee appointed in the Chapter 11 Cases.

Section 9.7 *No Relationship Created*. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

Section 9.8 *Effective Date*. This Agreement shall become effective as of the Effective Date.

Section 9.9 *Amendment*. This Agreement may from time to time be amended, supplemented or modified by the Wind-Down Trustee with the approval of the Bankruptcy Court.

Section 9.10 *Headings*. The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

Section 9.11 *Counterparts*. This Agreement may be executed in facsimile and in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

Section 9.12 *No Bond*. The Wind-Down Trustee shall serve without a bond.

Section 9.13 *Relationship to the Plan*. The principal purpose of this Agreement is to aid in the implementation of the Plan and the Confirmation Order and therefore this Agreement incorporates the provisions of the Plan and the Confirmation Order. To that end, the Wind-Down Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and the Confirmation Order, and to seek any orders from the Bankruptcy Court in furtherance of the implementation of the Plan, the Confirmation Order, and this Agreement. If any provisions of this Agreement are found to be inconsistent with provisions of the Plan or the Confirmation Order, the provisions of the Plan or Confirmation Order, as applicable, shall control.

Section 9.14 *Confidentiality*. The Wind-Down Trustee shall, during the period that such Wind-Down Trustee serves as Wind-Down Trustee under this Agreement and for a period of twelve (12) months following the termination of this Agreement or such Wind-Down Trustee's removal or resignation hereunder, hold strictly confidential and not use for personal gain, any material, non-public information of or pertaining to any entity to which any of the Wind-Down Trust Assets relates or of which such Wind-Down Trustee has become aware in its capacity as Wind-Down Trustee, except as otherwise required by law.

IN WITNESS WHEREOF, the undersigned have caused this instrument to be executed as of the date first above written.

WIND-DOWN TRUSTEE

By: ________________________________
Name:
Title:

Searles Valley Minerals, Inc.

By: ________________________________
Name:

Title:

Searles Domestic Water Company, LLC

By: ________________________________
Name:

Title:

Trona Railway Company, LLC

By: ________________________________
Name:
Title:

# EXHIBIT A

## List of Wind-Down Trust Oversight Board Members

1. [Mr. Ajay Khushu]

2. [Mr. Manan Shah]

# EXHIBIT B-1

## Identity and Terms of Compensation of the Wind-Down Trustee and the Wind-Down Trust Oversight Board

## Identity and Terms of Compensation of the Wind-Down Trustee and the Wind-Down Trust Oversight Board[1]

**Identity of the Wind-Down Trustee:**

As of the Effective Date, the Wind-Down Trustee shall be Rock Creek Advisors, LLC or a special purpose entity created by it.

**Compensation for the Wind-Down Trustee:**

The Wind-Down Trustee shall be entitled to (i)(a) $25,000 per month for the first four months of its engagement, (b) $15,000 per month for the next four months of its engagement, and (c) $7,500 per month each month thereafter so long as the Wind-Down Trustee is engaged in its capacity as such, and (d) such other compensation as the Wind-Down Trust Oversight Board may approve in writing; and (ii) reimbursement of actual, reasonable, and necessary out-of-pocket expenses from time to time incurred by the Wind-Down Trustee in rendering services as the Wind-Down Trustee.

**Members of the Wind-Down Trust Oversight Board:**

As of the Effective Date, the members of the Wind-Down Trust Oversight Board shall be:

1. [Mr. Ajay Khushu]

2. [Mr. Manan Shah]

**Compensation for Wind-Down Trust Oversight Board Members:**

Members of the Wind-Down Trust Oversight Board shall not be entitled to receive compensation for their service.

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the *Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Searles Valley Minerals, Inc. and its Debtor Affiliates* [Docket No. 483] (as may be further amended, modified, or supplemented, the "Combined Disclosure Statement and Plan").

# EXHIBIT C

## Schedule of Retained Causes of Action

**Schedule of Retained Causes of Action**[1]

This schedule represents a non-exhaustive list of the Retained Causes of Action in connection with the Combined Disclosure Statement and Plan (subject to the terms thereof) that will be preserved as GUC Liquidating Trust Assets and Wind-Down Trust Assets, as applicable. The Debtors expressly reserve the right to alter, modify, amend, remove, augment, or supplement this Schedule of Retained Causes of Action at any time in accordance with the Combined Disclosure Statement and Plan. The fact that any specific Retained Cause of Action is not expressly listed below does not mean that it is excluded. For the avoidance of doubt, the Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date and each Retained Cause of Action shall be contributed to and vest in the GUC Liquidating Trust or the Wind-Down Trust, as applicable and as detailed herein, on the Effective Date.

In accordance with section 1123(b)(3) of the Bankruptcy Code and the Combined Disclosure Statement and Plan, except as otherwise provided in the Combined Disclosure Statement and Plan, herein, or in the Confirmation Order, on the Effective Date all GUC Chapter 5 Actions will be contributed to and vest in the GUC Liquidating Trust and all Wind-Down Trust Retained Causes of Action will be contributed to and vest in the Wind-Down Trust.

**No Person or Entity may rely on the absence of a specific reference in the Combined Disclosure Statement and Plan, the Plan Supplement (including this Schedule of Retained Causes of Action), the GUC Liquidating Trust Agreement, or the Wind-Down Trust Agreement to any Retained Causes of Action against them as any indication that the GUC Liquidating Trustee or the Wind-Down Trustee, as applicable, will not, or may not, pursue any and all available Retained Causes of Action against them. The GUC Liquidating Trustee, on behalf of the GUC Liquidating Trust, and the Wind-Down Trustee, on behalf of the Wind-Down Trust and the Wind-Down Debtors, expressly reserve all rights to prosecute any and all Retained Causes of Action, whether or not expressly included herein, against any Person or Entity.**

Unless any Retained Causes of Action against any Person or Entity is expressly sold, waived, relinquished, exculpated, released, compromised, or settled in the Combined Disclosure Statement and Plan, the Confirmation Order, or other Final Order of the Bankruptcy Court, the GUC Liquidating Trustee, on behalf of the GUC Liquidating Trust, expressly reserves all GUC Chapter 5 Actions, and the Wind-Down Trustee, on behalf of the Wind-Down Trust and the Wind-Down Debtors, expressly reserves all Wind-Down Trust Retained Causes of Action for later adjudication. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such GUC Chapter 5 Actions or Wind-Down Trust Retained Causes of Action upon, after, or as consequence of, Confirmation or Consummation of the Combined Disclosure Statement and Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any GUC

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the *Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Searles Valley Minerals, Inc. and its Debtor Affiliates* [Docket No. 483] (as may be further amended, modified, or supplemented, the "Combined Disclosure Statement and Plan").

Chapter 5 Action that the GUC Liquidating Trust may hold against any Person or Entity shall vest in the GUC Liquidating Trustee, and any Wind-Down Trust Retained Cause of Action that the Wind-Down Trust or the Wind-Down Debtors may hold against any Person or Entity shall vest in the Wind-Down Trustee, as applicable and as detailed herein.

Notwithstanding any of the foregoing, the GUC Liquidating Trust, the Wind-Down Trust, and the Wind-Down Debtors expressly reserve all rights to raise any defenses, including, but not limited to, those related to setoff or other offsets in connection with filed proofs of claim under applicable law, including, but not limited to, section 502(d) of the Bankruptcy Code.

**GUC Liquidating Trust Assets**

For purposes of the Combined Disclosure Statement and Plan, notice is hereby given that, unless otherwise sold, waived, relinquished, exculpated, or released by the Combined Disclosure Statement and Plan, the Confirmation Order, or other Final Order of the Bankruptcy Court, the following Causes of Action, are expressly preserved and will vest in the GUC Liquidating Trust:

1. All Avoidance Actions of the Debtors or their Estates, excluding (i) all Causes of Action sold or released pursuant to the Going Concern Purchase Agreement, (ii) any causes of action arising under section 549 of the Bankruptcy Code (or under section 550 of the Bankruptcy Code related thereto), and (iii) any Avoidance Actions against the Prepetition Secured Lender or any of its Affiliates or Related Parties.

**Wind-Down Trust Assets**

For purposes of the Combined Disclosure Statement and Plan, notice is hereby given that, unless otherwise sold, waived, relinquished, exculpated, or released by the Combined Disclosure Statement and Plan, the Confirmation Order, or other Final Order of the Bankruptcy Court, the following Causes of Action, are expressly preserved and will vest in the Wind-Down Trust:

1. All Retained Causes of Action that are not GUC Chapter 5 Actions, including but not limited to, any Non-GUC Chapter 5 Actions.

# EXHIBIT D

## Assumption Schedule

**Assumption Schedule**[1]

The Debtors assumed and assigned various Executory Contracts and Unexpired Leases in connection with the Asset Sale Transactions and provided notice of the Executory Contracts and Unexpired Leases being assumed and assigned, including relevant cure costs. *See generally* Docket Nos. 166, 300, 313, 371, 446. Any Executory Contracts or Unexpired Leases that have been assigned to the Buyers are no longer property of the Debtors' Estates.

At this time, the Debtors have not identified any Executory Contracts or Unexpired Leases that will be assumed by the Debtors pursuant to the Combined Disclosure Statement and Plan, except for any Executory Contract or Unexpired Lease that is either (i) an Insurance Policy, including any D&O Insurance Policy or (ii) a Permit. The Debtors reserve the right, in accordance with the Combined Disclosure Statement and Plan, to amend, modify or supplement this Assumption Schedule, including by adding or removing any Executory Contracts or Unexpired Leases.

For the avoidance of doubt, pursuant to Section 11.1 of the Combined Disclosure Statement and Plan, nothing in the Combined Plan and Disclosure Statement, the Plan Supplement and/or the Confirmation Order alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under any Insurance Policy (including but not limited to any D&O Insurance Policy) of the Debtors.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the *Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Searles Valley Minerals, Inc. and its Debtor Affiliates* [Docket No. 483] (as may be further amended, modified, or supplemented, the "Combined Disclosure Statement and Plan").